22-16162

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**TODD ASHKER,**

Plaintiff-Appellant,

**v.**

**S. KERNAN, et al.,**

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of California

No. 3:18-cv-06350-WHA
The Honorable William Alsup, Judge

**DEFENDANTS-APPELLANTS'**
**SUPPLEMENTAL EXCERPTS OF RECORD**
**(VOLUME 4 OF 7)**

ROB BONTA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
NEAH HUYNH
Supervising Deputy Attorney General
CASSANDRA J. SHRYOCK
Deputy Attorney General
State Bar No. 300360
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone: (415) 510-3622
 Fax: (415) 703-5843
 Email:  Cassandra.Shryock@doj.ca.gov
*Attorneys for Defendants-Appellees*
*Beard, Kernan, Ducart, Giurbino,*
*Hubbard, Rothchild, Ruff, Robertson,*
*Harrington, McLaughlin, Russell, Vargas,*
*Fallis, and Black*

# ATTACHMENT A

**TO DEFENDANTS' OPPOSITION TO ASHKER'S MOTION TO COMPEL**

**AGO 000525**

1   ROB BONTA
    Attorney General of California
2   MARISA KIRSCHENBAUER
    Supervising Deputy Attorney General
3   ANTHONY J. TARTAGLIO
    Deputy Attorney General
4   CASSANDRA J. SHRYOCK
    Deputy Attorney General
5   State Bar No. 300360
     455 Golden Gate Avenue, Suite 11000
6    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3602
7    Fax:  (415) 703-5843
     E-mail:  Anthony.Tartaglio@doj.ca.gov
8   *Attorneys for Defendants*
    *J. Beard, S. Kernan, G. Giurbino, S. Hubbard, K.*
9   *Harrington, J. McLaughlin, M. Ruff, D. Rothchild, J.*
    *Robertson, C. Ducart, C. Vargas, M. Russell, J.*
10  *Fallis, and W. Black*

11                       IN THE UNITED STATES DISTRICT COURT

12                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                                 SAN FRANCISCO DIVISION

14

15

16  **TODD ASHKER,**                    3:18-cv-06350-WHA

17                         Plaintiff,   **DEFENDANT VARGAS' FIRST**
                                        **SUPPLEMENTED RESPONSES TO**
18          **v.**                      **PLAINTIFF'S REQUEST FOR**
                                        **DEFENDANT VARGAS TO MAKE THE**
19  **S. KERNAN, et al.,**              **FOLLOWING ADMISSIONS, SET ONE**

20                       Defendants.

21

22  PROPOUNDING PARTY:   Plaintiff Todd Ashker

23  RESPONDING PARTY:    Defendant C. Vargas

24  SET NO:              One (1)

25                          **PRELIMINARY STATEMENT**

26

27          The information provided in these responses is true and correct, according to Defendant's

28  best knowledge at this time, but it is subject to future correction for omissions, errors, or

                                              1

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000526**

1  mistakes. Defendant reserves the right to produce evidence of any subsequently discovered facts

2  or interpretations thereof, and to amend, modify, or otherwise change the responses, in

3  accordance with applicable discovery rules.

4  **REQUEST FOR ADMISSION NO. 1:**

5        At the time of plaintiff's 9/10/14 DRB Hearing.you were a Correctional Counselor [CC]

6  II, assigned [sic] as the 'case worker' responsible for preparing plaintiff's case for the DRB's STG

7  case-By-Case Review.

8  **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

9        Defendants objects to this request on the grounds that it is vague, ambiguous, and

10  overbroad as to the meaning of the terms "assaigned [sic] as the 'case worker,'" "responsible for

11  preparing plaintiff's case," and "DRB's STG case-By-Case Review," such that Defendant cannot

12  respond to this request without guessing as to their meanings.  Based on the foregoing, Defendant

13  is without sufficient information to admit or deny, and on that basis responds:

14        Deny.

15  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

16        Defendant incorporates by reference and restates her objections to this request for

17  admission.  Subject to and without waiving those objections, Defendant responds:

18        Admitted.

19  **REQUEST FOR ADMISSION NO. 2:**

20        Your preparation of plaintiff's case for his 9/10/14, DRB STG CBC Review includedd

21  [sic] your complete review of plaintiffs CDCR prison files [inclusive of your review & analysis of

22  the "Confidential" file(s) petaining[sic] to plaintiff].

23  **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

24        Defendant objects to this request on the grounds that it is vague, ambiguous, and

25  overbroad as to the meaning of the terms "preparation of plaintiff's case," "DRB STG CBC

26  Review," and "includedd-[sic] your complete review of plaintiffs CDCR prison files [inclusive of

27  your review & analysis of the "Confidential" file(s) petaining[sic] to plaintiff]," such that

28  Defendant cannot respond to this request without guessing as to their meanings.  Based on the

2

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000527**

1  foregoing, Defendant is without sufficient information to admit or deny, and on that basis

2  responds:

3       Deny.

4  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

5       Defendant incorporates by reference and restates her objections to this request for

6  admission.  Subject to and without waiving those objections, Defendant responds:

7       Denied, as Defendant did not perform a "complete review of plaintiffs' CDCR prison

8  files," which were voluminous and contained many documents not relevant to the DRB hearing.

9  **REQUEST FOR ADMISSION NO. 3:**

10      Your preparation of plaintiff's case for the 9/10/14 DttB Hearing included your

11  responsibility to [accurately summarize] the 'confidential information' being reviewed by the

12  DRB, on "CDCR 1030, Confidential Infromation[sic] Disclosure Forms."

13  **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

14      Defendant objects to this request on the grounds that it is vague, ambiguous, and

15  overbroad as to the meaning of the terms "preparation of plaintiff's case," "DttB Hearing," and

16  "your responsibility to [accurately summarize] the 'confidential information' being reviewed by

17  the DRB," such that Defendant cannot respond to this request without guessing as to their

18  meanings.  Based on the foregoing, Defendant is without sufficient information to admit or deny,

19  and on that basis responds:

20      Deny.

21  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

22      Defendant incorporates by reference and restates her objections to this request for

23  admission.  Subject to and without waiving those objections, Defendant responds:

24      Admitted.

25  **REQUEST FOR ADMISSION NO. 4:**

26      On 9/02/14, you provided plaintiff with a CDCR 128-B-1, "Notice of Classification

27  Hearing" that included your signature on it.

28

**AGO 000528**

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Defendant objects to this request on the grounds that it is compound, and that it is vague, ambiguous, and overbroad as to the meaning of the terms "you provided," "CDCR 128-B-1, 'Notice of Classification Hearing,'" and "that included your signature," such that Defendant cannot respond to this request without guessing as to their meanings. Based on the foregoing, Defendant is without sufficient information to admit or deny, and on that basis responds:

Deny.

**FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Defendant incorporates by reference and restates her objections to this request for admission. Subject to and without waiving those objections, Defendant responds:

Admitted.

**REQUEST FOR ADMISSION NO. 5:**

The attached copy of the CDCR 128-B-1, Notice of Classification Hearing, dated 9/2/14 is genuine [SEE: Attachment 1]

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Defendant objects to this request on the grounds that it is vague, ambiguous, and overbroad as to the meaning of the term "genuine," such that Defendant cannot respond to this request without guessing as to its meaning. Based on the foregoing, Defendant is without sufficient information to admit or deny, and on that basis responds:

Deny.

**FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Defendant incorporates by reference and restates her objections to this request for admission. Subject to and without waiving those objections, Defendant responds:

Admitted.

**REQUEST FOR ADMISSION NO. 6:**

Attachment 1, includes the following accurately stated information you had included on the Form, prior to issuing it to plaintiff"…Ashker was issued CDCR 1030's-Confidential Information Disclosure Forms, disclosing SEG behavior/information documented in Confidential

4

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000529**

1   Memorandum(s) (CM) dated: 6/27/11, 11/4/11, 7/24/12, 10/10/12, 3/29/13, 4/2/13, 12/5/13,

2   1/9/14, 8/16/11, 8/16/11, 5/21/12, 8/15/13…."

3   **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

4       Defendant objects to this request on the grounds that it is vague, ambiguous and overbroad

5   as to the meaning of the terms, "following accurately stated information," "you had included on

6   the Form, prior to issuing it to plaintiff," and "disclosing SEG behavior/information," such that

7   Defendant cannot respond to this request without guessing as to their meaning.  Based on the

8   foregoing, Defendant is without sufficient information to admit or deny, and on that basis

9   responds:

10      Deny.

11  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

12      Defendant incorporates by reference and restates her objections to this request for

13  admission.  Subject to and without waiving those objections, Defendant responds:

14      Admitted.

15  **REQUEST FOR ADMISSION NO. 7:**

16      The CDCR 1030's, referenced in [Attachemnt-1], included your review of each of the

17  C.M.s, and completion of a seperate[sic] CDCR 1030, Confidential Information Disclosure Form,

18  at # 3. [of the 1030 Form(s)] underlined requiring "The information received indicated the following:"

19  **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

20      Defendant objects to this request on the grounds that it is compound, and that it is vague,

21  ambiguous, and overbroad as to the meaning of the terms "CDCR 1030's," "included your review

22  of each of the C.M.s," "completion of a seperate [sic] CDCR 1030, Confidential Information

23  Disclosure Form, at # 3," and "[of the 1030 Form(s)] requiring "The information received

24  indicated the following:," such that Defendant cannot respond to this request without guessing as

25  to their meanings.  Based on the foregoing, Defendant is without sufficient information to admit

26  or deny, and on that basis responds:

27      Deny.

28

5

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000530**

1  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

2      Defendant incorporates by reference and restates her objections to this request for

3  admission.  Subject to and without waiving those objections, Defendant responds:

4      Defendant is unable to admit or deny this request because it appears to be incomplete.

5  **REQUEST FOR ADMISSION NO. 8:**

6      The attached copy of CDCR 1030, Confidential Information Disclosure Form [re: C.M.

7  dated 5/21/12], was signed and dated by you on 9/2/14, and is genuine [SEE: Attachement [sic] 2]

8  **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

9      Defendant objects to this request on the grounds that it is vague, ambiguous, abd

10  overbroad as to the meaning of the terms, "CDCR 1030, Confidential Information Disclosure

11  Form [re: C.M. dated 5/21/12]," and "genuine," such that Defendant cannot respond to this

12  request without guessing as to their meaning.  Based on the foregoing, Defendant is without

13  sufficient information to admit or deny, and on that basis responds:

14      Deny.

15  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

16      Defendant incorporates by reference and restates her objections to this request for

17  admission.  Subject to and without waiving those objections, Defendant responds:

18      Admitted.

19  **REQUEST FOR ADMISSION NO. 9:**

20      You are the person who included the information in [Attachment 2], at"3. The information

21  received indicated the following:...." [Summarizing what was stated in the C.M.]

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

23      Defendant objects to this request on the grounds that it is compound, and is vague,

24  ambiguous, and overbroad as to the meaning of the terms "who included the information in

25  [Attachment 2], at"3," and "The information received indicated the following:...." [Summarizing

26  what was stated in the C.M.]," such that Defendant cannot respond to this request without

27  guessing as to their meanings.  Based on the foregoing, Defendant is without sufficient

28  information to admit or deny, and on that basis responds:

6

**AGO 000531**

1      Deny.

2    **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

3      Defendant incorporates by reference and restates her objections to this request for

4    admission.  Subject to and without waiving those objections, Defendant responds:

5      Admitted.

6    **REQUEST FOR ADMISSION NO. 10:**

7      You attended plaintiff's DRB Hearing on 9/10/14.

8    **RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

9      Defendant objects to this request on the grounds that it is vague, ambiguous, and

10    overbroad as to the meaning of the terms, "attended," and "DRB Hearing," such that Defendant

11    cannot respond to this request without guessing as to their meanings.  Based on the foregoing,

12    Defendant is without sufficient information to admit or deny, and on that basis responds:

13      Deny.

14    **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

15      Defendant incorporates by reference and restates her objections to this request for

16    admission.  Subject to and without waiving those objections, Defendant responds:

17      Admitted.

18    **REQUEST FOR ADMISSION NO. 11:**

19      During plaintiff's 9/10/14 DRB Hearing, you witnessed plaintiff's explanation to DRB

20    Chairman Giurbino, regarding why the source of C M dated 5/21/12, claims that plaintiff had

21    given the source 'the latter from the targeted attorney would not be possible.'

22    **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

23      Defendant objects to this request on the grounds that it is vague, ambiguous, and

24    overbroad, as to the meaning of the terms "DRB hearing," "witnessed," and "witnessed plaintiff's

25    explanation to DRB Chairman Giurbino, regarding why the source of C M dated 5/21/12, claims

26    that plaintiff had given the source 'the latter from the targeted attorney would not be possible,'"

27    such that Defendant cannot respond to this request without guessing as to their meanings.  Based

28    on the foregoing, Defendant is without sufficient information to admit or deny, and on that basis

**AGO 000532**

1    responds:

2         Deny.

3    **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

4         Defendant incorporates by reference and restates her objections to this request for

5    admission.  Subject to and without waiving those objections, Defendant responds:

6         Defendant cannot admit or deny this request because she does not remember precisely

7    what was said at the 9/10/14 DRB Hearing.

8    **REQUEST FOR ADMISSION NO. 12:**

9         In reference to above [Request for Admission # 11.], you witnessed plaintiff explaining to

10   Chairman Giurbino, that "it would not be possible for plaintiff to have provided the source with

11   the 'letter...' because plaintiff & the source lived in different cellblocks, and had no way of passing

12   documents to oneanother[sic] during time frame at issue."

13   **RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

14        Defendant objects to this request on the grounds that it is vague, ambiguous, and

15   overbroad as to the applicable time period, and as to the meaning of the terms, "In reference to

16   above [Request for Admission # 11.]," "witnessed," and "plaintiff explaining to Chairman

17   Giurbino, that "it would not be possible for plaintiff to have provided the source with the 'letter...'

18   because plaintiff & the source lived in different cellblocks, and had no way of passing documents

19   to oneanother[sic] during time frame at issue," such that Defendant cannot respond to this request

20   without guessing as to their meanings.  Based on the foregoing, Defendant is without sufficient

21   information to admit or deny, and on that basis responds:

22        Deny.

23   **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

24        Defendant incorporates by reference and restates her objections to this request for

25   admission.  Subject to and without waiving those objections, Defendant responds:

26        Defendant cannot admit or deny this request because she does not remember precisely

27   what was said at the 9/10/14 DRB Hearing.

28

**AGO 000533**

1   **REQUEST FOR ADMISSION NO. 13:**

2          In reply to plaintiff's explanation to Giurbino, in above[Request # 12], you heard Giurbino

3   state that 'what the source had actually said was that the source had obtained the letter from

4   another inmate in his pod.'

5   **RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

6          Defendant objects to this request on the grounds that it is vague, ambiguous, and

7   overbroad as to the applicable time period, and as to the meaning of the terms "in reply to

8   plaintiff's explanation to Giurbino in above[Request # 12]," and "Giurbino state that 'what the

9   source had actually said was that the source had obtained the letter from another inmate in his

10  pod,'" such that Defendant cannot respond to this request without guessing as to their meanings.

11  Based on the foregoing, Defendant is without sufficient information to admit or deny, and on that

12  basis responds:

13         Deny.

14  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

15         Defendant incorporates by reference and restates her objections to this request for

16  admission.  Subject to and without waiving those objections, Defendant responds:

17         Defendant cannot admit or deny this request because she does not remember precisely

18  what was said at the 9/10/14 DRB Hearing.

19  **REQUEST FOR ADMISSION NO. 14:**

20         The summary of events in above [Requests for ADmissions # 12, & 13], was the basis for

21  you tp[sic] provide plaintiff with a "Corrected" CDCR 1030 Form, regarding <u>C.M. dated 5/21/12</u>,

22  in accord with what Giurbino had stated in response to plaintiff's rebuttal point.

23  **RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

24         Defendant objects to this request on the grounds that it is compound, and that it is vague,

25  ambiguous, and overbroad as to the meaning of the terms "summary of events in above [Requests

26  for ADmissions # 12, & 13]," "basis for you tp[sic] provide plaintiff with a "Corrected" CDCR

27  1030 Form, regarding <u>C.M. dated 5/21/12</u>," and "in accord with what Giurbino had stated in

28  response to plaintiff's rebuttal point," such that Defendant cannot respond to this request without

<div align="center">9</div>

**AGO 000534**

1  guessing as to their meanings.  Based on the foregoing, Defendant is without sufficient

2  information to admit or deny, and on that basis responds:

3      Deny.

4  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

5      Defendant incorporates by reference and restates her objections to this request for

6  admission.  Subject to and without waiving those objections, Defendant responds:

7      Defendant cannot admit or deny this request because she does not remember precisely

8  what prompted her to issue an amended CDCR 1030 form.

9  **REQUEST FOR ADMISSION NO. 15:**

10     Attachment 3, is a genuine copy of the "Corrected" CDCR 1030 Form, regarding, C.M.

11  dated 5/21/12, signed, and dated by you on 3/04/15.

12  **RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

13     Defendant objects to this request on the grounds that it is compound, and is vague,

14  ambiguous, and overbroad as to the meaning of the terms "genuine," "'Corrected' CDCR 1030

15  Form, regarding, C.M. dated 5/21/12, signed, and dated by you on 3/04/15," such that Defendant

16  cannot respond to this request without guessing as to their meanings.  Based on the foregoing,

17  Defendant is without sufficient information to admit or deny, and on that basis responds:

18     Deny.

19  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

20     Defendant incorporates by reference and restates her objections to this request for

21  admission.  Subject to and without waiving those objections, Defendant responds:

22     Admitted.

23  **REQUEST FOR ADMISSION NO. 16:**

24     Attachment 3, was created by you for purpose of correcting the ommision[sic] of

25  information in/Attachment 2] as described in[above admissions # 12, & 13]

26  **RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

27     Defendant objects to this request on the grounds that it is vague, ambiguous, and

28  overbroad as to the meaning of the terms, "was created," and "for purpose of correcting the

10

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000535**

1  ommision[sic] of information in/Attachment 2] as described in[above admissions # 12, & 13],"

2  such that Defendant cannot respond to this request without guessing as to their meanings.  Based

3  on the foregoing, Defendant is without sufficient information to admit or deny, and on that basis

4  responds:

5       Deny.

6  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

7       Defendant incorporates by reference and restates her objections to this request for

8  admission.  Subject to and without waiving those objections, Defendant responds:

9       Defendant is unable to admit or deny this response because she does not remember what

10 prompted her to issue the amended CDCR 1030 form.

11 **REQUEST FOR ADMISSION NO. 17:**

12      When you gave plaintiff the "Corrected" CDCR 1030 Disclosure on 3/04/15 [Attachment

13 3], plaintiff noted it did not state what Giurbino had claimed during the 9/10/2014 hrg. [SEE:

14 Above Request number13]; and you replied that you "know this, and you looked very carefully,

15 and the C.M. dated 5/21/12, did not state what Mr. Giurbino said.

16 **RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

17      Defendant objects to this request on the grounds that it is vague, ambiguous, and

18 overbroad as to the meaning of the terms, "'Corrected' CDCR 1030 Disclosure," "plaintiff

19 noted," "it did not state what Giurbino had claimed during the 9/10/2014 hrg. [SEE: Above

20 Request number13]," and "you replied that you "know this, and you looked very carefully, and

21 the C.M. dated 5/21/12, did not state what Mr. Giurbino said," such that Defendant cannot

22 respond to this request without guessing as to their meanings.  Based on the foregoing, Defendant

23 is without sufficient information to admit or deny, and on that basis responds:

24      Deny.

25 **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

26      Defendant incorporates by reference and restates her objections to this request for

27 admission.  Subject to and without waiving those objections, Defendant responds:

28      Defendant is unable to admit or deny this request because she does not remember the

**AGO 000536**

1  conversation this request refers to.

2  **REQUEST FOR ADMISSION NO. 18:**

3       The CDCR 1030 Disclosure of information regarding <u>C.M</u>. dated 5/21/12, that you

4  created [referenced in above requests # 8-to-17], <u>does not include</u> a claim that the source of <u>C.M</u>.

5  dated 5/21/12, had stated plaintiff was calling for the murder of doctor, and attorneys in [October

6  2011], because the source [never made the claim] plaintiff was calling for the murder(s) in

7  [October 2011].

8  **RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

9       Defendant objects to this request on the grounds that it is vague, ambiguous, and

10  overbroad as to the meaning of the terms "regarding <u>C.M</u>. dated 5/21/12," "that you created

11  [referenced in above requests # 8-to-17]," "<u>does not include</u> a claim that the source of <u>C.M</u>. dated

12  5/21/12, had stated plaintiff was calling for the murder of doctor," "attorneys in [October 2011],"

13  and "because the source [never made the claim] plaintiff was calling for the murder(s) in [October

14  2011]," such that Defendant cannot respond to this request without guessing as to their meanings.

15  Based on the foregoing, Defendant is without sufficient information to admit or deny, and on that

16  basis responds:

17       Deny.

18  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

19       Defendant incorporates by reference and restates her objections to this request for

20  admission.  Subject to and without waiving those objections, Defendant responds:

21       Defendant is unable to admit or deny this request because she cannot say what the

22  confidential source told the interviewer.  Defendant drafted this CDCR 1030 form based on one

23  or more confidential memoranda, not direct conversations with confidential sources.

24  **REQUEST FOR ADMISSION NO. 19:**

25       <u>Attachment 4</u>, is a genuine copy of the CDCR 1030 Disclosure Form, signed and dated by

26  you on 9/2/14 [regarding <u>C.M</u>. dated 3/29/13]

27  **RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

28       Defendant objects to this request on the grounds that it is vague, ambiguous, and

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000537**

1  overbroad as to the meaning of the terms "genuine," and "CDCR 1030 Disclosure Form, signed

2  and dated by you on 9/2/14 [regarding <u>C.M.</u> dated 3/29/13]," such that Defendant cannot respond

3  to this request without guessing as to their meanings.  Based on the foregoing, Defendant is

4  without sufficient information to admit or deny, and on that basis responds:

5      Deny.

6  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

7      Defendant incorporates by reference and restates her objections to this request for

8  admission.  Subject to and without waiving those objections, Defendant responds:

9      Admitted.

10  **REQUEST FOR ADMISSION NO. 20:**

11      The last two-sentences included by you [in <u>Attachment 4</u>, CDCR 1030 Disclosure, <u>re</u>:

12  <u>C.M.</u> dated 3/39/13], at[part 3. of Disclosure Form] incorrectly state "<u>October 2011</u>" as the

13  'corroborating the time frame in <u>C.M.</u> dated 5/21/12 as when Ashker was calling for the murder of

14  the PBSP Doctor & the lawyers.'

15  **RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

16      Defendant objects to this request on the grounds that it is compound, argumentative, and

17  vague, ambiguous, and overbroad as to the meaning of the terms, "last two-sentences included by

18  you [in <u>Attachment 4</u>, CDCR 1030 Disclosure, <u>re</u>: <u>C.M.</u> dated 3/29/13], at[part 3. of Disclosure

19  Form]," and "incorrectly state "<u>October 2011</u>" as the 'corroborating the time frame in <u>C.M.</u> dated

20  5/21/12 as when Ashker was calling for the murder of the PBSP Doctor & the lawyers,'" such

21  that Defendant cannot respond to this request without guessing as to their meanings.  Based on

22  the foregoing, Defendant is without sufficient information to admit or deny, and on that basis

23  responds:

24      Deny.

25  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

26      Defendant incorporates by reference and restates her objections to this request for

27  admission.  Subject to and without waiving those objections, Defendant responds:

28      Defendant admits that Ashker has accurately quoted a portion of this CDCR 1030 form.

13

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000538**

1   As to Ashker's allegation that the October 2011 time frame is incorrect, however, Defendant is

2   unable to admit or deny this request because she cannot say what the confidential source told the

3   interviewer.  Defendant drafted this CDCR 1030 form based on one or more confidential

4   memoranda, not direct conversations with confidential sources.

5   **REQUEST FOR ADMISSION NO. 21:**

6       Attachement[sic] 5, is a genuine copy of the CDCR 1030 Disclosure Form, signed and

7   dated by you on 9/2/14 [regarding C.M. dated 4/02/l3]

8   **RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

9       Defendant objects to this request on the grounds that it is vague, ambiguous, and

10  overbroad as to the meaning of the terms "genuine," and "CDCR 1030 Disclosure Form, signed

11  and dated by you on 9/2/14 [regarding C. M. dated 4/02/l3]," such that Defendant cannot respond

12  to this request without guessing as to their meanings.  Based on the foregoing, Defendant is

13  without sufficient information to admit or deny, and on that basis responds:

14      Deny.

15  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

16      Defendant incorporates by reference and restates her objections to this request for

17  admission.  Subject to and without waiving those objections, Defendant responds:

18      Admitted.

19  **REQUEST FOR ADMISSION NO. 22:**

20      You are the author of the summary included at CDCR 1030 Form [at"3. The information

21  received indicated the following:….."] [re: Attachemnt[sic] 5]

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

23      Defendant objects to this request on the grounds that it is vague, ambiguous, and

24  overbroad as to the meaning of the terms, "author," and "summary included at CDCR 1030 Form

25  [at"3. The information received indicated the following:….."] [re: Attachemnt[sic] 5]," such that

26  Defendant cannot respond to this request without guessing as to their meanings.  Based on the

27  foregoing, Defendant is without sufficient information to admit or deny, and on that basis

28  responds:

14

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000539**

1    Deny.

2    **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

3    Defendant incorporates by reference and restates her objections to this request for

4    admission.  Subject to and without waiving those objections, Defendant responds:

5    Admitted.

6    **REQUEST FOR ADMISSION NO. 23:**

7    You included the following information on [Attachement[sic] 5],..."…. Two of the inmates

8    were validated & self-admitted STG-1 AB members, who have since defected from the gang.

9    They corroborated & confirmed that it was common knowledge among AB members that the

10   identified PBSP doctor was targeted for death by Ashker. They also confirmed the identified

11   attorneys from a law firm who had represented CDCR against lawsuits brought on by Ashker

12   were also targeted…."

13   **RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

14   Defendant objects to this request on the grounds that it is compound, and that the

15   document speaks for itself, and that this request is vague, ambiguous, and overbroad as to the

16   meaning of the term "included the following information on [Attachement[sic] 5]," such that

17   Defendant cannot respond to this request without guessing as to their meanings.  Based on the

18   foregoing, Defendant is without sufficient information to admit or deny, and on that basis

19   responds:

20   Deny.

21   **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

22   Defendant incorporates by reference and restates her objections to this request for

23   admission.  Subject to and without waiving those objections, Defendant responds:

24   Admitted.

25   **REQUEST FOR ADMISSION NO. 24:**

26   Attachment 5, includes [at "Reliability of Source."], This information is reliable because:

27   X More than one source provided the information; and, X This source incriminated himself…."

28   [These alleged claims about source(s) reliability(s), are not true].

15

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000540**

1   **RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

2       Defendant objects to this request on the grounds that it is compound and argumentative,

3   and that it is vague, ambiguous, and overbroad as to the meaning of the terms, "Attachment 5,

4   includes ["Reliability of Source."]," "This information is reliable because: X More than one

5   source provided the information," "'X This source incriminated himself….,'" and "these alleged

6   claims about source(s) reliability(s)," such that Defendant cannot respond to this request without

7   guessing as to their meanings.  Based on the foregoing, Defendant is without sufficient

8   information to admit or deny, and on that basis responds:

9       Deny.

10  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

11      Defendant incorporates by reference and restates her objections to this request for

12  admission.  Subject to and without waiving those objections, Defendant responds:

13      Defendant is unable to admit or deny this request because her responsibility was to

14  summarize one or more confidential memoranda in a CDCR 1030 form.  Defendant is unable to

15  admit or deny the truth of the statements within the confidential memoranda.

16  **REQUEST FOR ADMISSION NO. 25:**

17      The summarized parts of Attachment 5 [referenced above in requests # 23, & 24],

18  misrepresent what C.M. dated 4/02/13, actually states.

19  **RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

20      Defendant objects to this request on the grounds that it is compound, and that it is vague,

21  ambiguous, and overbroad as to the meaning of the terms "summarized parts of Attachment 5

22  [referenced above in requests # 23, & 24]," "misrepresent," and "what C.M. dated 4/02/13,

23  actually states," such that Defendant cannot respond to this request without guessing as to their

24  meanings.  Based on the foregoing, Defendant is without sufficient information to admit or deny,

25  and on that basis responds:

26      Deny.

27  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

28      Defendant incorporates by reference and restates her objections to this request for

**AGO 000541**

1    admission.  Subject to and without waiving those objections, Defendant responds:

2            Defendant denies intentionally misrepresenting the contents of a confidential

3    memorandum.

4    **REQUEST FOR ADMISSION NO. 26:**

5            Attachment 6, is a genuine copy of CDCR 1030, Confidential Information Disclosure

6    Form, signed and dated by CC-III, Alexandra Perez, on 12/15/15 [regarding C.M. dated

7    4/02/13]; and noted to have been issued to plaintiff on 12/22/15, by CC-I, Fellis]

8    **RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

9            Defendants object to this request on the grounds that it is compound and seeks admission

10   of facts that Defendant has no personal knowledge of.  Defendant further object that this request

11   is vague, ambiguous, and overbroad as to the meaning of the terms "genuine copy," "CDCR

12   1030, Confidential Information Disclosure Form, signed and dated by CC-III, Alexandra Perez,

13   on 12/15/15 [regarding C.M. dated 4/02/13]," and "noted to have been issued to plaintiff on

14   12/22/15, by CC-I, Fellis]," such that Defendant cannot respond to this request without guessing

15   as to their meanings.  Based on the foregoing, Defendant is without sufficient information to

16   admit or deny, and on that basis responds:

17           Deny.

18   **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

19           Defendant incorporates by reference and restates her objections to this request for

20   admission.  Subject to and without waiving those objections, Defendant responds:

21           Defendant is unable to admit or deny this request because she did not write the

22   confidential memorandum being referred to.

23   **REQUEST FOR ADMISSION NO. 27:**

24           The second paragraph of Attachment 6 [at "3. Disclosure of information received….."]

25   includes the following: "....The Special Service Unit conducted an investigstion[sic] into potential

26   threat against a Doctor employed at PBSP, due to discovery of an inmate manufactured

27   communication referencing killing a Doctor at PBSP, and two attorneys. Seven inmates, three

28   staff members, and two citizens were interviewed. A validated, affiliate of the Aryan Brotherhood

17

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000542**

1  (AB) (STG91) (same inmate in Confidential Memorandum dated 2/26/13 and 8/15/13) was

2  interviewed in April 2013 during the investigation. The confidential source was shown a copy of

3  an intercepted (confiscated) communication found in the cell of a validated AB STG affiliate in

4  March 2013, containing specific plans to murder or harm a doctor (employed at PBSP). The

5  confidential source reported he [was not aware of the plan to assault staff at PBSP, and it was his

6  opinion that the AB STG-1 Commission would not approve the hit on staff memebers…."

7  **RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

8      Defendant objects to this request on the grounds that the document speaks for itself, and is

9  vague, ambiguous, and overbroad as to the meaning of the term, "second paragraph of

10  Attachment 6 [at "3. Disclosure of information received….."] includes," such that Defendant

11  cannot respond to this request without guessing as to its meaning.  Based on the foregoing,

12  Defendant is without sufficient information to admit or deny, and on that basis responds:

13      Deny.

14  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

15      Defendant incorporates by reference and restates her objections to this request for

16  admission.  Subject to and without waiving those objections, Defendant responds:

17      Defendant is unable to admit or deny this request because she did not write the

18  confidential memorandum being referred to.

19  **REQUEST FOR ADMISSION NO. 28:**

20      The above quoted part from attachement[sic] 6, accurately states what is stated in the

21  C.M. dated 4/02/13.

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

23      Defendant objects to this request on the grounds that it is vague, ambiguous, and

24  overbroad as to the meaning of the terms, "above quoted part from attachement[sic] 6," and

25  "accurately states what is stated in the C.M. dated 4/02/13," such that Defendant cannot respond

26  to this request without guessing as to their meaning.  Based on the foregoing, Defendant is

27  without sufficient information to admit or deny, and on that basis responds:

28      Deny.

**AGO 000543**

1   **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

2        Defendant incorporates by reference and restates her objections to this request for

3   admission.  Subject to and without waiving those objections, Defendant responds:

4        Defendant is unable to admit or deny this request because she did not write the

5   confidential memorandum being referred to.

6   **REQUEST FOR ADMISSION NO. 29:**

7        The fact is, there was only [one source] who claimed to have first hand information about

8   plaintiff's alleged involvement in a conspiracy to murder a PBSP Doctor, and attorneys during a

9   time frame in 2007 and 2008. [SEE Attachemnt[sic] #s 2, and 6]

10  **RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

11       Defendant objects to this request on the grounds that it is argumentative, and is vague,

12  ambiguous, and overbroad as to the meaning of the terms "only [one source]," "claimed to have

13  first hand information," and "plaintiff's alleged involvement in a conspiracy to murder a PBSP

14  Doctor, and attorneys during a time frame in 2007 and 2008," such that Defendant cannot respond

15  to this request without guessing as to their meanings.  Based on the foregoing, Defendant is

16  without sufficient information to admit or deny, and on that basis responds:

17       Deny.

18  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

19       Defendant incorporates by reference and restates her objections to this request for

20  admission.  Subject to and without waiving those objections, Defendant responds:

21       Defendant is unable to admit or deny this request because she did not write the

22  confidential memorandum [Attachment 6] being referred to.

23  **REQUEST FOR ADMISSION NO. 30:**

24       The source who alleged plaintiff was calling for the murder of the PBSP Doctor, &

25  attorneys, admitted that he had ~~been~~ blamed[sic] plaintiff for [source] being ostrazised, and in

26  response the [source] claimed he had "created his own hit list, with plaintiff's name at the top of

27  his list." [per. <u>C.M</u>. dated 12/7 /12, copy attached as <u>Attachment 7</u> hereto]. Attachment 7, is a

28  genuine copy of your CDCR-1030, Disclosure Form]

19

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000544**

1    **RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

2          Defendant objects to this request on the grounds that it is compound, and is vague,

3    ambiguous, and overbroad as to the meaning of the terms, "source who alleged plaintiff was

4    calling for the murder of the PBSP Doctor, & attorneys," "admitted that he had ~~been~~ blamed[sic]

5    plaintiff for [source] being ostrasized," "in response the [source] claimed he had "created his own

6    hit list, with plaintiff's name at the top of his list." [per. C.M. dated 12/7 /12, copy attached as

7    Attachment 7 hereto]," "genuine copy," and "your CDCR-1030, Disclosure Form," such that

8    Defendant cannot respond to this request without guessing as to their meanings.  Based on the

9    foregoing, Defendant is without sufficient information to admit or deny, and on that basis

10   responds:

11          Deny.

12   **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

13          Defendant incorporates by reference and restates her objections to this request for

14   admission.  Subject to and without waiving those objections, Defendant responds:

15          Defendant is unable to admit or deny this request because she cannot say what the

16   confidential source told the interviewer.  Defendant drafted this CDCR 1030 form based on one

17   or more confidential memoranda, not direct conversations with confidential sources.

18   **REQUEST FOR ADMISSION NO. 31:**

19          The source who alleged plaintiff was calling for the murder of the PBSP Doctor &

20   attorneys [Attachements[sic] # 2, 6], also claimed that he [the source, of C.M. 5/21/12], had

21   personally planned to attempt to kill the doctor at PBSP in 2008, "however, the ~~w~~ plan was foiled

22   due to several staff memebers[sic] in the area at that time." [Attachment 6].

23   **RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

24          Defendant objects to this request on the grounds that it is vague, ambiguous, and

25   overbroad as to the meaning of the terms "source who alleged plaintiff was calling for the murder

26   of the PBSP Doctor & attorneys [Attachements[sic] # 2, 6]," "also claimed," "he [the source, of

27   C.M. 5/21/12]," "planned to attempt to kill the doctor at PBSP in 2008 'however, the ~~w~~ plan was

28   foiled due to several staff memebers[sic] in the area at that time.' [Attachment 6]," such that

                                          20

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000545**

1   Defendant cannot respond to this request without guessing as to their meanings.

2       Based on the foregoing, Defendant is without sufficient information to admit or deny, and

3   on that basis responds:

4       Deny.

5   **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

6       Defendant incorporates by reference and restates her objections to this request for

7   admission.  Subject to and without waiving those objections, Defendant responds:

8       Defendant is unable to admit or deny this request because she did not write the

9   confidential memorandum [Attachment 6] being referred to.

10   **REQUEST FOR ADMISSION NO. 32:**

11       <u>Attachment 8</u>, is a genuine copy of CDCR 1030, Confidential Information Disclosure

12   Form, signed and dated by you on 9/2/14 [regarding **C.M**. dated 10/10/12]

13   **RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

14       Defendant objects to this request on the grounds that it is vague, ambiguous, and

15   overbroad as to the meaning of the term, "genuine copy," such that Defendant cannot respond to

16   this request without guessing as to its meaning.  Based on the foregoing, Defendant is without

17   sufficient information to admit or deny, and on that basis responds:

18       Deny.

19   **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

20       Defendant incorporates by reference and restates her objections to this request for

21   admission.  Subject to and without waiving those objections, Defendant responds:

22       Admitted.

23   **REQUEST FOR ADMISSION NO. 33:**

24       There was no direct evidence connecting plaintiff to the alleged conspiracy to murder a

25   PBSP Doctor, and attorneys, at the time of plaintiff's 9/10/14 DRB Hearing.

26   **RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

27       Defendant objects to this request on the grounds that it is argumentative, and is vague,

28   ambiguous, and overbroad as to the meaning of the terms, "direct evidence," and "connecting

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000546**

1   plaintiff to the alleged conspiracy to murder a PBSP Doctor, and attorneys," such that Defendant

2   cannot respond to this request without guessing as to their meanings.  Based on the foregoing,

3   Defendant is without sufficient information to admit or deny, and on that basis responds:

4       Deny.

5   **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

6       Defendant incorporates by reference and restates her objections to this request for

7   admission.  Subject to and without waiving those objections, Defendant responds:

8       Defendant is unable to admit or deny this request because she was responsible for

9   summarizing confidential memoranda in CDCR 1030 forms.  She cannot admit or deny the

10  truthfulness of the contents of those confidential memoranda.

11  **REQUEST FOR ADMISSION NO. 34:**

12      Pursuant to California Code of Regulation (CCR), Title 15, §§ 3310, et. seq., any staff

13  member who believes an inmate has committed a serious rule violation, is mandated to issue a

14  formal rule violation to the inmate(s), involved

15  **RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

16      Defendant objects to this request on the grounds that it is vague, ambiguous, and

17  overbroad as to the meaning of the terms, "California Code of Regulation (CCR), Title 15, §§

18  3310, et. seq.," "believes," "serious rule violation," "is mandated," and "issue a formal rule

19  violation," such that Defendant cannot respond to this request without guessing as to their

20  meanings.  Based on the foregoing, Defendant is without sufficient information to admit or deny,

21  and on that basis responds:

22      Deny.

23  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

24      Defendant incorporates by reference and restates her objections to this request for

25  admission.  Subject to and without waiving those objections, Defendant responds:

26      Defendant is unable to admit or deny this request because it poses an incomplete

27  hypothetical situation.

28

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000547**

**REQUEST FOR ADMISSION NO. 35:**

Conspiracy to committ[sic] murder is considered a "serious rule violation" in CDCR.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

Defendant objects to this request on the grounds that is vague, ambiguous, and overbroad as to the meaning of the terms "is considered," and "serious rule violation," such that Defendant cannot respond to this request without guessing as to their meanings. Based on the foregoing, Defendant is without sufficient information to admit or deny, and on that basis responds:

Deny.

**FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

Defendant incorporates by reference and restates her objections to this request for admission. Subject to and without waiving those objections, Defendant responds:

Defendant is unable to admit or deny this request because it poses an incomplete hypothetical situation.

**REQUEST FOR ADMISSION NO. 36:**

Plaintiff has not been issued a "rule violation," based on the allegations made by inmate informants in the C.M.s dated 5/21/12, 10/10/12, 12/7/12, 3/29/13, 4/02/13, 2/26/13/, or 8/15/13, because the involved staff members reviewing these C.M.s recognized the allegations in said C.M.s were 'unsupported allegations from unreliable[sic] informants, with admitted animosities against plaintiff.'

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

Defendant objects to this request on the grounds that it is compound, and is vague, ambiguous, and overbroad as to the meaning of the terms, "been issued a 'rule violation,'" "based on," "the allegations made by inmate informants in the C.M.s dated 5/21/12, 10/10/12, 12/7/12, 3/29/13, 4/02/13, 2/26/13/, or 8/15/13," and "because the involved staff members reviewing these C.M.s recognized the allegations in said C.M.s were 'unsupported allegations from unreliable[sic] informants, with admitted animosities against plaintiff,'" such that Defendant cannot respond to this request without guessing as to their meanings. Defendant further objects that this request calls for speculation, and asks Defendant to admit facts she has no personal knowledge of. Based

23

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000548**

1  on the foregoing, Defendant is without sufficient information to admit or deny, and on that basis

2  responds:

3      Deny.

4  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

5      Defendant incorporates by reference and restates her objections to this request for

6  admission.  Subject to and without waiving those objections, Defendant responds:

7      Defendant cannot admit or deny this request because she cannot speculate as to the

8  motives of other people.

9  **REQUEST FOR ADMISSION NO. 37:**

10      CDCR Rules of Regulations include the mandate that inmates subject to serious rule

11  violation charges, are entitled to due process, inclusive of the right to an staff

12  assistant/investigative employee, the right to call witnesses; The right to all information-evidence

13  relied upon; and the right to non-biased hearing officer's adjudication of the charge(s) based on a

14  "preponderance-of-evidence".

15  **RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

16      Defendant objects to this request on the grounds that it is compound, and is vague,

17  ambiguous, and overbroad as to the meaning of the terms, "include the mandate," and "inmates

18  subject to serious rule violation charges," such that Defendant cannot respond to this request

19  without guessing as to their meanings.  Defendant further objects that this request presents and

20  incomplete hypothetical and calls for speculation.  Based on the foregoing, Defendant is without

21  sufficient information to admit or deny, and on that basis responds:

22      Deny.

23  **FIRST SUPPLEMENTED RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

24      Defendant incorporates by reference and restates her objections to this request for

25  admission.  Subject to and without waiving those objections, Defendant responds:

26      Defendant is unable to admit or deny this request because it poses an incomplete

27  hypothetical situation.

28

**AGO 000549**

1    Dated:  January 25, 2022                    Respectfully submitted,

2                                               ROB BONTA
                                                Attorney General of California
3                                               MARISA KIRSCHENBAUER
                                                Supervising Deputy Attorney General
4                                               CASSANDRA J. SHRYOCK
                                                Deputy Attorney General
5

6                                               ***/s/ Anthony J. Tartaglio***

7                                               ANTHONY J. TARTAGLIO
                                                Deputy Attorney General
8                                               *Attorneys for Defendants*

9    SF2020400523
     35857804
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        25

Vargas' First Supp. Responses to Plaintiff's Requests for Admission, Set One (3:18-cv-06350-WHA)

**AGO 000550**

# ATTACHMENT

**TO DEFENDANTS' OPPOSITION TO ASHKER'S MOTION TO COMPEL**

**AGO 000551**

1  ROB BONTA
   Attorney General of California
2  MARISA KIRSCHENBAUER
   Supervising Deputy Attorney General
3  ANTHONY J. TARTAGLIO
   Deputy Attorney General
4  CASSANDRA J. SHRYOCK
   Deputy Attorney General
5   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
6   Telephone:  (415) 510-3602
    Fax:  (415) 703-5843
7   E-mail:  Anthony.tartaglio@doj.ca.gov
   *Attorneys for Defendants*
8  *J. Beard, S. Kernan, G. Giurbino, S. Hubbard, K.*
   *Harrington, J. McLaughlin, M. Ruff, D. Rothchild, J.*
9  *Robertson, C. Ducart, C. Vargas, M. Russell, J.*
   *Fallis, and W. Black*

10

11                  IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                      SAN FRANCISCO DIVISION

14

15  **TODD ASHKER,**                          3:18-cv-06350-WHA

16                              Plaintiff,    **DEFENDANT VARGAS' FIRST**
                                              **SUPPLEMENTED RESPONSES TO**
17            v.                              **PLAINTIFF'S INTERROGATORIES,**
                                              **SET ONE**
18

19  **S. KERNAN, et al.,**

20                            Defendants.

21

22  PROPOUNDING PARTY:   Plaintiff Todd Ashker

23  RESPONDING PARTY:    Defendant C. Vargas

24  SET NO:              One (1)

25                      **PRELIMINARY STATEMENT**

26        The information provided in these responses is true and correct, according to Defendant's

27  best knowledge at this time, but it is subject to future correction for omissions, errors, or

28  mistakes. Defendant reserves the right to produce evidence of any subsequently discovered facts

                                         1

**AGO 000552**

1    or interpretations thereof, and to amend, modify, or otherwise change the responses, in

2    accordance with applicable discovery rules.

3    **INTERROGATORY NO. 1:**

4           If defendant Vargas' answer to any of the Requests For Admissions [Set 1], is anything

5    other than an unqualified admission, then for each such answer, identify the following:

6           a.   The number of the request;
             b.   All facts upon which defendant Vargas bases her responses;
7           c.   All witnesses with knowledge of the facts upon which defendant bases response
             d.   All documents that support defendants response.
8

9    **RESPONSE TO INTERROGATORY NO. 1:**

10          Defendant objects to this request on the grounds that it is vague, ambiguous, and

11   overbroad as to the meaning of the terms "an unqualified admissions," such that Defendant

12   cannot respond to this request without guessing as to its meaning.  Further, Defendant Vargas's

13   responses to Plaintiff's Requests for Admission, Set 1 indicated that Defendant Vargas currently

14   lacks sufficient information to admit or deny Plaintiff's requests, and thus, cannot presently

15   respond to this interrogatory.  Based on the foregoing, no response will be provided.

16   **FIRST SUPPLEMENTED RESPONSE TO INTERROGATORY NO. 1:**

17          Defendant incorporates by reference and restates her previous objections to this

18   interrogatory.  Subject to these objections, Defendant responds:

19          In addition to the objections previously made, this interrogatory is compound, overbroad,

20   and unduly burdensome because it purports to demand that Defendant analyze and comment on at

21   least 37 requests for admission.  Defendant will not respond to this interrogatory.

22   **INTERROGATORY NO. 2:**

23          Please state your level of education; and, CDCR job assignments[sic], and duties for each

24   job assignments[sic] [at the time of plaintiff's 9/10/14, DRB Hearing].

25   **RESPONSE TO INTERROGATORY NO. 2:**

26          Defendant objects to this request on the ground that it is compound (it is actually three

27   interrogatories combined into one), and is vague, ambiguous, and overbroad as to the meaning of

28   the terms, "level of education," and "CDCR job assignments[sic]," such that Defendant cannot

1     respond to this request without guessing as to their meanings.  Based on the foregoing, no

2     response will be provided at this time.

3     **FIRST SUPPLEMENTED RESPONSE TO INTERROGATORY NO. 2:**

4        Defendant incorporates by reference and restates her previous objections to this

5     interrogatory.  Subject to these objections, Defendant responds:

6        Defendant has completed high school and has an Associate of Arts degree. In September

7     of 2014, Defendant's job title was Correctional Counselor II Specialist.  For more information

8     about this job, see the attached California State Personnel Board Specification for Correctional

9     Counselor II (Specialist) (9901).

10     **INTERROGATORY NO. 3:**

11        Please identify each person referenced in the following listed "Confidential Memos;" as

12     well as, their 'current contact information' [for each person]: <u>C.M.</u>s dated: 5/21/12; 10/10/12 [e.g.,

13     person(s) who allegedly 'discovered the notes in the mop-heads, in PBSP-SHU, D Facility, 4-

14     block on 8/20/2012; and, the 'identified validated AB prison gang member in leadership and the

15     author was identified as another validated AB prison gang member in leadership.' As well as, the

16     (3) 'identified AB associates.' Please refer to Admissions, Attachment 8]; <u>And</u>, who's responsible

17     for the statement in the CDCR 1030 Disclosure [Admissions attachmmnt[sic] 8], claim that, the

18     note(s) corroborate <u>C.M.</u>s dated: 5/21/12, and 3/29/13]  <u>Also</u>, <u>same request</u> for <u>C.M.</u>s dated:

19     12/7/12; 3/29/13; 2/26/13, and 8/15/13 [by 'same request' is reference to, above request stated in

20     <u>INTERROGATORY 3</u>]

21     **RESPONSE TO INTERROGATORY NO. 3:**

22        Defendant objects to this request on the grounds that it is compound, and is actually

23     numerous interrogatories combined into one, and is vague, ambiguous, and overbroad as to the

24     meaning of the terms, "each person referenced in," "current contact information," "responsible

25     for the statement in the CDCR 1030 Disclosure [Admissions attachmmnt[sic] 8], claim that, the

26     note(s) corroborate <u>C.M.</u>s dated: 5/21/12, and 3/29/13]," and ", <u>same request</u> for <u>C.M.</u>s dated:

27     12/7/12; 3/29/13; 2/26/13, and 8/15/13 [by 'same request' is reference to, above request stated in

28     <u>INTERROGATORY 3</u>]," such that Defendant cannot respond to this request without guessing as

1  to their meanings.  Defendant further objects that these requests seek to circumvent the assertion

2  of the official-information and informant privileges over confidential documents in this case (*see*

3  Privilege Log in support of Defendants' responses to Requests for Production, Set 3).  Thus,

4  Defendants further object that the information requested is protected by those privileges, and the

5  disclosure of such highly confidential information (the identities of confidential informants and

6  the "current contact information") is not proportional to the needs of the case.  Based on the

7  foregoing, no response will be provided.

8  **INTERROGATORY NO. 4:**

9      Please explain in specific detail(s) the basis for the differences between your CDCR 1030

10  Disclosure, issued to plaintiff on 9/2/14 [wherein, you are summarizing the information contained

11  in C.M. dated 4/02/13.  SEE: Request for Admissions # 23., with included reference to

12  Attachment 5, thereof]: and, CDCR 1030 Disclosure, authored by CC-III, Perez, on 12/15/15

13  [wherein, Perez, summary of same C.M., dated: 4/02/13, does not support your above referenced

14  summary of same C.M.??? SEE: Request for Admission s# 27., with included reference to

15  Attachment 6, thereof]

16  **RESPONSE TO INTERROGATORY NO. 4:**

17      Defendants objects to this request on the grounds that it assumes the truth of facts that are

18  in dispute—namely that Counselor Perez's confidential disclosure form "does not support"

19  Defendant Vargas's "summary of same C.M.," and that it is vague, ambiguous, and overbroad as

20  to the meaning of the terms "specific detail(s)," "the basis for the differences between your

21  CDCR 1030 Disclosure . . . and, CDCR 1030 Disclosure, authored by CC-III, Perez," "with

22  included reference to Attachment 5, thereof]," "does not support your above referenced summary

23  of same C.M.???," and "with included reference to Attachment 6, thereof]," such that Defendant

24  cannot respond to this request without guessing as to their meanings.  Defendant further objects

25  that the documents speak for themselves, and that this requests seeks information that Defendant

26  Vargas does not have personal knowledge of, i.e., an explanation of why another correctional

27  official did something in a particular way."  Based on the foregoing, no response will be

28  provided.

1

2     Dated:  January 25, 2022                        Respectfully submitted,

3                                                     ROB BONTA
                                                      Attorney General of California
4                                                     MARISA KIRSCHENBAUER
                                                      Supervising Deputy Attorney General
5                                                     CASSANDRA J. SHRYOCK
                                                      Deputy Attorney General
6

7
                                                      */s/ Anthony J. Tartaglio*
8                                                     ANTHONY J. TARTAGLIO
                                                      Deputy Attorney General
9                                                     *Attorneys for Defendants*

10    SF2020400523
      35858627
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Vargas' First Supplemented Responses to Plaintiff's Interrogatories, Set One (3:18-cv-06350-WHA)

**AGO 000556**

**VERIFICATION**

I, C. Vargas, declare under penalty of perjury that I have read the above first supplemented responses to Plaintiff's Interrogatories, Set One.  The first supplemented responses [to interrogatories 1 and 2] are true and correct to the best of my knowledge.

Dated: _01/25/2022_

_____C. Vargas_____

C. Vargas
Correctional Counselor II (Retired)

6

Defendant Vargas' First Supplemented Responses to Plaintiff's Interrogatories

AGO 000557



# Correctional Counselor II (Specialist) (9901)

## California State Personnel Board Specification

- **Schematic Code:** XS35
- **Class Code:** 9901
- **Established:** 03/03/1987
- **Revised:** 12/13/2018
- **Title Changed:** --

# Definition

Under general direction, as a sworn essential public safety officer, either: (1) to conduct difficult program assignments within a special treatment unit of an institution; or (2) to conduct specialized program assignments as an Assistant Classification and Parole Representative, Inmate Appeal Coordinator, Inmate Work/Training Incentive Program Coordinator, or Prison Litigation Coordinator (Legal Liaison); to perform peace officer duties as required; and to do other related work.

# Distinguishing Characteristics

Classification is the study of the individual prisoner for the purposes of understanding his/her needs and providing an administrative procedure for carrying out a program for his/her adjustment, education and skill training. Employees in this series usually are assigned either to a reception center or to a State correctional facility and are expected to demonstrate high ethical standards consistent with other state peace officer classifications and perform in such a way that facilitates and promotes the department's rehabilitative programs, policies, and public safety efforts. Reception center staff prepare an evaluation of an inmate and make recommendations for his/her subsequent classification, assignment, transfer and program development or modification in a correctional setting. State correctional facilities attempt to assist inmates in their adjustment to institutional living, and to educate and provide skill training to prepare an individual for return to his/her community.

AGO 000558

Employees in the next lower class of Correctional Counselor I, the first full-working level in this series, are primarily concerned with the adjustment, education, skill training, classification and assignment of inmates.

Employees in the next higher class of Correctional Counselor III are responsible for directing the inmate classification and pre-parole program or entering treatment program in an institution, and for liaison activities between the institution and Board of Prison Terms or may serve as members of the departmental headquarters' classification unit.

# Typical Tasks

Instructs and assists with in-service training programs; integrates casework services with activities of other disciplines represented on a clinic team in a diagnostic center; provides casework services to select inmates and serves as treatment consultant to the custodial staff in lock-up units; checks the compilation of case records to determine that policies and appropriate procedures are followed; follows up on specific classification recommendations; assists in the development of effective casework procedures; coordinates the work of the Department of Corrections and that of the law enforcement agencies and interested public and private agencies; performs special assignments and studies; conducts or directs individual and group psychotherapy and counseling sessions; consults with custodial, educational, and care and treatment staffs; makes recommendations to the Board of Prison Terms for parole and retention of inmates; performs peace officer duties which include maintaining order and supervising the conduct of inmates, maintaining the safety of public, staff, inmates and property while enforcing state and Federal laws, rules, and regulations, inspecting premises and searching inmates for contraband, and replacing and/or assisting custodial staff during emergency situations, such as fights, attempted escapes, or major incidents such as riots; utilizes de-escalation/communication/use of force techniques to defend the safety and security of a correctional institution; documents incidents per policy and procedures.

In addition to the above tasks, the following is performed by the specialty assignments: the Assistant Classification and Parole Representative coordinates hearings for the Board of Prison Terms, serves as a member of the classification and disciplinary committees, and supervises the official recording of the Board of Prison Terms; the Inmate Appeal Coordinator researches and investigates second-level inmate appeals and makes recommendations for response; the Inmate Work/Training Incentive Program Coordinator assists in achieving legislative and departmental mandates to provide full work/training assignments for inmates, audits and monitors the work incentive law, provides training to staff on all aspects of the work incentive law, and maintains records to show compliance; the Prison Litigation Coordinator (Legal Liaison) serves as the institution litigation specialist for noncriminal lawsuits filed by, or on behalf of inmates, including habeus corpus, tort and civil rights type cases filed in State and Federal courts.

AGO 000559

# Minimum Qualifications

## Either I

One year of experience in the California state service performing correctional casework duties at a level of responsibility equivalent to Correctional Counselor I.

## Or II

Experience: In a California state adult correctional institution either:

1. One year performing the duties of Correctional Program Supervisor III. or
2. Two years performing the duties of a Correctional Program Supervisor II. and

Education: Equivalent to graduation from a recognized four-year college. (Additional qualifying experience may be substituted for not more than two years of the required education on a year-for-year basis.)

## Or III

Experience: Two years of experience in collecting, evaluating, and interpreting social, behavioral, and vocational data for purposes of counseling and promoting individual adjustment. This experience must have been gained in one or a combination of the following fields: probation, parole or correctional casework.

(Completion of one year of graduate training in a recognized school in a field of social work, clinical psychology, criminology, or sociology, administration of justice, correctional science, criminal justice, psychology, or other related behavioral science field may be substituted for one year of the required experience.)

and

Education: Equivalent to graduation from a recognized four-year college. (Additional qualifying experience may be substituted for not more than two years of the required education on a year-for-year basis.)

(In appraising experience, more weight will be given to the breadth of pertinent experience and the evidence of the candidate's ability to accept and fulfill increasing responsibility than to the length of his/her experience.)

# Knowledge and Abilities

AGO 000560

Knowledge of: Principles and procedures of inmate classification, assignment, and transfer in correctional institutions; principles and practices of counseling and guidance; causes of crime and delinquency; casework theory and practice and the principles of individual and group behavior; purposes, activities, regulations, and functions of the California Department of Corrections and the Board of Prison Terms; educational, psychological and vocational tests used in counseling and placement work and interpreting test results; principles and practices of vocational guidance and occupational placement; principles of verbal and written expression; correctional casework procedures; an understanding of the range of normal and abnormal human behavior; the policies and procedures of custody; methods used and problems involved in the supervision and adjustment of inmates; the various prison gangs, gang behavior, and the threat of gang action in an institutional setting; group processes and dynamics, including various roles played by group participants and different types of questions or modes of inquiry which can be used in group settings; training methods and planning and conducting in-service training programs.


Ability to: Apply the principles and practices of counseling and guidance; interpret test results; evaluate sociological, psychological, psychiatric, and vocational findings and make recommendations; coordinate the work of professional and technical employees in inmate guidance and classification work; secure accurate social data and record such data systematically; speak and write effectively; command the respect and trust of inmates and staff; organize and prioritize work; meet deadlines; deal tactfully/diplomatically with sensitive issues; evaluate situations accurately and take effective action; deal effectively with a high volume of work; work under pressure; respond effectively to emergency situations; work independently; control an interview with an inmate; interpret institutional/departmental policies, rules and regulations; adjust to changes in assignments; work with a team of people from a variety of occupations and professional disciplines; motivate an inmate toward specific goals; recognize and handle dangerous situations for inmates and staff.

# Special Personal Characteristics

Capacity for assuming a progressively greater responsibility as evidenced by recent employment history; neat personal appearance; adaptability; emotional maturity and stability; tact; patience; willingness to work irregular hours; satisfactory record as a law abiding citizen; normal or corrected to normal hearing; sound physical condition; strength, endurance, and agility; willingness to report for duty at any time due to an emergency crisis.


# Felony Disqualification

Existing law provides that persons convicted of a felony are disqualified from employment as peace officers. Such persons are not eligible to compete for, or be appointed to, positions in this class.

AGO 000561

# Training Requirement

Under the provisions of Penal Code Section 832, successful completion of a training course in laws of arrest, search and seizure, and in firearms and chemical agents is a requirement for permanent status in this class.

# Background Investigation

Pursuant to Government Code Section 1031(d), all persons successful in this examination who are not peace officers with the Department of Corrections shall be required to undergo a thorough background investigation prior to appointment.

# Citizenship Requirement

Pursuant to Government Code Section 1031(a), in order to be appointed to a peace officer position a person must be either a United States citizen or be a permanent resident alien who is eligible and has applied for United States citizenship at least one year prior to the final filing date for an examination. The one- year requirement does not apply to permanent resident aliens who have applied for employment prior to their 19th birthday.

# Age Limitation

Minimum age for appointment: 21 years, pursuant to Government Code Section 1031(b).

# Drug Testing Requirement

Applicants for positions in this class are required to pass a drug screening test. (The drug screening test will be waived for employees who are currently in a designated "Sensitive" class for which drug testing is required under State Personnel Board Rule 213.)

 Updated: 12/20/2018

AGO 000562

CONDITIONS OF USE          PRIVACY POLICY

ACCESSIBILITY          CONTACT US

DOWNLOAD DOCUMENT READERS          CALHR JOBS

Copyright © 2022

**AGO 000563**

# ATTACHMENT C

**TO DEFENDANTS' OPPOSITION TO ASHKER'S MOTION TO COMPEL**

**AGO 000564**

1  ROB BONTA
   Attorney General of California
2  MARISA KIRSCHENBAUER
   Supervising Deputy Attorney General
3  CASSANDRA J. SHRYOCK
   Deputy Attorney General
4  State Bar No. 300360
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3622
6    Fax:  (415) 703-5843
     E-mail:  Cassandra.Shryock@doj.ca.gov
7  *Attorneys for Defendants*
   *J. Beard, S. Kernan, G. Giurbino, S. Hubbard, K.*
8  *Harrington, J. McLaughlin, M. Ruff, D. Rothchild, J.*
   *Robertson, C. Ducart, C. Vargas, M. Russell, J.*
9  *Fallis, and W. Black*

10                IN THE UNITED STATES DISTRICT COURT

11              FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13

14

15  **TODD ASHKER,**                      Case No. 3:18-cv-06350-WHA

16                          Plaintiff,    **DEFENDANTS' RESPONSE TO**
                                          **PLAINTIFF'S REQUEST FOR**
17          v.                            **PRODUCTION OF DOCUMENTS, SET**
                                          **FOUR**
18  **S. KERNAN, et al.,**

19                          Defendants.

20

21

22  **PROPOUNDING PARTY:**   Plaintiff Todd Ashker

23  **RESPONDING PARTY:**    Defendants

24  **SET NO:**              4

25                      <u>**PRELIMINARY STATEMENT**</u>

26          The information provided in these responses is true and correct, according to Defendants'

27  best knowledge at this time, but it is subject to future correction for omissions, errors, or

28  mistakes.  Defendants reserve the right to produce evidence of any subsequently discovered facts

                                          1

                                              Defs.' Resp. Pl.'s RFPD, Set 4 (3:18-cv-06350-WHA)

                                          **AGO 000565**

1   or interpretations thereof, and to amend, modify or otherwise change the responses, in accordance

2   with applicable discovery rules.  Defendants object to this entire set of requests for production of

3   documents on the grounds that it is not properly directed to a single defendant, and instead is

4   directed to all Defendants collectively.

5   **REQUEST FOR PRODUCTION NO. 16:**

6       ALL documents relating to plaintiff's Departmental Review Board [DRB] Hearing, held

7   January 14, 2016 [inclusive of, but not limited to: any "DRAFT(S)" of the "DRB ACTION

8   CHRONO" dated 2/05/16; and, plaintiff's "CDCR 812 Notice of Critical Case Information

9   Confidential & Non-Confidential Enemies." (inclusive of: all related documents detailing the

10  basis for said inmates being listed as plaintiff's "enemies," & defendants' investigation(s)

11  efforts(s) thereof, confirming such information was currently accurate, as of the date of the DRB

12  Hearing conducted on 1/14/16.)].

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

14      Defendants object to this request on the grounds that it is compound, and is vague,

15  ambiguous, and overbroad as to the applicable time period, and as to the meaning of the terms,

16  "relating to plaintiff's Departmental Review Board [DRB] Hearing, relating to plaintiff's

17  Departmental Review Board [DRB] Hearing, held January 14, 2016," "any "DRAFT(S)" of the

18  "DRB ACTION CHRONO" dated 2/05/16," "plaintiff's "CDCR 812 Notice of Critical Case

19  Information Confidential & Non-Confidential Enemies," and "all related documents detailing the

20  basis for said inmates being listed as plaintiff's "enemies," & defendants' investigation(s)

21  efforts(s) thereof, confirming such information was currently accurate, as of the date of the DRB

22  Hearing conducted on 1/14/16," such that Defendants cannot respond to this request without

23  guessing as to their meanings.  Defendants further object that disclosure of Plaintiff's confidential

24  enemies would jeopardize institutional safety and security, as outlined in the declaration of J.

25  Harden in support of Defendants' Privilege Log.  Subject to and without waiving these

26  objections, and assuming Plaintiff is seeking the non-confidential documents associated with this

27  hearing, Defendants respond:

28      Defendants produce **AGO 466 – AGO 487**.

2

Defs.' Resp. Pl.'s RFPD, Set 4 (3:18-cv-06350-WHA)

**AGO 000566**

1  **REQUEST FOR PRODUCTION NO. 17:**

2       ALL medical records pertaining to plaintiff for the following time periods: 6/01/11-to-

3  9/30/11; and, 7/1/13-to-9/30/13.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

5       Defendants object to the request on the ground that it is compound, and is actually two

6  requests combined into one.  Defendants further object that this request is unduly burdensome,

7  because it seeks records from a decade ago that have no bearing on Plaintiff's current claims, and

8  therefore this request is not proportional to the needs of the case.  Subject to and without waiving

9  this objection, Defendants respond:

10       Defendants produce **AGO 403 – AGO 465**.

11  **REQUEST FOR PRODUCTION NO. 18:**

12       ALL documents regarding PBSP-SHU, Inmate Grievances/Appeals [including all related

13  documents thereto], regarding "Guard-One" Welfare Checks, policies & practice(s), at PBSP-

14  SHU, covering time period of 8/03/15-to-2/12/15.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

16       Defendants object to this request on the grounds that it is vague, ambiguous, and

17  overbroad as to the meaning of the terms, "regarding PBSP-SHU, Inmate Grievances/Appeals

18  [including all related documents thereto], regarding "Guard-One" Welfare Checks, policies &

19  practice(s), at PBSP-SHU," and "time period of 08/03/15-to-2/12/15," such that Defendants

20  cannot respond to this request without guessing as to their meanings.  Although the request seeks

21  documents from "8/03/15-to-2/12/15," Defendants assume that Plaintiff is referring to "8/03/14-

22  to-2/12/15."  To the extent Plaintiff is requesting all inmate appeals submitted about the use of the

23  "Guard One" welfare check system at Pelican Bay State Prison, Defendants object that this

24  request improperly seeks the records of other inmates, which Plaintiff, as a state prisoner, is not

25  permitted to possess.  Defendants further object that this request is unduly burdensome and not

26  proportional to the needs of the case because, on information and belief, to locate responsive

27  documents would require determining every inmate who was housed in the SHU during the

28  requested time period, and then reviewing each of those inmate's files for potentially responsive

3

Defs.' Resp. Pl.'s RFPD, Set 4 (3:18-cv-06350-WHA)

**AGO 000567**

1    documents.  Subject to and without waiving these objections, Defendants respond:

2         Defendants produce **AGO 383 – AGO 402**, Plaintiff's inmate appeals about the use of the

3    Guard One system in the Pelican Bay State Prison Security Housing Unit.

4    **REQUEST FOR PRODUCTION NO. 19:**

5         ALL documents regarding PBSP-SHU, Hunger Strike(s) occurring between 7/01/11-and-

6    9/05/13 [including, but not limited to: meetings with plaintiff & the (3) other principle prisoner

7    representatives, and defendants Kernan, Giurbino, Hubbard, et al].

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

9         Defendants object to this request on the grounds that it is compound and is vague,

10   ambiguous, and overbroad as to the meaning of the terms "PBSP-SHU, Hunger Strike(s)," and

11   "meetings with plaintiff & the (3) other principle prisoner representatives," such that Defendants

12   cannot respond to this request without guessing as to their meaning.  Defendants further object

13   that this request is not relevant to any party's claims or defenses, and is unduly burdensome

14   because, on information and belief, there is no central file where documentation concerning the

15   hunger strikes is kept.  Therefore, this request is not proportional to the needs of the case.

16   Defendants further object that this request improperly seeks the records of other inmates, which

17   Plaintiff, as a state prisoner, is not permitted to possess.  Subject to and without waiving these

18   objections, Defendants respond:

19        Defendants have initiated a search for responsive documents, but to date, no responsive

20   documents have been located.  Defendants will supplement this response when the search for

21   responsive documents is complete.

22   **REQUEST FOR PRODUCTION NO. 20:**

23        ALL documents regarding the PBSP-SHU, Short Corridor Collective's "(5) CORE

24   DEMANDS" presented to defendants [regarding the 2011-2013, Peaceful Protest Hunger

25   Strikes].

26   **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

27        Defendants object to this request on the grounds that it is vague, ambiguous, and

28   overbroad as to the applicable time period and as to the meaning of the terms "Short Corridor

                                                    4

Defs.' Resp. Pl.'s RFPD, Set 4 (3:18-cv-06350-WHA)

**AGO 000568**

1  Collective," "(5) CORE DEMANDS," "presented to defendants," and "regarding the 2011-2013,

2  Peaceful Protest Hunger Strikes]," such that Defendants cannot respond to this request without

3  guessing as to their meanings.  Defendants further object that to the extent Plaintiff is seeking the

4  demands that prisoners made to CDCR in connection with the 2011 and 2013 hunger strikes,

5  those documents are equally available to Plaintiff, as he or other inmates generated those

6  documents, not the Department of Corrections and Rehabilitation.  Based on the foregoing,

7  Defendants cannot provide a response at this time.

8  **REQUEST FOR PRODUCTION NO. 21:**

9       ALL documents regarding defendants [media statements, press releases, op. eds], in

10  response to the peaceful prisoner hunger strikes of 2011-2013.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

12       Defendants object to this request on the grounds that it is vague, ambiguous, and

13  overbroad as to the applicable time period and as to the meaning of the terms, "regarding

14  defendants," "[media statements, press releases, op. eds]," "in response to the peaceful prison

15  hunger strikes of 2011-2013," such that Defendants cannot respond to this request without

16  guessing as to their meanings.  Defendants further object that this request is not relevant to any

17  party's claims or defenses, and is unduly burdensome because, on information and belief, there is

18  no central file where documentation concerning the hunger strikes is kept.  Therefore, this request

19  is not proportional to the needs of the case.  Subject to and without waiving these objections,

20  Defendants respond:

21

22

23

24

25

26  //

27  //

28  //

Defs.' Resp. Pl.'s RFPD, Set 4 (3:18-cv-06350-WHA)

**AGO 000569**

1          Defendants have initiated a search for responsive documents, but to date, no responsive

2    documents have been located.  Defendants will supplement this response when the search for

3    responsive documents is complete.

4    Dated:  November 8, 2021                    Respectfully submitted,

5                                                ROB BONTA
                                                 Attorney General of California
6                                                MARISA KIRSCHENBAUER
                                                 Supervising Deputy Attorney General
7

8                                                ***/s/ Cassandra J. Shryock***
                                                 CASSANDRA J. SHRYOCK
9                                                Deputy Attorney General
                                                 *Attorneys for Defendants*
10   SF2020400523/42913644.docx

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                 6

AGO 000570

# ATTACHMENT D

**TO DEFENDANTS' OPPOSITION TO ASHKER'S MOTION TO COMPEL**

**AGO 000571**

1  ROB BONTA
   Attorney General of California
2  MARISA KIRSCHENBAUER
   Supervising Deputy Attorney General
3  CASSANDRA J. SHRYOCK
   Deputy Attorney General
4  State Bar No. 300360
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3622
6    Fax:  (415) 703-5843
     E-mail:  Cassandra.Shryock@doj.ca.gov
7  *Attorneys for Defendants*
   *J. Beard, S. Kernan, G. Giurbino, S. Hubbard, K.*
8  *Harrington, K. Allison, J. McLaughlin, M. Ruff, C.*
   *Paris, J. Prelip, D. Rothchild, J. Robertson, B.*
9  *Moak, C. Ducart, C. Vargas, M. Russell, J. Fallis,*
   *and W. Black*

10

11            IN THE UNITED STATES DISTRICT COURT

12         FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

15  **TODD ASHKER,**                     3:18-cv-06350-WHA

16                          Plaintiff,   **DEFENDANTS' SUPPLEMENTAL**
                                         **RESPONSE TO PLAINTIFF'S REQUEST**
17        v.                             **FOR PRODUCTION OF DOCUMENTS,**
                                         **SET THREE (NOS. 14, 15)**
18

19  **S. KERNAN, et al.,**

20                          Defendants.

21

22  **PROPOUNDING PARTY:**  Plaintiff Todd Ashker

23  **RESPONDING PARTY:**   Defendants

24  **SET NO:**             3[1]

25

26

27  _____
          [1] Plaintiff has served Defendants with multiple sets of duplicative requests. Therefore,
28  Defendants have addressed each request from Plaintiff has a new set of requests, and re-numbered
    the requests accordingly.

                                      1

                                   Defs.' Resp. Pl.'s RFPD, Set 3 (3:18-cv-06350-WHA)

                                                            **AGO 000572**

**PRELIMINARY STATEMENT**

The information provided in these responses is true and correct, according to Defendants' best knowledge at this time, but it is subject to future correction for omissions, errors, or mistakes. Defendants reserve the right to produce evidence of any subsequently discovered facts or interpretations thereof, and to amend, modify or otherwise change the responses, in accordance with applicable discovery rules. Defendants object to this entire set of requests for production of documents on the grounds that it is not properly directed to a single defendant, and instead is directed to all Defendants collectively.

**REQUEST FOR PRODUCTION NO. 1:**

Any & all documents, emails, memorandums, confidential memorandums, and 'DRAFTS' of the same documents; inclusive of any and all documents, emails, memorandums, in the possession of defendants' attorneys [including the Attorney Generals Office], regarding the September 10, 2014, Departmental Review Board [DRB], Hearing, Chaired by Defendants' Giurbino & Hubbard. [This request includes the request for defendants to produce the [specified materials] listed below that are directly related to his September 10, 2014, DRB Hearing, as follow]: i. Any/all documents listing inmates [e.g. CDCR-812's] –CDCR says are my "enemies".

a. [] The original(s), and copies thereof,…of the 'pieced together letter(s) fished out of inmate Evans toilet' by defendants' agents on 03/25/2013 [for ref. see: Plt's FAC, at ¶¶ 241-thorugh-243].

b. [] The alleged 'letter from the law firm of the targeted attorney's' [for ref. see: Plt's FAC, ¶ 210].

c. []The alleged 'notes recovered from a mop in D-4 Block.' [for ref. see: Plt's FAC., ¶ 211].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Defendants object to this request on the grounds that it is compound—it is at least four distinct requests consolidated into one; it is directed at Defendants' counsel—the Attorney General's Office—rather than Defendants, thereby implicating the attorney-client and work-product privileges; and, it improperly attempts to circumvent the protective order in *Ashker v.*

2

Defs.' Resp. Pl.'s RFPD, Set 3 (3:18-cv-06350-WHA)

**AGO 000573**

1    *Newsom*, N.D. Cal. no. 4:09-cv-05796-CW (RMI), by explicitly requesting documents that have

2    been produced under the attorneys' eyes only designation in that case. Due to its overbreadth,

3    this request is not proportional to the needs of the case, and therefore is unduly burdensome.

4    Based on the foregoing, no response will be provided at this time.

5    **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

6              Defendants reallege and incorporate by reference all prior objections to this request. In a

7    meet-and-confer letter dated August 8, 2021, Plaintiff clarified that this request is directed to

8    "Defendants Giurbino, Hubbard, Rothchild, McLaughlin, and Vargas," and that Plaintiff is

9    seeking "the names, and any/all documentation, relevant to said inmates being listed on Plaintiff's

10   'CDCR 812 Notice of Critical Case Information – Confidential & Non-Confidential Enemies,"

11   "[i]nclusive of related documentation detailing basis for said inmates being listed as Plaintiff's

12   'enemies' <u>and</u>, above Defendants' investigation(s) thereof, confirming such information was

13   currently accurate, as of Defendants' conducting the DRB Hearing on Sept. 10, 2014."

14             Based on this clarification, Defendants construe this request as seeking documents related

15   to the September 10, 2014 DRB's determination that Plaintiff had safety/enemy concerns" (see

16   AGO 372), and Plaintiff's "CDCR 812 Notice of Critical Case Information – Confidential &

17   Non-Confidential Enemies." Defendants object that this request—as clarified—is compound, and

18   that the portions of this request in which Plaintiff requests information, rather than documents or

19   other tangible things, is not a proper request for production. Defendants re-assert that some of

20   these documents have been designated confidential and that disclosure of them would jeopardize

21   institutional safety and security, in addition to the lives of those providing information and the

22   lives of their families, as detailed in the Declaration of J. Harden, and therefore their disclosure is

23   not proportional to the needs of this case. Defendants object that these documents are protected

24   from disclosure by the official information and informant privileges. Subject to, and without

25   waiving these objections, Defendants respond:

26             Defendants produce **AGO 365 – AGO 377**. Additional documents that are responsive to

27   this request but are privileged and thus cannot be disclosed to Plaintiff, as explained in the

28   declaration of J. Harden, are identified on the attached Privilege Log.

Defs.' Resp. Pl.'s RFPD, Set 3 (3:18-cv-06350-WHA)

**AGO 000574**

1   **REQUEST FOR PRODUCTION NO. 2:**

2          Produce clean copies of all [Confidential Memorandums] that mention plaintiff's name

3   covering time period of 1995-through-January 14, 2016.

4          [Note: Plaintiff objects to any [redactions] of the 'Confidential Memorandums' at issue,

5   and which are based on allegations from prison-gang dropout, debriefing(s), pre-debrief

6   interviews; and/or, any follow-up interviews thereof. The basis for this objection is CDCR

7   Defendants' own policy and practice(s) mandate that 'successful debriefing [requires] the

8   debriefing inmate to provide investigators with 'sufficient verifiable information against the gang,

9   & other affiliates thereof, so that the gang, & affiliates thereof, will never accept the debriefer

10  back as an associate or member of the gang.' This obvious [requires] the 'debriefer' to become a

11  [known informant] who has damaged the gang, & affiliates thereof….And, based on my 37 years

12  of experience, no one debriefs without it being known. Thus, there is [no basis] for defendants to

13  keep the identi[ti]es secret with respect to the information I seek, that is relevant to [the sources]

14  of the 'confidential information' used against me at my September 10, 2014, and January 14,

15  2016, DRB Hearings. This is even more so, considering that Defendant Giurbino, provided me

16  with the names, and/or 'confirmed' the identities of at least two-inmate informant – debriefers at

17  the Sept. 10, 2014, DRB Hearing [per. Plt's FAC, these informants are: Jeremy Beasley; and J.

18  Bryan Elrod]

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

20         Defendants object that this request is overbroad as to the applicable time period—it covers

21  more than 20 years—and it improperly attempts to circumvent the protective order in *Ashker v.*

22  *Newsom*, N.D. Cal. no. 4:09-cv-05796-CW (RMI), by explicitly requesting documents that have

23  been produced under the attorneys' eyes only designation in that case.  Defendants further object

24  that this request is argumentative and unintelligible.  Based on the foregoing, no response will be

25  provided.

26  **SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

27         Defendants reallege and incorporate by reference all prior objections to this request.  In a

28  meet-and-confer letter dated August 8, 2021, Plaintiff agreed to "narrow this request to cover the

4

Defs.' Resp. Pl.'s RFPD, Set 3 (3:18-cv-06350-WHA)

**AGO 000575**

1    following specific [Confidential Memorandums; <u>and</u>, any & all related documents thereof], for

2    the following dates: 5/12/2012, 12/07/2012, 2/26/2013; 8/15/2013; 3/29/2013; 10/10/14; and,

3    "Threat Assessment Report" dated: 04/02/2013."  Based on this clarification, Defendants object

4    that this request seeks documents that have been designated confidential, the disclosure of which

5    would jeopardize institutional safety and security, and the lives of those providing information

6    and the lives of their families, as detailed in the Declaration of J. Harden, and therefore disclosure

7    is not proportional to the needs of this case.  Defendants object that these documents are protected

8    from disclosure by the official information and informant privileges.  Subject to, and without

9    waiving these objections, Defendants respond:

10         Defendants produce **AGO 378 – AGO 382**.  Additional documents that are responsive to

11   this request but are privileged and thus cannot be disclosed to Plaintiff, as explained in the

12   declaration of J. Harden, are identified on the attached Privilege Log.

13

14   Dated:  October 22, 2021                    Respectfully submitted,

15                                               ROB BONTA
                                                 Attorney General of California
16                                               MARISA KIRSCHENBAUER
                                                 Supervising Deputy Attorney General
17

18

19                                               */s/ Cassandra J. Shryock*
                                                 CASSANDRA J. SHRYOCK
20                                               Deputy Attorney General
                                                 *Attorneys for Defendants*
21   SF2020400523
     43080164.docx
22

23

24

25

26

27

28

Defs.' Resp. Pl.'s RFPD, Set 3 (3:18-cv-06350-WHA)

AGO 000576

# ATTACHMENT E

**TO DEFENDANTS' OPPOSITION TO ASHKER'S MOTION TO COMPEL**

**AGO 000577**

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 55 of 294

*Ashker v. Kernan, et al.*
United States District Court, Northern District of California
Case No. 3:18-cv-06350-WHA

**PRIVILEGE LOG FOR DEFENDANTS' SUPPLEMENTAL RESPONSES TO PLAINTIFF'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

| Discovery Reference | Document Description | Date of Document | Identity and Position of Author | Identity and Position of Recipients | Present Location of Document | Privilege Claimed |
|---|---|---|---|---|---|---|
| Request No. 14 (Bates No. PRIV 1 – PRIV 28) | Confidential Memorandum dated 11/04/2011 | November 4, 2011 | D. Slater, Institutional Gang Investigations, High Desert State Prison | A. Murphy, Correctional Lieutenant, Office of Correctional Safety; J. Prelip, Senior Special Agent, Office of Correctional Safety | Office of the Attorney General | Official information privilege and informant privileges. *See* Fed. R. Evid. § 501. |
| Request No. 14 (Bates No. PRIV 29 – PRIV 30) | Confidential CDCR Form 128-B dated 07/24/2012 | July 24, 2012 | J. Frisk, Correctional Sergeant, Institutional Gang Investigations, Pelican Bay State Prison | Unknown | Office of the Attorney General | Official information privilege and informant privileges. *See* Fed. R. Evid. § 501. |
| Request No. 15 (Bates No. PRIV 226 – PRIV 240) | Confidential Memorandum dated 05/21/2012 | May 21, 2012 | D. Barneburg, Correctional Lieutenant, Institutional Gang Investigator | B.W. Freeland, Correctional Captain, Investigative Services Unit | Office of the Attorney General | Official information privilege and informant privileges. *See* Fed. R. Evid. § 501. |

**AGO 000578**

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 56 of 294

***Ashker v. Kernan, et al.***
United States District Court, Northern District of California
Case No. 3:18-cv-06350-WHA

| Discovery Reference | Document Description | Date of Document | Identity and Position of Author | Identity and Position of Recipients | Present Location of Document | Privilege Claimed |
|---|---|---|---|---|---|---|
| Request No. 15<br><br>(Bates No.<br>PRIV 31 –<br>PRIV 94) | Confidential Memorandum dated 12/07/2012 | December 7, 2012 | L. Wallace, Correctional Sergeant, Gang Intelligence Operations, Office of Correctional Safety | A. Murphy, Correctional Lieutenant, Office of Correctional Safety; J. Prelip, Senior Special Agent, Office of Correctional Safety | Office of the Attorney General | Official information privilege and informant privileges. *See* Fed. R. Evid. § 501. |
| Request No. 15<br><br>(Bates No.<br>PRIV 95 –<br>PRIV 110) | Confidential Memorandum dated 02/26/2013 | February 26, 2013 | E. Healy, Correctional Officer, Institutional Gang Investigations Unit | J. Frisk, Correctional Lieutenant (A), Institutional Gang Investigator; D. Barneburg, Captain (A), Investigative Services Unit | Office of the Attorney General | Official information privilege and informant privileges. *See* Fed. R. Evid. § 501. |
| Request No. 15<br><br>(Bates No.<br>PRIV 111 –<br>PRIV 179) | Confidential Memorandum dated 08/15/2013 | August 15, 2013 | G. Parker, Correctional Sergeant, Gang Intelligence Operations, Office of Correctional Safety | R. Bishop, Correctional Lieutenant, Gang Intelligence Operations, Office of Correctional Safety; B. Kingston, Senior Special Agent, Special Service Unit, Office of Correctional Safety | Office of the Attorney General | Official information privilege and informant privileges. *See* Fed. R. Evid. § 501. |

**Ashker v. Kernan, et al.**
United States District Court, Northern District of California
Case No. 3:18-cv-06350-WHA

| Discovery Reference | Document Description | Date of Document | Identity and Position of Author | Identity and Position of Recipients | Present Location of Document | Privilege Claimed |
|---|---|---|---|---|---|---|
| Request No. 15 (Bates No. PRIV 180 – PRIV 190) | Confidential Memorandum dated 03/29/2013 | March 29, 2013 | S. Burris, Correctional Sergeant (A), Institutional Gang Investigations Unit | J. Frisk, Correctional Lieutenant (A), Institutional Gang Investigator; D. Barneburg, Captain (A), Investigative Services Unit | Office of the Attorney General | Official information privilege and informant privileges. *See* Fed. R. Evid. § 501. |
| Request No. 15 (Bates No. PRIV 191 – PRIV 198) | Confidential Memorandum dated 10/10/2012 | October 10, 2012 | D. Barneburg, Correctional Lieutenant, Institutional Gang Investigator | R.K. Swift, Captain (Adult Institutions), Investigative Services Unit | Office of the Attorney General | Official information privilege and informant privileges. *See* Fed. R. Evid. § 501. |
| Request No. 15 (Bates No. PRIV 199 – PRIV 225) | Threat Assessment Report dated 04/02/2013 | April 2, 2013 | S. Schwartz, Special Agent | C. Dangefield, Senior Special Agent; M. ruff; Special Agent-In-Charge; Larry Miranda, Chief (A) | Office of the Attorney General | Official information privilege and informant privileges. *See* Fed. R. Evid. § 501. |

# ATTACHMENT F

**TO DEFENDANTS' OPPOSITION TO ASHKER'S MOTION TO COMPEL**

**AGO 000581**

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 59 of 294

1   ROB BONTA
    Attorney General of California
2   MARISA Y. KIRSCHENBAUER
    Supervising Deputy Attorney General
3   CASSANDRA J. SHRYOCK
    Deputy Attorneys General
4   State Bar No. 300360
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA  94102-7004
    Telephone: (415) 510-3622
6   Fax: (415) 703-5843
    E-mail: Cassandra.Shryock@doj.ca.gov
7   *Attorneys for Defendants*

8                   IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                         SAN FRANCISCO DIVISION

11

12   | | |
     |---|---|
13   **TODD ASHKER,** | 3:18-cv-06350-WHA

14                                    Plaintiff, | **J. HARDEN DECLARATION IN SUPPORT OF DEFENDANTS'**
15                                               | **PRIVILEGE LOG**
                   v.
16   **KERNAN, et al.,**

17                                   Defendants.

18

19       I, J. Harden, declare:

20       1.      I am personally familiar with the facts contained in this declaration, and if called to

21   testify, would and could competently testify about these matters.

22       2.      I am currently employed by the California Department of Corrections and

23   Rehabilitation (CDCR) as a Senior Special Agent for the Special Services Unit within CDCR's

24   Office of Correctional Safety.  I was a Special Agent with the Special Services Unit from 2015

25   until December 2020, when I promoted to my current position.  I have been employed by CDCR

26   since 2002, and before joining the Special Services Unit, I was an Institutional Gang Investigator

27   at Kern Valley State Prison (KVSP) for six years.

28

1

AGO 000582

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 60 of 294

3.      From both my experience as an Institutional Gang Investigator and as a Special Agent, I am directly familiar with both Security Threat Groups (STGs)—CDCR's term for prison gangs—within CDCR and CDCR's debriefing process and investigative practices.  I am also directly familiar with CDCR policies and procedures on prison security, the policies and procedures of the CDCR regarding confidential documents, and the reasons that documents are classified as confidential.

4.      Debriefing is the formal process by which a STG coordinator or investigator determines whether an offender has abandoned STG affiliation and dropped out of a STG.  Phase one is the interview phase where the inmate submits a written autobiography, an investigator is assigned, and the inmate completes an interview(s).  The inmate's autobiography and the debrief interview cover the inmate's entire history with a STG, beginning before they were incarcerated in some instances.  Phase two is the observation phase where the inmate is observed for up to six months in a housing setting with other inmates who are also undergoing the debriefing process. Through the entire debrief process, investigators gather intelligence about a STG's structure, activities, and affiliates, in order to better prevent and combat crime and STG activity within CDCR institutions, and to protect the safety and security of inmates and staff at those institutions and the community at large.

5.      Requesting to debrief is considered treasonous by most, if not all, STGs.  Requesting to debrief, therefore, puts an inmate's life in danger, and is effectively a death sentence—for the debriefing inmate and possibly for their relatives in the community—if other inmates learn that the inmate requested to debrief, regardless of whether the inmate completes the debrief process.

6.      During the first phase of the debriefing process, the inmate will participate in a debrief interview.  The purpose of the debrief interview is to provide staff with information about the STG's structure, activities, and affiliates.

7.      After the debrief interview, the investigator authors a debrief report, which is a confidential memorandum summarizing his or her entire investigation, including, but not limited to, the inmate's autobiography, debrief interview, any subsequent follow-up interviews (if necessary), and any pertinent confidential memoranda.  This report is lengthy, many times over

2

AGO 000583

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 61 of 294

1   50 pages long.  And the report details the inmate's entire incarceration and their involvement in
2   the STG at every institution they were housed during their incarceration.  Once the inmate
3   reviews and approves all information in the report, the investigator transmits the debrief report to
4   the Office of Correctional Safety's Special Services Unit, Gang Intelligence Operations.  Once
5   the debrief report is approved, the report will be placed in the inmate's confidential prison file, as
6   well as in the confidential prison file of any inmate mentioned in the debrief report.

7       8.      Institutional staff and members of the Office of Correctional Safety also receive
8   confidential information outside of the debrief process.  When institutional staff or Office of
9   Correctional Safety investigators receive confidential information, it is recorded in a confidential
10  memorandum or a CDCR Form 128B chrono (general chrono).  Once the confidential
11  memorandum or general chrono is complete, it is placed in the confidential prison file of each
12  inmate that it pertains to.

13      9.      CDCR maintains confidential information in an inmate's confidential prison file
14  indefinitely, even if the information could not be corroborated at the time the memorandum or
15  chrono was drafted.  CDCR maintains this information because, even if it could not be
16  corroborated at the time, it may be corroborated later as new intelligence is received.  For
17  example, an inmate may provide information that could not be corroborated when the inmate was
18  interviewed, but later a cell phone may be discovered and its contents corroborate statements the
19  inmate made.

20      10.     If confidential information is used in any manner that is adverse to the inmate's
21  placement, program, or sentence, a Confidential Information Disclosure Form—formerly known
22  as a CDC Form 1030—is generated in the Strategic Offender Management System for each piece
23  of confidential information.  A confidential memorandum may contain multiple sources, and a
24  Confidential Information Disclosure Form is provided for each source of information or the
25  specific information that is being used.  The Confidential Information Disclosure Form is
26  provided to the inmate and provides as much information as possible without identifying the
27  source, documents the reliability of the source, and provides a statement of the reasons why the
28

AGO 000584

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 62 of 294

1    identity of the source is not disclosed.  CDCR maintains this practice to protect the identity of the

2    source and maintain institutional safety and security.

3        11.    I reviewed the attached privilege log related to Plaintiff's Requests for Production,

4    Set Three in this case.  The documents listed were created by CDCR and have been kept

5    confidential.  The documents listed were created to document confidential information that staff

6    received from confidential sources and through the debrief process.

7        12.    The release of these documents, even under a protective order, would mean that

8    CDCR would no longer control the sensitive information contained in confidential memoranda

9    and chronos, and that the information could reach prison inmates, including gang members, with

10   potentially catastrophic results.  The release of this information could also jeopardize the security

11   of institutions where inmates are being held.  Specifically, the sources of the confidential

12   information—or their families—could be targeted for assault or murder.

13       13.    In addition to protecting the safety of the confidential informants themselves,

14   maintaining the confidentiality of confidential informants helps maintain prison safety and

15   security generally.  Contraband such as weapons and narcotics pose a serious risk to the safety of

16   prisoners.  For example, if an inmate has a weapon, a fist-fight might escalate into a knife-fight,

17   which could lead to much more serious injuries.  And the distribution of narcotics often leads to

18   violence, such as fights over the proceeds from the sale of the narcotics.  Confidential informants

19   are one of the primary ways that CDCR staff learn about hidden contraband.  Therefore,

20   disclosure of these documents would greatly diminish the effectiveness of the investigatory

21   process, and thus CDCR's ability to protect the safety and security of inmates, staff and their

22   families.

23       14.    Plaintiff's possession of the confidential information in the documents would

24   create a safety and security risk to the institution.  Section 3006(d) of the California Code of

25   Regulations defines "contraband" as anything in an inmate's possession that may pose a serious

26   threat to facility security, or the safety of inmates and staff, and must be controlled by staff to the

27   degree necessary to eliminate the threat.  Section 3321(a) defines "confidential material" as

28   information which, if known to the inmate, would endanger the safety of any person, or would

<div align="center">4</div>

AGO 000585

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 63 of 294

1  jeopardize the safety of the institution.  Inmates are not allowed to be in possession of the

2  confidential documents, and such documents are considered "contraband."

3         15.    If Plaintiff's cell is searched, the confidential documents are also subject to search

4  and seizure.  Copies of the confidential information could be inadvertently obtained by others and

5  disclosure to anyone other than CDCR personnel could endanger the safety of others as well as

6  the safety of Plaintiff himself.  Copies of the confidential documents cannot be provided to

7  Plaintiff due to the safety and security of the institution, staff and inmates.

8         16.    It is my understanding that staff are frequently threatened by the inmates housed

9  here and to release confidential use of force information to an inmate creates a serious breach of

10  security exposing the staff to potential harm, including death.  If CDCR were to adopt a policy of

11  permitting inmates to access confidential policies, it would be difficult to recruit any staff to work

12  at the institutions.

13        17.    Disclosing these documents to Plaintiff, specifically, is highly problematic.  Plaintiff

14  is currently serving a twenty-one-year-to-life sentence for a murder he committed while in prison,

15  and he is a validated member of the Aryan Brotherhood prison gang.  Because a debrief interview

16  goes through all gang activity the individual has been involved with or has been aware of since

17  even before they entered prison, merely redacting the inmate's name and other identifying info

18  (CDCR number), does not mean the source cannot be identified.  And I am informed and

19  understand that Plaintiff's complaint, and other documents he has created through the course of

20  this action, purport to identify numerous inmate informants.  Regardless of whether Plaintiff

21  correctly identifies the source of the information, the mere fact that someone is alleged to have

22  been an informant could put their life in danger.  Therefore, redacting information from the

23  documents identified in the attached privilege log would not adequately protect the sources of the

24  confidential information.

25        I declare under penalty of perjury that the foregoing is true and correct and that this

26  declaration was executed on October 21, 2021, in _Rancho Cordova_, California.

27

28                                                        J. Harden

5

**AGO 000586**

Todd Ashker, C# 58191
KVSP-ASU 2/194
Box # 5106
Delano, CA. 93216

Plaintiff, In pro-se

FILED

FEB 02 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

TODD ASHKER,

                              Plaintiff,

        v.

S. KERNAN, et al.,

                              Defendants.

_____/

Case No.: 3:18-cv-06350-WHA

PLAINTIFF'S DECLARATION IN
SUPPORT OF PLAINTIFF's Motion
TO COMPEL DISCOVERY; and
APPLY SANCTIONS TO ADDRESS
DEFENDANTS' ABUSE OF THE
DISCOVERY PROCESS.

I, Todd Ashker, declare:

1.   I am the plaintiff-prisoner proceeding pro-se in this case. I present this decl-
aration in support of my accompanying "Motion TO COMPEL DISCOVERY; and APPLY SANCTIONS
TO ADDRESS DEFENDANTS' ABUSE OF THE DISCOVERY PROCESS" (with included "MEMORANDUM OF
POINTS AND AUTHORITIES...."), addressing defendants' prejudicial, damaging abuse of the
discovery process, based on my personal knowledge & experience. And, I am willing, able
and competent to testify to such matters if called upon by the Court to do so.

2.   As detailed herein, I have been diligently pursuing discovery in this case since
I received opposing counsel's August 5, 2020, letter - informing me they were represent-
ing the defendants, on 8/11/2020 (A true and correct copy of opposing counsel's 8/05/20,
letter is attached as Exhibit 'A').

3.   On Sept. 7, 2020, I served opposing counsel with "Plaintiff's First Request For
Production of Documents [per. F.R.C.P., #34]" (A true and correct copy of which is
attached as Exhibit 'B')

4.   On Oct. 1, 2020, I received opposing counsel's 9/29/20, letter acknowledging

1.

AGO 000587

receipt of my First Request For Production of Documents (RFPDS); and opposing counsel requested my agreement to "Stay Discovery" until the Court ruled on defendants' Motion to Dismiss Claims against KVSP Defendants (A true and correct copy of opposing counsels 9/29/20, letter is attached as <u>Exhibit 'C'</u>).

5.    On Oct. 1, 2020, I sent opposing counsel my response to their 9/29/20 letter; agreeing to their request to "Stay Discovery," pending the Court's ruling on their Mot. to Dismiss, thereby, making their response to my (RFPDS), due within (30) days from the date of the Court's ruling (A true and correct copy of my 10/01/20, letter is attached as <u>Exhibit 'D'</u>).

6.    On March 22, 2021, I received the Court's March 11, 2021, 'ORDER GRANTING IN PART MOTION TO DISMISS; SEVERING & TRANSFERRING CERTAIN CLAIMS TO THE E.D. COURT-California; ORDERING SEVERANCE OF CERTAIN DEFENDANTS;....'

7.    On April 16, 2021, I received defendants' counsel's April 12, 2021, letter 'RE: MEET & CONFER, <u>re</u>: RFPDS, Set One. The letter states they 'included their responses to RFPDS, Set One. And, states they, 'were producing documents in response to request #1; Were not reponding to req. # 2 & #3, due to said requests application to the KVSP claim' & defendants severed! And, claimed they 'were not able to understand Request #4, as drafted;' and, requested I 'clarify Request #4, in writing,...so defendants' can resp.' (A true and correct copy of opposing counsel's 4/12/21, letter; and, Defs' Response To Plt's First Set of RFPDS, is attached as <u>Exhibit 'E'</u>).

8.    The above discovery subject exchanges resulted in a series of further exchanges; and, for the purpose of <u>this</u> "Motion...." I am hereby briefly addressing the discovery disputes, I believe necessary to have resolved [and be able to obtain said evidence at issue] to be able to conduct limited depositions [& have my expert review for purposes of a support declaration], and support my "Opposition To Defs' MSJ."

9.    Also, for some added context; I have not conducted any [pro-se] discvovery since 2011, and have been seriously struggling - on a daily basis - to cope, and hold on to my sanity, due to the on-going, damaging effects of 35 years of solitary confinement; substantially exacerbated by subjection to increased torturous nature of non-stop, "Guard-One, Welfare Checks" <u>re</u>: mandate for guards to use heavy metal pipe to smack cell doors' metal sensors, every half-hour, around-the-clock; resulting in chronic sleep-deprivation & related harm therefrom [<u>e.g.</u>, constant, fluctuating anxiety, stress, depression; difficulty with focus & concentration, etc., etc., etc.], as reflected in my "Memorandum Of Points & Authorities."

10.    The above referenced series of exchanges resulted in a series of further attempt' on my part, seeking to clarify, & reasonably narrow the scope of the very important, key documents at issue regarding the Departmental Review Board (DRB) Hearing, conducted by Defendants' Giurbino, Hubbard, Rothchild, McLaughlin, & Vargas, on September 10, 2014 -

2.

[resulting in their arbitrary, capricious, retaliatory decision to place me on Step-2, of the newly created "STEP D'WN PROGRAM," based on pretextual justification of alleged 'reliable-corroborated confidential information establishing by a preponderance of evid that I was leading an A.B. conspiracy to murder a PBSP doctor & two contract attorneys who were defending CDCR against my civil suits.'], as summarized in specific detail in my verified (FAC, at ¶¶ # 206-through-261).

11.   The above referenced series of exchanges resulted in some confusion as well, based on mine, and opposing counsel's exchanges over-lapping, crossing in the snail-mail process [& delays thereof]. For the sake of brevity - along with mindfulness of need for details necessary to support Motion To Compel & Impose Sanctions, the following is a brief summary of exchanges, incorporating the relevant parts of the parties document/ letter exchanges, as true and correct copies thereof, as exhibits thereof:

a.) On April 25, 2021, in response to opposing counsel's 4/12/21, Meet & Confer letter [& req. for clarification of my RFPD, Set One, Req. #4], I mailed opposing coun-sel an "Amended/Second RFPDS"

b.) By June 13, 2021, I'd received no response to the above ref'd 4/25/21, "Amended Discovery Req."; so, I mailed opposing counsel a follow-up letter, along with my "Amended First RFPDS", wherein, I again clarify basis for & legitimacy of my request(s) (A true and correct copy of my 6/13/21, letter, & "Amended Disc. Req.", is attached as Exhibit 'F').

c.) On June 16, 2021, I received Defs' June 7, 2021, "Supplemental Response To Plt's First Set of RFPDS, No. 4 [wherein, opposing counsel renumbered the relevant request(s) as #s 4.1-to-4.5]; in this response, opposing counsel accurately quotes my 4/25/21, 'clarification' re: relevant documents sought [re: DRB Hrg. held 9/10/14]. And, include' opposing counsel's rote, boilerplate, meritless objections; which, support my Motion To Compel & Issue Sanctions, as summarized further,below. [A true and correct copy of 6/07/21, document, pp.# 1, 7-to-12, is attached as Exhibit ' G').

d.) In late July 2021, I received "Defs' Resp. To Plt's RFPD, Set Three," dated 7/21/21, apparently in response to my June 13, 2021, Meet & Confer, letter, and Amended RFPD. This document is relevant to my "Motion To Compel & Issue Sanctions" re: Opp. counsel's 're-numbered' [See fn.1, p.1, of document] Requests # 13, 14, & 15 [with similar, rote, boilerplate, meritless objections, as ref'd above Exh. 'G'] (A true & correct copy of document dated 7/21/21, relevant pp. 1, 4-to-6, are attached Exhibit'H')

e.) On August 9, 2021, in response to opposing counsel's document response dated 6/07/21, & 7/21/21 [ref'd in 'c.' & 'd.' above], I mailed opposing counsel my Aug. 8,'21 "Meet & Confer re: RFPDS"; wherein, I attempt to stem the confusion, & get on the same page re: above summarized exchanges. I also summarize the relevant claim(s) that are a focus point of the document requests at issue - and, related - relevant time periods, defs', etc., [i.e., pp. 1 & 2, of letter]; and, I summarize in some detail - basis for

3.

my 'dissatisfaction with defs' objections, & refusal to produce the documents sought in Req's # 13, 14, 15 [re: Exh. 'H'] (A true and correct copy of my 8/08/21, Meet & Confer letter is attached as Exhibit 'I').

f.) On Sept. 15, 2021, I received opposing counsel's Aug. 27, 2021 letter, which includes acknowledgement of receipt of my 8/08/21, "Meet & Confer" letter; and, states "....Thank you for clarifying your requests. I will evaluate your clarifications, & determine whether supplemental responses to RFPD, Set Three are appropriate. I will supplement Defs' response, or inform you that Defs' will not be supplementing their resp. within 30-days of the date I rec'd your letter, i.e., on or before Sept. 22, 2021 (A true and correct copy of opposing counsel's 8/27/21, letter, with my handwritten notation of my receipt of such on 9/15/21, is attached as Exhibit 'J').

g.) Late Sept. 2021, I received opposing counsel's Sept. 22, 2021, letter, in response to my Aug 8, 2021, "Meet & Confer" letter, re: Defs' response to your RFPD, Set Three. In this letter, opposing counsel once again [in response to my 8/08/21, dissatisfaction w/response to RFPDS, Reqs.# 13,14,15] raises what are - unsupported, convoluted & merit-less objections; while stating on the one hand that "Defs' stand on their objections... while also stating that "Defs' will however, supplement their responses to RFDPS # 14 & # 15, after a search of non-confidential documents related to your 2014 DRB is completed" Opposing counsel then ends the letter stating "....If you have additional questions or concerns, you may contact me in writing..., or we can discuss these matters following your deposition on Oct. 11, 2021." (A true and correct copy of opposing counsel's 9/22/21, letter, is attached as Exhibit 'K').

12. On Oct. 5, 2021, I mailed opposing counsel discovery requests [per. F.R.C.P. #s 33, 34, & 36], consisting of my: i. RFPDS, Set Four; ii. Req. For Admissions, Set One-To Def. Giurbino; and iii. Req. For Interrogatories, Set One-To Def. Giurbino.

13. On Oct. 11, 2021, at the end of my 7-hour deposition, opposing counsel & I had a brief discussion regarding the above summarized discovery disputes. During this discus-sion, I stated it was my intention to file a Motion To Compel [once I'd completed  the legal research related & necessary for my ability to do so]; and, in response, opposing counsel stated it would be more suitable, & appreciated by the Court, if we did a 'joint motion...' and, asked me if I was agreeable to that? Then, I should complete & send my part of the motion to opposing counsel, who would then include Defs' response, & mail back to me for my review and approval as to accuracy of my portion, and return to opp. counsel for response, and filing. I agreed to do so, contingent upon my completion of the necessary legal-research; and, receipt of responses to my outstanding discovery requests, mailed to opp. counsel on Oct. 5, 2021.

14. Additionally, at the end of my deposition on Oct. 11, 2021, I asked opp. counsel

AGO 000590

if it was possible for defs' to confirm, or deny, three questions I have regarding (3)
confidential information disclosure forme (CDCR 1030s). The three questions seeking
specific clarification(s) are: a.) <u>re:</u> Confidential Memorandum (C.M.), dated 3/29/13
[C.M. Disclosure Form, authored & issued to me by Def. Vargas, on 9/02/14], concludes
with the statement that "the inmate who was the subject of C.M. dated 3/29/13, the
alleged inmate who was to carry out the murders, & Ashker, all lived in close proximity
to one another in October 2011. This date also corroborate's with the time frame
mentioned in C.M. dated 5/21/12 as to when Ashker was calling for the murders." [I had
asked opposing counsel to confirm, or deny, that the C.M. dated 5/21/12, does <u>not</u> state
I was "...calling for the murders around October 2011." ?]

b.) <u>re:</u> C.M. dated 4/02/13 ["Threat Assessment Report" dated 4/02/2013] [The Conf. Info.
Disclosure Form, authored by CC-MII, Perez, on 12/15/15] includes "....It was reported
that Ashker was involved in the plan to murder the staff member during a time frame in
2007 & 2008, & that he (source) had first hand information of a plan to murder the doc-
tor at PBSP SHU by the A.B. during an appointment with the staff member in 2008, how-
ever, the plan was folied due to several staff in the area." [I asked opposing counsel
to confirm that the alleged 2008 'plan to murder doctor during medical appointment'
included allegation that the (source) of the 5/21/12, C.M., <u>was</u> the inmate planning to
murder the doctor at his 2008, medical appointment ?]

c.) <u>re:</u> C.M., dated 8/15/13 [Conf. Info. Disclosure Form, authored, & issued to me by
Def. Vargas, on 9/02/14], begins with "C.M. dated 8/15/13, describes that on 5/20/2012
& 5/21/2012, OCS staff interviewed a valid member of the STG-1, A.B. prison gang."
[I asked opposing counsel to confirm that the above ref'd 2012 dates are errors, and
actual dates of ref'd OCS interviews were 5/20/2013 & 5/21/2013 ? ]

  Opposing counsel said she'd look into the above & get back to me [to date, no
response. The above referenced Conf. Info. Disclosures are attached as <u>Exh's AA & BB</u>]
⟨OTHER THAN BELOW MEMORIALIZATION LETTER⟩

15.   On October 18, 2021, I received opp. counsel's letter, "...Memorializing our
conversation after your deposition on Monday Oct. 11, 2021." In this letter, OPP.
counsel includes the following, relevant points [<u>re:</u> Mot. To Compel....] "...yestur-
day, I rec'd your additional discovery reqs, served on Oct. 5, 2021....Fourth, we
discussed Defs' response to your discovery req's. I informed you that, consistent with
my letter of Sept. 22, 2021, I will provide you with supplemental discovery responses
to RFPDS, Nos. 14 & 15. And, I informed you that I will serve those on you no later
than the end of next week, i.e., Oct. 22, 2021. We also discussed that it is likely the
Parties will continue to have a dispute over whether confidential documents can be
disclosed to you. Therefore, we agreed that we will submit a joint motion to the Court
to resolve any issues that remain after you receive Defs' supplemental responses...

  Once you receive Defs' supplemental responses, please review them & determine whether

5.

you believe additional production of documents is warranted....As I mentioned, if this issue is still being litigated when your opposition to Defs' forthcoming dispositive motion is due, Defs' will stipulate to a reasonable extension of of your deadline....

Finally, you requested that I look into several statements in confid-ential forms that you believe to be in error. I informed you that I can look into those things but may not be able to provide you with a response. I will look into those items, & either respond in writing that I cannot provide additional information, or provide clarification if appropriate....] There has been no further response re: questions [ref. to above paragraph 14, at 'c.)'] (A true and correct copy of opp. counsel's 10/14/21, letter is attached as Exhibit 'L').

16.   On October 26, 2021, I received "Defs' Supp. Resp. To Plt's RFPDS, Set Three [Nos.14 & 15]"....wherein, opp. counsel once again, [re-numbers, my RFPDS, we'd been refering to as #s 14 & 15;...as #s 1-thru-4].... The requests at issue pertain to the specific documents referenced, & relied upon by Defs' Giurbino, Hubbard, Rothchild, McLaughlin, & Vargs [as summarized in explicit detail in my FAC, ¶¶ 206-thru-261]; and Defs' Supp. Response..., once again refuses to produce the documents sought based on the same rote, boilerplate, meritless objections; including that such are 'confidential documents. etc. [A true and correct copy of Defs' Supp. Responses To Plt's RFPDS, Set Three [Nos.14 &15], dated Oct. 22, 2021, is attached as Exhibit 'M').

17.   On October 28, 2021, I mailed opp. counsel my letter re: "Discovery Request Clarifications; & Meet & Confer - Discovery Dispute(s)". In this Meet & Confer letter, I acknowledge receipt of above ref'd "Defs' Supp. Resp. To Plt's RFPDS, Set Three [Nos 14 & 15], wherein, I summarize, in some detail, the basis for my dissatisfaction(s) with Defs' objections, and/or related claims regarding documents at issue in the reqs & Defs' alleging'safety & security of confidential informants'are [without merit, & waived by the fact that the Defs' are the ones who recruited the two informants at - issue [Beasley & Elrod] for purpose of CDCR's Opposition to the Ashker Class Action via CDCR Defs' Beard, Kernan, et al., parading"Beasley"&"Elrod" !!! before the main-stream media; wherein, [BOTH "SELF-ADMITTED A.B. PRISON GANG DROPOUT-INFORMANT - CDCR COLLABORATORS" PERSONALLY ADMITTED DEBRIEFING ( & THEIR SUPPORT OF CDCR'S OPPOSITION TO THE PRISONER CLASS PEACEFUL PROTEST HUNGER STRIKES & ASHKER CLASS ACTION CLAIMS.... [AS DETAILED IN PLT'S FAC, WITH SPECIFIC REFERENCE TO SUPPORTING EVIDENCE OF THIS FACT] Also, Plt. again disputes Defs' contention that the documents at issue re: DRB Hrg. of 9/10/14, have been produced under the "Attorney Eyes Only" PROTECTIVE ORDER in Ashker v. Newsom, et al., Class Action; and, the documents sought are not 'Confidential' [re: e.g.,"Defs' Supp. Resp. To Req. No.1 (a)(b)(c)] 3. I will also add that Harden's generic Declaration in support of Defs' undisclosed "Privilege Log" is not adequate support for denying plt. with the documents sought....I will be moving to compel prod.,

6.

I will be requiring some time to do sufficient legal-research, as well as to obtain support declarations from my legal-team [in Ashker Class Action, re: related CDCR Defs' "systemic misuse of confidential information as pretext for placement & retention of class members in solitary confi-nement ."]....And,I ask Defs' position on my taking some depositions??? " (A true and correct copy of my 10/28/21, letter, is attached as Exhibit 'N').

18...On November 14,2021, I received opp. counsel's Nov. 8, 2021, "Meet & Confer" letter, confirming receipt of my above ref'd 10/28/21, letter-on Nov. 5, 2021. And, begins with "   I will address the issues you raise in that letter more thoroughly in a seperate response, but wanted to write to clarify a few points immediately. First it was unclear from your letter whether you have now rec'd a copy of the "Privilege Log" & Harden Declaration in support of Defs' Privilege Log. I am enclosing another copy of those documents with this letter to ensure you have them." (A true and correct copy of opp. counsel's 11/08/21, letter is attached as Exhibit 'O').

19   The first time I was ever aware of the above referenced "Harden Decl.", dated Oct. 21,'21, was on Oct. 26, 2021; and, the first I was ever received a copy of the related "Privilege Log" was on November 12, 2021 [when I received opp. counsel's 11/08/21, letter ref'd above].

20.   Opposing counsel's above ref'd Nov. 8/2021, letter continues with "....Second, I understand that you are dissatisfied with Defs' discovery responses - specifically that Defs' did not produce the confidnetial memorandums that underlie the CDCR Form 1030s you received in connection with your Sept. 10, 2014 DRB Hearing, and that you intend to seek an order compelling this production. However, based on our conversation after your deposition & our prior correcpondence, I understood we would raise this issue through a joint motion:...I believe the Court would appreciate our submitting a joint motion, & it would likely expedite resolution of the issues. Are you still agree -able to that ?" [Id., Exh.'O']

21.   On November 18, 2021, I mailed opp. counsel a letter, confirming receipt of the above ref'd 11/08/21, letter; as well as receipt of the Harden Decl. & "Privilege Log"; as well as, Giurbino's Responses to my Oct. 5, 2021, Reqs For Interrogatories & Admiss-ions; and, Defs' Resp. To Plt's RFPDS, Set Four. In my Nov. 17th, letter, I confirmed my intent to still do my part of the parties 'joint motion...' as soon as I was able to complete necessary legal-research; and, received Defs' responses to the 'dissatisfact-ions' I was including re: Giurbino's Responses to ROGS/ADMITS; & Defs' Resp. To Plt's RFPDS, Set Four. [And, responses to the additional discovery requests mailed to "Opp. counsel" on Oct. 28. 2021. ] (A true and correct copy of my 11/18/21, letter, and the related Responses To My Oct. 5, 2021 RFA's & Interrogs' To Def. Giurbino, are attached as Exhibit 'P']

7.

AGO 000593

22.   On December 6, 2021, I received opp. counsel's Dec. 1, 2021, letter confirming receipt of my above ref'd 11/18/21, letter [mailed Nov. 18, 2021], "....which addressed numerous issues, including what you believe to be deficiencies in Def. Giurbino's disc- overy responses. I believe the most efficient course of action would be to respond to the outstanding issues raised in your two recent letters dated Oct. 28, 2021 & Nov. 18, 2021, at the same time as I serve Def. Vargas's discovery responses & Resp. To RFPDS, Set Five.... However, I will require additional time to review both of your letters and to finalize Defs' Resp. To RFPDS, Set Five; and, Interrogatories / Admissions, Set One To Def. Vargas. If you agree, Defs' responses would be due on Friday, December 17, 2021, instead of this Friday, Dec. 3, 2021." (A true and correct copy of opp. counsel's Dec.1, 2021, letter, is attached as <u>Exhibit 'Q')</u>.

23.   Opposing counsel's letter ref'd above, continues "....Because you have previously extended such professional courtesy to me, & I will likely not receive correspondence back from you by the current deadline, I do not intend to serve substantive discovery responses this Friday. I will , however, at least serve objections to the outstanding Fequest For Admissions To Def. Vargas, to preserve Def's rights. Defs' will substantive- ly respond to those requests on or before Dec. 17, 2021. And, as we have previously discused, if you believe you require these responses to oppose Defs' pending Summary Judgment Motion, Defs' will stipulate to a reasonable extension of time for you to oppose that motion. [<u>Id.</u>, <u>Exh.'Q'</u>; with included, true and correct copy of Defendant Vargas' Response To Plt's Req. For Admissions, Set One - ~~undated~~ dated 12/2/21 & ~~unsigned~~](14)

24.   The above referenced opp. counsel's 12/01/21, letter continues "....With respect to the parties joint submission about compelling further discovery responses, I under- stand you have other legal matters & multiple constraints on your time. Defendants would prefer to address as many discovery issues as possible in the one filing, so please take your time preparing your submission...." [<u>Id.,Exh.'Q'</u>] .

25.   On December 7, 2021, I mailed opp. counsel my reply to above ref'd letter dated 12/01/21, wherein, I agree to the requested 14-day extension of time to reply to disc- overy requests;"making your reply due ny on, or before, Dec. 17, 2021.... I also agree in principle that the parties should try to address all outstanding discovery dispute issues in a single filing and, point out that Defs' delayed response to my discovery requests [ref'd above <u>re:</u> Def. Vargas's, etc.] meant I'd be unable to meet my self-im -posed deadline of having my part of the joint motion in mail to opp. counsel by Dec. 14, 2021 [as I had stated in my December 5, 2021, Declaration In Support Of Extension Of Time To Oppose Defs' MSJ, at ¶ 7. (A true and correct copy of my 12/06/21, letter is attached as <u>Exhibit 'R')</u>.

26.   In my above ref'd Dec. 6, 2021, letter, I close by requesting opp. counsel to send me paper copies of (2) Key cases Defs' cited in their MSJ, because such were <u>not</u>

8.

AGO 000594

available at the KVSP-ASU 2, 'law-library.' The two cases requested are:
Rico v. Ducart, 980 F.3d 1292 (9th Cir. 2020); and, Harris v. Sexton, 1:18-cv-00080-
KJM-DB (E.D. Cal., Oct. 5, 2021)....referenced in Defs' MSJ, at pp. 6,7,15,16 fn.6
[Id., Exh.'R'].

27.   By Dec.23, 2021, I received opp. counsel's letter, in which counsel acknowledges
receipt of my above ref'd 12/06/21, letter. In the Dec. 17,2021, letter, opp. counsel
stated she was serving me with objections to Def. Vargas' Interrogatories, because she
was still unable to finalize Vargas's Responses,"& as soon as practicable, Defs' will
serve you with Def. Vargas's Supplemental Responses To Req. For Admissions & Interrogs.
Consistent with Defs' prior discovery responses, however, Defs' will not produce or
disclose - absent a Court Order - confidential documents or the identification of conf.
informants. I understand you disagree with this, & we will be addressing this issue in
the forthcoming joint discovery motion...." (A true and correct copy of opp. counsel's
12/17/21, letter, and Def. Vargas's Responses/Objections, are attached as Exhibit 'S').

28.   Opposing counsel's above ref'd Dec. 17, 2021, letter also, responds to my summar-
ized 'dissatisfactions' with"Defs' Supp. Resp. To Plt's RFPDS, Set Three [Nos 14 & 15],
covered in my October 28, 2021. "MEET & Confer" letter [See: above paragraphs 17 & 22],
by confirming such matters re: Confidential information issues need to be addressed via
"Motion To Compel" [See: Exh.'S', at p. 2]. And, regarding my November 17, 2021, "Dissat-
isfactions With Def. Giurbino's Resp. To Plt's Discovery Reqs"....Opp. counsel states
those will be addressed by "....another D.A.G. handling the discovery issues in this
case for the forseeable future." [Id., Exh.'S', at p. 2].

29.   On December 25, 2021, I mailed opp. counsel my "Meet & Confer" letter, in response
to the above ref'd Dec. 17, 2021, letter; wherein, I include my summary of Dissatisfact
-ion(s) with"Defs' Resp. To Plt's RFPDS, Set Five" [Response #d 2, 23, 24, 25, & 26-to-
28 [these Responses are included in Exh.'S', referenced above] [See: my 12/25/21, letter
at pp 1-to-3; a true and correct copy of which is attached as Exhibit 'T'].

NOTE: THE REMAINDER OF THIS DECLARATION ADDRESSES DEFENDANTS' DECLARATION OF J. HARDEN,
IN SUPPORT OF DEFS' "PRIVILEDGE LOG" & RELATED CLAIMS RE: REFUSAL(S) TO PRODUCE NEARLY
ALL OF THE EVIDENCE AT ISSUE BASED ON UNSUPPORTED CLAIMS THAT PRODUCING / ANSWERING
REQUESTS ABOUT "CONFIDENTIAL INFORMATION / INFORMANTS POSES AN IMMEDIATE THREAT TO SAFE
- SECURITY OF INSTITUTION(S), STAFF, INMATES, & PUBLIC - IN GENERAL....

30.   I have read the declaration of J. Harden [along with the incorporated "Privilege
Log" included therewith]; and, I object to, and/or, dispute,the majority of his vaguely
presented allegations,presented in support of Defendants' refusal(s) to produce,and/or,
respond to questions regarding,evidence/information [e.g., requesting the identities of
potential witnesses; specific dates in question; alleged 'confiscated notes'authored by
alleged co-conspirators, etc., etc.,], based on unsuported claims of need to protect

9.

AGO 000595

institutional safety & security; as well as, safety & security of staff, inmates, conf-
idential informants, & possibly outside relatives there of. All of which will be put in
serious jeopardy if the documents at issue - listed in the "Privilege Log" are disclosed
and/or, provided to plaintiff. ( Harden Decl. dated November 3, 2021, at ¶¶ 11-to-16;
a true and correct copy of J. Harden's Declaration & "Privilege Log" incorporated there-
in is attched hereto, as Exhibit 'U').

31.    I have personally been incarcerated-this term-in the CDCR system since Jan. 1985;
during which, I have been involved with both criminal & civil actions the entire time.
Thus, over the course of the past 37+ years, I have obtained copies of both [unredacted
and redacted confidential memorandums of debrief interviews, & related follow-ups there-
of, regarding many inmates CDCR had validated as members/associates of the A.B. prison
gang. And, I have had personal possession of these "Confidential" documents, in my cell
legal material(s) for more than 3½ decades; and, have never had any of the 'problems'
J. Harden, alleges such would entail in his declaration [Id., Exh.'U', ¶¶ 12-to-16].

32.    Support for the above paragraph is demonstrated by review of the plaintiffs'
"REQUEST FOR ADMISSIONS" I served on PBSP Warden Joe McGrath & Associate Warden Kirkland
as well as, former CDCR Director Woodford, in Ashker, Troxell v. Schwarzenegger, et al.,
4:05-cv-03286-C.W. [to which I included hundreds of pages of document exhibits that
included E.G., Complete-unredacted debriefing of inmate Brian Healy, in 1997 [approx.
175 pgs. transcript of audio recorded debriefing by PBSP IGI & SSU; with two-or-three
follow-up Memorandums re: Follow-up interviews by SSU & local D.A's. Office]; as well
as, "Confidential Memorandums'" of debriefing interviews of inmate Lyle Hood; & others.
As well as, various magazine articles; newspaper articles, all of which were public
information which included references to various A.B. dropout-informants testimonies,
etc.]; and, another case I was pro se on Ashker v. Edward Alameida, et al.,USDC N.D.
Cal.# 4:05-cv-03759-C.W. (EDL), wherein, Hon Magistrate LaPorte's October 31, 2006
"ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL..." partially granted several of
plaintiff's requests, including some "C.Ms" subject to redactions;of note to my present
Motion To Compel, is Defs' in above referenced case made the same type of rote-vague
'safety & security of institution, staff, inmates, public' claims in a declaration as
does J. Harden; Magistrate La Porte found Defs' had met criteria of mandated "thresh-
hold Showing" required per. Kelly v. San Jose, 114 F.R.D. 653 (N.D. Cal. 1987), but
"plaintiff has shown that the log books are relevant to his claim....and that he has
received them in other cases....Moreover, Defs' have not made a showing that the log
books are available from another source...partially granting plt's motion to compel
the log books subject to redaction of inmates names and the "comments" sections."
And, ordered Defs' to respond to a specific Req. For Admission [relevant to a part of
basis why plt. needed the log books] [Id., ORDER, pp. 1-to-5]

10.

AGO 000596

33.   In the above ref'd case, I received a few 'redacted' copies of the C.Ms. at
issue; and, I am including some of them with this declaration in support of my claim
of [never] having any problem(s) associated with my receipt/retention/possession of
such [legal-documents]; I have never had any staff member(s) attempt to 'confiscate'
and/or, make an issue about my having such [legal-documents]. The bottom line is, staff
are prohibited from reading prisoners' legal documents - doing what J. Harden claims
would be the result of my having possession of the documents at issue in this case -
would be a violation of the law & actionable [I hereby respectfully request the Court
issue a protective order in this case, barring Defs' agents from trying to confiscate
any of my legal material(s), inclusive of the documents I am providing in support of
my rebuttal to J. Harden's Declaration (A true and correct copy of the following docu-
ments are attached hereto, as <u>Exhibit 'V'</u>:

  i.) CDC-128-B, dated June 4, 2004, authored by Special Agent, Special Service Unit
[SSU], K. Berkler [marked as "CONFIDENTIAL"], bates stamped [WOOD/CAS 0059]

  ii.) CONFIDENTIAL MEMORANDUM, dated June 21, 1996, TO: Charles D. Caraway, Correction-
al Capt., Investigative Services Unit [ISU]; (2) pgs. bates stamped [WOOD/CAS 0061-0062]

  iii.) MEMORANDUM, dated May 8, 2006,"INFORMATION REQUEST" signed by D.A. CHRIST,
Correctional Lt. bates stamped [WOOD/CAS 0063]

  iv.) CONFIDENTIAL MEMORANDUM, dated December 10, 2002, TO: M.D. Castellaw, Correction-
Capt., [ISU], redacted "CONFIDENTIAL INTERVIEW WITH _____", signed by Connie
McGuyer, Correctional Sergeant, [IGI] bates stamped [WOOD/CAS 00064, 00065, 00066];
with included letter from CDCR's counsel B. Kenny, dated Jan. 12, 2007, wherein at p.1
it states under header <u>EXHIBIT A</u> , these (3) pages were being produced <u>per.</u> court order
[with additional reference to a related declaration attesting to search conducted, etc.]

34.   Another [KEY-POINT], I present here in rebuttal to J. Harden's / Defendants' in
general allegation(s) <u>re:</u> "....The release of these documents to Plaintiff, even under a
protective order, would mean that CDCR would no longer control the sensitive information
contained inconfidential memoranda and chronos, and that the information could reach
prison inmates, including gang members, with potentially catastrophic results. The
release of this information could also jeopardize the security of institutions where
inmates are being held. Specifically, the sources of the confidential information - or
their families - could be targeted for assault or murder." [<u>J. Harden Decl.,</u>¶ 12]; and,
"....Disclosing these documents to Plaintiff, specifically, is highly problematic. Plt.
is currently srving a 21-to-life sentence for a murder he committed while in prison, and
he is a validated member of the Aryan Brotherhood prison gang. Because a debrief interview
goes through all gang activity the  individual has been involved with or has been aware
of since even before they entered prison, merely redacting the inmate's name and other
identifying information (CDCR number), does not mean the source

11.

cannot be identified. And I am informed and understand that Plaintiff's complaint, and
other documents he has created through the course of this action, purport to identify
numerous inmate informants. Regardless of whether Plt. correctly identifies the source
of the information, the mere fact that someone is alleged to have been an informant
could put their life in danger. Therefore, redacting information from the documents
identified in the attached privilege log would not adequately protect the sources of
the confidential information." [Id., Decl., ¶ 16]; and,(IMPORTANTLY) is J. Harden's
Declaration, ¶ 5, "....Requesting to debrief is considered treasonous by most, if not
all, STGs. Requesting to debrief, therefore, puts an inmate's life in danger, and is
effectively a death sentence - for the debriefing inmate and possibly their relatives
in the community - if other inmates learn that the inmate requested to debrief, regard-
less whether the inmate completes the debrief process."

35. The above quotes from J. Harden's Declaration may be true [in part - in so far as -
it being a well known fact that known informant status] amongst prison inmate population
can be cause for harm; Harden's claim that simply 'requesting to debrief' puts the
inmate and possibly their relatives in the community...in life threatening danger' is
a easily proven [FALSEHOOD.] Based on my nearly 40 year experiance in the CDCR system -
I know it to be a fact that the mere [request to debrief], is not an 'actionable viol-
ation of the unwritten prisoner code of conduct.' The 'violation' arises from providing
information to authorities-period. An example is illustrated by review of the 3/02/21,
Deposition transcript of CDCR OCS Agent-Lt. Perryman, at Exh. 'J', attached thereto; a
Declaration of CDCR Inmate David Chance, dated 6/29/08, wherein, he affirms that CDCR
has had him validated as a member/affiliate of the A.B. for decades; and, that he had
'....formally requested to debrief numerous times between 1986-through-2007, but was
refused each time due to failure/inability to admit gang involvment/membership, &
implicate others.' [Id., Chance Decl., ¶ 8] This is one example of many....[Chance has
had ∅ PROBLEMS - - - ] Additionally, the [SOURCES OF THE CONFIDENTIAL MEMORANDUMS AT ISSUE IN THIS CASE
THAT ARE DIRECT EVIDENCE RELIED UPON BY DEFENDANTS' TO JUSTIFY THEIR RETALIATORY ACTS -
i.e., C.Ms. dated 5/21/12/ 12/07/12, 2/26/13, 9/15/13, 3/29/13, 10/10/12, and Threat
Assessment, dated 4/02/13,.... are not (SECRET/Confidential Informants-Debriefers)]

36. As detailed in my verified FAC, ¶¶ 222-through-248 [summarizing in some
detail, the way my Sept. 10, 2014, DRB Hearing transpired; the pre-hearing exchanges -
between myself and defendants Giurbino, Hubbard, Rothchild, McLaughlin, & Vargas; and
the hearing itself,... inclusive of references to the two informants [Beasley & Elrod].
And, Def. Giurbino's admission that they were responsible for the C.Ms. dated 5/12/12,
12/07/12, & 8/15/13 [then, Giurbino lied about them being the two recent 'A.B defectors'
referenced in the Threat Assessment Rpt. dated 4/02/13; an important point, because, his
lie made it appear that they were relying on - possibly 3 or 4, seperate, independent -
'reliable sources'; when, in fact, I found out later - pre-DRB Hrg. held Jan. 14, 2016 -

12.

that Defs' Giurbino, Hubbard, ROTHCHILD, McLaughlin, and Vargas, misrepresented the alleged 'evidence' of my leading a multiple murder conspiracy - that the reality was - they had [ONE] informant [Beasley], who - admitted he'd placed [ME] on top of his 'hit-list' because he blamed me for being 'ostrasized' [before he decided to debrief instead of killing me - he'd try to 'kill me with his stories instead.'] He also has documented [mental illness] & at the time in question, was refusing to take his psych. medication; & based on information and belief, he also claimed/admitted that [HE] planned to murder the PBSP doctor himself, during a 2008, medical appointment, but his plan was foiled - due to there being to many staff in area at the time of his appointment, etc., etc. [SEE: FAC, ¶¶ 210-to-221,...222-to-261,...detailing the facts and evidence supporting my above points; SEE ALSO: FAC, ¶¶ 227-to-235, re: mine & Giurbino's exchanges about the two informants during the Sept. 10, 2014, DRB Hrg.;...including, FAC, ¶231-to-235, my specific reference to the [EVIDENCE] proving CDCR Beard, Kernan, et al. [CDCR Defs' in my Ashker v. Newsom, et al., Class Action, paraded Beasley & Elrod, before the main-stream media; and, Defs' [with Deputy Attorney General collaboration(s)], collaborated with Elrod on his "Decl. Opposing Plts' Mot. For Class Certification" filed 7/18/13 - in tandem with similar [Declarations by Defs' Hubbard & Giurbino....I had this evidence 'on-the-spot' at the Sept. 10, 2014 DRB Hrg. and Defs' were not interested....[Id., FAC] 37.

In support of the above statement regarding the [EVIDENCE], supporting fact that Defs' Beard, Kernan, et al., recruited, collaborated with, and paraded Beasley & Elrod, before the mainstream media; and, in other public records - wherein, both Beasley & Elrod admitted [DEBRIEFING], and supporting CDCR Defs' position(s) against the Prisoner Class Hunger Strike Protests, & Ashker Class Action, I incorporate the following, below listed exhibits:

a.) A true & correct copy of a newspaper article, from the "TRIPLICATE" Crescent City, California; wherein, on the front page of paper is large-closeup-facial picture of a PBSP-SHU inmate named James Elrod (per. statement underneath the picture & body of front page, and continued on page 3; wherein, at p.3, it states: "....James Elrod and Javier Zubiate, inmates who were interviewed by the Triplicate before the latest hunger strike, are nearing the end of their SHU assaignments. Earlier this year, they were still in the beginning phase of the debriefing process - the program in which inmates divulge information about their respective gangs and activities of other inmates...." The article is dated October 8, 2013; a true and correct copy of which is attached as Exhibit 'W') [4pgs. photocopied article titled "THE MEDIA AND THE SHU" dated 10/08/13, I have, and can produce if necessary, the ORIGINAL article].

b.) A true and correct copy of article downloaded from internet; "Center For Investi-gative Reporting, Does 22½ hours alone in an 8-by-10 cell every day amount to torture?" by Investigative Reporter, Michael Montgomery, dated February 25, 2013....Wherein, the

13.

AGO 000599

article begins with...."I haven't seen the moon since 1998." That's Jeremy Beasley
talking to me while sitting - shackled - in an interview room at Pelican Bay State
Prison, Cal's highest security lockup...." The article continues, summarizing the hunger
strike protests, Ashker Class Action law suit, and scheduled Legislative hearings; and,
it includes CDCR's rebuttal points, inclusive of - the PBSP Warden Lewis - at the time;
the reporter notes that Beasley was 'surprised' to have the 'visitor' [refering to Mr.
Montgomery]. This was probably partially due to the fact that it is very rare for CDCR
to approve such 'media interviews, with camera/film crews.' [I had heard that other
inmates saw Beasley being interviewed by Mr. Montgomery, on Public Television (PBS)]
Beasley is quoted making statements that are clearly parroting CDCR's propoganda - at
bottom of p.2-over-to-page 3, of article: "Don't get me wrong," he said. "It sucks here
I hate it. But some prisoners have found they can get alot of attention by exagerating
how bad it is."  The article continues with "Beasley said he was an active member of
the Aryan Brotherhood, a white-power gang, and committed assaults on behalf of the
group. He agreed to drop out and provide authorities with incriminating information
about other members, a process known as 'debriefing.' In exchange, officials recently
transfered Beasley to a different prison...." ( A true and correct copy of the above
referenced article dated 2/25/13, includes a small picture of an inmate behind a mesh
door, identified as being "Inmate Jeremy Beasley" is attached as Exhibit 'X'. (3pgs)).

38.    I additionally am attaching a true and correct copy of the "DECLARATION OF J.
BRYAN ELROD IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERT-
IFICATION" "REDACTED" dated July 11, 2013. Filed 07/18/13, Case 4:09-cv-05796-C.W.
Ashker, et al. v. Governor Of The State Of Cal.,[DOC # 249], is attachedhereto
as EXHIBIT 'Y'. A review of this declaration, and the manner in which it is written,
leaves one with no doubt the author was an attorney for CDCR Defs' in Ashker case. It
also completely supports my statements - I have been making all along - ever since PBSP
IGI & CDCR OCS-SSU agents provided me with the first Confidential Information Disclos-
ures [CDCR 1030s], for C.Ms. dated 2/26/13 & 8/15/13, back around October 2013, for my
(6) year [Active/Inactive Review]; that is, there's no legitimate basis for withholdin
the 'verbatim' allegations [Beasley & Elrod] have made about me, based on their 'known
informant/debriefer' status.....

39    I additionally am attaching a true and correct copy of the "Declaration Of
Michael Sayre In Support Of MSJ Or, Alternatively, MSA", dated Sept. 22, 2009, and
filed in the Superior Court Of Del Norte County, Case: JEREMY JOHN BEASLEY v. James
Tilton, CDCR Director; Robert Horel, PBSP Warden; Michael Sayre, Chief Medical Officer:
Sue Risenhover, Family Nurse Practitioner; James Flowers, Registered Nurse. Case No.
CVP109-1064, attached hereto as Exhibit 'Z' (Excerpt pages # 1, 2, 6, 7; paragraph # 18,
p.6, summarizes Beasley's mental healthproblem(s), & not taking his medication....

14.

40.   I am also including true and correct copies of the following "Confidential Info
-rmation Disclosure" Forms [CDCR 1030s], that were issued to me by Defendant Vargas,
re: September 10, 2014, DRB Hearing; and relied upon by Defs' Giurbino, Hubbard,
Rothchild, McLaughlin, and Vargas, to justify their order for my retention in PBSP
SHU, and placement on Step-2, of the Step Down Program: SEE: CDCR 1030 Forms issued to
me on Sept. 2, 2014, for C.Ms. dated 5/21/12, 12/07/12, 10/10/12, 3/29/13, and 4/02/13,
true and correct copies of which are attached as Exhibit 'AA'.

41.   I am also including the following "Confidential Information Disclosure" Forms
[CDCR 1030s], that are some of the 1030s issued to me on 12/22/15, prior to my DRB
Hearing held on January 14, 2015. These 1030s, were authored by Correctional Counselor-
Three A. Perez [CC-III, A. Perez], and they allerted me to the fact that the Sept. 10,
2014, DRB Hearing Administrators [Defs' Giurbino, Hubbard, Rothchild, McLaughlin, and
Vargas], had provided me with false information in the 1030s they had provided to me,
and, used as the pretext to support their decision to continue my subjection to solit-
ary confinement torture via order for my placement on Step-2, of the SDP, on 9/10/14.
An example supporting my claim that they provided me with [FALSE] information in the
above ref'd 1030s issued to me on 9/02/14, is demonstrated by comparing the 1030s for
the "Threat Assessment Report" dated 4/02/13 [the one Vargas issued to me on 9/02/14,
states "....Two of the inmates were validated and self-admitted STG-1 AB members, who
have since defected from the gang. They corroborated and confirmed that it was common
knowledge among AB members that the identified PBSP doctor was targeted for death by
Ashker. They also confirmed the identified attorneys from a law firm who had represent-
-ed CDCR against lawsuits brought on by INMATE ASHKER were also targeted." [Beasley & Elrod]
COMPARED WITH THE 1030, issued to me on 12/22/15, for the same "Threat Assessment Rpt."
dated 4/02/13, which, with respect to the [two self-identified AB defectors]; Elrod-
was "....shown a copy of an intercepted (confiscated) communication found in the cell
of a validated AB STG affiliate in March 2013, containing specific plans to murder or
harm a doctor (employed at PBSP). The confidential source reported he was not aware of
the plan to assault staff at PBSP,...." True and correct copies of CDCR 1030s, issued
to me on 12/22/15 [for the following C.Ms. dated 4/02/13, 10/10/12, 12/07/12, 8/15/13,
11/05/15, and 12/04/15], are attached hereto as Exhibits 'BB'. The reason there is not
one for the C.M. dated 5/21/12, is because the Jan. 14, 2015, DRB was only looking at
documents re: PBSP Warden's referal to DRB based on the warden having alleged safety
concerns; and, the 5/21/12, C.M., was not deemed relevant to such.

42   I require the above specified C.Ms. [and specific additional documents, notes,
letter from law firm; and, names, & current contact information, of the people IGI / OCS-
SSU [Interviewed] (e.g., SEE: FAC, ¶¶ 236-to-240; 241-to-243, 245; and, 249-to-261;...
SEE ALSO: CDCR 1030s, included as Exhs. 'AA' & 'BB', at 1030s for C.M. dated 10/10/12,

AGO 000601

reference to'[notes] from one AB in leadership-to-another AB member in leadership'
I want to see the [notes], and want the names of the two inmates refered to [as A.B.
members inleadership positions alleged to be part of the multiple murder conspiracy
I was allegedly running [another problem for Defs' Giurbino, et al., who participated
in my 9/10/14, DRB Hrg., has to do with the [note], they chose to rely on as alleged
'corroboration' for Beasley's 4/09/12, story (documented in Barneburg's C.M. dated
5/21/12), is that one of the other [notes], in the batch allegedly found in a mop
in D-4.[this discovery' of notes, just so happens to have been memorialized in the
10/10/12, C.M. by Barneburg, as well),...was deemed to be corroboration for Elrod's
claim (per. C.M. dated 2/26/13), that I had been voted on by the Commision to be killed
[SEE: Exh. 'BB' at 1030 for C.M. dated 12/04/2015]....I also want to see the 'pieced
together notes - that were all essentially the same - detailing the duties of the
assassin...' fished out of inmate Evans toilet on 3/25/13 [and, I want to see the
CDCR Rule Violation Report [CDCR 115, RVR], CHARGING & FINDING EVENS GUILTY OF (?)
CONSPIRACY TO MURDER PBSP DOCTOR SAYRE - BASED ON THE [NOTES]; I want the names of the
[ 2-or-3 AB Affiliates paroling/on parole (?) referenced in the C.M. 1030s, for C.Ms.
dated .5/21/12, 10/10/12, 3/29/13, and 4/02/13]; and, the names of everyone OCS-SSU
Interviewed as part of their "Threat Assessment Report" [referenced therein as (3)
PBSP staff; (2) attorneys from the law firm; and (7) inmates [we already know (2) of
the (7) were Beasley & Elrod....not to forget the alleged assigned 'assassin' SSU
claims they spoke with after he paroled (?) on 5/23/2013 (?) SEE: 4/02/13 C.M. 1030,
attached to both Exhs 'AA' & 'BB'.]

43. The above requested evidence is expected to reveal additional evidence proving
Defs' falsely found me guilty of a multiple murder conspiracy [as pretext to justify
their retaliatory agenda(s); this contention is based on the bits & pieces of the
puzzle I have been lucky to discover proof of....As well as, CDCR Defs' decades long
policy & practice of "systemically misusing confidential information as pretextual
justification to place & retain prisoners in solitary confinement", including me, as
detailed in my FAC; and, as has been further exposed in the ASHKER Class Action -
during the Settlement Agreement Compliance Monitoring, between january 2016-present
And, I have no other way of obtaining such information/evidence that is key to my
claims, & my ability to adequately Oppose Defs' MSJ [wherein, they have supplied the
Declarations of Defs' Giurbino & Hubbard, attempting to stand by, and justify their
arbitrary, capricious, retaliatory based acts.

44. I am very concerned about Defs' being allowed to [REDACT], any of the documents
at issue, referenced above, and in the accompanying "Memorandum of Points & Authorities"
based on the fact that the same Deputy Atty. Generals representing CDCR Defs' in the
ongoing ASHKER CLASS ACTION case, are also teamed up & representing the Defs' in this
case....And, in the ASHKER case, there's been an ongoing problem with [over doing it -

16.

**AGO 000602**

on their [REDACTIONS] of alleged "Confidential Information" in the ASHKER Class Action
[by the same D.A.Gs., that are representing Defs' in this case], is illustrated & also
supported by review of the October 28, 2021, Oral Argument Hearing in the ASHKER v.
Newsom, et al., case #4:09-cv-05796-C.W. [re: Plts' Second Mot. For Extension Of Settle-
ment Agreement Compliance Monitoring....Based on CDCR Defs' "systemic misuse of confid-
ential information as pretext for returning class members to solitary confinement in
violation of terms of settlement agreement."]; wherein, Plt's counsel and the Honorable
Judge Wilken, discuss on-going problems with being able to review relevant documentary
evidence due to Defs' counsels' extreme [REDACTIONS] (A true and correct copy of the
above referenced Oct. 28, 2021, hearing transcript is attached as Exhibit 'CC' Please
see: pp. 7-to-9; and, 77:15-28-to-79)[ALSO NOTE 'CC' pgs #5: 4-15; 39:1-22; 50: 4-25, 51:1-25,
& 52:1-2, are reference to me]
45.    In further support of my need to be able to review the Confidential Memorandums
and, all related evidence [and, identities & current contact information of all people
referenced therein] - [solely relating to the issues at bar, re: Conspiracy to murder
allegation(s); which are not limited to the 'Doctor, nurse, & attorneys at law firm...'
but also, the other prisoners who Beasley & Elrod, alleged I was conspiring against -
SEE: 1030 Disclosures for C.Ms. dated 5/21/12, 12/07/12, 10/10/12, 3/29/13, 4/02/13,
2/26/13, and 8/15/13 (Id., Exhs. 'AA' & 'BB'); the basis for this ability to actually
review the C.Ms. at issue, is supported by the above facts I have summarized regarding
what have probably been 'accidental/inadvertant' exposure of serious misrepresentations
of the alleged 'confidential informants' have stated [i.e., above paragraph refering to
differences in the "Threat Assessment Report" C.M. dated 4/02/13,noted in the related
CDCR 1030, Disclosure Forms issued to me on 9/02/14 & 12/22/15. Above ¶¶    ]. and also,
the directly on point findings of fact in the ASHKER v. Newsom, et al., ORDER GRANTING
Ext. of Settlement Agreement Compliance Monitoring, dated April 4, 2021 (DOC.# 1440);
at pages 38-to-42, summarizing the evidentiary [examples], proving systemic misuse of
confidential information, via "Insufficient disclosures" [providing class members with
inaccurate, misleading & false, information in the CDCR 1030 Disclosures; and, ORDER,
at pp. 45-to-48, summarizing evidentiary [examples], proving systemic misuse of conf.-
information, via "Insufficient reliability determinations" .
46.    And, further support for my need to review all of the evidence at issue, is
presented here via the declaration of "....counsel of record for Plaintiffs in Ashker
v. Governor (Newsom), 09-cv-05796-C.W. (N.D. Cal.)." Wherein, Rachel Meeropool, gives
a summary re: necessary review of, and ability to compare the CDCR 1030s - with - the
actual C.Ms., and all related documents thereof, in order to pierce the CDCR Defs' veil
 hiding their [systemic misuse of confidential information as a pretext to return and
retain class members to solitary confinement.... (A true and correct copy of Rachel
Meeropool's Declaration, dated November 16, 2021, is attached as Exhibit 'DD').

17.

47. The evening of January 24, 2022, I received a letter from opposing counsel, which incorporated documents Bates stamped AGO 488 to AGO 545, "....collected in response to your 21st request for production of documents. I am including two of these documents here, in support of my position re: CDCR Defs' Beard, Kernan, et al. [in ASHKHR CLASS ACTION, Id.], were conducting a public smear campaign against me & the three other 'principle prisoner class reps' in response to, our global exposure & related public-global condemnation of CDCR's subjection of thousands of prisoners to State Sanctioned Solitary Confinement Torture - For Decades [SEE: FAC, ¶¶

48. The two documents I am refering to are also relevant towards support of my claim re: Defs' Beard, Kernan, et al., recruitment of prison gang dropouts as cooperating - collaborators with CDCR Defs' [and, D.A.Gs' representing them], via parading the prison gang dropouts before mainstream media & public record filings [Id.,¶¶    , re: Beasley & Elrod]....The two documents are on point with this claim, demonstrated by former CDCR Secretary [Defendant Beard], quoting from [Elrod & another prison gang dropout named Zubiate - also pictured and spoken of in the "TRIPLICATE" newpaper article Exh.'W'; and, who also did a nearly identicle (Declaration In Opposition To Plts' Mot. for Class Certification, dated 7/11/13, and filed with Elrod's Decl., on 7/18/13, in ASHKER CLASS ACTION, as DOC # 248], in Beard's Los Angeles Times, Op. Ed. dated 8/06/13 "Hunger strike in California is a gang power play" [quoting from Elrod's 7/11/13 Decl., as follows: "....So what is this really about? Some of the men who participated in the last hunger strike have since dropped out of gangs for religious or personal reasons, and they said it best recently in filed court declarations. 'Honestly, we did not care about human rights,' one inmate said about the 2011 hunger strike. 'The objective was to get to the general population, or mainline, and start running our street regiments again.' Another described the hunger strike this way: ' We knew we could tap big time support through this tactic, but we weren't trying to improve the conditions in the SHU; we were trying to get out of the SHU to further our gang agenda on the mainline.'" This last quote is from Elrod's Decl. [the first quote is from ZUBIATE'S Decl.]]

49. The second document is titled "Settine the Record Straight on California's Inmate Hunger Strike" unnamed, undated,...it contains the same quotes as above, at paragraph 5, thereof [I could include tens/hundreds of articles re: Global exposure & condemnation of CDCR's solitary confinement policies - googling the subject reveals them & I can produce numerous supportive examples if needed] (A true and correct copy of Beard's Los Angeles Times, Op. Ed., dated August 6, 2013, is attached as Exhibit'EE; and, the article titled "Setting the Record Straight on Claifirnia's Hunger Strike" is also attached as Exhibit 'EE')[also included is letter from D.A.G -A.Tartaglio, dated: Jan.14,2022, received by me on 1/24/22].

50. Beasley & Elrod, were each serving prison terms for first degree murder-robbery, and, both were found guilty/pled-guilty to strangling their cell-mates at PBSP-SHU; they have each been 'rewarded' for their collaboration(s) with CDCR Defs' ever since

18.

they began [FULLY COOPERATING], with CDCR-OCS-and other law enforcement agencies....
Beasley's from Sacramento, California, and, shortly after his interview with investig-
ative reporter Michael Montgomery [Id., Exh.' '], he was transferred from PBSP-SHU to
CSP-SC [New Folsom], [I believe to 'A' Facility, Sensitive Needs General Population-
Wherein, he continued working with OCS-FBI, etc. - probably on their payrole - trying
to tell his way to parole on his double murder convictions]; Elrod, was transferred from
PBSP-SHU to KVSP [Transitional Housing Unit (THU)] soon after his "TRIPLICATE" news-
paper interview & was/is, on [probably 'C' Facility, Sensitive Needs Yard; Elrod was
Convicted on his first, first degree murder in Bakerfield, California Superior Court -
KVSP is a 45 minute drive from Bakersfield]

51.   The sole purpose for my requesting the ability to review the evidence relevant
to my claims is based on the valid necessity of doing so in order to overcome defendant
MSJ, and prove my claims before a jury at trial; and, I am not aware of any other way
to obtain such evidence that would be of equal value. I am not concerned with, nor do
I need anything in the alleged 'confidential information/documents' other than what I
have specified herein [the evidence relied on by defendants as the pretext(s) for their
placement & retention in solitary confinement, at issue in this case].

I declare under penalty of perjury that the foregoing is true and correct, and this
declaration is signed by me at KVSP-ASU 2, in Delano, California, on January 25, 2022.

/s/ T. Ashker
Todd Ashker, Plaintiff
In pro-se

AGO 000605

Todd Ashker, C# 58191
KVSP-ASU 2/194
Box # 5106
Delano, CA. 93216
Plaintiff, In pro-se

FILED

FEB 02 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

TODD ASHKER,

               Plaintiff,

      v.

S. KERNAN, et al.,

             Defendants.

_____/

Case No.: 3:18-cv-06350-WHA

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S "MOTION TO COMPEL; and, RELATED SANCTIONS TO ADDRESS DEFENDANTS' ABUSE OF DISCOVERY PROCESS.

AGO 000606

TABLE OF CONTENTS

|  | Page |
|---|---|
| Memorandum of Points and Authorities | 1 |
| Statement of the Case | 1 |
| Statement of Facts | 1 |
| Argument | 4 |
| I. The Discovery Sought is Relevant to the Claims & Defenses at Issue [And is Necessary to Oppose Defendants' MSJ] | 4 |
| II. Plaintiff Seeks An Order Compelling Defendants' to Produce The Specified Documents; and to Find That The Specified Admissions & Interrogatories are to be Viewed In Favor of Plaintiff | 8 |
| Conclusion | 25 |

*i*

**AGO 000607**

TABLE OF AUTHORITIES

Page

CASES

Ashker v. Newsom, USDC N.D. Cal.#4:09-cv-05796-C.W.                passim

Bosley v. Valasco
    2016 U.S. Dist LEXIS 56842 [4/27/16]                              6

Bryant v. Armstrong
    285 F.R.D. 596 [6/14/12]                                         7

Cache La Pondre Feed, LLC v. Land O' Lakes
    244 F.R.D. 614, 618 [D. Colo. 2007]                             7

Eureka Fin. Corp. v. Hartford Acc. & Indem. Co.
    136 F.R.D. 179, 183 [E.D. Cal. 1991]                            6

Gray v. Falkner
    148 F.R.D. 220 [N.D. Ind. 1992]                                 7

Hansel
    169 F.R.D., at 305                                               7

Harper v. Blazo
    2019 U.S. Dist. LEXIS, at ** 25-29                             56

Harris v. German
    2019 U.S. Dist. LEXIS 163548 [E.D. Cal. 9/24/19]               6

Harris v. Pate
    440 F.2d 315, 318 [7th Cir. 1971]                              5

Harris v. Quillen
    2020 U.S. Dist. LEXIS 9932 [6/05/20]                           6

Heath v. F/V
    221 F.R.D. 545, 552 [W.D. Wash. 2004]                          5

Jaffee v. Redmond
    518 U.S. 1, 9, 116 S. Ct. 1923, 135 L. Ed.2d 337 [1996]        5

Jones v. Blanas
    393 F.3d 918, 930-31 [9th Cir. 2004]                           5

Kelly v. City of San Jose
    114 F.R.D. 653, 655-56, 61, 69 [N.D. Cal. 1987]               6

Kerr v. U.S.D.C. For The N.D. California
    511 F.2d 192, 197 [9th Cir. 1975]                              6

King-Hardy v. Bloomfield Bd. of Educ.
    2002 U.S. Dist. LEXIS 27384 [D. Conn. 2002]                   6

Klingele v. Eikenberry
    844 F.2d 409, 412 [9th Cir. 1988]                              5

McCoo v. Denny's Inc.
    192 F.R.D. 675, 694                                            6

Meeks v. Parsons
    2009 U.S. Dist. LEXIS 90283 [6/14/12]                         7

Owens v. Degazio
    2019 U.S. Dist. LEXIS 173987 [10/10/19]                       6

**AGO 000608**

TABLE OF AUTHORITIES
(continued)

Page

Pulliam v. Lozano
   2011 U.S. Dist. LEXIS 12593, at * 2                          8
Sanchez v. City of Santa Ana
   936 F.2d 1027, at 1033-34                                    7
Soto v. City of Concord
   162 F.R.D. 603, 613 [N.D. Cal. 1995]                      6, 7
Tornay v. U.S.
   840 F.2d 1424, 1426 [9th Cir. 1988]                          6
Frontier-Kemper Constructors, Inc. v. Elk Rum Coal Co.
   246 F.R.D. 522, 529 [S.D.W. Va. 2007]                        7


COURT RULES

Federal Rules of Civil Procedure
   Rule 26(b)(1)                                                6
   Rule 26(c)(1)                                                6
   Rule 37(a)(4)                                                8
   Rule 33(b)(3)                                                7
   Rule 34                                                      8

AGO 000609

Todd Ashker, C# 58191
KVSP-ASU 2/194
Box # 5106
Delano, CA. 93216
Plaintiff, In pro-se

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| TODD ASHKER, | | Case No.: 3:18-cv-06350-WHA |
| | Plaintiff, | PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF THE PLAINTIFF'S "MOTION TO COMPEL; and, RELATED REMEDY' TO ADDRESS DEFENDANTS' ABUSE OF DISCOVERY PROCESS. |
| v. | | |
| S. KERNAN, et al., | | |
| | Defendants. | |

_____/

### Statement of the Case

Plaintiff proceeds pro-se in this § 1983 action seeking damages based on his subjection to cruel and unusual conditions of confinement at PBSP SHU [exacerbated by subjection to "Guard One" Welfare Checks], the denial of procedural & substantive due process, and related retaliatoy acts / ommissions [RE: four housing placement decision' spanning 2014-through-2016], in violation of the U.S. Constitution's First, Eighth, & fourteenth Amendments [and, Ashker v. Newsom, et al., USDC N.D. Cal.#4:09-cv-05796-CW. Settelement Agreement], as summarized in plaintiff's FAC.

### Statement of Facts

On May 28, 2020, the Court allowed plaintiff's claims for damages to proceed via issuance of "ORDER OF PARTIAL DISMISSAL AND OF SERVICE." Since that time, plaintiff has diligently pursued discovery ever since he received defendants' counsel's notice the Attorney General's Office was representing named defendants who are current/former CDCR Officials/employees, on August 11, 2020. Plaintiff's diligence pursuing discovery

1

**AGO 000610**

is supported by plaintiff's mailing opposing counsel his initial Request For Production of Documents (RFPDS), on Sept. 7, 2020; and, the parties related - multiple discovery issue exchanges [e.g., Plt's RFPDS; Defs' Responses; and "Meet & Confer" letters they exchanged between Sept. 7, 2020 & Dec. 25, 2021] Plt's Decl., ¶¶ 1 - to - 29]

The following facts directly respond to, and refute, Defendants "Official Information Privilege/Confidential Information" based - refusal to produce the specific evid. [re: (4) Retaliatory-Housing Placement Decisions, at issue & summarized in detail in Plt's FAC, ¶¶ 10 -to- 13; 165-to- 168; 169 -173; 174 - to -198 [199 -to- 261] 262- to -303] 9/10/14 DRB HRG

As more specifically detailed in the body of this brief, plaintiff has repeatedly requested, & gone 'round & 'round with, defendants, re: Production of Confidential Memo- randums, dated: 5/21/12, 10/10/12, 12/07/12, 3/29/13, 8/15/13, and 4/02/13 [and, for the production of specific documents; & identities of witnesses [and/or, alleged co-con- spirators], referenced therein - and, verbally spoken about at plaintiff's Sept.10, 2014 Departmental Review Board (DRB) Hearing]; as well as, similar antics re: refusal to provide substantive responses to the specified Interrogatories/Admisions, herein.

Defendants' have refused to cooperate, and have abused the discovery process with the evasive, obstructionist tactics [e.g., repeated rote, meritless objections; false claims that plt's requests are an attempt to circumvent a "Protective Order" issued in the Ashker v. Newsom, et al., USDC N.D. Cal.#4:09-cv-05796-C.W.; and, "Official Info. Privilege/Confidential Information" based on generic-vaguely referenced - knowingly false, and/or waived, safety/security of institution, inmates, staff; need to protect confidential source/informants identities], leaving plaintiff no alternative than this Motion To Compel, & Sanctions [Plt's Decl., ¶¶ 1 - to -29;

DEFENDANTS' attempt to support their "Official Information Privilege/Conf.Info." position by prodtion of a November 3, 2021, Declaration Of J. Harden, with included [incorporation of a related "Privilege Log"] that includes reference to the above listed (6) Confidential Memorandums. Plaintiff first received J. Harden's Declaration, on the evening of Oct. 26, 2021; and did not receive the related "Privilege Log", until the evening of November 12, 2021. [Plt's Decl., ¶¶ 16 - to - 19

Plaintiff hereby objects to Defs' violation of the applicable F.R.C.P., which are clear that the "official Information Privilege" does not apply to claims concerning "Confidential Information" [the latter of which must be produced, absent moving for, & be granted, a "Protective Order", which has not been applied for in this case]; addition- ally, plaintiff respectfully objects to, and hereby refutes, all of J. Harden's declared allegations therein; thereby demonstrating such fail to meet the mandated requirements necessary for the Court to allow defs' ability to continue to obstruct/deny plaintiff's requests [and, order the production, and related relief requested below], as follows

2.

Plaintiff hereby respectfully objects to, opposes, and disputes the relevant contentions in CDCR Office of Correctional Safety (OCS), Senior Special Agent J. Harden' Declaration, signed persuant to penalty of perjury [a felonious offense in California], based on the following facts, and related incorporated evidence in support thereof:

1. Defendants' have failed to meet the first mandate required to meet the threshhold showing [which must be "Substantial"]; that is, the required "affirmation that the agency...has in fact maintained its confidentiality...." [Kelly v. City of San Jose, infra, 114 F.R.D. 653, 655-56, re: balancing approach, & at 661... (N.D. Cal. 1987)]

Defs' are not able to meet this first prong based on the fact that CDCR Defs' Beard, Kernan, et al., and their agents in PBSP Institutional Gang Investigations(IGI) and (OCS), recruited the two informants at issue (responsible for the allegations in C.M.s dated: 5/21/12, 12/07/12 [Beasley]; and, 2/26/13, 8/15/13 [Elrod]; and, Conf. Threat Assessment Report, dated: 4/02/13 [Beasley & Elrod], to collaborate with CDCR Secretary level administrators Beard, Kernan, Chief OCS (?), & Attorney General's Office, between 2013-to-present, with efforts to damage the CDCR Prisoner Class' Global Support [& Condemnation of California'/CDCR's Decades of Subjection of Thousands of Prisoners to Solitary Confinement Torture]; and, against the Ashker v. Newsom, et al. Class Action [e.g., by parading both Beasley & Elrod, before the mainstream media, for CDCR's propoganda purposes - these two prison gang dropouts were partial basis for both Def. Beard, and the CDCR Guard's Union (CCPOA), 2013, 2015 Op. Eds./Press Releases; and, Elrod's Declaration, filed in tendem with Defs' Giurbino & Hubbard's "In Opposition To Plts' Motion for Class Certification"   ] [Plt's Decl., 30, 36- 39; FAC, paras 161-173]

CDCR / A.G's Office had no qualms about these two collaborating prison gang dropout' informants public support of their position(s) [inclusive of both publically admitting they had/were in process of debriefing, etc.]

Additionally, plaintiff's verified FAC, includes a summary of the above, as well as fact that Def. Giurbino, personally confirmed that the sources of C.M.s dated: 5/21/12 & 12/07/12 [was Beasley], and the one for 8/15/13 [was Elrod]; then, Giurbino lied about them being the sources in the one dated 4/02/13 [Plt's Decl., ¶¶ 36

2. Harden's credibility is damged based on his false claim that "....Requesting to debrief, therefore puts an inmate's life in danger, and is effectively a death sentence - for the inmate and possibly their relatives in the community - if other inmates learn that the inmate requested to debrief, regardless of whether the inmate completes the debrief process." [J. Harden Decl., ¶¶ 5]

This claim is patently false. Plaintiff is personally aware of inmates classified by CDCR as STG-1 [prison gang members], who have been labeled as (A.B.), who requested to debrief numerous times; and, they have never had any safety concerns [e.g., Depo. of OCS Lt. Perryman, dated: March 2, 2021 [Exh. 'J', Decl. David Chance, dated 6/29/08

3.

AGO 000612

originally filed in Ashker, Troxell v. Schwarzenegger, et al., USDC N.D. Cal.#05-3286;
wherein, Chance states that '...between 1986-to-2007, he formally requested to debrief
numerous times, but was refused each time due to failure/inability to admit gang
involvement/membership, & implicate others.' Id., ¶ 8] [Plt's Decl., ¶¶ 35

⟨NOTE: PERRYMAN'S DEPOSITION WAS IN RE: ASHKER v. Newsom, et al., CLASS ACTION⟩

3. Defs' failed to include any analysis re: balancing interests harm(s) / benefits of
non-disclosure to plt's ability to obtain the evidence through another avenue; & the
related damage to plt's ability to fully & fairly prosecute the case without the evid.
at issue [the documents at issue are critically necessary to plt's case, as further
supported below; CDCR Defs' have a long history- as recent as today -of manufacturing
false evidence via veil of "confidential information," falsely claiming sources are
reliable, coroborated, etc.,...this has already been exposed in this case [wherein, the
Defs' Giurbino, Hubbard, Rothchild, McLaughlin, & Vargas, provided false information in
several of the disclosures at issue, relied on to justify placing plt. on Step-2, of
SDP, at DRB Hearing of Sept. 10, 2014. An example is the C.M. Disclosure for Threat Ass-
assment Rept. dated 4/02/13, claiming 'two self-admitted AB defectors confirmed it was
common knowledge plt. was calling for murder of doctor and two attys...' [1030, issued 9/02/19]
Compared to the [1030 Disclosure] plt. issued 12/22/15, for same C.M. dated 4/02/13, which
states that one source was 'shown the note from toilet re: plot to kill doctor & attys,
& stated he knew nothing about it....' [Plt's Decl., ¶¶ 40 - to - 41; 42 - 43 - - - - )

4. The above point re: CDCR (OCS), et al., sytemic misuse of confidential information
as pretext for placement/retention of targeted prisoners in indefinite solitary conf.
[inclusive of false representations in 1030 Disclosures] is further proven by review of
Ashker v. Newsom, 4:09-cv-05796-C.W. [ORDER, dated 4/09/21; and Oct.28.2021, Oral Argum-
ents, re: Plts' 2d Mot. to Extend Monitoring [SEE: Plt's Decl., ¶¶ 44 - 49

ARGUMENT

I. THE DISCOVERY SOUGHT IS RELEVANT TO THE CLAIMS & DEFENSES AT ISSUE [AND IS
NECESSARY TO OPPOSE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT]

Defendants' have abused the discovery process in this case [e.g., repeated rote-
boilerplate, meritless objections; and unsupported claims re: "official Information
Privilege/Confidential Information" as summarized above, & further supported below]

Each and all of plt's discovery requests meet the criteria established in F.R.C.P.
Rule 26(b)(1); as further summarized below, defs' have wrongfully deprived plt. of
access to nearly every bit of evidence. Evidence required to Oppose Defs' MSJ [which is
specifically supported by the Decls' of Giurbino & Hubbard; desperately trying to get
away with their arbitrary-retaliatory act/ommission at plt's Sept 10, 2014, DRB Hrg; as
well as seeking dismissal of Defs' Beard & Kernan; and, the Conds of Confinement "claims,
at a point when plt's circumstances & conditions of confinement at very heart of his FAC
together with Defs' obstructionist efforts re: Discovery & Law Library, prevent ability
to gather necessary evidence in Defs' possession & fully/fairly prosecute case....]

4,

AGO 000613

Though the conduct of discovery is generally left to the district Court's discretion, Summary Judgment is disfavored where relevant evidence remains to be discovered, particularly in cases involving confined pro-se plaintiff's. Jones v. Blanas, 393 F.3d 918, 930-31 [9th Cir. 2004](Citing Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir. 1988); Harris v. Pate, 440 F.2d 315, 318 (7th Cir. 1971)(Stevens, J.) (observing that the combined disabilities of selfrepresentation & confinement hinder a plaintiff's ability to gather evidence). Thus, summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be'fruitless' with respect to the proof of a viable claim....Court abused discretion-Jones must be Permitted to reopen discovery. [Id.]

II. Defendants' refusal(s) to produce the documents at issue - specified below - based on evasive, frivolous objections; inappropriate claims of privilege; and waived and/or, unsupported claims such are not permitted based on the documents/answers to admissions/interrogatories, due to being confidential [presenting a threat to safety & securi-ty], cannot be allowed to stand [such will cause substantial prejudice to plt's ability to fully & fairly prosecute this case; inclusive of severely limiting his ability to adequately oppose defs' MSJ., because the documents, and responses to admissions / in-terrogatories at issue are necessary to establish material facts in dispute in this case]

As supported in plt's prior filing(s), his ability to conduct relevant legal re-search pertaining to the discovery disputes at issue in this case have been severely limited [e.g., Plt's"Mot. for Ext. Time,"dated Dec. 5, 2021; and,"Mot, for Court's Correction....and Assistance" dated Jan. 12, 2022; and, "Mot. for Appt. of Counsel" filed Jan. 4, 2021]; with this in mind, plt. presents the following points supporting this motion to compel, and for relief deemed necessary & just:

i.) RE: Defs' "Privilege Claims" [supported by Harnden's Decl., & "Privilege Log"] SEE: Plt's Decl., ¶¶30-5|; which incorporates, and includes copies of some the"Confident-ial Memorandum Disclosure" (CDCR Form-1030s), at issue, re: plt's DRB Hrg. conducted by Defs. Giurbino, Hubbard, Rothchild, McLaughlin, Vargas, on Sept. 10, 2014 (& plt's ICC Hrgs. held in Sept./Oct. 2015; and, DRB Hrg. held on Jan. 14, 2016)....

As an initial matter, confidentiality is not the same as privilege, & is dealt with very differently under the Fed.R.Civ.P. Whereas privileged documents fall outside the scope of discovery, confidential documents do not [F.R.C.P., Rule 26(b)(1)]. Thus, Defs' may not legally with-hold document's from discovery on the basis of confidentiality. Instead, they must move for a "Protective Order." [SEE: F.R.C.P., Rule 26(c)(1)];...an improper assertion of privilege is subject to sanctions...Harper v. Blazo, 2019 U.S. Dist. LEXIS 14231, at (U.S. Dist. LEXIS 25-29, incl. fn.3, citing Heath v. F/V, 221 F.R.D. 545, 552 (W.D. Wash. 2004)).

5.

With respect to Defs' "Official Information Privilege", Plaintiff addresses such, in case the Court finds the above referenced impropriety of such in context of Defs' Position(s) concerning such applicability to their assertion of privilege in re the alleged [Confidential Material] at issue [needs rebutta(].

The Supreme Court has long noted that privilges are disfavored Jaffee v. Redmond, 518 U.S 1, 9, 116 S. Ct. 1923, 135 L. Ed. 2d 337 (1996). "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." Tornay v. U.S. 840 F.2d 1424, 1426 (9th Cir. 1988). Privileges are to be "strictly construed" because they "impede full & free [2016 U.S. Dist. LEXIS * 13] discovery of the truth." Eureka Fin. Corp. v. Hartford Acc. & Indem. Co., 136 F.R.D. 179, 183 (E.D. Cal. 1991). "If the privilege is worth protecting, a litigant must be prepared to expend some time to justify the assertion of privilege." Id. In civil cases brought under § 1983, questions of privilege are resolved by Federal Law Kerr v. U.S.D.C for the N.D. Cal., 511 F.2d 192, 197 (9th Cir. 1975). "State privilege doctrine whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases." Kelly v. City of San Jose, 114 F.R.D. 653, 655-56 (N.D. Cal. 1987).

The discoverability of official documents should be determined under the "balancing approach that is moderately pre-weighted in favor of disclosure." Kelly, at 661. The party asserting the privilege must properly invoke the privilege by making a "substantial threshold showing." Id., at 669. The party must file an objection & submit a decl.- or affidavit from a responsible official with personal knowledge of the matters attested to by the official. Id., The affidavit or declaration, must include (1) an affirmation that the agency has generated or collected the requested material & that it has in fact maintained its confidentiality, (2) a statement that the material has been personally reviewed by the official, (3) a specific identification description of the governmental [LEXIS * 14] or privacy interests that would be threatened by disclosure of the material to the plaintiff or plaintiff's attorney, (4) a description of how disclosure under a protective order would create a substantial risk of harm to those interests, & (5) a Projection of the harm to the threatened interest or interests if disclosure were made. Id., at 670. [ "A strong affidavit would also describe how the plaintiff could acquire) information of equivalent value from other sources without undue economic burden." Id. ¿DCR ... Defs' reliance on boilerplate claims of harm, which have regularly been rejected by courts. Id., at 672 [Bosley v. Valasco, 2016 U.S. Dist. LEXIS 56842 (4/27/16)]

"If the court concludes that defs' submissions are not sufficient to meet the threshold burden, it will order disclosure of the documents Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995).... As indicated above, Defs' withheld every document without regard to its content or importance to this case. Defendants' did not address the importance of the documents to plaintiff, notwithstanding the case law

6.

**AGO 000615**

which requires a balancing of the benefits [LEXIS * 10] against the harm of disclosure. [SEE: Wells v. Gonzales, 2019 U.S. Dist. LEXIS 146745 (E.D. Cal. 8/28/19), citing Sanchez v. City of Santa Ana, 936 F.2d 1027, at 1033-34; Harris v. German, 2019 U.S. Dist. LEXIS 163548 (E.D. Cal. 9/24/19)(case where prisoner alleged excessive force, court ordered defs' to produce redacted investigation report after balancing benefits against [LEXIS * 11] harm of disclosure); Caruso v. Solorio, 2018 U.S. Dist. LEXIS 73413 (E.D. Cal. 5/01/18)(court overrides official information privilege as to witness statements & evidence as described in order.) Harris v. Quillen, 2020 U.S. Dist. LEXIS 99321 (6/05/20) [NOTABLY: In every case plt. came across re: CDCR inmate actions & related discovery disputes w/CDCR Defs', Defs' are making the same boilerplate privilege / confidential claims that information prohibits producing the evidence the inmates need to prosecute their claims]

Also relevant to this motion to compel,...

Parties have an "obligation to construe discovery requests in a reasonable manner." Cache La Pondre Feed, LLC v. Land O' Lakes (D. Colo. 2007), 244 F.R.D. 614, 618; see also King-Hardy v. Bloomfield Bd. of Educ., 2002 U.S. Dist. LEXIS 27384 (D. Conn. 2002) [responding party must give discovery requests a reasonable construction, rather than strain to find ambiguity]; McCoo v. Denny's Inc., 192 F.R.D. 675, 694 (D. Kan. 2000) ["A party responding to discovery requests should exercise reason & common sense to attribute ordinary definitions to terms and  phrases utilized...."].... A party must also make a reasonable inquiery regarding the necessary information to admit or deny... Owens v. Degazio, 2019 U.S. Dist. LEXIS 173987 (10/07/19)

A party responding to a document request is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control....Interrogatories must be answered "seperately & fully in writing under oath" F.R.C.P., R ule 33(b)(3),...See Frontier-Kemper Constructors, Inc. v. Elk Rum Coal Co., 246 F.R.D. 522, 529 (S.D. W. Va. 2007)(finding that a responding party has a "severe duty" to make every effort to obtain the requested information &, If unsuccess-ful, must provide an answer [detailing the attempts made] to ascertain the information "under oath"(Hansel, 169 F.R.D. at 305) Bryant v. Armstrong, 285 F.R.D. 596 (6/14/12)..

A party must not only produce documents & information it possesses, it must prod-uce all information within its custody or control. "A party may be ordered to produce a document in possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Id., Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995). This includes documents under the control of the party's attorney. Meeks v. Parsons, 2009 U.S. Dist. LEXIS 90283 (E.D. Cal. 9/18/09)(involving a subpoena to the CDCR);...Gray v. Falkner, 148 F.R.D. 220 (N.D. Ind. 1992)("Documents in the possession of a party's attorney [in this case the Attorney General of Indiana], may be considered to be within the control of the

7.

party for purposes of a Rule 34, Production Request [similar finding in Pulliam v. Lozano, 2011 U.S. Dist. LEXIS 12593, at * 2 [re: Cal. Deputy Atty. General represents CDCR Defs' & has possession, & obligation to produce....]

Also relevant to this Motion to Compel [SEE: Fed.R.Civ.P., Rule 37(a)(4) ["An evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond."]

II. PLAINTIFF SEEKS AN ORDER COMPELLING DEFENDANTS' TO PRODUCE THE FOLLOWING SPECIFIED DOCUMENTS; and, A FINDING THAT THE SPECIFIED ADMISSIONS & INTER- ROGATORIES ARE TO BE VIEWED IN LIGHT FAVORABLE TO PLAINTIFF [ALL OF WHICH ARE NECESSARY TO ADEQUATELY OPPOSE DEFENDANTS' Motion for Summ. Judgment]

Plaintiff's FAC, includes claim(s) relating to Defs' Giurbino, Hubbard, Rothchild, McLaughlin, & Vargas, arbitrary, capricious, retaliatory decision to order his cont'd indefinite retention in PBSP-SHU [Solitary Confinement], & related placement therein, on Step-2, of the Step Down Program....[Based on [the pretext of finding plt guilty] of leading a conspiracy to murder a PBSP doctor & two contract attorneys representing CDCR against plt's law suits [solely based on alleged reliable-corroborating confidential- information]; which, follows the CDCR's policy & practice - spanning three + decades, of "systemic misuse of confidential information as a pretext to justify long-term, indefi- nite placement & retention of prisoners, including plt, in solitary confinement...." [SEE: Plt's FAC, ¶¶ 1 - to - 300]

The above named five defendants did this to plt. at his Sept. 10, 2014, Department Review Board (DRB) Hearing [the stated purpose of such hearing being for these defs' to review plt's prior four years of behavior for release to the general population - absent reliable & corroborated evidence of gang activity] Plt's DRB Hearing Action Chrono, dated 9/10/2014, states, at p. 8 thereof, under header [DRB ACTION:"....DRB elected to place ASHKER in Step 2 of the SDP based on CMs dated 5/21/12, 10/10/12, 12/7/12, 3/29/13 and 4/2/13, all of which contained corroborating information identifying ASHKER as asserting leadership within the AB structure and conspiring with other validated AB affiliates to commit the murders of a PBSP doctor and two contract attorneys. These CMs involved various interviewed sources and written material found in a cell and common area within PBSP SHU. There was also evidence that ASHKER and the conspirators all lived in close proximity to one another for a period of time corroborating the ability to communicate a plan. DRB determined based on the totality of circumstances a reasonable person could conclude the plot against PBSP staff was credible and was STG behavior as recent as 2013." [Hubbards Decl. In Support of Defs' MSJ, at ¶¶ 12-18; Giurbino's Decl. In Support of Defs' MSJ, at ¶¶ 14-19, dated Nov.10.2021; See also: Plt's FAC ., ¶¶ 206- 261]

NOTABLY RELEVANT TO THIS ISSUE IS THE FACT THAT PLT. HAS NEVER BEEN FORMALLY CHARGED FOR THE ALLEGED MURDER CONSPIRACY [Id., Plt's Decl., ¶¶ 206-248 re: CDCR Regs. mandating formal charges whenever any staff believe an inmate has violated a rule or law] [Plt's FAC, para's 206-to-248]      8.

AGO 000617

titled "Plt's Amended-First REQUEST FOR PRODUCTION OF DOCUMENTS" on June 13, 2021; wherein, with respect to the above quoted document requests [& opposing counsel's req. for clarification], plt. Requested Defs' Produce the following documents:

4.) Any & all documents, emails, memorandums, confidential memorandums, and 'drafts' of the same documents; inclusive of notes, and all other documents, emails, memorandums, in the possession of [CDCR Defs' counsel] - inclusive of the Attorney General's Office, regarding the subject of: PBSP-SHU Inmate Welfare Checks, spanning the time period of Jan. 2010-through-present date.

5.) Any & all documents, emails, memorandums, confidential memorandums, and 'DRAFTS' of same documents; inclusive of any and all documents, emails, memorandums, in the possession of Defs' attorneys' [including the Attorney General's Office], regarding the Sept. 10, 2014, Departmental Review Board [DRB], Hearing, Chaired by Defs' Giurbino & Hubbard. [This request includes the request (for defendants) to produce the (specified materials) listed below that are directly related to this September 10, 2014, DRB Hearing, as follows]:

  i. Any/all documents listing inmates CDCR says are my enemies <e.g., CDCR-812's>.

  a.[] The original(s), and copies thereof,... of the 'pieced together letter(s) fished out of inmate Evens toilet' by defendants' agents on 3/25/2013 [for ref. See: Plt's FAC, at ¶¶ 241-through-243].

  b.[] The alleged 'letter from the law firm of the targeted attorneys' [for ref. See: Plt's FAC, ¶ 210]

  c.[] The alleged 'notes recovered from a mop in D-4 Block.' [for ref. See: Plt's FAC., ¶ 211].

6.) Produce clean copies of all [Confidential Memorandums] that mention plt's name covering time period of 1995-through-Jan. 14, 2016.
[NOTE: Plt. objects to any (redactions) of the 'Confidnetial Memorandums' at issue, & which are based on allegations from prison-gang dropout, debriefing(s), pre-debrief interviews; and/or, any follow-up interviews thereof. The basis for this objection is CDCR Defs' own policy & practice(s) mandate that 'successful debriefing' (requires) the debriefing inmate to provide investigators with 'sufficient information against the gang & other gang affiliates thereof, so that the gang, & affiliates thereof, will never accept the debriefer back as an associate or member of the gang.' This obviously [requires] the 'debriefer' to become a [known informant] who has damaged the gang, & affiliates thereof.... And, based on my 37 years of experiance, no one debriefs without it being known. Thus, there is [no basis] for defendants to keep the identities secret with respect to the information I seek, that is relevant to [the sources] of 'confident-ial information' used against me at my Sept. 10, 2014, and Jan. 14, 2016, DRB Hearings.

13.

This is even more so, considering that Defendants Giurbino, provided me [with the names], and/or 'confirmed' [the identities of] at least two-inmate informant - debriefers at the Sept. 10, 2014, DRB Hearing [per. Plt's FAC, these informants are: Jeremy Beasley; and J. Bryan Elrod]

[Plt's Decl., at ¶¶36 . NOTABLY: Plt's FAC., includes claim(s) re: Defs' Beard, Kernan, et. al., recruiting these two - "self professed"Aryan Brotherhood (AB), Dropouts, as collaborators; working with CDCR Defs' assisting CDCR & Deputy Atty Gens' on opposing plts' hunger strike actions, and Class Action - Ashker, et. al. - case. This included plt's point re: Defs' Giurbino & Hubbard's [conflicting positions] when they Chaired Plt' Sept. 10, 2014, DRB Hearing (in light of their filing "Decls' Opposing Plt's Motion for Class Certification"- in Ashker Class Action - in tandem with their collaborating AB dropout Elrod, & other dropouts, decls "Opposing Plt's Mot. For Class Certification" SEE: Plt's FAC, ¶¶ 37-38; 47-49]

AND, Plt. has repeatedly pointed out the fact that Defs' selective claims that these (2) collaborating prison gang dropouts allegations,used by Defs' as pretext(s) to justify their retaliatory act/failures to act; while [ on the other hand], parading these inform- ant collaborators before the mainstream media - for purpose of supporting CDCR Defs' 'Public propoganda campaign' against the prisoner Class Action,& Hunger Strikes, peaceful protests against decades of unwarranted subjection to solitary confinement torture... cannot stand.... SEE: Plt's FAC, ¶¶ 232-33; and, Plt's Decl., ¶¶36-49 incorporating evid- ence proving above claim re: parading these two informants before the public....        ]

Defs' "SUPPLEMENTAL RESPONSES TO PLT's FIRST SET OF RDPDs, NO. 4" was received by plt. on June 16, 2021; wherein, opposing counsel, renumbered the above ref'd discovery req's as numbers 4.1-through-4.5. [this was apparently in response to plt's above ref'd April 25, 2021, clarification(s)]. Late July 2021, plt. also received defs' July 21, '21 "Defs' RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET THREE", wherein, NO. 14, and 15, respond to above quoted [requests] at issue, as quoted below:

RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

Defs object to this request on the grounds that it is compound-it is at least four distinct requests consolidated into one; it is directed at Defs' counsel - the Attorney General's Office - rather than Defs, thereby implicating the attorney-client & work product privileges; and, it improperly attempts to circumvent the protective order in Ashker v. Newsom, et al., N.D. Cal. No. 4:09-cv-05796-CW (RMI), by explicitly requesting documents that have been produced under the attorney eyes only designation in that case. Due to its over breadth, this request is not proportional to the needs of the case, & is therefore unduly burdensome. Based on the foregoing, no response will be provided at this time. [Plt's Decl., ¶¶ #1-12 : This response was in re: above ref'd Req.# 5.)(i.,a., b.,c. [page 10 above]

11

RESPONSE TO REQUEST NO. 15:

Defs object that this request is over broad as to the applicable time period-it covers more than 20 years-and it improperly attempts to circumvent the protective order in Ashker v. Newsom, N.D. Cal. No. 4:09-cv-05796-CW (RMI), by explicitly requesting documents that have been produced under the atty eyes only designation in that case. Defs further object that this request is argumentative and unintelligible. Based on the foregoing, no response will be provided.

[Plt's Decl., ¶¶11-12 ; the above "Response ...." is in re: Request # 6.) above]⟨p.#10⟩

The above is an example of Defs' repeat abuse of discovery process - plt's request did include reference to the Atty. Gen's Office [while also specifying the request were directed to 'defendants'; and, the Ashker vc Newsom, Protective Order - doesn't apply to this case; nor have[the documents at issue] ever been produced to plt's counsel in that Class Action case [Plt's Decl., ¶¶ 17

Plt.s 'Meet & Confer' letter to Defs' above ref'd "Response...." was dated Aug.8, 2021 & mailed on Aug. 9, 2021. In the letter, plt. sought to get the parties on the same pg. [re: growing confusion w/opp. counsel's 're-numbering' of requests; and, misunderstanding(s) re: applicable time period(s), and request(s), etc.,...plt. then spelled out his dissatisfaction(s) with Defs' above ref'd "Responses...." as follows:

Plt. is Dissatisfied with Defs' Response # 14. ..."Plt. respectfully requests Defs' Giurbino, Hubbard, Rothchild, McLaughlin, & Vargas, to produce the documents spelledout [specified] in Request # 14 [inclusive of the names, and any/all related documentation relevant to said inmates being listed on Plt's "CDCR 812 Notice Of Critical Case" Information - Confidential & "Non-Confidential Enemies."[inclusive of related documents detailing basis for said inmates being listed as Plt's'enemies' and, above Defs' investigation(s) thereof, confirming such information was currently accurate, as of Defs' conducting Plt's DRB Hearing on Sept. 10, 2014]. The same request above re: Request # 14 as clarified above applies to Defs' Harrington, Robertson, & Ruff [re: DRB Hearing they conducted on Plt's case, on Jan. 14, 2016].

Plt. further clarifies Request # 14, is directed to: Defs' Giurbino, Hubbard, Rothchild, McLaughlin, & Vargas [and their agents], to include the documents specifically referenced in Defs' Response To Plt's RFPD, Set 3, at p.# 5:5-11, under "/(a)(?) " a.], b.], and c.] " on said page.

Contrary to your assertions, [none] of these documents are subject to the "protective order in ASHKER V. NEWSOM...." [Id., p. # 5:12-20]; nor is there "overbreadth...." The documents are clearly - directly relevant to the subject of Plt's DRB Hearing, dated Sept. 10, 2014 [a valid review of Plt's FAC paragraphs referenced at the end of en each request, as well as the DRB Action Chrono, dated: 9/10/2014, at pp.# 5, 6, & 9,

12.

AGO 000620

demonstrate said documents are a core basis for Defs' pretextual justification for Placing Plt. on Step-2, of the Step Down Program.

Plt. hereby clarifies this request [re: a., b., & c., ref'd above] is directed to: Defs' Giurbino, Hubbard, Rothchild, McLaughlin, & Vargas (& their agents). Produce the documents [the ORIGINALS, & clean copies].

Plt. is Dissatisfied with Defs' Response # 15. This request is directed to: Defs' Giurbino, Hubbard, Rothchild, McLaughlin, & Vargas, Harrington, Robertson, Ruff [& their agents]. The claim at issue regarding the (4) housing placement decisions at issue, stem from these named Defs' systemic misuse of confidential information, as pretextual justi-fication for what has been defs' subjection of plt. to on-going retaliation in response to his litigation of the Ashker Class Action case, & his related peaceful activism-action [mass hunger strike role(s) in 2011 & 2013].

Plt. will respectfully agree to narrow this request to cover the following specific dates: C.Ms. dated: 5/21/12; 12/07/2012; 2/26/2013; 8/15/2013; 3/29/2013; and 10/10/14- [this last one should be 10/10/2012]; and, "Threat Assessment Report" dated: 4/02/2013. [Relevance is demonstrated by fact that these documents (& those ref'd above reA Req. # 14), are THE basis for Defs' pretextual systemic misuse of confidential information, forming the basis of their DRB Action(s), on Sept. 10, 2014 & Jan. 14, 2016 [SEE: DRB Action Chronos at issue]

Produce the documents [ORIGINALSD, & COPIES]

[Plt's Decl., ¶¶ 11(e)

Plt. received opposing counsel's "Meet & Confer" Response, dated Sept. 22, 2021, in late September, which is more of the same [E.G., in re: Request # 14, they state in relevant part: "....As to the portion of your letter that addresses your original req. You are explicitly seeking documents that have been designted confidential for safety & security purposes. Your counsel in Ashker v. Newsom, 09-cv-5796 have entered into a protective order based on those serious safety and security concerns, which preclude them from disclosing these exact types of documents to you or other class members. Defs will however, supplement their response to Req. No. 14, after a search for non-confident-ial documents related to your 2014 DRB is completed."

and, in re: Req. # 15, they state in relevant part: "....while you have agreed to limit your request to seven specific documents, as indicated in your letter, each requested document has been designated confidential for institutional safety & security. As discu-ssed above, these categories of documents are not being produced to you in the Ashker class action matter, due to the agreed upon protective order. However, because you have now identified specific documents that are covered by your requests, Defs will supple-ment their response to Req. # 15 to identify the specific safety & security concerns implicated by the production of these documents...."

[Plt's Decl., ¶¶ 11(g)

13,

AGO 000621

Plt. received "Defs' Supplemental Response To Plt's RFPDS, SET THREE (NOS.**14**, 15), dated: Oct. 22, 2021 [on Oct. 26]; & plt. addressed said Responses, in his follow-up 'meet & Confer" letter dated: Oct. 28, 2021, stating his 'Dissatisfaction(s) w/Defs' Responses To #s 14 & 15, as follows:

"....Defs' objections, and, or related claims regarding documents at issue in the reqs alleging safety, security of confidential inmate informants are without merit, and waiv-ed by the fact that defendants are the ones who recruited the two informants at issue [Beasley & Elrod] for purposes of CDCR's opposition to the Ashker Class Action [& rela-ted 2011/2013 Mass Prisoner Hunger Strikes, resulting in global exposure & condemnation of CDCR's State Sanctioned Subjection Of Thousands of CDCR prisoners to Solitary Conf-Torture - For Decades], via CDCR Defs' Beard, Kernan, et al., parading Beasley & Elrod before the mainstream media, wherein, both inmates personally admitted debriefing, and their support of CDCR's opposition to the hunger strikes & Class Action Claims [as detailed in plt's FAC]

And, in addition to the above [& all prior dissatisfaction points], defs' have fail-ed to provide all non-confidential documents....Also, plt. again disputes defs' content-ion that the documents at issue re: DRB Hearing of 9/10/14 have been produced under the "Atty. Eyes Only" Protective Order in Ashker v. Newsom, Class Action; and, the docs sought are not 'confidential' [re: e.g., Defs' Supp. Response To Request No. 1 (a)(b)(c).

I will add that Hasenden's declaration in support of defs' undisclosed "Privilege Log" is not adequate support for denying plt. the information in the documents sought...."

In plt's letter he also asked opposing counsel what defs' position was to plt's taking several depositions [in the manner approved by Hon. Judge Wilken, in Ashker ~~CCC~~ Class Action - prior to plts' obtaining assistance of counsel] ???

As detailed in plt's included supporting declaration, the parties exchanged more letters, re: above RFPDS, and, Opposing counsel assured plt. that defs' had no problem agreeing to an extension of time for plt to resolve the discovery disputes via parties 'joint motion to compel', and then, file his opposition to their MSJ - stating that they prefered to bring all of the outstanding discovery matters in one motion. [Plt's Decl., ¶¶15-to-17

Around November 14, 2021, plt. received defs' Nov. 8, 2021, "Meet & Confer" letter; along with defs' "Privilege Log" [the first time plt. had seen this log]. As well as, Def. Giurbino's Resp. To Plt's Interrogatories, Set One; and, Resp. To Plt's Req. For Admissions, Set One; and, Defs' Response to Plt's RFDPS, Set Four. Plt's responsive 'Meet & Confer" letter, was mailed to opposing counsel on Nov. 18, 2021, and included Plt's "Dissatisfaction(s) With - Def'$ Giurbino's Resp. To RFA's & Interrogatories' as follows, beginning with Giurbino's Resp. To Req. For Admissions (#s 26, 35, 37-thru-41, 39, 42, 43-44); and, Interrogatories (#s 2; and, RFPDS,Set 4 (#s 16, 17, 18)....

*14.*

**AGO 000622**

Plt's Dissatisfaction To Def. Giurbino's Response to Plt's Interrogatory,No. 2, is directly related, & relevant to the above RFPDS, Set 1&3; the following is a quote of Req. # 2, & Def's Response; followed by related Req. For Admissions, & Defs' Resp.; and, related "Meet & Confer" exchanges:

Plt's Interrogatory No. 2:

If you admitted plt's requests for admission # 27-through-#31, please identify the following [re: Attachment #2, to plt's request for admission]:

a.  Identify all persons interviewed by SSU/OCS, between 3/29/13 to 4/02/13 [SEE: Plt's Req. For Admissions, attachment # 2, DRB Action Chrono, dated 9/10/14, at page #6"at"4. Threat Assessment Report (Conspiracy to Commit Murder). Dated 4/02/13, describes that from 3/29/13 to 4/02/13, OCS staff conducted an investigation of alleged threats against PBSP staff targeted for murder by Inmate Ashker & other AB prison gang affiliates. In total, seven (7) validated members and associates were interviewed for the invest-igation. Three (3) PBSP staff members and (2) contract attorneys were also interviewed.]

b.  Identify all persons plaintiff was allegedly involved with in the above referenced "Conspiracy to Commit Murder."

c.  Identify the OCS agents who conducted the above referenced "...investigation of alleged threats against PBSP staff targeted for murder by Inmate Ashker and other AB Prison gang affiliates."

d.  Provide the current contact information for the persons interviewed as part of the above referenced OCS investigation [inclusive of "...the validated AB prison gang associate believed to be the assassin." Interviewed by OCS on 5/23/13. Id.]; and, the involved OCS agents.

RESPONSE TO INTERROGATORY NO. 2:

Defendant objects to this interrogatory on the grounds that it is compound, & is actually no less than four interrogatories combined into one. Def. further objects that this interrogatory seeks information contained in documents that the defendants have asserted are confidential & cannot be disclosed to Plt., & that were placed on a Privilege log with a supporting declaration that was served on Plt. on Oct. 22, 2021. Def. re-asserts all objections raised in Defs' responses to Plt's requests for product-ion of the documents (see Defs' Supplemental Responses to Reqs for Production, Set Three) Due to sensitive nature of these documents, as described in the decl. of J. Harnden in support of Defs' privilege log, Def also objects that this interrogatory is not proport-tional to the needs of the case. Based on the foregoing, no response will be provided.

Plt's Req. for Admission # 26:

Providing  an inmate with incorrect information that DRB used for the inmate's Case-by-Case Review [e.g., plt's DRB Hearing held 9/10/14], would be inappropriate.

15.

**AGO 000623**

ation re: def's own veiled references to unidentified people/witnesses directly related to the 9/10/14 DRB Decision at issue, is not acceptable; the names and current contact information of the people/witnesses sought are not "confidential information" period. Please provide answers, or face a motion to compel. [Plt's Decl., ¶¶21. 11/18, p.5]

In the same "Meet & Confer" 11/18/21, letter, Plt. presented the below "DISSATISFACTIONS" to Def. Giurbino's above quoted Response(s) To RFAS: [ SEE: EXH. 'P' { Plt's Decl para. 21]

RFA #26: Def's objections, & refusal to answer this req. are/is unacceptable based on fact that the wording of the req. is based on commonly understood, english language words & the context is not vague, ambiguous, nor overbroad - the time period is specific [Sept 10, 2014, DRB-SDP-CBC Review, admittedly chaired by Def. Giurbino]. Additionally,... there's nothing speculative about the question - with the above stated, I hereby will clarify the request as follows: It would violate due process for the DRB conducting plt' DRB Case-By-Case Review Hrg on 9/10/2014 [to misrepresent the facts & evidence] DRB claimed they relied upon to justify decision to place plt. in the Step Down Program, Step 2 ??

RFAS # 37-thru-#41.... Def's focus of his replies - admitting/denying these RFA's [per. Def's qualifying statement "....Admit that the current version of Title 15 of Calif Code of Regs"] is partially understandable,... plt. therefore hereby clarifies that these RFA's # 37-thru-41, pertain to the Calif Code of Regs, Title 15, Sections referenced spanning time period of [January 2012-thru-Sept. 10,2014], with said clarification as to relevant time period does Def. Giurbino [stand by his reply(s)] to these RFA's ?

RFA NO. 39.  Def's evasive response to this RFA [re: Conspiracy to committ murder], is not well taken. Plt. hereby clarifies his request, with below supplemental requests for admission to Def. Giurbino [pertains to: Cal. Code of Regs., Title 15, Section(s) 3315(a) (1)(2)(A) "Use of force & violence against another person" [is inclusive of "conspiracy to commit murder"] ?

SUPPLEMENTAL RFA # 2: CCR, Title 15, § 3315(a)(1)(2)(E) "An attempt or threat to commit any act listed in (A) through (D), coupled with a present ability to carry out the threat or attempt if not prevented from doing so." [would include "conspiracy to commit murder"]

RFA # 42. Defs' objections, & refusal to answer this clearly presented request for admis- sion is not acceptable. Please admit, or deny this RFA # 42 [and, if you "deny" it, plt please respond to Interrogatorys, Set 1, Interrogatory # 1]

RFA's # 43, & 44. Plt's dissatisfaction(s) with Def's response is same as above RFA # 41 [Plt. hereby clarifies / corrects this incorrect ref. to RFA # 41 (should be, RFA # 42)] [SEE: Plt's Decl., ¶¶21  . Incl. re: above RFA Resp. Dissatisfaction(s), at Exh. 'P' 11/18/21, letter at pp. #3-to-5, thereof]

16.

RESPONSE TO REQ. FOR ADMISSION NO. 26:

Def. objects to this req. on the grounds that it is vague, ambigous, & overbroad as to the applicable time period & as to the meaning of the terms, "providing," "incorrect information," "used for the inmate's Case-by-Case Review," and "inappropriate," such that Def. cannot respond to this req. without guessing as to their meanings. Def. further objects that this req. calls for speculation & presents and incomplete hypothetical. Based on the foregoing, Def is not able to provide a response.

Plt's Req. for Admission No. 35:

Prior to your chairing plt's DRB Hearing on 9/10/14, you were aware that in response to the 2011/2013, peaceful hunger strike protests against CDCR's indefinite SHU policies & practices, there was global condemnation [in support of the protesting prisoners cause].

Resp. TO REQ. FOR ADMISSION NO. 35:

Def objects to this req. on the grounds that it calls for speculation, is vague, ambiguos, and overbroad as to the applicable time period and as to the meanings of the terms, "in response to the 2011/2013, peaceful hunger strike protests" and "global con- demnation [in support of the protesting prisoners cause," such that Def. cannot respond to this req. without guessing as to their meanings. Based on the foregoing, Def. cannot provide a response.

Plt's Req. for Admissions # 37-through-41: (SEE: Plt's Decl., ¶¶ 21, & EXH.'P' [NOTE: These RFA Requests pertain to specified Cal. Code of Regs., Title 15 (CDCR Regs); that are directly relevant to the claims at issue.]

Defendant Giurbino's RESPONSE(S) TO RFAS # 37-through-41: (Id., Decl., ¶¶ 21, & EXH'P' [NOTE: Def's Response is the same (except for # 39's, which is covered below), as follow

"Admit that the current version of Title 15 of the California Code of Regulations...."

Plt's Req. for Admission No. 39:

CCR, Title 15, § 3315, SERIOUS RULES VIOLATIONS [includes "conspiracy to commit murder"]

RESPONSE TO RFA No. 39:

Deny that "conspiracy to commit murder" appears anywhere in the current version of Title 15 of the CCR, section 3315.

Plt's RFA NO. 42:

When confidential information is believed to include illegal activity(s), such inform- ation is to be reviewed by the appropriate CDCR Aminstrator for purpose of decision to proceed with the formal disciplinary process(s).

Resp. TO RFA NO. 42:

Def. objects to this req. on the grounds that it is vague, ambiguos, and overbroad as

17.

AGO 000625

to the applicable time period and as to the meaning of the terms, "believed to include
illegal activity(s)," "such information," "to be reviewed," "appropriate CDCR Administ-
rator," and "decision to proceed with the formal disciplinary process)," such that
Def. cannot respond to this req. without guessing as to their meanings. Def. further
objects that this req. calls for speculation and presents and incomplete(sic) hypotheti-
cal. Based on the foregoing, Def. cannot ~~respond~~ provide a response.

Plt's RFA NO. 43:

A fair inference of a CDCR Administrator's decision not to proceed with formal disciplin
-ary procedures [regarding confidential information alleging illegal activity], is the
reviewer's belief the allegation(s) of illegal activity(s) fail to meet the "preponder-
ance of evidence" standard required for such per. CCR, Title 15, § 3320.

RESP. TO RFA NO. 43:

Def. objects to this req. on the ground that it is vague, ambiguos, and overbroad as
to the applicable time period and as to the meaning of the terms, "CDCR Administartor's
decision," "not to proceed with formal disciplinaty procedures," "the reviewer's belief
the allegation(s) of illegal Activity(s)," "fail to meet the "preponderance of evidence"
standard," "such that Def. cannot respond to this req. without guessing as to their
meanings. Def. further objects that this req. calls for speculation. Based on the fore-
going, Def. cannot provide a response.

Plt's RFA NO. 44:

There are no exceptions to CDCR's Regulations mandating that staff who believe a
prisoner has committed a felonious rule violation, shall report such on a formal rule
violation report.

RESP. TO RFA NO. 44:

Def. objects to this req. on the grounds that it is vague, ambiguos, and overbroad as
to the applicable time period, and as to the meaning of the terms "no exceptions," "
"CDCR's Regulations mandating that staff who believe a prisoner has committed a felon-
ious rule violation," and "formal rule violation report," such that Def. cannot respond
to this req. without guessing as to their meanings. Def. further objects that this req.
calls for speculation and presents an incomplete hypothetical. Based on the foregoing,
Def. cannot provide a response.

As stated above, Plt. received the above quoted discovery reponses on Nov. 12,'21;
and, on November 18, 2021, sent opposing counsel his "Meet and Confer" letter in which
Plt. stated the following "Dissatisfaction(s) ..." as follows:

"...b. Def. Giurbino's RESPONSE TO INTERROGATORY, No. 2 ' [quoted above]:

~~ ROG. #2. Def's evasive, unsupported efforts to stymie Plt's ability to obtain inform -

18.

AGO 000626

In the same, above referenced November 18, 2021, "Meet & Confer" letter, Plt. also expressed his "Dissatisfaction(s)" with Defs' RFPDS, Set Four [#s 16, 17, & 18], re: '#16 [All documents pertaining to plt's Jan. 14, 2016, DRB Hearing,...inclusive of plt' CDCR 812 Notice of Critical Case Information Confidential & Non-Confidential Enemies" & all related documents thereof]; to which, Defs' produced what they view as 'non-confidential documents' responsive to this request; followed-up with the same baseless & unsupported obkjections, and refusal to produce any/all documents 'they' deem confidential (citing same basis for such claim(s) as above refeenced Sept. 10, 2014, DRB Hrg) To which plt. presented the same 'dissatisfaction(s)' to...

#17 [All medical records pertaining to plt. for the following time periods: 6/01/11-to-9/30/11; and, 7/01/13-to-9/30/13]; to which, Defs' "....object to the request on the ground that it is compound, and is actually two requests combined into one. Defs further object that this request is unduly burdensome, because it seeks records from a decade ago that have no bearing on Plt's current claims, and therefore this request is not proportional to the needs of the case. Subject to and without waiving this objection, Defs respond:   Defs produce AGO 403-AGO 465.

Plt's "Dissatisfaction(s)" are stated in his above ref'd 11/18/2021, "Meet & Confer" letter, as follows";

RE: REQ. & RESP. # 17    I am completely dissatisfied with the sham reply [& SHAM PRODUCTION] Dissatisfied based on fact the medical-records are specifically relevant to my claims at issue [inclusive of attacking defs' (2) key inmate informents credibility. These informants were recruited by Defs' Beard, et al., to collaborate w/CDCR against the prisoner class hunger strikes & class action ASHKER case - inclusive of specifically attacking validity of my role(s) therein. The medical records sought support my position re: nearly dying on the hunger-strkes, etc. - Please produce all records requested, incl -usive of my EKG results for Sept. 6, 2013-through-Sept 8, 2013, and PBSP Dr. Venes notes & reports regarding such EKG findings on thos dates] NOT A SINGLE "MEDICAL RECORD" ofr specified time period(s) has been produced [I was monitored DAILY, during time p period(s) at issue]

#18 [ALL documents regarding PBSP-SHU, Inmate Grievances/Appeals [including all related documents thereto], regarding "Guard-One" Welfare Checks, policies & practices, at PBSP-SHU, covering time period of 8/03/15-to-2/12/16]; to which, Defs' "....object to this req. on the grounds that it is vague, ambiguous, and overbroad as to the meaning of terms "regarding PBSP-SHU, Inmate Grievances/Appeals [including all related documents thereto], regarding "Guard-One" Welfare Checks, policies & practices, at PBSP-SHU," and "time period of 08/03/15-to-2/12/15," such that Defs cannot respond to this req. without guessing as to their meanings. Although the req. seeks documents from "8/03/15-to-2/12/15,

19.

Defs' assume that plt. is referring to "8/03/15-to-2/12/15." [NOTE: Plt. clariied these date(s) pertained to time period of (8/03/15-to-2/12/16), in follow-up letter]

To the extent plt. is requesting all inmate appeals submitted about the use of the "Guard One" welfare check system at PBSP, Defs object that this req. improperly seeks the records of other inmates, which Plt., as a state prisoner, is not permitted to Possess. Defs. further object that this req. is unduly burdensome and not proportional to the needs of the case because, on information and belief, to locate responsive documents would require determining every inmate who was housed in the SHU during the requested time period, and then reviewing each of those inmates files for potentially responsive documents. Subject to and without waiving these objections, Defs. respond:

Defs produce AGO383-AGO 402, Plt's inmate appeals about the use of the Guard One system in the PBSP SHU.

Plt's "Dissatisfaction(s)" follow:

RE: REQ. & RESP. # 18    Dissatisfied based on same reasons stated for above Request & Response # 16 [re: Defs' generic-boilerplate objection(s), & related claim(s) re: 'inability to respond to req. with out guessing as to meaning' - are without merit] Additionally,... in my October 28, 2021, letter I corrected the relevant time period pertaining to this "request for production" as: August 3, 2015-through-February 12, 2016. This request is inclusive of, "all PBSP-SHU, Inmate Grievances/Appeals [including all related documents thereof], re: "Guard-One" Welfare Checks, policies & practices, at PBSP-SHU, covering time period of 8/03/15to-2/12/16."

In Barron v. Alcaraz, 2016 U.S. Dist. LEXIS 136233, the court ordered defs to produce other other inmates 602 Appeals, Third Level Responses [with inmates names & CDCR #s redacted] [Plt's Decl., ¶¶ 21, Exh. 'P'

With respect to Plt's additional RFPDS, Set Four [#s 19, 20, & 21], Defs' Response to these included the same type of frivolous, meritless, boilerplate / evasive objection' as quoted in this motion's above authories brief; and,also: "....Defs have initiated a search for responsive documents, but to date, no responsive documents have been located. Defs will supplement this response when the search for responsive documents is complete"

Plt. has received no further reply, and, the documents sought are directly relevant to plt's claims against Defs' Beard, Kernan, et al., as follows:

RFPD, Set Four # 19:

ALL documents regarding PBSP-SHU, Hunger Strike(s) occurring between 7/01/11-and-9/05/13 [including, but not limited to: meetings with plaintiff & the (3) other principle prisoner representatives, and defendants Kernan, Giurbino, Hubbard, et al].

RFPD, Set Four # 20:

ALL documents regarding the PBSP-SHU, Short Corridor Collective's "(5) CORE DEMANDS"

20.

**AGO 000628**

presented to defendants [regarding the 2011-2013, Peaceful Protest Hunger Strikes].

RFPD, Set Four # 21:

ALL documents regarding defendants [media statements, press releases, op. eds.], in response to the peaceful prisoner hunger strikes of 2011-2013.

[Plt's Decl., ¶¶ 21 ; exH. D$^i$

On December 6, 2021, Plt. received Defs [Opposing counsel], "Meet & Confer" letter dated: Dec. 1, 2021 [which begins by confirming receipt of plt's Nov. 18, 2021, letter the day before (Nov. 30th), and states the Dec. 1st letter was for purpose of responding to plt's Oct. 28th & Nov. 18th, "Meet & Confer" letters referenced above in some detail. as well as, stating they were serving plt. with Def. Vargas's discovery responses and responses to RFPDS, Set Five. "...That way, if there are any cross-over issues between Def Giurbino's discovery responses and Def. Vargas's responses, I can address them all at the same time, rather than us continuing to go back and forth on these issues."

"However, I will require additional time to review both of your letters and to finalize Defs' response to your letters and finalize the responses to your outstanding discovery requests. Would you agree to a 14-day extension of time for Defs to Respond to Reqs For Production, Set Five; Interrogatories to Def Vargas, Set One, and Req. For Admission to Def Vargas, Set One? If you agree, Defs' responses would be due on Friday, Dec. 17, instead of this Friday, Dec. 3, 2021...[Plt. was expecting to receive this discovery by 1st week of December & thus be able to incorporate such responses, & related dispute(s) thereof, in his part of the parties 'joint motion to compel' This, was partial basis for his estimated reference to Dec. 14, 2012, as date he hoped to have his part of 'joint motion...' in mail to opposing counsel by the 14th of Dec.; and, this is why such was not possible [Please refer to plt's Declaration In Support for Ext. of Time , date Dec. 5, 2021]

In same letter, opposing counsel states "....Because you have previously extended such professional courtesy to me, and I will likely not receive correspondence back from you by the current deadline, I do not intend to serve substantive discovery responses this Friday. [the due date for them] I will,however, at least serve objections to the outstanding Reqs. for Admissions to preserve Defs rights. Defs will substantively respond to those reqs on or before Dec. 17, 2021. And, as we have previously discussed, if you believe you require these responses to oppose Defs' pending summary-judgment motion, Defs will stipulate to a reasonable extension of time for you to oppose that motion.

With respect to the parties' joint motion about compelling further discovery response I understand that you have other legal matters and multiple constraints on your time. Defs would prefer to address as many discovery issues as possible in the one filing, so

21.

**AGO 000629**

please take your time preparing your submission. I do ask that you inform me of any reqs you will be seeking to compel further responses to, so that I can begin preparing Defs' portion of the joint submission. You have already done so through various letters but if you intend to move to compel responses to additional requests, please let me know [Plt's Decl., ¶¶ 22-29

    With the above referenced letter, opposing counsel also sent plt. "Def Vargas' Responses To Plt's Req. For Def. Vargas To Make The Following Admissions." Wherein, Defs do not substantively respond to a single one of the 37 RFAS [ They make rote, meritless boilerplate objections & DENY, ecery single request; which is consistent with what opp. counsel stated was their intent to do, "...in order to preserve Defs' rights, and they would provide the substantive replies on, or before, Dec. 17th..." Id., above quoted part of opp. counsel's Dec. 1, 2021, letter]

    To date, Defs' have not provided any substantive responses to plt's discovery reqs sent to Defs' via mail on Oct. 28, 2021 [Def. Vargas' RFAS & Interrogatories; and, RFPDS, Set Five]; Defs' have only served rote, meritless objections/denials - and their promises to serve plt with substative responses have not happened. Defs' know the above referenced discovery requests are directly relevant and necessary for plt's Opposition To Defs' Msj [this is self-evident by review of the attached requests, responses; and related "Meet & Confer" exchanges between the parties ] [Plt's Decl., ¶¶   , incorporating the above point(s); and, Plt's follow-up "Meet & Confer" letters dated Dec. 6, 2021, Opposing counsel's Dec. 17, 2021, reply; Plt's December 25, 2021 "Meet & Confer" "Dissatifactions...."

    The discovery requests [re: Def. Vargas' RFAS & Interrogatories, are incorporated by reference & attached as Exhibit(s) S'&Q', to plt's declaration; and, a review of them along with context of Defs' evasive tactics - refusing to substantively reply to them - speak volumes about such discovery requests relevance to plt's claims, & necessary for support of Plt's "Opposition to Defs' MSJ" an example supporting this follows here]:

RE: RFA TO DEF. VARGAS, # 23:

    You included the following information on [Attachment 5]..."....Two of the inmates were validated & self-admitted STG-1 AB members, who have since defected from the gang. They corroborated & confirmed that it was common knowledge among AB members that the identified PBSP doctor was targeted for death by ASHKER. They also confirmed the identified attorneys from a law firm who had represented CDCR against law suits brought by Ashker were also targeted...."

RESPONSE TO REQUEST FOR ADMISSION NO. 23:

    Def objects to this request on the grounds that it is compound, and the document

22.

speaks for itself, and that this request is vague, ambiguous, and overbroad as to the meaning of the term "included the following information on [Attachemnt 5],"such that Def. cannot respond to this request without guessing as to their meanings. Based on the foregoing, Def. is without sufficient information to admit or deny, and on that basis responds:   Deny.

Requests number 24 refers to another part of [Attachment 5, which is a copy of the Confidential Information Disclosure, CDCR Form 1030, authored and dated Sept. 2, 2014, by Def. Vargas, in re: "Threat Assessment Report, dated 4/02/2013" SEE: Plt's Decl., ¶¶ 'AA']; and, this is a key item of evidence at issue - which exemplifies plt's need to be able to personally review ALL of the confidential memorandums & related, debriefing biographies, notes, audio/video recording(s) of interviews with the two AB dropout, collaborating CDCR informants, as detailed in plt's FAC, ¶¶ 2·22-26ʲ; and, further supported in Plt's Decl., ¶¶ 36-to-49, re: CDCR Defs' "systemic misuse of confidential information as a pretext to support placement & retention in solitary confinement...." for decades.

RFAS TO Def. Vargas, #s 26-through-37, demonstrate the relevance to need for Plt's Opposition To Defs' MSJ; and, an example exposing (ONE) of Defs' Giurbino, Hubbard, Rothchild, McLaughlin, and Vargas' arbitrary, capricious, retaliatory acts to justify their Sept. 10, 2014, DRB Decision to retain plt. in PBSP-SHU, on Step-2, of SDP, is illustrated by their misrepresentation(s) of key evidence ["Threat Assessment Report" dated 4/02/2013], by comparing RFAS # 23 & 24, with RFAS # 25-through-31. SEE #s 26 & 27, specifically, as follows:

RFA # 26, To Vargas:

   Attachment 6, is a genuine copy of CDCR 1030, Confidential Information Disclosure Form, signed and dated by CC-III, Alexendria Perez, on 12/15/15 [regarding C.M. dated 4/02/13]; and noted to have been issued to plt. on 12/22/15, by CC-I, Fallis]

[followed by same rote, boilerplate objections....]

RFA # 27, To Vargas:
   The second paragraph of Attachment 6 [at "3. Disclosure of information received...."] includes the following: "....The Special Service Unit conducted an investigation into potential threat against a Doctor employed at PBSP, due to discovery of an inmate manu-factured communication referencing killing a Doctor at PBSP, and two attorneys. Seven inmates, three staff members, and two citizens were interviewed. A validated, affiliate of the Aryan Brotherhood (AB)(STG-1) (same inmate in Confidential Memorandum dated 2/26/13 and 8/15/13) was interviewed in April 2013 during the investigation. The confidential source was shown a copy of an intercepted (confiscated) Communication found in the cell

23.

of a validated AB STG affiliate in March 2013, containing specific plans to murder or harm a doctor (employed at PBSP). The confidential source reported he [was not aware of the plan to assault staff at PBSP, and it was his opinion that the AB STG-1 Commission would not approve the hit on staff members...."

[Def. Vargas, makes the same response as quoted for # 23, above]

Plaintiff respectfully requests the Court find that Def. Vargas has fully admitted all 37 of Plt's RFAS posed to Def. Vargas; and, Def. Vargas, failure to substantively respond to Plt's Interrogatories, are cause to find said Interrogatory Responses be deemed answered in light favorable to Plt.

Plt. additionally moves to compel the defendants to produce the following document' requested in Plt's RFPDS, Set Five [Requests No. 22-through-28; omitting # 23], stated below:

RFPD No. 22: Any/all documents related to, and relied on to support, issuing plt. with CDCR Rule Violation Report, dated: 10/10/13, authored by PBSP IGI Lt. J. Frisk [Log. # PBSP-D13-10-0005] [this includes, but is not limited too: The (8) Confidential Memos, referenced in the rule violation report; inclusive of: Incident Report Package, Log # PBSP-CSGI-13-10-0410][And, adjudication of said rule-violation]

RFPD No 24: Memorandum, authored by PBSP CC-II, M. Russell, dated: 8/06/2013 [with any all documents related thereto]

RFPD No. 25: Memorandum, authored by Office of Public & Employee Communications [OPEC], dated: 1/23/2014 (and, any/all related documents)

RFPD No. 26: Any/all documents, notes, emails, pertaining to Kernan's July 20, 2021, meeting with plaintiff, and the other three principle prisoner representatives [of PBSP SHU, Short Corridor Collective], for purpose of negotiating an end to the prisoners hunger strike; and, any/all related meetings between CDCR Administrators and plaintiff in 2011.

RFPD No. 27: Any/all documents, notes, emails, pertaining to Kernan's meeting with the prisoners "Outside Mediation Team" on October 13, 2011 [as well as, any/all "CDCR Administrators" meeting(s) with the prisoners "Outside Mediation Team" at any time covering time period of June 1, 2011-through-January 1, 2019]

RFPD No. 28: Any/all documents, emails, notes, pertaining to Beard's 8/06/2013, [Op. Ed. in the Los Angeles Times, titled "Hunger Strike in California is a gang power play." inclusive of support for Beard's allegations therein]

Defs' Responses to the above quoted RFPDS, are the same type of rote, boilerplate-meritless objections, intended to evade production of what are all clearly relevant-on point requests.... Due to page limitations, plt. has not quoted each Response, they are

24,

incorporated by reference and attached as Exhibit '§ ' to Plt's Decl., ¶¶ 27-to-29

On December 21, 2021, Plt. received Opposing counsel's Dec. 17 2021, letter & above referenced Responses To Discovery Requests [RE: Def. Vargas; inclusive of the non-substantive, rote, boilerplate, meritless objections & refusal to answer Plt's Interrogatories, Set One. And, RFPDS, Set Five], and on December 25, 2021, Plt. mailed Opposing Counsel his "Meet & Confer" Dissatisfactions with Defs' Responses to above; a review of Plt's Dec. 25, 2021, specific "Dissatisfactions" to Defs' Objections & refusals to produce the above quoted document requests [RFPDS, Set Five], includes specific, on-point clarifications & related summaries of relevance, etc., to the claims.

Plaintiff requires the documents & responses to Admissions/Interrogatories, at issue in this Motion To Compel & Apply Sanctions, for support of plt's opposition to Defs' MSJ.  [re: Plt's Interrogatories, Set One, to Def. Vargas, as an example; Please See Interrogatories No. 3 & 4; and note Defs' baseless - unsupported - objections & refusals to respond] Plt's Decl., ¶¶ 27-to-29

CONCLUSION

Having demonstrated good cause based on this motion, memorandum of authorities, declaration, with incorporated & attached exhibits thereto, and the file and record of this case, the plaintiff hereby respectfully  requests the Honorable Court to Grant this motion to compel & apply sanctions deemed appropriate and necessary to enable Plaintiff to fully and fairly prosecute this case, and punish defendants for their abuse of the discovery process [inclusive of reimbersing plaintiff's costs associated with this motion = photocopying and postage costs]; and, any/all further relief deemed necessary, just, and equitable.

Deated: January 25, 2022

Respectfully Submitted,

_T. Ashker_

Todd Ashker, Plaintiff
In pro-se

25.

**AGO 000633**

Todd Ashker, C# 58191
KVSP-ASU 2/194
Box # 5106
Delano, CA. 93216
Plaintiff, In pro-se

FILED

FEB 02 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

*18 cv 06350 WHA*

| | | |
|---|---|---|
| TODD ASHKER,<br><br>              Plaintiff,<br><br>      v.<br><br>S. KERNAN, et al.,<br><br>              Defendants.<br>_____/ | | Case No.: 3:18-cv-06358-WHA<br>PLAINTIFF'S MOTION TO COMPEL<br>DISCOVERY; and APPLY SANCTIONS<br>TO ADDRESS DEFENDANTS' ABUSE<br>OF DISCOVERY PROCESS. |

    Pro-se prisoner plaintiff moves pursuant to Rules 33, 34(b), 36, and 37(a), Fed.
Rules of Civil Procedure for an order compelling defendants to produce for inspection
and copying the documents requested herein; and issue related remedial order(s)
necessary to address defendants abuse of the discovery process in this case - including
but not limited to Court making findings that the specified request for admissions and
interrogatories at issue herein, are deemed admitted (as clarified in plaintiff's
related "meet and confer" letters), and, viewed in a light favorable to plaintiff; and
for defendants to reimberse plaintiff for his costs associated with this motion.

                    PLAINTIFF'S DILIGENCE PURSUING DISCOVERY

    On May 28, 2020, the Court allowed plaintiff's claims for damages to proceed via
issuance of "ORDER OF PARTIAL DISMISSAL AND OF SERVICE." Since that time, plaintiff has
diligently pursued discovery in this case ever since he received defendants' counsel's
notice that the Attorney Generals Office was representing the named defendants - who
are both - current and former CDCR employees,via letter plaintiff received the evening
of August 11, 2020. Plaintiff's diligence pursuing discovery in this civil action

                                    1.

AGO 000634

is supported by fact(s) that plt.: i.) mailed opposing counsel his initial Request for Production of Documents [RFPDs], Set One, on Sept. 7, 2020; and, ii.) the parties related-multiple discovery exchanges [e.g., Plt's RFPDs; Defs' Responses; & "Meet and Confer" letter exchanges, between Sept. 7, 2020-to-the-present] SEE: Plt's Declaration ¶¶ 1-to-29]

The following additional facts are necessary context relating to plt's Motion to Compel; and Request for Remedy' to Address Abuse of Discovery Process, issue(s):

a. In response to plt's Sept. 7, 2020, RFPD, Set One, opposing counsel sought, & plt. agreed, to "Stay Discovery" pending outcome of Defs' Motion to Dismiss.

b. On March 11, 2021, the Court ruled on difendants' motion via "ORDER GRANTING IN PART MOTION TO DISMISS;SEVERING & TRANSFERING CERTAIN CLAIMS TO THE E.D. Cal.

c. In the interim, plt. filed a First Amended Complaint (FAC); and, around late March 2021, received "Defs' Answer to Plt's FAC" dated March 25, 2021.

d. Subsequent to the Court's above referenced ruling on defs' dismissal motion, the parties re-initiated the [Stayed Discovery Process], referenced above.

e. On April 16, 2021, plt. received defs' April 12, 2021, "Meet & Confer" letter, incorporating their included Response to Plt's RFPDs, Set One; and, requesting plt. for clarification of Request No. 4, therein, to facilitate their reply. Plaintiff mailed his response, with included 'clarification' of Req. No. 4, on April 25, 2021 [Plt's Decl., ¶¶ Id. ] What ensued thereafter, has been an on-going abuse of the discovery Process, on the part of defs', as illustrated by the documented exchanges of the Parties, incorporated into plt's declaration [e.g., defs' refusal to produce most of the documents requested based on boiler-plate, rote objections completely without merit and/or, based on improper reasons - multiple claims that they were not able to answer requests due to such being uncomprehansive; often as to terms with common english interpretation & usage easily understandable.... And, claims that plt. had not specif-ied a specific defendant, and/or, sought documents from defs' counsel; when, in fact, plt. has never had a prior problem with the manner(s) in which his discovery requests were presented ( 'to defendants'; 'to defendants, and/or, in possession of their counsel at the attorney general's office')], resulting in lengthy - ongoing delays - with the entire discovery process in this case....Plt's Decl., ¶¶ Id.

f. On October 11, 2021, Defs' took plt's deposition. At the close of this deposi-tion, the parties briefly discussed the on-going discovery issues, inclusive of plt's dissatifaction with def's refusal to produce nearly all of the relevant documents at issue [based on defs' claim such could not be provided to plt. because they are confid-ential; and, the related false claim that plt's request for such was an attempt by plt to "circumvent the Protective Order' in the related (Ashker Class Action)." Id., Plt's Decl., ¶¶ Id.

2.

The 'after deposition discussion' referenced above - included the parties agreement to
do a 'joint motion' for Court to address, as a way to resolve their discovery disputes;
Plt. agreed to send his part of the motion to opposing counsel [as soon as he was able
to complete the legal research necessary for such]. Plt. also requested opposing couns-
el to confirm , or deny, three specific questions plt. posed re: what he believed were
errors in three confidential information disclosures that were at issue [opposing
counsel agreed to 'get back to plt. about this'] Plt's Decl., ¶¶ 14

   g. October 18, 2021, plt. received opposing counsel's Oct. 14, 2021, letter "Memo
rializing our conversation after your deposition on Monday, Oct. 11" Opposing counsel
wanted to confirm plt's intent to do a 'joint motion' and, stated willingness to agree
to stipulate to a reasonable extension of time for plt. to file his opposition to defs'
forthcoming MSJ, if needed to resolve their discovery disputes. Opposing counsel, also
confirmed receipt of the additional / follow-up discovery requests plt. had mailed on
Oct. 5, 2021 [these were: RFPDs, Set Four; and, Request for Admissions / Interrogatory'
for Def. Giurbino]. Thereafter, the parties exchanged several "Meet & Confer" letters
relating to above discovery subjects; plt. also received & exhausted his "Meet & Conf"
obligation(s) re: defs' objections/responses-refusal to respond, issues with specific
Giurbino's Admissions/Interrogatories; and, RFPDs, Set Four [Plt's Decl.,¶¶ 15

   h. October 28, 2021, plt. mailed opposing counsel additional discovery requests:
RFPDs, Set Five; and, Def. Vargas' Request for Admissions / Interrogatories. Plt. did
not receive Defs' [Harnden Declaration, re: "Privilege Log" purporting to support defs'
refusal to produce the key documents-evidence at issue re: plt's DRB Hearing held on
Sept. 10, 2014; based on 'confidentiality' claims], until the evening of Oct. 26, 2021.
And, plt. did not receive a copy of Harnden's "Privilege Log" until the evening of
November 12, 2021. [This was the date plt. rec'd opp. counsel's Nov. 8, 2021, letter,
in which counsel again asks if plt. plans to do the'joint motion....'? Plt. again con-
firms his intent to do so, as soon as he can complete the necessary legal research; &
receipt of outstanding responses to discovery....Plt's Decl., ¶¶ 16 - 17 - 18 19

   i. On November 15, 2021, plt. received defs' MSJ. Between Nov. 15, 2021, and
December 25, 2021, the parties exchanged additional letters, etc., re: Discovery,
inclusive of opposing counsel's request for extension(s) to send plt. 'substantive
responses to Vargas' Req. for Admissions / Interrogatories'[while sending plt. boiler-
plate objections to same 'in order to protect defs' interrests.']; Opposing counsel
also stated that they prefered to address the outstanding discovery dispute issues in
a single filing [joint motion], and told plt. to 'take your time completing your part,
I know you have issues, etc. you're dealing with, and defs' have no problem agreeing to
extension of time for you to file your opposition to defs' MSJ, after the Court resol-
ves the discovery issues....'[Plt's Decl., ¶¶ 21 - to - 29

3.

AGO 000636

j. Plt's "Opposition to Defs' MSJ" was due by December 10, 2021, and it was impossible to meet that deadline [plt. had been spending the majority of his limited time at KVSP-ASU 2's 'Law-Library' trying to research the relevant discovery subjects at issue, & necessary to be able to complete his part of the parties 'joint motion....' Therefore plt. had to quickly complete & mail his "Motion For Extension of Time To File Opposition To Defs' MSJ" (basing the Motion For Ext. on all of the above factors, and inclusive of summarizing his difficulty conducting the necessary legal research due to his permanent disability, etc.; and, related need to obtain the discovery at issue to be able to also conduct targeted depositions, and obtain a declaration from his expert witness - all being necessary to fully address Defs' MSJ., inclusive of Defs' Giurbino & Hubbard's Decls., and Defs' position(s) re: Defs' Beard, Kernan, et al., in general)].

k. On January 10, 2022, plt. received the Court's "ORDER GRANTING EXTENSION OF TIME"....In the ORDER, the Court stated '...plt. had not shown good cause for extension to resolve discovery issues - prior to filing his opposition to defs' MSJ'- stating '...plt. can file his motion to compel if he wants to;' and, '...the extension to file opposition will be Granted for 90-days, making opposition due on, or before, February 10, 2022.'

l. On January 12, 2022, plt. mailed the Court his "Motion For The Court's Correction / Clarification Of January 4, 2022, ORDER GRANTING EXTENSION OF TIME. AND, OBJECTION and REQUEST FOR THE COURT'S ASSISTANCE RE: PLT'S ABILITY TO CONDUCT THE LEGAL RESEARCH NECESSARY TO FILE MOTION TO COMPEL DISCOVERY & RELATED OPPOSITION TO DEFS' MSJ." [plt. sought clarification, based on the disparity between Court's "ORDER GRANTING 90-days to FILE Plt's OPPOSITION" via Court's January 4, 2022, ORDER; then stating such Opposition was due by February 10, 2022 (???) As well as objecting to the portion of the ORDER re: Discovery subject. And, seeking the Court's assistance with ability to conduct the legal research necessary to be able to prosecute this action [pointing out, that absent such relief from the Court, plt. will be unable to file his "Opposition to Defs' MSJ".]
< *NOTE: Plaintiff Also Moves For Protective Order - Barring Defs'/Agents From Taking His Legal Documents —* [*See: Plt's Decl, para #33.*]

CONCLUSION

Having demonstrated good cause, based on this motion, memorandum of points and authorities, declaration [with incorporated supporting exhibits attched thereto], and the file and record in this case, plaintiff respectfully requests the Honorable Court to grant this motion, as deemed just fair and equitable [as specified in more detail in the conclusion of the accompanying memorandum of points and authroties]
Dated: January 25, 2022.

Respectfully Submitted,

*T. Ashker*
Todd Ashker, Plaintiff
In pro-se

4.

AGO 000637

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

I, _Todd Ashker_ , declare:

I am over 18 years of age and a party to this action. I am a resident of _Kern Valley_

_____ _State_ Prison,

in the county of _Kern_ ,

State of California. My prison address is: _Todd Ashker, C58191, KVSP-ASU-2/1 #_

_Box # 5106, Delano, Cal 93216_

On _January 26, 2022_
(DATE)

I served the attached: ① PH's Mot. To Compel Discovery; & Apply Sanctions ② PH's Memo of
Points & Authorities In Support of Mot. To Compel ③ PH's Decl. In Support (w/Exhs)
(DESCRIBE DOCUMENT)
〈RE= ASHKER v. S. KERNAN, et seq. USDC - N.D. Cal. # 3:18-cv-06350-WHA〉

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

① Office Of Clerk, U.S.D.C.-N.D.       ② Cassandra J. Shryock
   450 Golden Gate Ave,                 Deputy Atty. General
   San Francisco, Cal                   455 Golden Gate Ave, Ste# 11000
   - 94102 -                            SanFrancisco, Cal. 94102-7004

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on _Jan. 26, 2022_          _T. Ashker_
             (DATE)                   (DECLARANT'S SIGNATURE)

**AGO 000638**

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 116 of 294

ASHKER V. S. KERNAN, et el
#3:18-cv-06350-WHA
TABLE OF EXHIBITS

Jan. 26, 2022
— Mot. To Compel —

A.  Opp Counsel's 8/05/2020, Letter          1 pg.

B.  Plt's First Req For Prod. Doc [w/ proof of Serv]          5 pgs

C.  Opp. Counsel's 9/29/2020, letter          1 pg

D.  Plt's Letter  10/01/2020          1 pg

E.  Opp. Counsel's  4/12/2021, Letter [w/ Resp To          9 pgs
     Plt's First RFPDs]

F.  Plt's 1 pg letter of 6/13/2021 [& Amended - First          4 pgs
     RFPDs ]

G.  Defs' Supps Resp To Plt's First RFPDs, No 4          8 pgs
     (dated 6/07/2021)

H.  Defs' Resp To Plt's RFPDs, Set Three          5 pgs
     (dated 7/21/21)

I.  Plt's Aug 8, 2021, Meet & Confer Letter          3 pgs

J.  Opp. Counsel's  Aug 27, 2021, letter          1 pg

K.  Opp Counsel's  Sept 22, 2021, letter          2 ps
                    — P. 1 of 4 —

**AGO 000639**

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 117 of 294

*TABLE OF EXHIBITS, cont'd*

L.  Opp Counsel's Oct. 14, 2021, Letter                3 pgs

M.  Defs' Supp Response To Plt's First RFPD's,         5 pgs
    Set Three [ Nos 14 & 15 ]

N.  Plt's Meet & Confer Letter of Oct. 28, 2021        4 pgs

O.  Opp. Counsel's Letter of Nov. 8, 2021              2 pgs

P.  Plt's Meet & Confer letter of Nov. 18, 2021 [7pgs];    Total
    Def Guirbino's Resp To Plt's Interrogatories, Set 1 [6pgs];   21 pgs
    Def Guirbino's Resp. To Plt's RFAs, Set 1 [8pgs]

Q   Opp. Counsel's Letter of Dec. 1, 2021 (2pgs);          Total
    Def. Vargas's Resp To Plt's Req For Def Vargas To       21 pgs
    Make Admissions, Set 1 [ 19pgs ]

R.  Plt's Meet & Confer Letter of Dec. 6, 2021         5 pgs

S.  Opp. Counsel's Letter of Dec. 17, 2021 (4pgs);     Total
    Defs' Resp To Plt's RFPDs, Set 5 [5pgs];           13 pgs
    Def. Vargas' Resp To Plt's Interrogatories, Set 1 [4pgs]

T.  Plt's Meet & Confer Letter of Dec. 25, 2021        6 pgs

~ P. 2 of 4 ~

AGO 000640

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 118 of 294

TABLE OF EXHIBITS cont'd

U.  Decl. of J. Harden [6pgs] + 3pg "Privilege - Log"        Total 9pgs

V.  Redacted Copies of Confidential Memo's Plts              9pgs
    Received In Prior Civil Cases

W.  Crescent City "TRIPLICATE" Newspaper article            4pgs
    "The Media & THE SHU" dated Oct. 8, 2013

X.  Article "Does 22½ hours alone in an 8 x 10              4pgs
    cell every day amount to torture?"
    dated Feb. 25, 2013

Y.  Decl of J. Bryan Elrod In Supp Of Defs                  11pgs
    Opp To Plts' Mot. For Class Certification
    dated 7/11/13 [ DOC # 249 Filed 7/18/13)

Z   Decl. of Michael Sayre In Supp Of MSJ                   4pgs
    dated Sept 22, 2009 [ # CVP 109 - 1064)

AA. Confidential Information Disclosures,                   5pgs
    Issued To Plt By Def Vargas, on 9/03/14

BB. Conf. Info Disclosures, Issued To Plt                   12pgs
    By PBSP-SHU, CC-I, Fettes, on 12/22/15
    Authored By CC-III, A. Perez
              — P. 3 of 4 —

**AGO 000641**

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 119 of 294

TABLE OF EXHIBITS cont'd

CC    Transcript of Oral Arguments re: Ashker    20 pgs.
      Class Action Case Plts' 2nd Mot To Ext.
      Settlement Agreement Compliance
      Monitoring, held before Hon. J. Wilken
      On Oct. 28, 2021 [condensed trsnc. 20 pgs]
      RE: Ashker et al v. Newsom, et al # 4:09-cv-05796

DD    Decl. of Rachel Meeropol, dated Nov. 16, 2021   2 pgs

EE.   Opp Counsel's Letter of Jan 14, 2022 (1 pg);        Total
      w/ Los Angels Times, Op. Ed. dated Aug 6, 2013      5 pgs.
      By Deft. Beard [3 pgs]; & Undated page "Setting
      the Record Straight in Cal's Inmate Hunger Strike" (1 pg)

AGO 000642

# EXHIBIT 

AGO 000643



**ROB BONTA**
*Attorney General*

State of *California*
DEPARTMENT OF JUSTICE

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public: (415) 510-4400
Telephone: (415) 510-3622
Facsimile: (415) 703-5843
E-Mail: Cassandra.Shryock@doj.ca.gov

December 1, 2021

Todd Ashker (C-58191)
Kern Valley State Prison
3000 W. Cecil Avenue
Delano, CA 93215

RE:   *T. Ashker (C58191) v. S. Kernan, et al.*
      U.S. District Court, Northern District of California, Case No. 3:18-cv-06350-WHA

Dear Mr. Ashker:

        Yesterday, I received your letter signed November 18, 2021, which addressed numerous issues, including what you believe to be deficiencies in Defendant Giurbino's discovery responses. I believe the most efficient course of action would be to respond to the outstanding issues raised in your two recent letters, dated October 28 and November 18, 2021, at the same time as I serve Defendant Vargas's discovery responses and responses to Request for Production of Documents, Set Five. That way, if there are any cross-over issues between Defendant Giurbino's discovery responses and Defendant Vargas's responses, I can address them all at the same time, rather than us continuing to go back and forth on these issues.

        However, I will require additional time to review both of your letters and to finalize Defendants' response to your letters and finalize the responses to your outstanding discovery requests. Would you agree to a 14-day extension of time for Defendants to respond to Requests for Production, Set Five, Interrogatories to Defendant Vargas, Set One, and Requests for Admission to Defendant Vargas, Set One? If you agree, Defendants' responses would be due on **Friday, December 17, 2021,** instead of this Friday, December 3, 2021.

        Because you have previously extended such professional courtesy to me, and I likely will not receive correspondence back from you by the current deadline, I do not intend to serve substantive discovery responses this Friday. I will, however, at least serve objections to the outstanding Requests for Admission to preserve Defendants' rights. Defendants will substantively respond to those requests on or before December 17, 2021. And, as we have previously discussed, if you believe you require these responses to oppose Defendants' pending summary-judgment motion, Defendants will stipulate to a reasonable extension of time for you to oppose that motion.

        With respect to the parties' joint submission about compelling further discovery responses, I understand that you have other legal matters and multiple constraints on your time. Defendants would prefer to address as many discovery issues as possible in the one filing, so



**AGO 000644**

December 1, 2021
Page 2

please take your time preparing your submission. I do ask that you inform me of any requests you will be seeking to compel further responses to, so that I can begin preparing Defendants' portion of the joint submission. You have already done so through various letters, but if you intend to move to compel responses to additional requests, please let me know.

With respect to your review of your deposition transcript, the November 2, 2021 incident you described did not involve your deposition transcript from this case, which had not been transmitted to KVSP at that time. Perhaps that related to a deposition transcript from the class action matter?

Finally, with respect to the transcript of your deposition in this case, I agree that the certified copy is not of acceptable quality. The Attorney General's Office will be complaining to the court reporting service about the number of errors in the transcript. Please, however, make all corrections to your testimony that you believe are necessary. Due to the number of errors in the transcript, if you require more than 30-days to review and correct the transcript, Defendants will agree to extend that time upon written request.

Thank you in advance for your anticipated courtesy.

Sincerely,

*/s/ Cassandra J. Shryock*
CASSANDRA J. SHRYOCK
Deputy Attorney General

For   ROB BONTA
Attorney General

CJS:

SF2020400523
42980493.docx

**AGO 000645**

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Ashker v. Kernan, et al.**
No.:         **3:18-cv-06350-WHA**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On <u>December 3, 2021,</u> I served the attached:

**DEFENDANT VARGAS' RESPONSES TO PLAINTIFF'S REQUEST FOR DEFENDANT VARGAS TO MAKE THE FOLLOWING ADMISSIONS, SET ONE**

by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Todd Ashker**
**(C58191)**
**Kern Valley State Prison**
**P.O. Box 5106, ASU-2/194**
**Delano, CA 93216**
*Pro Se*

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on December 3, 2021, at San Francisco, California.

| L. Santos | |
| --- | --- |
| Declarant | Signature |

SF2020400523
42984462.docx



**AGO 000646**

1   ROB BONTA
    Attorney General of California
2   MARISA KIRSCHENBAUER
    Supervising Deputy Attorney General
3   CASSANDRA J. SHRYOCK
    Deputy Attorney General
4   State Bar No. 300360
      455 Golden Gate Avenue, Suite 11000
5     San Francisco, CA  94102-7004
      Telephone:  (415) 510-3622
6     Fax:  (415) 703-5843
      E-mail:  Cassandra.Shryock@doj.ca.gov
7   *Attorneys for Defendants*
    *J. Beard, S. Kernan, G. Giurbino, S. Hubbard, K.*
8   *Harrington, J. McLaughlin, M. Ruff, D. Rothchild, J.*
    *Robertson, C. Ducart, C. Vargas, M. Russell, J.*
9   *Fallis, and W. Black*

10                  IN THE UNITED STATES DISTRICT COURT

11                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13

14

15   **TODD ASHKER,**                    3:18-cv-06350-WHA

16                        Plaintiff,    **DEFENDANT VARGAS' RESPONSES
                                        TO PLAINTIFF'S REQUEST FOR**
17            **v.**                     **DEFENDANT VARGAS TO MAKE THE
                                        FOLLOWING ADMISSIONS, SET ONE**
18   **S. KERNAN, et al.,**

19                        Defendants.

20

21   PROPOUNDING PARTY:    Plaintiff Todd Ashker

22   RESPONDING PARTY:     Defendant C. Vargas

23   SET NO:               One (1)

24                     **PRELIMINARY STATEMENT**

25

26        The information provided in these responses is true and correct, according to Defendant's

27   best knowledge at this time, but it is subject to future correction for omissions, errors, or

28   mistakes. Defendant reserves the right to produce evidence of any subsequently discovered facts

                                        1

                                            Def. Vargas' Resp. Req. Admis., Set 1  (3:18-cv-06350-WHA)

**AGO 000647**

1  or interpretations thereof, and to amend, modify, or otherwise change the responses, in

2  accordance with applicable discovery rules.

3  **REQUEST FOR ADMISSION NO. 1:**

4  At the time of plaintiff's 9/10/14 DRB Hearing.you were a Correctional Counselor [CC]

5  II, assigned [sic] as the 'case worker' responsible for preparing plaintiff's case for the DRB's STG

6  case-By-Case Review.

7  **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

8  Defendants objects to this request on the grounds that it is vague, ambiguous, and

9  overbroad as to the meaning of the terms "assigned [sic] as the 'case worker,'" "responsible for

10  preparing plaintiff's case," and "DRB's STG case-By-Case Review," such that Defendant cannot

11  respond to this request without guessing as to their meanings.  Based on the foregoing, Defendant

12  is without sufficient information to admit or deny, and on that basis responds:

13  Deny.

14  **REQUEST FOR ADMISSION NO. 2:**

15  Your preparation of plaintiff's case for his 9/10/14, DRB STG CBC Review includedd

16  [sic] your complete review of plaintiffs CDCR prison files [inclusive of your review & analysis of

17  the "Confidential" file(s) petaining[sic] to plaintiff].

18  **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

19  Defendant objects to this request on the grounds that it is vague, ambiguous, and

20  overbroad as to the meaning of the terms "preparation of plaintiff's case," "DRB STG CBC

21  Review," and "includedd-[sic] your complete review of plaintiffs CDCR prison files [inclusive of

22  your review & analysis of the "Confidential" file(s) petaining[sic] to plaintiff]," such that

23  Defendant cannot respond to this request without guessing as to their meanings.  Based on the

24  foregoing, Defendant is without sufficient information to admit or deny, and on that basis

25  responds:

26  Deny.

27  **REQUEST FOR ADMISSION NO. 3:**

28  Your preparation of plaintiff's case for the 9/10/14 DttB Hearing included your

2

**AGO 000648**

1   responsibility to [accurately summarize] the 'confidential information' being reviewed by the

2   DRB, on "CDCR 1030, Confidential Infromation[sic] Disclosure Forms."

3   **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

4           Defendant objects to this request on the grounds that it is vague, ambiguous, and

5   overbroad as to the meaning of the terms "preparation of plaintiff's case," "DttB Hearing," and

6   "your responsibility to [accurately summarize] the 'confidential information' being reviewed by

7   the DRB," such that Defendant cannot respond to this request without guessing as to their

8   meanings.  Based on the foregoing, Defendant is without sufficient information to admit or deny,

9   and on that basis responds:

10          Deny.

11  **REQUEST FOR ADMISSION NO. 4:**

12          On 9/02/14, you provided plaintiff with a CDCR 128-B-1, "Notice of Classification

13  Hearing" that included your signature on it.

14  **RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

15          Defendant objects to this request on the grounds that it is compound, and that it is vague,

16  ambiguous, and overbroad as to the meaning of the terms "you provided," "CDCR 128-B-1,

17  'Notice of Classification Hearing,'" and "that included your signature," such that Defendant

18  cannot respond to this request without guessing as to their meanings.  Based on the foregoing,

19  Defendant is without sufficient information to admit or deny, and on that basis responds:

20          Deny.

21  **REQUEST FOR ADMISSION NO. 5:**

22          The attached copy of the CDCR 128-B-1, Notice of Classification Hearing, dated 9/2/14 is

23  genuine [SEE: Attachment 1]

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

25          Defendant objects to this request on the grounds that it is vague, ambiguous, and

26  overbroad as to the meaning of the term "genuine," such that Defendant cannot respond to this

27  request without guessing as to its meaning.  Based on the foregoing, Defendant is without

28  sufficient information to admit or deny, and on that basis responds:

3

AGO 000649

1    Deny.

2    **REQUEST FOR ADMISSION NO. 6:**

3    <u>Attachment 1,</u> includes the following accurately stated information you had included on

4    the Form, prior to issuing it to plaintiff"...Ashker was issued CDCR 1030's-Confidential

5    Information Disclosure Forms, disclosing SEG behavior/information documented in Confidential

6    Memorandum(s) (CM) dated: 6/27/11, 11/4/11, 7/24/12, 10/10/12, 3/29/13, 4/2/13, 12/5/13,

7    1/9/14, 8/16/11, 8/16/11, 5/21/12, 8/15/13...."

8    **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

9    Defendant objects to this request on the grounds that it is vague, ambiguous and overbroad

10   as to the meaning of the terms, "following accurately stated information," "you had included on

11   the Form, prior to issuing it to plaintiff," and "disclosing SEG behavior/information," such that

12   Defendant cannot respond to this request without guessing as to their meaning.  Based on the

13   foregoing, Defendant is without sufficient information to admit or deny, and on that basis

14   responds:

15   Deny.

16   **REQUEST FOR ADMISSION NO. 7:**

17   The CDCR 1030's, referenced in [<u>Attachemnt-1</u>], included your review of each of the

18   C.M.s, and completion of a seperate[sic] CDCR 1030, Confidential Information Disclosure Form,

19   at # 3. [of the 1030 Form(s)] <u>requiring</u> "The information received indicated the following:"

20   **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

21   Defendant objects to this request on the grounds that it is compound, and that it is vague,

22   ambiguous, and overbroad as to the meaning of the terms "CDCR 1030's," "included your review

23   of each of the C.M.s," "completion of a seperate [sic] CDCR 1030, Confidential Information

24   Disclosure Form, at # 3," and "[of the 1030 Form(s)] <u>requiring</u> "The information received

25   indicated the following:," such that Defendant cannot respond to this request without guessing as

26   to their meanings.  Based on the foregoing, Defendant is without sufficient information to admit

27   or deny, and on that basis responds:

28   Deny.

4

**AGO 000650**

1    **REQUEST FOR ADMISSION NO. 8:**

2         The attached copy of CDCR 1030, Confidential Information Disclosure Form [re: C.M.

3    dated 5/21/12], was signed and dated by you on 9/2/14, and is genuine [SEE: Attachement [sic] 2]

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

5         Defendant objects to this request on the grounds that it is vague, ambiguous, abd

6    overbroad as to the meaning of the terms, "CDCR 1030, Confidential Information Disclosure

7    Form [re: C.M. dated 5/21/12]," and "genuine," such that Defendant cannot respond to this

8    request without guessing as to their meaning.  Based on the foregoing, Defendant is without

9    sufficient information to admit or deny, and on that basis responds:

10        Deny.

11   **REQUEST FOR ADMISSION NO. 9:**

12        You are the person who included the information in [Attachment 2], at"3. The information

13   received indicated the following:...." [Summarizing what was stated in the C.M.]

14   **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

15        Defendant objects to this request on the grounds that it is compound, and is vague,

16   ambiguous, and overbroad as to the meaning of the terms "who included the information in

17   [Attachment 2], at"3," and "The information received indicated the following:...." [Summarizing

18   what was stated in the C.M.]," such that Defendant cannot respond to this request without

19   guessing as to their meanings.  Based on the foregoing, Defendant is without sufficient

20   information to admit or deny, and on that basis responds:

21        Deny.

22   **REQUEST FOR ADMISSION NO. 10:**

23        You attended plaintiff's DRB Hearing on 9/10/14.

24   **RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

25        Defendant objects to this request on the grounds that it is vague, ambiguous, and

26   overbroad as to the meaning of the terms, "attended," and "DRB Hearing," such that Defendant

27   cannot respond to this request without guessing as to their meanings.  Based on the foregoing,

28   Defendant is without sufficient information to admit or deny, and on that basis responds:

5

**AGO 000651**

1      Deny.

2   **REQUEST FOR ADMISSION NO. 11:**

3      During plaintiff's 9/10/14 DRB Hearing, you witnessed plaintiff's explanation to DRB

4   Chairman Giurbino, regarding why the source of C M dated 5/21/12, claims that plaintiff had

5   given the source 'the latter from the targeted attorney would not be possible.'

6   **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

7      Defendant objects to this request on the grounds that it is vague, ambiguous, and

8   overbroad, as to the meaning of the terms "DRB hearing," "witnessed," and "witnessed plaintiff's

9   explanation to DRB Chairman Giurbino, regarding why the source of C M dated 5/21/12, claims

10  that plaintiff had given the source 'the latter from the targeted attorney would not be possible,'"

11  such that Defendant cannot respond to this request without guessing as to their meanings.  Based

12  on the foregoing, Defendant is without sufficient information to admit or deny, and on that basis

13  responds:

14     Deny.

15  **REQUEST FOR ADMISSION NO. 12:**

16     In reference to above [Request for Admission # 11.], you witnessed plaintiff explaining to

17  Chairman Giurbino, that "it would not be possible for plaintiff to have provided the source with

18  the 'letter...' because plaintiff & the source lived in different cellblocks, and had no way of passing

19  documents to oneanother[sic] during time frame at issue."

20  **RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

21     Defendant objects to this request on the grounds that it is vague, ambiguous, and

22  overbroad as to the applicable time period, and as to the meaning of the terms, "In reference to

23  above [Request for Admission # 11.]," "witnessed," and "plaintiff explaining to Chairman

24  Giurbino, that "it would not be possible for plaintiff to have provided the source with the 'letter...'

25  because plaintiff & the source lived in different cellblocks, and had no way of passing documents

26  to oneanother[sic] during time frame at issue," such that Defendant cannot respond to this request

27  without guessing as to their meanings.  Based on the foregoing, Defendant is without sufficient

28  information to admit or deny, and on that basis responds:

6

AGO 000652

1        Deny.

2    **REQUEST FOR ADMISSION NO. 13:**

3        In reply to plaintiff's explanation to Giurbino, in above[Request # 12], you heard Giurbino

4    state that 'what the source had actually said was that the source had obtained the letter from

5    another inmate in his pod.'

6    **RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

7        Defendant objects to this request on the grounds that it is vague, ambiguous, and

8    overbroad as to the applicable time period, and as to the meaning of the terms "in reply to

9    plaintiff's explanation to Giurbino in above[Request # 12]," and "Giurbino state that 'what the

10   source had actually said was that the source had obtained the letter from another inmate in his

11   pod,'" such that Defendant cannot respond to this request without guessing as to their meanings.

12   Based on the foregoing, Defendant is without sufficient information to admit or deny, and on that

13   basis responds:

14       Deny.

15   **REQUEST FOR ADMISSION NO. 14:**

16       The summary of events in above [Requests for ADmissions # 12, & 13], was the basis for

17   you tp[sic] provide plaintiff with a "Corrected" CDCR 1030 Form, regarding C.M. dated 5/21/12,

18   in accord with what Giurbino had stated in response to plaintiff's rebuttal point.

19   **RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

20       Defendant objects to this request on the grounds that it is compound, and that it is vague,

21   ambiguous, and overbroad as to the meaning of the terms "summary of events in above [Requests

22   for ADmissions # 12, & 13]," "basis for you tp[sic] provide plaintiff with a "Corrected" CDCR

23   1030 Form, regarding C.M. dated 5/21/12," and "in accord with what Giurbino had stated in

24   response to plaintiff's rebuttal point," such that Defendant cannot respond to this request without

25   guessing as to their meanings.  Based on the foregoing, Defendant is without sufficient

26   information to admit or deny, and on that basis responds:

27       Deny.

28

7

AGO 000653

**REQUEST FOR ADMISSION NO. 15:**

Attachment 3, is a genuine copy of the "Corrected" CDCR 1030 Form, regarding, C.M. dated 5/21/12, signed, and dated by you on 3/04/15.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Defendant objects to this request on the grounds that it is compound, and is vague, ambiguous, and overbroad as to the meaning of the terms "genuine," "'Corrected' CDCR 1030 Form, regarding, C.M. dated 5/21/12, signed, and dated by you on 3/04/15," such that Defendant cannot respond to this request without guessing as to their meanings. Based on the foregoing, Defendant is without sufficient information to admit or deny, and on that basis responds:

Deny.

**REQUEST FOR ADMISSION NO. 16:**

Attachment 3, was created by you for purpose of correcting the ommision[sic] of information in/Attachment 2] as described in[above admissions # 12, & 13]

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Defendant objects to this request on the grounds that it is vague, ambiguous, and overbroad as to the meaning of the terms, "was created," and "for purpose of correcting the ommision[sic] of information in/Attachment 2] as described in[above admissions # 12, & 13]," such that Defendant cannot respond to this request without guessing as to their meanings. Based on the foregoing, Defendant is without sufficient information to admit or deny, and on that basis responds:

Deny.

**REQUEST FOR ADMISSION NO. 17:**

When you gave plaintiff the "Corrected" CDCR 1030 Disclosure on 3/04/15 [Attachment 3], plaintiff noted it did not state what Giurbino had claimed during the 9/10/2014 hrg. [SEE: Above Request number13]; and you replied that you "know this, and you looked very carefully, and the C.M. dated 5/21/12, did not state what Mr. Giurbino said.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Defendant objects to this request on the grounds that it is vague, ambiguous, and

8

Def. Vargas' Resp. Req. Admis., Set 1  (3:18-cv-06350-WHA)

AGO 000654

1    overbroad as to the meaning of the terms, "'Corrected' CDCR 1030 Disclosure," "plaintiff

2    noted," "it did not state what Giurbino had claimed during the 9/10/2014 hrg. [SEE: Above

3    Request number13]," and "you replied that you "know this, and you looked very carefully, and

4    the C.M. dated 5/21/12, did not state what Mr. Giurbino said," such that Defendant cannot

5    respond to this request without guessing as to their meanings.  Based on the foregoing, Defendant

6    is without sufficient information to admit or deny, and on that basis responds:

7        Deny.

8    **REQUEST FOR ADMISSION NO. 18:**

9        The CDCR 1030 Disclosure of information regarding C.M. dated 5/21/12, that you

10   created [referenced in above requests # 8-to-17], does not include a claim that the source of C.M.

11   dated 5/21/12, had stated plaintiff was calling for the murder of doctor, and attorneys in [October

12   2011], because the source [never made the claim) plaintiff was calling for the murder(s) in

13   [October 2011].

14   **RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

15       Defendant objects to this request on the grounds that it is vague, ambiguous, and

16   overbroad as to the meaning of the terms "regarding C.M. dated 5/21/12," "that you created

17   [referenced in above requests # 8-to-17]," "does not include a claim that the source of C.M. dated

18   5/21/12, had stated plaintiff was calling for the murder of doctor," "attorneys in [October 2011],"

19   and "because the source [never made the claim) plaintiff was calling for the murder(s) in [October

20   2011]," such that Defendant cannot respond to this request without guessing as to their meanings.

21   Based on the foregoing, Defendant is without sufficient information to admit or deny, and on that

22   basis responds:

23       Deny.

24   **REQUEST FOR ADMISSION NO. 19:**

25       Attachment 4, is a genuine copy of the CDCR 1030 Disclosure Form, signed and dated by

26   you on 9/2/14 [regarding C.M. dated 3/29/13]

27   **RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

28       Defendant objects to this request on the grounds that it is vague, ambiguous, and

9

**AGO 000655**

1    overbroad as to the meaning of the terms "genuine," and "CDCR 1030 Disclosure Form, signed

2    and dated by you on 9/2/14 [regarding <u>C.M.</u> dated 3/29/13]," such that Defendant cannot respond

3    to this request without guessing as to their meanings.  Based on the foregoing, Defendant is

4    without sufficient information to admit or deny, and on that basis responds:

5       Deny.

6    **REQUEST FOR ADMISSION NO. 20:**

7       The last two-sentences included by you [in <u>Attachment 4</u>, CDCR 1030 Disclosure, <u>re:</u>

8    <u>C.M.</u> dated 3/29/13], at[part 3. of Disclosure Form] incorrectly state <u>"October 2011"</u> as the

9    'corroborating the time frame in <u>C.M.</u> dated 5/21/12 as when Ashker was calling for the murder of

10    the PBSP Doctor & the lawyers.'

11    **RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

12       Defendant objects to this request on the grounds that it is compound, argumentative, and

13    vague, ambiguous, and overbroad as to the meaning of the terms, "last two-sentences included by

14    you [in <u>Attachment 4,</u> CDCR 1030 Disclosure, <u>re: C.M.</u> dated 3/29/13], at[part 3. of Disclosure

15    Form]," and "incorrectly state <u>"October 2011"</u> as the 'corroborating the time frame in <u>C.M.</u> dated

16    5/21/12 as when Ashker was calling for the murder of the PBSP Doctor & the lawyers,'" such

17    that Defendant cannot respond to this request without guessing as to their meanings.  Based on

18    the foregoing, Defendant is without sufficient information to admit or deny, and on that basis

19    responds:

20       Deny.

21    **REQUEST FOR ADMISSION NO. 21:**

22       Attachement[sic] 5, is a genuine copy of the CDCR 1030 Disclosure Form, signed and

23    dated by you on 9/2/14 (regarding <u>C.M.</u> dated 4/02/l3)

24    **RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

25       Defendant objects to this request on the grounds that it is vague, ambiguous, and

26    overbroad as to the meaning of the terms "genuine," and "CDCR 1030 Disclosure Form, signed

27    and dated by you on 9/2/14 [regarding <u>C. M.</u> dated 4/02/l3]," such that Defendant cannot respond

28    to this request without guessing as to their meanings.  Based on the foregoing, Defendant is

10

Def. Vargas' Resp. Req. Admis., Set 1  (3:18-cv-06350-WHA)

**AGO 000656**

1    without sufficient information to admit or deny, and on that basis responds:

2         Deny.

3    **REQUEST FOR ADMISSION NO. 22:**

4         You are the author of the summary included at CDCR 1030 Form [at"3. The information

5    received indicated the following:….."] [re: Attachemnt[sic] 5]

6    **RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

7         Defendant objects to this request on the grounds that it is vague, ambiguous, and

8    overbroad as to the meaning of the terms, "author," and "summary included at CDCR 1030 Form

9    [at"3. The information received indicated the following:….."] [re: Attachemnt[sic] 5]," such that

10   Defendant cannot respond to this request without guessing as to their meanings.  Based on the

11   foregoing, Defendant is without sufficient information to admit or deny, and on that basis

12   responds:

13        Deny.

14   **REQUEST FOR ADMISSION NO. 23:**

15        You included the following information on [Attachement[sic] 5],…".... Two of the inmates

16   were validated & self-admitted STG-1 AB members, who have since defected from the gang.

17   They corroborated & confirmed that it was common knowledge among AB members that the

18   identified PBSP doctor was targeted for death by Ashker. They also confirmed the identified

19   attorneys from a law firm who had represented CDCR against lawsuits brought on by Ashker

20   were also targeted…."

21   **RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

22        Defendant objects to this request on the grounds that it is compound, and that the

23   document speaks for itself, and that this request is vague, ambiguous, and overbroad as to the

24   meaning of the term "included the following information on [Attachement[sic] 5]," such that

25   Defendant cannot respond to this request without guessing as to their meanings.  Based on the

26   foregoing, Defendant is without sufficient information to admit or deny, and on that basis

27   responds:

28        Deny.

AGO 000657

1    **REQUEST FOR ADMISSION NO. 24:**

2    Attachment 5, includes [at "Reliability of Source."], This information is reliable because:

3    X More than one source provided the information; and, X This source incriminated himself...."

4    [These alleged claims about source(s) reliability(s), are not true].

5    **RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

6    Defendant objects to this request on the grounds that it is compound and argumentative,

7    and that it is vague, ambiguous, and overbroad as to the meaning of the terms, "Attachment 5,

8    includes [at "Reliability of Source."]," "This information is reliable because: X More than one

9    source provided the information," ""X This source incriminated himself....,'" and "these alleged

10   claims about source(s) reliability(s)," such that Defendant cannot respond to this request without

11   guessing as to their meanings.  Based on the foregoing, Defendant is without sufficient

12   information to admit or deny, and on that basis responds:

13   Deny.

14   **REQUEST FOR ADMISSION NO. 25:**

15   The summarized parts of Attachment 5 [referenced above in requests # 23, & 24],

16   misrepresent what C.M. dated 4/02/13, actually states.

17   **RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

18   Defendant objects to this request on the grounds that it is compound, and that it is vague,

19   ambiguous, and overbroad as to the meaning of the terms "summarized parts of Attachment 5

20   [referenced above in requests # 23, & 24]," "misrepresent," and "what C.M. dated 4/02/13,

21   actually states," such that Defendant cannot respond to this request without guessing as to their

22   meanings.  Based on the foregoing, Defendant is without sufficient information to admit or deny,

23   and on that basis responds:

24   Deny.

25   **REQUEST FOR ADMISSION NO. 26:**

26   Attachment 6, is a genuine copy of CDCR 1030, Confidential Information Disclosure

27   Form, signed and dated by CC-III, Alexandria Perez, on 12/15/15 [regarding C.M. dated

28   4/02/13]; and noted to have been issued to plaintiff on 12/22/15, by CC-I, Fellis]

12

Def. Vargas' Resp. Req. Admis., Set 1  (3:18-cv-06350-WHA)

AGO 000658

1    **RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

2        Defendants object to this request on the grounds that it is compound and seeks admission

3    of facts that Defendant has no personal knowledge of.  Defendant further object that this request

4    is vague, ambiguous, and overbroad as to the meaning of the terms "genuine copy," "CDCR

5    1030, Confidential Information Disclosure Form, signed and dated by CC-III, Alexandria Perez,

6    on 12/15/15 [regarding C.M. dated 4/02/13]," and "noted to have been issued to plaintiff on

7    12/22/15, by CC-I, Fellis]," such that Defendant cannot respond to this request without guessing

8    as to their meanings.  Based on the foregoing, Defendant is without sufficient information to

9    admit or deny, and on that basis responds:

10       Deny.

11   **REQUEST FOR ADMISSION NO. 27:**

12       The second paragraph of Attachment 6 [at "3. Disclosure of information received….."]

13   includes the following: "....The Special Service Unit conducted an investigstion[sic] into potential

14   threat against a Doctor employed at PBSP, due to discovery of an inmate manufactured

15   communication referencing killing a Doctor at PBSP, and two attorneys. Seven inmates, three

16   staff members, and two citizens were interviewed. A validated, affiliate of the Aryan Brotherhood

17   (AB) (STG91) (same inmate in Confidential Memorandum dated 2/26/13 and 8/15/13) was

18   interviewed in April 2013 during the investigation. The confidential source was shown a copy of

19   an intercepted (confiscated) communication found in the cell of a validated AB STG affiliate in

20   March 2013, containing specific plans to murder or harm a doctor (employed at PBSP). The

21   confidential source reported he [was not aware of the plan to assault staff at PBSP, and it was his

22   opinion that the AB STG-1 Commission would not approve the hit on staff memebers...."

23   **RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

24       Defendant objects to this request on the grounds that the document speaks for itself, and is

25   vague, ambiguous, and overbroad as to the meaning of the term, "second paragraph of

26   Attachment 6 [at "3. Disclosure of information received….."] includes," such that Defendant

27   cannot respond to this request without guessing as to its meaning.  Based on the foregoing,

28   Defendant is without sufficient information to admit or deny, and on that basis responds:

13

Def. Vargas' Resp. Req. Admis., Set 1  (3:18-cv-06350-WHA)

**AGO 000659**

1     Deny.

2     **REQUEST FOR ADMISSION NO. 28:**

3     The above quoted part from <u>attachement</u>[sic] 6, accurately states what is stated in the

4     <u>C.M.</u> dated 4/02/13.

5     **RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

6     Defendant objects to this request on the grounds that it is vague, ambiguous, and

7     overbroad as to the meaning of the terms, "above quoted part from <u>attachement</u>[sic] 6," and

8     "accurately states what is stated in the <u>C.M.</u> dated 4/02/13," such that Defendant cannot respond

9     to this request without guessing as to their meaning.  Based on the foregoing, Defendant is

10    without sufficient information to admit or deny, and on that basis responds:

11    Deny.

12    **REQUEST FOR ADMISSION NO. 29:**

13    The fact is, there was only [one source] who claimed to have first hand information about

14    plaintiff's alleged involvement in a conspiracy to murder a PBSP Doctor, and attorneys during a

15    time frame in 2007 and 2008. [SEE Attachemnt[sic] #s 2, and 6]

16    **RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

17    Defendant objects to this request on the grounds that it is argumentative, and is vague,

18    ambiguous, and overbroad as to the meaning of the terms "only [one source]," "claimed to have

19    first hand information," and "plaintiff's alleged involvement in a conspiracy to murder a PBSP

20    Doctor, and attorneys during a time frame in 2007 and 2008," such that Defendant cannot respond

21    to this request without guessing as to their meanings.  Based on the foregoing, Defendant is

22    without sufficient information to admit or deny, and on that basis responds:

23    Deny.

24    **REQUEST FOR ADMISSION NO. 30:**

25    The source who alleged plaintiff was calling for the murder of the PBSP Doctor, &

26    attorneys, admitted that he had ~~been~~ blamed[sic] plaintiff for [source] being ostrasized, and in

27    response the [source] claimed he had "created his own hit list, with plaintiff's name at the top of

28    his list." [<u>per</u>. <u>C.M.</u> dated 12/7 /12, copy attached as <u>Attachment 7</u> hereto]. Attachment 7, is a

<div align="center">14</div>

**AGO 000660**

1  genuine copy of your CDCR-1030, Disclosure Form]

2  **RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

3      Defendant objects to this request on the grounds that it is compound, and is vague,

4  ambiguous, and overbroad as to the meaning of the terms, "source who alleged plaintiff was

5  calling for the murder of the PBSP Doctor, & attorneys," "admitted that he had ~~been~~ blamed[sic]

6  plaintiff for [source] being ostrasized," "in response the [source] claimed he had "created his own

7  hit list, with plaintiff's name at the top of his list." [per. C.M. dated 12/7 /12, copy attached as

8  Attachment 7 hereto]," "genuine copy," and "your CDCR-1030, Disclosure Form," such that

9  Defendant cannot respond to this request without guessing as to their meanings. Based on the

10  foregoing, Defendant is without sufficient information to admit or deny, and on that basis

11  responds:

12      Deny.

13  **REQUEST FOR ADMISSION NO. 31:**

14      The source who alleged plaintiff was calling for the murder of the PBSP Doctor &

15  attorneys [Attachements[sic] # 2, 6], also claimed that he [the source, of C.M. 5/21/12], had

16  personally planned to attempt to kill the doctor at PBSP in 2008, "however, the ~~w~~ plan was foiled

17  due to several staff memebers[sic] in the area at that time." [Attachment 6].

18  **RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

19      Defendant objects to this request on the grounds that it is vague, ambiguous, and

20  overbroad as to the meaning of the terms "source who alleged plaintiff was calling for the murder

21  of the PBSP Doctor & attorneys [Attachements[sic] # 2, 6]," "also claimed," "he [the source, of

22  C.M. 5/21/12]," "planned to attempt to kill the doctor at PBSP in 2008 'however, the ~~w~~ plan was

23  foiled due to several staff memebers[sic] in the area at that time.' [Attachment 6]," such that

24  Defendant cannot respond to this request without guessing as to their meanings.

25      Based on the foregoing, Defendant is without sufficient information to admit or deny, and

26  on that basis responds:

27      Deny.

28

15

Def. Vargas' Resp. Req. Admis., Set 1  (3:18-cv-06350-WHA)

**AGO 000661**

1    **REQUEST FOR ADMISSION NO. 32:**

2         Attachment 8, is a genuine copy of CDCR 1030, Confidential Information Disclosure

3    Form, signed and dated by you on 9/2/14 [regarding **C.M.** dated 10/10/12]

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

5         Defendant objects to this request on the grounds that it is vague, ambiguous, and

6    overbroad as to the meaning of the term, "genuine copy," such that Defendant cannot respond to

7    this request without guessing as to its meaning.  Based on the foregoing, Defendant is without

8    sufficient information to admit or deny, and on that basis responds:

9         Deny.

10   **REQUEST FOR ADMISSION NO. 33:**

11        There was no direct evidence connecting plaintiff to the alleged conspiracy to murder a

12   PBSP Doctor, and attorneys, at the time of plaintiff's 9/10/14 DRB Hearing.

13   **RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

14        Defendant objects to this request on the grounds that it is argumentative, and is vague,

15   ambiguous, and overbroad as to the meaning of the terms, "direct evidence," and "connecting

16   plaintiff to the alleged conspiracy to murder a PBSP Doctor, and attorneys," such that Defendant

17   cannot respond to this request without guessing as to their meanings.  Based on the foregoing,

18   Defendant is without sufficient information to admit or deny, and on that basis responds:

19        Deny.

20   **REQUEST FOR ADMISSION NO. 34:**

21        Pursuant to California Code of Regulation (CCR), Title 15, §§ 3310, et. seq., any staff

22   member who believes an inmate has committed a serious rule violation, is mandated to issue a

23   formal rule violation to the inmate(s), involved

24   **RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

25        Defendant objects to this request on the grounds that it is vague, ambiguous, and

26   overbroad as to the meaning of the terms, "California Code of Regulation (CCR), Title 15, §§

27   3310, et. seq.," "believes," "serious rule violation," "is mandated," and "issue a formal rule

28   violation," such that Defendant cannot respond to this request without guessing as to their

16

AGO 000662

1  meanings.  Based on the foregoing, Defendant is without sufficient information to admit or deny,

2  and on that basis responds:

3       Deny.

4  **REQUEST FOR ADMISSION NO. 35:**

5       Conspiracy to committ[sic] murder is considered a "serious rule violation" in CDCR.

6  **RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

7       Defendant objects to this request on the grounds that is vague, ambiguous, and overbroad

8  as to the meaning of the terms "is considered," and "serious rule violation," such that Defendant

9  cannot respond to this request without guessing as to their meanings.  Based on the foregoing,

10  Defendant is without sufficient information to admit or deny, and on that basis responds:

11       Deny.

12  **REQUEST FOR ADMISSION NO. 36:**

13       Plaintiff has not been issued a "rule violation," based on the allegations made by inmate

14  informants in the C.M.s dated 5/21/12, 10/10/12, 12/7/12, 3/29/13, 4/02/13, 2/26/13/, or 8/15/13,

15  because the involved staff members reviewing these C.M.s recognized the allegations in said

16  C.M.s were 'unsupported allegations from unreliable[sic] informants, with admitted animosities

17  against plaintiff.'

18  **RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

19       Defendant objects to this request on the grounds that it is compound, and is vague,

20  ambiguous, and overbroad as to the meaning of the terms, "been issued a 'rule violation,'" "based

21  on," "the allegations made by inmate informants in the C.M.s dated 5/21/12, 10/10/12, 12/7/12,

22  3/29/13, 4/02/13, 2/26/13/, or 8/15/13," and "because the involved staff members reviewing these

23  C.M.s recognized the allegations in said C.M.s were 'unsupported allegations from unreliable[sic]

24  informants, with admitted animosities against plaintiff,'" such that Defendant cannot respond to

25  this request without guessing as to their meanings.  Defendant further objects that this request

26  calls for speculation, and asks Defendant to admit facts she has no personal knowledge of.  Based

27  on the foregoing, Defendant is without sufficient information to admit or deny, and on that basis

28  responds:

17

Def. Vargas' Resp. Req. Admis., Set 1  (3:18-cv-06350-WHA)

1    Deny.

2    **REQUEST FOR ADMISSION NO. 37:**

3         CDCR Rules of Regulations include the mandate that inmates subject to serious rule

4    violation charges, are entitled to due process, inclusive of the right to an staff

5    assistant/investigative employee, the right to call witnesses; The right to all information-evidence

6    relied upon; and the right to non-biased hearing officer's adjudication of the charge(s) based on a

7    "preponderance-of-evidence".

8    **RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

9         Defendant objects to this request on the grounds that it is compound, and is vague,

10   ambiguous, and overbroad as to the meaning of the terms, "include the mandate," and "inmates

11   subject to serious rule violation charges," such that Defendant cannot respond to this request

12   without guessing as to their meanings.  Defendant further objects that this request presents and

13   incomplete hypothetical and calls for speculation.  Based on the foregoing, Defendant is without

14   sufficient information to admit or deny, and on that basis responds:

15       Deny.

16   Dated:  December 2, 2021                    Respectfully submitted,

17                                               ROB BONTA
                                                 Attorney General of California
18                                               MARISA KIRSCHENBAUER
                                                 Supervising Deputy Attorney General
19

20

21                                               */s/ Cassandra J. Shryock*
                                                 CASSANDRA J. SHRYOCK
22                                               Deputy Attorney General
                                                 *Attorneys for Defendants*

23   SF2020400523
     42984458.docx
24

25

26

27

28

Def. Vargas' Resp. Req. Admis., Set 1  (3:18-cv-06350-WHA)

**AGO 000664**

EXHIBIT X

AGO 000665

3/10/13                    Does 22 1/2 hours alone in an 8-by-10 cell every day amount to torture? | Center for Investigative Reporting





Reports     Does 22 1/2 hours alone in an 8-by-10 cell every day amount to torture?

# Does 22 1/2 hours alone in an 8-by-10 cell every day amount to torture?

ADVERTISEMENT

Feb 25, 2013

**Michael Montgomery**
Radio Producer/Reporter

Project(s):               Topic(s):            READ THIS LATER      SHARE
Prisons Under Pressure    Crime and Justice

"I haven't seen the moon since 1998."

That's inmate Jeremy Beasley, talking to me while sitting – shackled – in an interview room at Pelican Bay State Prison, California's highest security lockup.

Beasley, a convicted murderer, was clearly surprised by my presence – he told me he hadn't met with a visitor since 1994, when he was incarcerated.

It's not just the moon Beasley hadn't seen in 15 years. During that time, in fact, Beasley rarely glimpsed the outside world. Before being transferred to another prison, he was held in Pelican Bay's Security Housing Unit, a windowless, bunker-like facility that houses more than 1,000 California inmates.

For 22-and-a-half hours a day, each inmate here is locked, usually alone, in an 8-by-10-feet cell. For 90 minutes the inmate is allowed to exercise in an adjacent room with 25-30 feet high walls. And that's his entire day – every day.

"I've seen guys lose their minds back here," Beasley tells me.

Today in Sacramento, lawmakers will delve into a growing national controversy over special security units like Pelican Bay's that are used to isolate thousands of inmates from the regular prison population. Civil rights groups say long-term isolation amounts to torture, while state corrections officials say the units are necessary and the conditions are humane.

Around the state there are four of these Security Housing Unit facilities. Pelican Bay's is the most controversial.

Conditions in the units are one part of the debate. Many inmates are held in windowless cells and have been



AGO 000666

3/10/13                    Does 22 1/2 hours alone in an 8-by-10 cell every day amount to torture? | Center for Investigative Reporting

denied everything from calendars and sweatpants
to phone calls. Also at issue: criteria that
determine which prisoners are placed there and
how they can get back into the regular population
again.



Then there is the long amount of time some
inmates spend in the facilities. More than 500
California prisoners have been locked in the
special units for 10 years or longer, according to
state data. Of those, 78 prisoners have been held
inside for more than 20 years.

.Units at Pelican Bay's Security Housing Units have no
windows so inmates' only regular view of the outside
world is through the top of the exercise pens.
**Credit:** Monica Lam/Center for Investigative
Reporting

Over the years, authorities have allowed media
into Pelican Bay's Security Housing Unit, but
access has been limited and the inmates carefully
selected by the prison staff.

However, top corrections officials granted unusual access to a team of reporters and videographers from the
Center for Investigative Reporting and KQED. We visited all areas of Pelican Bay's Security Housing Unit
except for a section that houses leaders of a 2011 hunger strike.

Using a small camera mounted to a wall, our team recorded Beasley exercising with a rubber handball in the
small concrete pen (prison staff began allowing the balls last year). At all other times – day and night – he
was held in his cell, alone. While skylights allow filtered sunlight into the units, there are no windows.

A class-action lawsuit filed last year by a coalition of civil rights groups states:

> *California's uniquely harsh regime of prolonged solitary confinement at Pelican Bay is inhumane and
> debilitating. Plaintiffs and class members languish, typically alone, in a cramped, concrete,
> windowless cell, for 22 and one-half to 24 hours a day. They are denied telephone calls, contact
> visits, and vocational, recreational or educational programming.*
>
> *Defendants persistently deny these men the normal human contact necessary for a person's mental
> and physical wellbeing. These tormenting and prolonged conditions of confinement have produced
> harmful and predictable psychological deterioration among Plaintiffs and class members.*
>
> *The solitary confinement regime at Pelican Bay, which renders California an outlier in this country
> and in the civilized world, violates the United States Constitution's requirement of due process and
> prohibition of cruel and unusual punishment, as well as the most basic human rights prohibitions
> against cruel, inhuman or degrading treatment. Indeed, the prolonged conditions of brutal
> confinement and isolation at Pelican Bay cross over from having any valid penological purpose into
> a system rightly condemned as torture by the international community.*

But state corrections officials maintain that conditions in the special units are humane; that they do not
practice solitary confinement; that inmates are "segregated" but not "isolated"; and that there is a valid
purpose for keeping prisoners in the units – protecting other inmates, staff and the public from men who
have been linked to violent prison gangs.

"These are the men who are propagating the violence, the drug trafficking, the extortions and the murders
throughout the larger communities of our state," said Pelican Bay warden Greg Lewis.

Without conceding any shortcomings, however, corrections officials are embarking on a new policy to bring
in more educational and self-help programs, and to reduce the amount of time some inmates spend in the
units.

Since last October, officials have reviewed the cases of 144 inmates and determined that 75 should be
transferred immediately to regular prisons because they were not active in gangs. Some of the inmates have
been held in the special units for more than 20 years, according to Kelly Harrington, an associate
corrections director.

Pelican Bay inmates who led the 2011 hunger strike, as well as some prisoner rights groups, have
denounced the new policy and are threatening more protests this summer. Amid a long list of demands, they
are seeking shorter, fixed terms for inmates in the special units (currently, most are held there on
"indeterminate" terms), more programs and more frequent visits with family members.

For his part, Jeremy Beasley said that while the conditions at Pelican Bay are awful, he doesn't think they
amount to solitary confinement. Although he can't see other inmates from his cell (doors are made of
perforated steel and face a wall), Beasley says he can carry on conversations with them.

"Don't get me wrong," he said. "It sucks in here. I hate it. But some prisoners have found that they can get a

AGO 000667

3/10/13      Does 22 1/2 hours alone in a cell every day amount to torture? | Center for Investigative Reporting

lot of attention by exaggerating how bad it is."

Beasley said he was an active member of the Aryan Brotherhood, a white-power gang, and committed assaults on behalf of the group. He agreed to drop out and provide authorities with incriminating information about other members, a process known as "debriefing." In exchange, officials recently transferred Beasley to a different prison.



Inmate Jeremy Beasley has spent nearly 15 years in the special security unit at Pelican Bay State Prison. Credit: Singeli Agnew/Center for Investigative Reporting

"I believe that some people should be isolated. If they were to cut me loose before I debriefed and I went back to the mainline," he said, using the term for the general prison population, "I would have killed somebody or at the very least I would have stabbed somebody else."

Other Pelican Bay inmates see it differently.

"There is only one option to get out of here and that is to make up lies about other people," said 39-year-old Henry Albanez, who is serving a 27-year sentence for kidnapping. Albanez said he expected the department's new policies would fail.

"How do you expect to take all of these guys out of the SHU (Security Housing Unit) and throw them in the same yard and expect them to get along when you have all this sensory deprivation?" he said.

Still, Albanez said he probably would take part in a new step-down program that begins later this year. Corrections officials have said the program allows inmates to earn their way out of the special units in two to four years without being required to renounce the gangs they have been affiliated with. Instead, they must declare that they won't participate in gang activity.

State Assemblyman Tom Ammiano, D-San Francisco, who visited Pelican Bay early this month, said he found the prison clean and professionally staffed but was troubled thinking that some inmates are locked up for decades in small cells with little or no regular human contact. Inmates must also be shackled whenever they are outside their cells and in the presence of another individual.

"I do think it's psychologically devastating to be in such a tight space for so long," Ammiano said.

What, then, about the question of torture?

Ammiano said the strangest thing he saw at the prison was a group therapy room where inmates are locked in small cages during sessions.

"Could I say that's torture? Perhaps I could," he said. "But did we witness any torture? No."

*You can listen to Michael Montgomery report from California's most controversial, highest security lockup on The California Report, on the following stations around the state. The report will also be archived at the show's website.*

*This story was produced in collaboration with KQED.*

---

*Like our content? Help us do more.*    | SUPPORT US |

**LEAVE A COMMENT**

Login or signup

**You must be logged in to comment**

Type your comment here...

Post

Live

AGO 000668

3/10/13                    Does 22 1/2 hours alone in an 8-by-10 cell every dayamount to torture? | Center for Investigative Reporting

No items at this time...

VIA TWITTER

                                                                      Live


**dan v.**
"i haven't seen the moon since 1998" http://bit.ly/ZWVwN6
2 Days Ago from Twitter · Reply


**Ernest Partin**
RT @Dawson_LM: Does 22 1/2 hours alone in an 8-by-10 cell everydayamount to torture?http://bit.ly/XOso4q
    solitary    STOPsolitary
6 Days Ago from Twitter · Reply


**Nicole**
RT @Dawson_LM: Does 22 1/2 hours alone in an 8-by-10 cell every day amount to torture?http://bit.ly/XOso4q
    solitary    STOPsolitary
Last Week from Twitter · Reply


**valrie fowler**
RT @CAReentry: Does 22 1/2 hours alone in an 8-by-10 cell everyday amount to torture? - http://bit.ly/ZWVwN6
    CAPrisons          CJReform
Last Week from Twitter · Reply


**Starr**
RT @Dawson_LM: Does 22 1/2 hours alone in an 8-by-10 cell every day amount to torture?http://bit.ly/XOso4q
    solitary    STOPsolitary
Last Week from Twitter · Reply


**Mair**
RT @CAReentry: Does 22 1/2 hours alone in an 8-by-10 cell everydayamount to torture? - http://bit.ly/ZWVwN6
    CAPrisons          CJReform
Last Week from Twitter · Reply


**Mark Matthews, Sr.**
RT @CAReentry: Does 22 1/2 hours alone in an 8-by-10 cell every day amount to torture? - http://bit.ly/ZWVwN6
    CAPrisons          CJReform
Last Week from Twitter · Reply


**CA Reentry Program**
Does 22 1/2 hours alone in an 8-by-10 cell every day amount to torture? - http://bit.ly/ZWVwN6    CAPrisons
    CJReform
Last Week from Twitter · Reply


**Lisa Dawson**
Does 22 1/2 hours alone in an 8-by-10 cell everyday amount to torture?http://bit.ly/XOso4q    solitary
    STOPsolitary
Last Week from Twitter · Reply


**Pierre Alonso**
[@cironline] "Je n'ai pas vu la lune depuis 1994", le quotidien dans une prison californienne de haute sécurité
http://bit.ly/WnfI9E
Last Week from Twitter · Reply


**Sister Sunshine TV**
RT @CaliforniaWatch: if u cant do the time dont do the crime    no sympathy http://flip.it/IQGLi
Last Week from Twitter · Reply


**Henry Blodget**
Ugh RT @ProPublica: "I haven't seen the moon since '98." A look inside solitary confinement in CA prison
http://propub.ca/YQh9vO
Last Week from Twitter · Reply


**ProPublica**
"I haven't seen the moon since '98." A look inside solitary confinement in CA's Pelican Bay prison
http://propub.ca/YQh9vO via @CIRonline
Last Week from Twitter · Reply


**California Watch**
"I haven't seen the moon since 1998." California inmate locked for 22 1/2 hours a day in 8-by-10-feet cell.
http://ow.ly/ibyO5
Last Week from Twitter · Reply

22 1/2 hours alone 8-10 cell every day amount torture-4225

AGO 000669

4/5

EXIBIT y

AGO 000670

1  KAMALA D. HARRIS
   Attorney General of California
2  WILLIAM C. KWONG
   Supervising Deputy Attorney General
3  JILLIAN R. O'BRIEN
   Deputy Attorney General
4  MARTINE N. D'AGOSTINO
   Deputy Attorney General
5  ADRIANO HRVATIN
   Deputy Attorney General
6  State Bar No. 220909
   455 Golden Gate Avenue, Suite 11000
7  San Francisco, CA  94102-7004
   Telephone:  (415) 703-6207
8  Fax:  (415) 703-5843
   E-mail:  Adriano.Hrvatin@doj.ca.gov
9  *Attorneys for Defendants*

10            IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                     OAKLAND DIVISION

13

14

15  **TODD ASHKER, et al.,**              C 09-05796 CW

16                        Plaintiffs,    **DECLARATION OF J. BRYAN ELROD
                                          IN SUPPORT OF DEFENDANTS'**
17            v.                         **OPPOSITION TO PLAINTIFFS'
                                          MOTION FOR CLASS CERTIFICATION**
18  **GOVERNOR OF THE STATE OF**          **REDACTED**
19  **CALIFORNIA, et al.,**

20                        Defendants.

21

22        I, J. Bryan Elrod, declare as follows:

23        1.   I am a convicted felon and an ex-member of the Aryan Brotherhood prison gang.  I

24  am currently incarcerated in the Security Housing Unit (SHU) at Pelican Bay State Prison.  I

25  submit this declaration in support of Defendants' opposition to Plaintiffs' motion for class

26  certification.  If called to testify, I could competently and truthfully testify as to these matters.  I

27  submit this declaration freely and voluntarily.

28
                                          1

   Elrod Decl. Supp. Defs.' Opp'n Pls.' Mot. Class Certification (C 09-05796 CW)

**AGO 000671**

2.    I am from east Texas. In 1991, when I was 17-years old, I was convicted of first degree murder and robbery in Bakersfield, California. My sentence was 29 years to life. It was the first time I had ever been in trouble with the law. At the time, I was addicted to methamphetamine. In 1992, I was sent to California Youth Authority in Stockton, California. In 1994, I was transferred to California Correctional Institution, in Tehachapi, California. While at Tehachapi, I received a 16-month determinate SHU term for stabbing an African-American inmate. Although I was not formally associated with the Aryan Brotherhood at the time, I had begun mentally associating with them. As a young white guy, I looked up to the Aryan Brotherhood, or "the Brand," as we call it, when I was on the mainline, although I had never met anyone from the Aryan Brotherhood. In 1995, I was transferred to Pelican Bay, where I was housed in the SHU. In 1996, my determinate SHU term ended, and I was transferred to the general population at Pelican Bay.

3.    Once in the Pelican Bay general population, I was involved in a race riot between black and white inmates. We were ordered by the Aryan Brotherhood not to "make peace," or, in other words, we were ordered to participate in the riot. I stabbed a black inmate and received a two year determinate SHU term. I was sent back to the SHU.

4.    In 1997, I was charged with the murder of my cellmate in the SHU at Pelican Bay, a crime I did in furtherance of my association with the Aryan Brotherhood. Aryan Brotherhood member ▓▓▓▓▓▓ ordered his murder. I knew that if I did not follow orders, I would be targeted by the gang for assault or murder. The local District Attorney prosecuted the case, and I was given an additional 16-year sentence. In addition, I was disciplined by Pelican Bay prison officials and given an additional determinate SHU term of four years. I served the determinate SHU term from 1997 to 2000, and was then released into the general population, or mainline, at Pelican Bay.

5    Once I was released to the Pelican Bay general population for the second time, I was ordered by Aryan Brotherhood member ▓▓▓▓▓▓▓▓ not to stay there too long, meaning I should commit an offense which would get me sent back to the SHU. I was given the name of an inmate that the Aryan Brotherhood wanted killed and told to make sure that it was done. The

2

AGO 000672

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 150 of 294

Case 3:18-cv-06350-WHA  Document 67-3  Filed 02/02/22  Page 9 of 22
Case4:09-cv-05796-CW   Document249   Filed07/18/13   Page3 of 11

1   inmate was not on the yard when I was there, so I stabbed another inmate that I knew the Aryan

2   Brotherhood also wanted killed. I was given another determinate SHU term and returned to the

3   PBSP SHU.

4       6.   In 2001, I was validated as an associate of the Aryan Brotherhood. I have been

5   incarcerated at Pelican Bay's SHU ever since. In 2008, I was re-validated as a member of the

6   Aryan Brotherhood.

7       **Gang Activity Within the SHU**

8       7.   Beginning in 1994 and over the course of the next seventeen years, I followed the

9   racist, criminal, and violent culture of the Aryan Brotherhood prison gang, participating in

10   murder, assaults, criminal racketeering, recruitment, mentorship, and enforcement. When I

11   arrived at Pelican Bay's SHU, I met other brothers and my association with the Brand solidified.

12       8.   The code of the Aryan Brotherhood is to protect other whites. In addition, brothers

13   vow to immediately kill any sex offender they meet in prison, or known informants. This is part

14   of the twisted mentality of the Brand, having someone to look down on to avoid processing their

15   own crimes.

16       9.   I personally know of seven in-cell murders and one attempted murder committed by

17   Aryan Brotherhood inmates in the SHU on behalf of the Aryan Brotherhood. While all of the

18   inmates killed were on bad terms with the gang, I believe this string of murders to be the Aryan

19   Brotherhood trying to reassert its dominance in the prison through intimidation and fear. The list

20   includes the cellmate I murdered in 1997 for the Brand, while in the SHU. I was instructed how

21   to kill him by a fellow Aryan Brotherhood member. This inmate I murdered had promised to do a

22   murder for the Aryan Brotherhood, but had later backed out. I also "speared," or shot with a

23   small projectile, another inmate, a member of the Nazi Low Riders gang while in the SHU.

24   Additionally, I was "gassed" (when another inmate throws feces and urine on you) three times,

25   and speared once, while in the SHU.

26       10.   All Aryan Brotherhood decisions, including membership and the decision to order the

27   murder of another member, are taken by vote. I personally participated in countless votes while I

28   was a member of the Brand while in the SHU. These votes are taken by yelling through the

<div align="center">3</div>

**AGO 000673**

1   drains, talking in the law library, or sending kites (written messages between inmates), to name a

2   few examples.  Sometimes it would take months to complete voting in the SHU.

3       11.   Another common Aryan Brotherhood activity is to ask for every white inmate's

4   paperwork when he arrives at the SHU.  When I arrived at the SHU, I gave an Aryan Brotherhood

5   member my prison chronos (prison documents detailing medical or classification information),

6   and my parole paperwork.  These documents will indicate an inmate's commitment offense,

7   where he is from, and his street gang affiliation, if any.  Additionally, sometimes Aryan

8   Brotherhood members will ask an inmate for the criminal trial transcripts from his commitment

9   offense to see if he has ever testified against the Brotherhood, or any one else.

10      12.   In eleven years as an active member of the Aryan Brotherhood, I only received one

11   115 Rule Violation Report.  But, I was still an active member in the Aryan Brotherhood, who

12   participated in enforcement, votes, communications, organization, and recruitment.  Yet apart

13   from material contained in my confidential central file, I have no documented gang activity.  I

14   have never been convicted of a gang-related crime, or received any CDCR rule infraction for

15   gang activity.

16      **The SHU's Effectiveness in Curtailing Gang Activity**

17      13.   It is my opinion, and the opinion of other Aryan Brotherhood members I know, that

18   the short corridor at Pelican Bay's SHU has effectively killed the Brand.  Because most of the

19   Aryan Brotherhood leadership is housed in the short corridor, away from inmates with

20   determinate SHU terms who will soon be released to the general population, it is very difficult for

21   them to influence the mainline inmates anymore, because the lines of communication out there

22   have been cut.

23      **The Security Housing Unit is not Torture**

24      14.   The SHU is austere and no place for the mentally ill.  But it is not inhumane, or

25   torture.  I came to Pelican Bay SHU's in 1995 and have been living under these conditions for

26   about 16 1/2 of my 18 years, and I am in no way mentally debilitated.  At 40, I will leave the

27   SHU far saner than the out-of-control 22-year-old kid who arrived here.

28

4

Elrod Decl. Supp. Defs.' Opp'n Pls.' Mot. Class Certification (C 09-05796 CW)

AGO 000674

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 152 of 294

Case 3:18-cv-06350-WHA   Document 67-3   Filed 02/02/22   Page 11 of 22
Case4:09-cv-05796-CW   Document249   Filed07/18/13   Page5 of 11

15. In the SHU, we have many opportunities for social interaction with other inmates and even with correctional officers. Our cells have an open front, so we can talk to the up to seven other prisoners in our pod all the time. We would talk to each other this way every day, and we never received 115s for talking in our pod. We consistently see each other every day when we go to yard or showers, passing by one another's cells to say hi, and even having quiet personal conversations. We play chess with each other from our cells by calling the moves out loud.

16. Porters, or "tier tenders," are inmates who have been designated to clean their pod area. They come out twice a week to clean the tier. They are usually given some time by the correctional officers to come to the cell doors and socialize. Plaintiff Paul Redd was our tier tender for years in D-2 E-pod. I spent hours talking with and getting to know him.

17. Every time we go to yard, showers, or law library, the correctional officers will give us a few minutes to chat with our neighbors in our pod. We walk up to their cell fronts and chat.

18. Every time an inmate gets an annual package, it is customary to give everyone else in the pod a small gift from your annual package. The correctional officers allow us to come out of our cells and pass out bags to everyone. We also consistently share our canteen purchases with other inmates to make sure that inmates who don't have money don't go without canteen items. Food is very social here.

19. The food in the SHU is the same as in any other prison I have been in, no better or worse. The portions are not smaller.

20. We are provided far more recreational programming here in Pelican Bay SHU than your average Level IV mainline unit with active gang members because those mainline units have disturbances that cause the need for modified programming. In Pelican Bay's SHU, we receive 1 1/2 hours of yard, seven days a week, rain or shine. We can work out, jog, do pull-ups, or play handball.

21. Inmates in Pelican Bay's SHU have access to educational programming. We can earn our G.E.D. here and an A.A. degree from Coastline Community College for nothing but the price of books. We can order any books we like to study for our own personal education. I personally taught myself Spanish and German.

5

AGO 000675

1    22.    We have access to free self-help correspondence courses, including parenting courses,

2  Alcoholics/Narcotics Anonymous, Anger Management, Gangs Anonymous and religious

3  correspondence courses. Many of theses courses offer certificates of achievement that are

4  recognized by the Parole Board and placed in our central files.

5    23.    I have never experienced coercive denial of medical care at Pelican Bay's SHU. In

6  fact, while in the Pelican Bay SHU, I had my wisdom teeth removed, was treated for Hepatitis C

7  twice, had three liver biopsies, and received medical treatment at an outside hospital during the

8  2011 hunger strikes. I have never seen any inmate denied medical care or told to debrief to get

9  better care.

10    24.    When inmates do not receive mental health care in the SHU, it is because gang

11  members view mental distress as a sign of weakness. Talking to a psychologist, in private or not,

12  is frowned upon in the SHU. This is a matter of gang culture, not inadequate care. Most men

13  will not acknowledge a psychologist walking past their cell.

14    25.    During my time in the SHU, I personally did not experience the "unrelenting and

15  crushing mental anguish, pain, and suffering" that the Plaintiffs describe in the second amended

16  complaint, which I have read. Although for many years I suffered tough times, it was due to my

17  own horrific choices that resulted in my placement in prison, and ultimately, the SHU. For many

18  years I was caught up in my own pain, failure, and misery. I felt angry and emotional often. But

19  it was not due to the conditions in the SHU; rather, it was centered around my own failures and

20  lack of future.

21    26.    Long-term inmates like me know how to serve long periods of time in prison, and

22  they try to help each other do their time. For example, I have seen younger inmates experience

23  repetitive anxious thoughts about a perceived slight from another inmate. Often, when this

24  occurred, another inmate in my pod would engage him in a conversation about how to do time,

25  and tell him to avoid over thinking.

26    27.    For many inmates, their whole thought process on the mainline is consumed with

27  physical safety because of the regular threat of violence on the mainline. When they arrive in the

28

<div align="center">6</div>

**AGO 000676**

1   SHU, it is a relief because they know that they are physically safer than they would be in the

2   general population.

3        28.   If you have been in the SHU for ten or more years, like I have, it is for no other

4   reason than your choice to remain loyal to and active in the gang you are associated with, or

5   because it is the prison environment in which you feel the safest.

6        **The Institutional Gang Investigators Get Validation Right**

7        29.   Although I had never been charged with a gang-related rule violation or criminal

8   charge in my seventeen years in the SHU, I was heavily involved in gang activity from 1995

9   onward.  The Institutional Gang Investigators (IGI) not only knew I was an Aryan Brotherhood

10   member, they could list almost every detail of my gang involvement and activity since I arrived at

11   Pelican Bay.

12        30.   Many inmates split hairs on details of the validation process, but the IGIs get the

13   validations right.  When I was validated as an associate of the Aryan Brotherhood, I was indeed

14   an associate.  And later when I was validated as a member of the Aryan Brotherhood it was

15   because I was in fact a member.

16        31.   There is no such thing as an inactive gang member.  Once you commit your life to a

17   prison gang, the only out is death.  Prison gangs are not casual associations; I am not talking

18   about four or five guys who all grew up on the same corner.  Organizations like the Aryan

19   Brotherhood have shown their willingness to kill repeatedly over the years.

20        **Personal Knowledge of the Plaintiffs**

21        32.   Plaintiff Ashker is a former brother of mine who is active in the Aryan Brotherhood.

22   I met him in the Pelican Bay Administrative Segregation Unit (ASU) during the 2011 hunger

23   strikes.  Although I found him unlikeable, he was very engaging and eager to discuss Aryan

24   Brotherhood politics and business.

25        33.   Plaintiff Troxell is another former brother of mine who is active in the Aryan

26   Brotherhood.  I spent a month with him during the 2011 hunger strikes in the Pelican Bay SHU,

27   and again on a medical transfer to Corcoran SHU.  He was engaging, conversational, and very

28   likable.  He was eager to plan Aryan Brotherhood business if we were released from the SHU.

<div align="center">7</div>

Elrod Decl. Supp. Defs.' Opp'n Pls.' Mot. Class Certification (C 09-05796 CW)

**AGO 000677**

1    34.   Plaintiff Paul Redd is a known active BGF member.  He is also one of the most

2    likeable, engaging, and well-rounded men I have ever met in prison.  Not only is he sane, he is

3    one of the smartest men I know.  I spent five years in the same pod with him, and I never saw him

4    exhibit symptoms suggesting that he was mentally suffering, as he alleges in this case.

5    35.   Plaintiff George Ruiz is an active affiliate of the Mexican Mafia.  I know because my

6    neighbor of five years, ███████, a Mexican Mafia member, would accidentally receive his

7    mail frequently and would tell me about it.

8    36.   Plaintiff Richard Johnson is a known active BGF member.  He and I were on the

9    same tier for five years.  We joked and talked politics regularly.  I never saw him exhibit behavior

10   that indicated he was mentally suffering.

11   **Participation in the Hunger Strikes**

12   37.   When fellow Aryan Brotherhood members asked me if I wanted to participate in the

13   2011 hunger strikes, I was not interested.  I participated in the 2002 hunger strikes, and felt that

14   we had gained nothing since we were still in the SHU.

15   38.   My fellow Aryan Brotherhood member, ███████, met me in the law library,

16   and told me that the hunger strikes were not going to be like 2002.  He said that Ashker and

17   Troxell were willing to "go out in a box."  At that point, I realized it was serious and agreed to

18   participate.

19   39.   The goal of the 2011 hunger strikes, from the perspective of the Aryan Brotherhood,

20   was to get out of the SHU because we knew it would kill the organization.  We believed that if we

21   were in the general population, we could sell drugs, make money, and develop an influence on the

22   streets.

23   40.   Plaintiffs Ashker and Troxell told us that they were in touch with attorneys on the

24   outside who had told them they we would have representation and support in the public.

25   41.   During the 2011 hunger strikes, I went twenty days on nothing but water.  During that

26   time, Pelican Bay medical staff weighed me and took my blood pressure on a regular basis.  It

27   was very difficult, I often felt weak and sick.  After I started eating again, I had a seizure.  I was

28   taken to an outside hospital and put on an I.V., and was in the I.C.U. for three days.  I later found

8

AGO 000678

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 156 of 294

Case 3:18-cv-06350-WHA   Document 67-3   Filed 02/02/22   Page 15 of 22
Case4:09-cv-05796-CW   Document249   Filed07/18/13   Page9 of 11

1  out that Plaintiffs Ashker and Troxell had continued to eat from their canteen during the hunger

2  strike.

3      42.    Although the hunger strikes were temporarily called off, they started up again later in

4  2011. I again participated. We knew we could tap big time support through this tactic, but we

5  weren't trying to improve the conditions in the SHU; we were trying to get out of the SHU to

6  further our gang agenda on the mainline. Pelican Bay officials placed all of the leaders of the

7  hunger strike in the ASU together. It was easier the second time; I did not get as sick. But

8  because I was losing weight, I was medically transferred to the Corcoran SHU, along with

9  Plaintiff Troxell. While there, we made an agreement as to new rules when we returned to the

10  SHU. We agreed that the Aryan Brotherhood should lay low and not commit any acts of

11  violence, so that we could spread out the organization without detection by prison officials.

12      43.    I know that the outside groups that were involved in the hunger strikes were made up

13  of compassionate people, including some of the lawyers that represent Plaintiffs in this case. In

14  many ways, this source of positive support was what motivated me to disassociate from the gang

15  lifestyle. I do regret generating that support under false pretenses, however. Attached as Exhibit

16  A is a true and correct copy of a letter I wrote to Marilyn McMahon, an attorney for California

17  Prison Focus who advocates on behalf of the hunger strike negotiators and represents the

18  Plaintiffs in this case.

19  **Debriefing**

20      44.    On November 20, 2012, I came to the decision to leave my life in the Pelican Bay

21  SHU and contact the IGIs about my desire to enter the debriefing program. I had reached a point

22  where I came to see how incredibly blessed I was, with a loving family and many good friends

23  who never gave up on me. I had hurt so many people, and I knew I had to change my life. The

24  first step was leaving the Aryan Brotherhood.

25      45.    To SHU inmates, the debriefing program is very controversial. We told each other

26  horror stories, such as stories of IGIs feeding inmates information in a debrief session, or that

27  you'd be branded a lying informant if you debriefed. But, before I debriefed, I had never actually

28  spoken to an inmate who had debriefed.

<div align="center">9</div>

AGO 000679

1     46.    Overall, the debriefing process was the most positive experience I've had in prison.

2    Throughout the process, I was told to only speak about information I knew to be true. At no point

3    in the process was I to lie or speculate.

4     47.    All of the inmates I've met in the SHU unit for debriefers are on the same page:  they

5    are done with the gang lifestyle. There are many reasons for an inmate's decision to drop out:

6    family, children, religion, fear of being killed by other gang members, or simply outgrowing the

7    lifestyle. But no matter the reason, everyone just wants to do their own time, and to free himself

8    from the garbage of gang life.

9     48.    In mid-May 2013, I finished my final debriefing interview with the Office of

10    Correctional Safety (OCS). These men were the definition of professionalism. I told them about

11    my most shameful and darkest days. Yet over the course of three days of interviewing, they

12    never blinked an eye, never judged, and never once seemed to be critical. They clearly

13    understood the hundreds of paths that we gang members have taken that have led to this level of

14    failure. It was also obvious that they are committed not only to combating gangs, but also helping

15    men such as myself disassociate from the lifestyle.

16     49.    Every day I grow stronger in my decision to leave the Aryan Brotherhood. I have

17    never been in a better place spiritually or emotionally as a man. Earlier this year, I met with State

18    Assemblyman Tom Ammiano, to discuss conditions in the Pelican Bay SHU and my decision to

19    debrief. Attached as Exhibit B is a true and correct copy of the letter I wrote him after we met,

20    explaining why I decided to disavow myself from the Aryan Brotherhood.

21     50.    I am aware that debriefing, and assisting law enforcement generally, poses a threat to

22    my personal safety by my former brothers in the Aryan Brotherhood. However, it is worth it to

23    me to live a life free from the gang lifestyle.

24    ///

25    ///

26    ///

27

28

Elrod Decl. Supp. Defs.' Opp'n Pls.' Mot. Class Certification (C 09-05796 CW)

AGO 000680

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 158 of 294

Case 3:18-cv-06350-WHA    Document 67-3    Filed 02/02/22    Page 17 of 22
Case4:09-cv-05796-CW    Document249    Filed07/18/13    Page11 of 11

1    51.    I am awaiting final approval of my debrief package from OCS. After that is

2    complete, I understand that I will be transferred to a Transitional Housing Unit within CDCR.

3    I declare under penalty of perjury that the foregoing is true and correct to the best of

4    my knowledge. Executed in Crescent City, California, on July 11, 2013.

5

6

7    _James B. Elrod_
     J. Bryan Elrod

8

9    SF2012204868
     20708128.doc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

Elrod Decl. Supp. Defs.' Opp'n Pls.' Mot. Class Certification (C 09-05796 CW)

AGO 000681

EXIBIT Z

AGO 000682

1  EDMUND G. BROWN JR.
   Attorney General of California
2  TYLER B. PON
   Supervising Deputy Attorney General
3  DAVID W. HAMILTON
   Deputy Attorney General
4  State Bar No. 88587
    1515 Clay Street, 20th Floor
5   P.O. Box 70550
    Oakland, CA  94612-0550
6   Telephone:  (510) 622-2193
    Fax:  (510) 622-2121
7   E-mail:  David.Hamilton@doj.ca.gov

8  *Attorneys for Defendants*

9                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                         COUNTY OF DEL NORTE

11

12

13

14  **JEREMY JOHN BEASLEY,**                 Case No. CVPI09-1064

15                          Plaintiff,       **DECLARATION OF MICHAEL SAYRE
                                             IN SUPPORT OF MOTION FOR**
16          v.                               **SUMMARY JUDGMENT OR,
                                             ALTERNATIVELY, MOTION FOR**
17                                           **SUMMARY ADJUDICATION**

18  **JAMES TILTON, CDCR Director;**
    **ROBERT HOREL, PBSP Warden;**           Date:
19  **MICHAEL SAYRE, Chief Medical Officer;** Time:
    **SUE RISENHOOVER, Family Nurse**        Dept:
20  **Practitioner; JAMES FLOWERS,**         Judge:
    **Registered Nurse,**                    Trial Date:    Not set
21                                           Action Filed:  February 17, 2009
                            Defendants.
22

23          I, MICHAEL SAYRE, declare:

24          1.  I am a United States citizen over the age of 18, and a named defendant in this lawsuit.  I

25  have personal knowledge of each of the matters set forth herein, and if called as a witness could

26  competently testify as to those matters, except for those facts stated upon information and belief,

27  and as to those facts I believe them to be true.

28

                                              1

                        Declaration of Michael Sayre in Sup. of MSJ or MSA  (CVPI09-1064)

AGO 000683

1      2.  I am a medical doctor licensed in the state of California.  I received my California

2  medical license in 1973 and have maintained that license in good standing continuously up to the

3  present.  I am also Board Certified in Family Practice and in Anesthesiology.

4      3.  I have been employed by the California Department of Corrections and Rehabilitation

5  (CDCR) continuously since January 2005.  My initial position with CDCR was as Chief

6  Physician and Surgeon at Pelican Bay State Prison (PBSP).  I was promoted to Chief Medical

7  Officer at PBSP on July 1, 2005.

8      4.  As the Chief Medical Officer at PBSP, I am responsible for the medical care of all

9  inmates at this institution.  I exercise general authority over all medical providers at PBSP,

10  including medical doctors, family nurse practitioners (FNP's), and physician assistants (PA's).

11  Nursing staff function under the supervision of supervising RN's at this institution, while FNP's

12  independently provide medical care to inmates, in consultation with medical doctors.  As a

13  medical doctor of long-standing, as well as in my tenure as the Chief Medical Officer at PBSP, I

14  am very familiar with the medical standard of care provided by medical doctors, FNP's, and PA's

15  to patients in the community where PBSP is located.

16      5.  The plaintiff in this lawsuit, inmate Jeremy Beasley, has been an inmate at this prison

17  since before I came to the institution.  I am personally familiar with Mr. Beasley and have

18  personally examined him and provided medical care to him on several occasions.  I have also

19  thoroughly reviewed his medical file and am very familiar with the medical care provided to him

20  at PBSP, including diagnosis and treatment of his skin disease.  I have also reviewed the

21  allegations made by Mr. Beasley in his Complaint in this action, including the medical records

22  and other documents attached as exhibits to his Complaint and his Requests for Admission

23  directed to myself.

24      6.  Plaintiff suffers from a skin condition technically labeled spongiotic dermatitis,

25  commonly known as eczema.  This skin condition is chronic and incurable.  In the plaintiff this

26  condition primarily appears on his hands but occasionally appears on other parts of his body, such

27  as his legs and eyelids.  This condition is caused by inflammation and is characterized by dry,

28

<div style="text-align:center">2</div>

<div style="text-align:right">Declaration of Michael Sayre in Sup. of MSJ or MSA  (CVPI09-1064)</div>



**AGO 000684**

1    work under the clinical supervision of physicians and FNP's at each housing unit clinic, including

2    D unit.

3         16.  Plaintiff alleges in his Complaint that he has been refused adequate medical treatment

4    based on his housing.  This allegation is untrue.  Plaintiff is housed at the Secure Housing Unit

5    (SHU) and specifically the "short corridor" in D unit.  The SHU is for CDCR inmates who have

6    been administratively convicted of in-prison offenses, while the "short corridor" is used to isolate

7    inmates who are validated gang leaders.  These housing assignments and security determinations

8    are made by correctional officers (who are in a chain of command within CDCR separate from

9    the Chief Medical Officer), not by health care personnel at PBSP.  As a resident of the "short

10   corridor" and SHU, plaintiff has the exact same access to health care and medical treatment as

11   every other prison inmate.  Neither I nor the medical staff under my authority at PBSP have ever

12   refused to provide adequate and appropriate health care or medical treatment to plaintiff at any

13   time.

14        17.  Plaintiff further alleges in his Complaint that he has been denied equal protection by

15   the defendants' requiring him to "debrief as a prerequisite to adequate medical treatment."  This

16   allegation is untrue.  I am informed and believe that this reference to "debriefing" means

17   requiring plaintiff to provide evidence against gang members.  Decisions about gang membership

18   and leadership, and security constraints related thereto, are made by correctional staff, not by

19   medical personnel under my authority.  Medical staff at PBSP have nothing to do with such

20   decisions, and whether or not the plaintiff "debriefs" has nothing to do with his health care and

21   medical treatment, which are strictly within the purview of medical doctors and other health care

22   professionals at PBSP.

23        18.  Plaintiff further alleges in his Complaint that he has been subjected to psychiatric

24   treatment without any foundation for such treatment.  This allegation is untrue.  In my medical

25   opinion, based on my medical and psychiatric training and experience over many years, plaintiff

26   suffers from clinical depression and anxiety which could benefit from treatment, and I have made

27   that recommendation to him.  For a time Mr. Beasley was prescribed Prozac and he benefited

28   from that medication, but he now refuses to take antidepressants or undergo any psychiatric

6

Declaration of Michael Sayre in Sup. of MSJ or MSA  (CVPI09-1064)

**AGO 000685**

1   treatment.  That is his prerogative as the patient, and neither I nor any medical personnel under

2   my authority have subjected him to punishment, retaliation, or denial of adequate medical care as

3   a result of his decision to decline psychiatric treatment.

4       19.  At all times I have endeavored to treat Mr. Beasley with dignity and respect in an

5   honest effort to provide him with appropriate medical care and treatment.  At no time did I refuse

6   to provide him with appropriate medical care or treatment, nor did I ever deliberately or

7   knowingly cause Mr. Beasley to experience any pain, suffering, injury, or illness.

8       20.  At all times I have provided Mr. Beasley with appropriate medical care and treatment

9   to the best of my ability, and consistent with community standards as well as CDCR policies and

10  procedures.  I have taken measures as the Chief Medical Officer of this prison to ensure that all

11  medical personnel under my authority provide all reasonable and necessary health care to him

12  consistent with community standards as well as CDCR policies and procedures.  Based on my

13  personal experience, consultation with colleagues, and review of Mr. Beasley's medical file, it is

14  my professional opinion that at all times he has received health care and medical treatment well

15  above minimum constitutional and community standards from all medical doctors, including

16  myself, as well as the defendants named in his Complaint and other medical personnel.

17

18      I declare under penalty of perjury under the laws of the State of California that the

19  foregoing is true and correct.  Executed on September 22, 2009 at Crescent City, California.

20

21  _____

    MICHAEL SAYRE, M.D.

22

23  OK2009900918
24  90126899.doc

25

26

27

28

                                    7

                      Declaration of Michael Sayre in Sup. of MSJ or MSA  (CVPI09-1064)

**AGO 000686**

1
2
3
4                        UNITED STATES DISTRICT COURT
5                      NORTHERN DISTRICT OF CALIFORNIA
6
7    TODD ASHKER,                          Case No.  18-cv-06350-WHA
8                    Plaintiff,
9          v.                              **ORDER GRANTING EXTENSION OF
                                           TIME**
10   JEFFREY BEARD, et al.,                Re: Dkt. No. 62
11                  Defendants.

12          Plaintiff has filed a motion for an extension of time to file an opposition to defendants'

13   summary judgment motion.  He asserts he needs more time for discovery, and specifically to wait

14   until after a ruling on a joint discovery motion by him and defendants.  Plaintiff states they agreed

15   to it "as soon as possible" after the completion of his deposition on October 11, 2021.  Nearly

16   three month have passed, and they have not filed the motion, nor does plaintiff indicate when they

17   would.  Plaintiff has had more than a year and a half to conduct discovery.  He has not shown

18   cause for needing still more time for discovery, including the filing of any discovery motion.  If

19   plaintiff wants to file a discovery motion, he may, but any further delay in filing the motion or

20   completing discovery does not justify further extending his deadline for filing an opposition to

21   defendants' summary judgment motion.  There is good cause appearing for allowing him 90 days

22   to file his opposition, and therefore his motion for an extension of time to do so is GRANTED.

23   The opposition is due on or before February 10, 2022.  No further extension will be granted.

24   Defendants' shall file a reply brief on or before February 24, 2022.

25          **IT IS SO ORDERED.**

26   Dated: January 4, 2022

27                                         _____
28                                         WILLIAM ALSUP
                                           United States District Judge

Todd Ashker, C# 58191
KVSP ASU-2/194
Box # 5106
Delano, CA. 93216

Plaintiff, In pro-se

**FILED**

DEC 10 2021

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

TODD ASHKER,

                          Plaintiff,

        v.

S. KERNAN, et al.,

                          Defendants.

_____/

Case No.: 3:18-cv-06350-WHA

PLAINTIFF'S NOTICE OF MOTION &
MOTION FOR EXTENSION OF TIME TO
FILE OPPOSITION TO DEFENDANTS'
"Motion For Summary Judgment."

[per. F.R.C.P., Rule # 56(d)]

TO DEFENDANTS', via Counsel of Record:

PLEASE TAKE NOTICE that, under F.R.C.P., Rule # 56(d); and, Northern District
Civil Local Rules # 6-3 and 7-11, plaintiff proceeding in pro-se, hereby respectfully
requests extension of time to file his "OPPOSITION" [RF: Defendants' Motion For Summary
Judgment], up to, and including, a reasonable time period permitted by the Court once
the necessary discovery process dispute between the parties has been completed, and
plaintiff has had the time needed to have his expert(s) review the discovery evidence
[as supported in plaintiff's accompanying "Declaration In Support " of this Motion,
at ¶¶ 1-8].

Plaintiff's accompanying declaration in support of this motion confirms the basis
for this necessary request for extension of time due to the following circumstances:

1. On October 26, 2021, plaintiff received this Court's October 14, 2021, "ORDER
GRANTING EXTENSION OF TIME" [per. Defendants' counsel's third request; this is the
plaintiff's first request for an extension of time regarding this subject.]. In the
ORDER, the Court stated defendants' Motion For Summary Judgment, was due Nov. 10, 2021.

1.

**AGO 000688**

and, the Court stated that"plaintiff's opposition was due on or before Dec. 10, 2021."
Plaintiff received defendants' Motion For Summary Judgment, dated Nov. 10, 2021, on the
evening of Nov. 15, 2021. Defendants' Motion is 25 pages long, consisting of (6) claims
for dismissal, supported by (52) case cites, and various other Statutes & related
Authorities. Defendants' Motion is also supported by several declarations, and 100s of
pages of incorporated exhibits. All of which has been the partial cause for plaintiff's
inability to meet the Court's present deadline of Dec. 10, 2021, to complete the
necessary legal research, and discovery process, necessary to be able to fully & fairly
OPPOSE defendants' Motion in time [as further supported below].

1.  Plaintiff's conditions of confinement, and the related effects thereof [inclusive of
of more than 35 years of solitary confinement total; chronic sleep deprivation, non-
stop for 4½ years, and related impact on ability to focus and concentrate - as detailed
in plaintiff's FAC, and each of his [unrelated requests for extension of time - which
also include declarations supporting plaintiff's permanently disabled right arm, hand,
and forearm, and related extreme hardship with being able to take handwriten notes from
case law, during his 2 hours per week at the ASU-2 Law Library....SEE:e.g., Plt's accom
panying Decl., at ¶ ¶1-3, for current support of this]. Make it impossible to conduct
timely necessary legal research relating to this case, and others plaintiff is involved
in.

2.  Plaintiff has been diligently doing all in his power to obtain the evidence directly
related to the claims at issue in plaitiff's FAC [ & necessary to"OPPOSE" Defs' MSJ ];
this evidence exists, and is in defendants' possession. Plaintiff and defense counsel
have gone around-and-around on these discovery issues; having met and confered more than
once and have been unable to resolve them. Thus, after plaintiff's deposition on Oct. 11,
2012, the parties agreed to work together to file a "Joint Motion To Compel" however,
due to the hardships on plaintiff's ability to complete the needed legal research to
support his part of the Motion [& thereby, mail such to defense counsel so they can do
their part of the Motion, & mail it back to plaintiff for review and approval - all of
which can take much time via snail mail]. Thus, plaintiff' hopes to have his part of the
"Joint Motion...." in the mail to defense counsel within ten days of mailing this Motion
to the Court. [SEE: Plt's Decl., ¶¶ 4-7]

3. Plaintiff was only just recently able to obtain supporting case law for this Motion
during his 2 hour, law library time period on November 30, 2021. And, he then immediately
prepared & completed this Motion on December 1, 2021, but was not able to obtain the
needed photocopies until today [DECEMBER 5, 2021]; requiring him to redo this page to
add this paragraph. And, he is mailing this to the Court tonight per. institutional
regulations; and, it should be deemed filed today, per. "Mail Box" Rule.

2.

**AGO 000689**

The case supporting this Motion is [Crawford v. Combs, 2020 U.S. Dist. LEXIS 37632 (3/04/2020)] (at *4, "..... Rule 56(d) of the F.R.C.P. provides a procedure by which a Party may avoid summary judgment when such party has not had sufficient opportunity to discover affirmative evidence necessary to oppose the motion [See: Garrett v. S.F., 818 F. 2d 1515, 1518 (9th Cir. 1987). In particular, Rule 56(d) provides that a court may deny a summary judgment motion & permit the opposing party to conduct discovery where it appears that the opposing party, in the absense of such discovery, is unable to present facts essential to oppose the motion. F.R.C.P. 56(d)....

The Ninth Circuit has made clear that in cases involving pro se prisoners, summary judgment is not favored when discovery requests for relevant evidence are pending. In particular, the Ninth Circuit has noted:

Under Rule 56(f) [the predecessor to current Rule 56(d)], the court may postpone ruling on a summary judgment motion where the non-moving party needs "additional discovery to explore facts essential to justify [2020 U.S. Dist. LEXIS *5] the party's opposition." Crawford-El v. Britton, 523 U.S. 574, 599 n. 20, 18 S.Ct. 1584, 140 L.Ed. 2d 759 [1998] (quoting F.R.C.P. 56(f))."

Plaintiff has met this standard in this case [SEE: FAC, and Plt's Decl., at ¶¶ 4-7]; a denial of this Motion , will cause substantial harm to plaintiff because he will not be able to produce the evidence known to be in defendants' possession, & necessary for plt. to obtain a supporting declaration from his expert(s) in support of his OPPOSITION [Id.]. [Decl., ¶ 8]

<div align="center">CONCLUSION</div>

   As stated in plaintiff's declaration accompanying this Motion, defendants' counsel Previously agreed to stipulate to their 'non-opposition' of to plaitiff obtaining an extension of time to be able to resolve the discovery dispute(s) between the parties. [Plt's Decl., ¶ 7 ]. Additionally, having demonstrated good cause, supported by the file & record in this case, plaintiff respectfully moves this Honorable Court to grant an extension of time in oreder to permit plaintiff to obtain the Court's resolution of the parties forthcoming "Joint Motion To Compel Discovery;" and, also enable plaintiff to be able to complete his necessary research for the completion of the OPPOSITION [inclusive of obtaining said discovery evidence from defendants' and provide such to plaintiff's expert(s) for their review & supportive declarations of plaintiff's position(s) in this case.

Dated: December 5, 2021

                                    Respectfully Submitted,

                                    T. Ashker
                                    Todd Ashker, Plaintiff, In pro-se

<div align="center">3.</div>

AGO 000690

Todd Ashker, C# 58191
KVSP-ASU 2/194
Box # 5106
Delano, CA. 93216
Plaintiff, In pro-se

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

TODD ASHKER,

                    Plaintiff,

        v.

S. KERNAN, et al.,

                Defendants.

_____/

Case No.: 3:18-cv-06350-WHA

PLAINTIFF'S DECLARATION IN
SUPPORT OF " PLAINTIFF'S
MOTION FOR TIME TO OBTAIN
DISCOVERABLE EVIDENCE NEEDED
TO OPPOSE DEFENDANTS' 'Motion
For Summary Judgment'."

I, Todd Ashker, declare:

    1.  That I am the prisoner proceeding pro-se in the above numbered action, and, I am presenting this declaration in support of my accompanying " Plaintiff's MOTION FOR TIME TO OBTAIN DISCOVERABLE EVIDENCE NEEDED TO OPPOSE DEFENDANTS' 'Motion For Summary Judgment.'"  I am competent to testify to the matters set forth in this declaration, & if called upon by this Court, would do so.

    2.  That the above referenced, accompanying " MOTION...." accurately presents the basis for seeking time to obtain the evidence needed to oppose defendants' motion for summary judgment; and, the basis for plaintiff's inability to do so sooner, as is supported below.

    3.  I am subject to solitary confinement at Kern Valley State Prison's ASU-2; and as previously stated in my FAC, and prior motions for extension of time [e.g., Plt's Motions To Extend Time, dated June 3, 2021, and June 17, 2021, unrelated to this presenT MOTION], subject to the conditions complained of therein. This includes difficulty with

1.

**AGO 000691**

focus and concentration - based on more than 4½ years of subjection to chronic sleep deprivation. As well as, plaintiff's permanently disabled right arm, hand, forearm - which makes it a very slow, time consumming & painful process, trying to locate & take the necessary handwriten notes from the law library's LEXIS system [made more difficalt due the '2-hours weekly' access limit; and, fact that the ASU-2, Law library provides no access to the "mouse" necessary to properly use the computer system for LEXIS cases].

4.  Additionally, I have been diligently trying to obtain the evidence from the defendants' in this case ever since[shortly after receiving notice from the A.G's. Office, of their representation of defendants' in this case]. One major delay problem was, in response to my first request for production of documents, defendants' counsel had requested my stipulation to staying their response pending this Court's ruling on their "Motion To Dismiss, and/or, Sever Certain Claims & Defendants'" This was back in September 2020; and, I agreed to do so. The Court initially"Partly Granted Defendants' Motion" via Order dated March 11, 2021. I sought"Reconsideration Of Court's Order" which the Court allowed briefing on [while also re-starting the "Discovery Process" regarding the claims and defendants' that are still before the Court now.] and, the Court denied my "Reconsideration Motion," via ORDER, dated July 23, 2021.

5.  The evidence I have diligently sought from the defendants' is dorectly relevant to a core basis of my FAC, in this case. Namely, I have been repeatedly trying to obtain the [Confidential,& Non-Confidential Information], relied on as the pretext for the Defs' Departmental Review Board's, arbitrary, capricious, retaliatory decision to deny my release to General Population [after more than 28yrs of unwarranted solitary confinement most of which was at PBSP-SHU]. This evidence consists of various documents, alleged inmate notes, etc., and, Confidential Memorandums, containing the names of witnesses - inclusive of alleged 'co-conspirators.' And, what I am certain will be revealed as the defendanats' & their agents, intentional concealment, misrepresentations, and fabricati- on(s) of the key evidence relied upon as the pretext for defendants' acts & ommissions in this case.

6.  That I additionally, require time to obtain this evidence in order to be able to provide such to my expert(s), for their review(s) and declarations in support of my opposition to defendants' motion.

7.  That defendants' counsel and I have had several meet and confers concerning the evidence at issue; and, we agreed we will submit a "Joint Motion To Compel Discovery - MOTION"" as soon as possible [this was at the close of my deposition back on Oct.11, 2021. The delay has been due to plaintiff's hardship regarding completion of research needed as briefly summarized in above paragraph # 3]. I am doing all in my power to complete my

2.

AGO 000692

portion of the "Joint Motion...." and send it to defendants' counsel for their portion of same motion, by December 14, 2021. Defendants' counsel has previously affirmed that they do not oppose a continuance to my opposition, pending the resolution of the above referenced 'Discovery dispute,' and I am unable to obtain their formal stipulation in a timely manner, prior to the need to file this motion.

8. That absent the Court's permission to have the needed time to complete and file the above referenced "Joint Motion...." My ability to fully, fairly prosecute this case will be severely harmed.

I hereby declare under penalty of perjury that the above is true and correct, and that this declaration was prepared by me at KVSP-ASU 2, Delano, California, on December 5, 2021.

/s/ T. Ashker
Todd Ashker, C# 58191
Plaintiff, In pro-se

3.

**AGO 000693**

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

I, _Todd Ashker_ , declare:

I am over 18 years of age and a party to this action. I am a resident of _Kern Valley_

_State_ Prison,

in the county of _Kern_ ,

State of California. My prison address is: _Todd Ashker, C58121, KVSP-ASU-2/194_

_Box # 5106, Delano, Cal 93316_

On _December 5, 2021_ ,
(DATE)

I served the attached: _Plt's Notice Of Motion & Motion For Extension Of Time_

_To File Opposition To Defs' MSJ" [With: Plt's Support Declaration]_

_(RE: ASHKER v. S.KERNAN, et al., USDC-N.D,Cal # 3:18-cv-06350-WHA)_
(NAME OF DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

① OFFICE OF CLERK, U.S.D.C.     ② Cassandra J. Shryock
  N.D. California                 — Deputy A.G. —
  450 Golden Gate Ave.            455 Golden Gate Ave., Ste #11,000
  San Francisco, Ca. 94102        San Francisco, Cal. 94102-7004

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on _Dec. 5, 2021_       _T. Ashker_
(DATE)                           (DECLARANT'S SIGNATURE)

AGO 000694



SANTA CLARITA CA   913

7 DEC 2021   PM 2

To: Office of Clerk, U.S. Dist. Ct.
Northern District California
450 Golden Gate Ave.
San Francisco, Cal.
— 94102 —

— Confidential —
LEGAL-MAIL

Todd Ashker, C58191
KVSP–ASU. 2/194
Box #5106
Delano, Cal,   93216 ##
12/5/21

94102-366199

AGO 000695



CONFIDENTIAL -
LEGAL - MAIL

Kern Valley State Prison
Ad. Seg. Unit 2 - North

12/5/2021   96   C. Chy

**AGO 000696**

1   ROB BONTA
    Attorney General of California
2   MARISA KIRSCHENBAUER
    Supervising Deputy Attorney General
3   CASSANDRA J. SHRYOCK
    Deputy Attorney General
4   State Bar No. 300360
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3622
6    Fax:  (415) 703-5843
     E-mail:  Cassandra.Shryock@doj.ca.gov
7   *Attorneys for Defendants*
    *G. Giurbino, S. Hubbard, J. McLaughlin, J. Beard,*
8   *J. Fallis, M. Russell, C. Vargas, M. Ruff, K.*
    *Harrington, C. Ducart, W. Black, S. Kernan, J.*
9   *Robertson and D. Rothchild*

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13

| 14 | **TODD ASHKER,** | 3:18-cv-06350-WHA |
|---|---|---|
| 15 | Plaintiff, | **DEFENDANTS' NOTICE OF MOTION** |
| 16 | | **AND MOTION FOR SUMMARY** |
| 17 | v. | **JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 18 | **S. KERNAN, et al.,** | |
| 19 | Defendants. | Judge:       The Honorable William Alsup |
| | | Trial Date:   None Set |
| | | Action Filed:  10/17/2018 |

20

21      **TO PLAINTIFF TODD ASHKER, PRO SE:**

22          **PLEASE TAKE NOTICE** that Defendants Giurbino, Hubbard, McLaughlin, Beard, Fallis,

23   Russell, Vargas, Ruff, Harrington, Ducart, Black, Kernan, Robertson, and Rothchild (Defendants)

24   move this Court for summary judgment under Federal Rule of Civil Procedure 56(c). Defendants

25   brings this motion because (1) Ashker is barred from raising his conditions of confinement claim

26   regarding long-term Security Housing Unit (SHU) confinement, and Defendants are entitled to

27   qualified immunity for that claim; (2) Defendants are also entitled to qualified immunity for

28   Ashker's conditions of confinement claim based on the use of the Guard One welfare check

Defs.' Not. Mot & Mot. Summ. J.; Mem. P&A (3:18-cv-06350-WHA)

**AGO 000697**

1  system; (3) any claim arising from Ashker's September 10, 2014 Departmental Review Board

2  hearing is barred by the statute of limitations, and regardless, due process was satisfied and there

3  is no evidence of retaliation; (4) no liberty interest was implicated by Ashker's 2015 and 2016

4  classification hearings and there is similarly no evidence of retaliation with respect to these

5  hearings; (5) Ashker's claim against Defendant Black is unexhausted and his allegations, even if

6  true, do not support a retaliation claim; and (6) there is no evidence that either Defendant Beard

7  or Defendant Kernan were involved in any constitutional deprivation. Therefore, Defendants are

8  entitled to judgment as a matter of law.

9      This motion is based on this notice of motion and motion, the accompanying memorandum

10  of points and authorities, the concurrently filed *Rand* notice, request for judicial notice,

11  declarations and exhibits, and the Court's file in this action. A proposed order granting the motion

12  is being submitted concurrently.

13  Dated:  November 10, 2021                    Respectfully submitted,

14                                              ROB BONTA
                                                Attorney General of California
15                                              MARISA KIRSCHENBAUER
                                                Supervising Deputy Attorney General
16

17

18                                              */s/ Cassandra J. Shryock*
                                                CASSANDRA J. SHRYOCK
19                                              Deputy Attorney General
                                                *Attorneys for Defendants*
20                                              *G. Giurbino, S. Hubbard, J. McLaughlin,*
                                                *J. Beard, J. Fallis, M. Russell, C. Vargas,*
21                                              *M. Ruff, K. Harrington, C. Ducart, W.*
                                                *Black, S. Kernan, J. Robertson and D.*
22                                              *Rothchild*

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

Memorandum of Points and Authorities ........................................................................... 1

Introduction ........................................................................................................................ 1

Issues Presented ................................................................................................................. 1

Statement of the Facts ....................................................................................................... 1

      A.    Conditions of Confinement in the Pelican Bay SHU ................................ 2

      B.    Ashker's Litigation and Protest Efforts and Reforms to CDCR's
           Policies. ..................................................................................................... 2

      C.    Ashker's September 10, 2014 Case-by-Case Review. ............................... 3

      D.    Settlement in Ashker Class Action and Ashker's Subsequent
           Housing Determinations Under that Settlement. ...................................... 5

      E.    Use of the Guard-One Welfare Check System in the Pelican Bay
           SHU. ......................................................................................................... 6

Summary of Plaintiff's Claims ......................................................................................... 8

Standard of Review ........................................................................................................... 9

    I.    Legal Standard for Summary Judgment Under Rule 56. .......................... 9

    II.    Legal Standard for Failure to Exhaust Administrative Remedies. ........... 9

Argument ......................................................................................................................... 10

    I.    Defendants Are Entitled to Judgment as a Matter of Law for Ashker's
        Conditions of Confinement Claim Because Res Judicata Bars that Claim
        and Defendants Are Entitled to Qualified Immunity. ............................. 10

      A.    Ashker's Eighth Amendment Claim Is Barred by Res Judicata. ............. 10

      B.    Defendants Are Also Qualifiedly Immune for Ashker's Claim that
           Long-Term SHU Confinement Violates the Eighth Amendment. ........... 13

    II.    Ashker's Conditions of Confinement Claim Based on the Use of the
        Guard-One Welfare Check System Is Also Barred by Qualified Immunity. ........ 15

    III.    Defendants Are Entitled to Judgment as a Matter of Law for Ashker's
        Claims Arising Out of His September 10, 2014 DRB Hearing. ............... 16

      A.    Any Claim Arising from the September 10, 2014 Hearing Is Barred
           by the Statute of Limitations. ................................................................. 16

      B.    Ashker Received all the Process that He Was Due. ................................ 17

      C.    There Is No Evidence of Retaliation. ..................................................... 20

    IV.    Defendants Are Entitled to Judgment as a Matter of Law for Ashker's
        Claims Arising from Housing Decisions Made in 2015 and 2016. .......... 21

      A.    No Liberty Interest Was Implicated so No Process Was Due to
           Ashker. ................................................................................................... 21

      B.    Ashker's Retaliation Claim Fails Because Transfer from Restricted
           Custody to General Population Is Not an Adverse Action. ..................... 22

i

Defs.' Not. Mot & Mot. Summ. J.; Mem. P&A (3:18-cv-06350-WHA)

**AGO 000699**

**TABLE OF CONTENTS**
(continued)

Page

V.      Ashker Did Not Exhaust His Claim Against Defendant Black and He
        Cannot Establish a Retaliation Claim Against Her. ........................................... 23

        A.      Ashker Was Required to Exhaust His Administrative Remedies
                With Respect to His Claim Against Defendant Black, But He Failed
                to do so. ................................................................................................ 23

        B.      Ashker Cannot Maintain a Retaliation Claim Against Defendant
                Black, Because She Did Not Take any Adverse Action Against
                Him. ...................................................................................................... 24

VI.     Defendants Beard and Kernan Did Not Personally Participate In Any
        Deprivation And Cannot Be Held Liable Under Respondeat Superior. ............... 24

Conclusion ...................................................................................................................... 25

ii

Defs.' Not. Mot & Mot. Summ. J.; Mem. P&A (3:18-cv-06350-WHA)

**AGO 000700**

1   caused the alleged constitutional deprivation. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069

2   (9th Cir. 2012). A plaintiff must establish both causation-in-fact and proximate causation. *See*

3   *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). Allegations regarding

4   causation "must be individualized and focus on the duties and responsibilities of each individual

5   defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer*

6   *v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). "Sweeping conclusory

7   allegations will not suffice." *Id.* (citation omitted).

8       That is all that Ashker has here: sweeping, conclusory allegations of conspiracy. Ashker

9   concedes that the allegations in the complaint are the complete basis for his claims against these

10  Defendants. But the FAC does not identify their personal involvement in any deprivation. (*See*

11  FAC at 1-2, 16-17, 19-30, 22, 30.) These claims must be dismissed.

12  <div align="center">**CONCLUSION**</div>

13      Defendants are entitled to judgment as a matter of law for all of Ashker's claims, and

14  therefore this action should be dismissed.

15  Dated:  November 10, 2021           Respectfully submitted,

16                                     ROB BONTA

17                                     Attorney General of California
                                   MARISA KIRSCHENBAUER

18                                     Supervising Deputy Attorney General

19                                     ***/s/ Cassandra J. Shryock***
                                   CASSANDRA J. SHRYOCK

20                                     Deputy Attorney General
                                   *Attorneys for Defendants*
    SF2020400523/42959043.docx

21

22

23

24

25

26

27

28

Defs.' Not. Mot & Mot. Summ. J.; Mem. P&A (3:18-cv-06350-WHA)

**AGO 000701**

# CERTIFICATE OF SERVICE

Case Name:   **_T. Ashker v. S. Kernan, et al._**          Case No.   **3:18-cv-06350-WHA**

I hereby certify that on November 10, 2021, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

2. DECLARATION OF HOWARD E. MOSELEY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with Exhibits 1 to 3

3. DECLARATION OF S. HUBBARD IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with Exhibit 4

4. DECLARATION OF T. DAVIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with Exhibits 5 and 6

5. DECLARATION OF DEPUTY ATTORNEY GENERAL CASSANDRA J. SHRYOCK IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with Exhibit 7

6. DECLARATION OF G. GIURBINO IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

7. DECLARATION OF J. HARDEN

8. DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT with Exhibits 8 to 13

9. [PROPOSED] ORDER

10. DEFENDANTS' RAND WARNING TO PLAINTIFF REGARDING OPPOSING SUMMARY JUDGMENT

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

**AGO 000702**

I further certify that some of the participants in the case are not registered CM/ECF users.  On November 10, 2021, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Todd Ashker (C58191)
Kern Valley State Prison
P.O. Box 5106, ASU-2/194
Delano, CA 93216
*in pro per*

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 10, 2021, at San Francisco, California.

|  |  |
|---|---|
| B. Chung | */s/ B. Chung* |
| Declarant | Signature |

SF2020400523
42958847.docx

**AGO 000703**

1   ROB BONTA
    Attorney General of California
2   MARISA KIRSCHENBAUER
    Supervising Deputy Attorney General
3   CASSANDRA J. SHRYOCK
    State Bar No. 300360
4    455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
5   Telephone: (415) 510-3622
    Fax: (415) 703-5480
6   E-mail: Cassandra.Shryock@doj.ca.gov
    *Attorneys for Defendants*

7

8                   IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11

| 12 | **TODD ASHKER,** | 3:18-cv-06350-WHA |
|----|------------------|-------------------|
| 13 | Plaintiff, | **DECLARATION OF HOWARD E.** |
| 14 | | **MOSELEY IN SUPPORT OF DEFENDANTS' MOTION FOR** |
| 15 | v. | **SUMMARY JUDGMENT** |
| 16 | **S. KERNAN, et al.,** | Judge:        The Honorable William Alsup |
| 17 | Defendants. | Action Filed:  10/17/2018 |

18

19          I, Howard E. Moseley, make this declaration in support of Defendants' Motion for

20   Summary Judgment. I make the following declaration based upon my own knowledge, as

21   explained below. If called, I can testify competently to the facts contained in this declaration for

22   the reasons discussed below. I declare as follows:

23          1.      I am employed by the California Department of Corrections and Rehabilitation

24   (Department) as the Associate Director of the Office of the Appeals (OOA), formerly named the

25   Inmate Appeals Branch. Under the direction of the Director of the Division of Correctional Policy

26   Research and Internal Oversight, the Associate Director of the OOA administers the offender

27   (inmate and parolee) grievance and appeal process for the Department. Before my tenure as the

28   Associate Director of the Office of Appeals, I worked for over four years as the Chief Deputy

                                        1

Decl. of H. Moseley in Support of Deft.'s Mot. For Summ. J. (3:18-cv-06350-WHA )

**AGO 000704**

1    General Counsel for the Department's Office of Legal Affairs and there became familiar with the

2    offender grievance and appeal process for the Department.

3         2.      Before August 1, 2008, the OOA received, reviewed, and maintained all offender

4    grievances that were appealed to the final level of review (health care related and non-health care

5    related). Since August 1, 2008, the Inmate Correspondence and Appeals Branch (ICAB) receives,

6    reviews, and maintains all final-level appeals related to health care issues (medical, dental, and

7    mental-health), while the OOA receives, reviews, and maintains all final-level appeals for non-

8    health care issues. The OOA review of an appeal concludes the administrative remedy process for

9    an offender.

10        3.      The OOA keeps an electronic record of each offender's appeal. When an appeal is

11   received by the OOA, it is assigned a log number and entered into a computer system. The

12   computer system for tracking appeals commenced in 1993. The following information is kept in

13   the computer system and available in the Appeal History Report: the offender's CDCR number,

14   the offender's name, the appeal log number, the appeal issue, the date the appeal was received,

15   the grievance log number (which includes the acronym of the institution where the underlying

16   grievance arose), the date the appeal is closed, and the final disposition of the appeal.

17        4.      All offender appeals are reviewed and screened out or screened in by the OOA. An

18   appeal is screened out (and not answered substantively) if it does not comply with the regulations

19   governing the appeal process. Instead, the appeal is returned with a letter instructing the offender

20   how to cure the deficiency, if a cure is possible. An appeal is screened in (and answered

21   substantively) if it complies with the governing regulations. The Appeal History Report includes

22   appeals that were screened out or screened in; and if screened out, the report includes the reason

23   for the screen-out.

24        5.      I am familiar with the sections of Title 15 of the California Code of Regulations

25   that governed during the timeframe relevant to Plaintiff's lawsuit.

26        6.      I am familiar with the record keeping system at the OOA and have access to

27   Plaintiff's records. At the request of the Attorney General's Office, a search of the OOA

28   computer system was conducted on September 30, 2021, under the name of Todd Ashker, CDCR

2

Decl. of H. Moseley in Support of Deft.'s Mot. For Summ. J. (3:18-cv-06350-WHA )

AGO 000705

1    No. C58191, for all non-health care related appeals received by the OOA. A true and correct copy

2    of the Appeal History Report is attached as **Exhibit 1**.

3          7.     A search was conducted of the OOA's records to determine whether any appeals

4    received between September 10, 2014, and February 12, 2016, alleged that prison officials

5    retaliated against Plaintiff or improperly used confidential information at Plaintiff's Institutional

6    Classification Committee hearings on September 17 or October 8, 2015, or whether any appeals

7    received on or after August 1, 2015, alleged that Defendant W. Black retaliated against Plaintiff

8    for complaining about the use of the Guard One welfare check system by writing a mental health

9    care referral for Plaintiff on an unspecified date.

10         8.     A review of the OOA computer system and Exhibit 1 does not show any

11   complaints by Plaintiff received after August 1, 2015, that include allegations that Defendant W.

12   Black retaliated against Plaintiff for complaining about the use of the Guard One welfare check

13   system by writing a mental health care referral for Plaintiff on an unspecified date.

14         9.     In Appeal Log No. 1512978 (an appeal of Grievance Log Nos. PBSP-16-00032

15   and KVSP-16-00836), Plaintiff alleged that on December 22, 2015, Plaintiff was issued 18

16   Confidential Information Disclosure Forms (CDCR Forms 1030), proof of the ongoing abuse

17   Plaintiff suffers at the hands of prison officials who use confidential information from unreliable

18   sources as a pretext to justify Plaintiff's continued Security Housing Unit confinement. Appeal

19   Log No. 1512978 was received by the OOA on May 9, 2016, and was denied on July 18, 2016. A

20   true and correct copy of Plaintiff's appeal and the OOA decision are attached as **Exhibit 2**.

21         9.     Later, in September 2016, the OOA received correspondence from Plaintiff

22   concerning this appeal but the correspondence was returned to Plaintiff on January 9, 2017,

23   because a decision had already been rendered by the OOA on the appeal. A true and correct copy

24   of this correspondence is attached as **Exhibit 3**.

25         10.    A further review of the OOA's records shows that the following appeals were

26   submitted by Plaintiff and processed by the OOA after September 10, 2014:

27         a.     Appeal Log No. 1503954, marked as received on October 5, 2015;

28         b.     Appeal Log No. 1504107, marked as received on April 25, 2016;

3

Decl. of H. Moseley in Support of Deft.'s Mot. For Summ. J. (3:18-cv-06350-WHA )

**AGO 000706**

1     c.      Appeal Log No. 1511475, marked as received on April 11, 2016;

2     d.      Appeal Log No. 1708264, marked as received on July 24, 2017;

3     e.      Appeal Log No. 1806149, marked as received on May 7, 2018;

4     f.      Appeal Log No. 1909654, marked as received on August 9, 2019; and

5     g.      Appeal Log No. 1913729, marked as received on November 7, 2019.

6          Among these appeals, none reference the allegations described in paragraph 7 above.

7

8          Under the laws of the United States of America, I declare under penalty of perjury that the

9     foregoing statements are true and correct. Executed on November 8, 2021, at Sacramento,

10    California.

11

12    DocuSigned by:

13    _____
      0912AE2B5137449...

14    HOWARD E. MOSELEY

15    Associate Director, Office of Appeals

16    California Department of Corrections and Rehabilitation

17

18    SA2019105495

19

20

21

22

23

24

25

26

27

28

Decl. of H. Moseley in Support of Deft.'s Mot. For Summ. J. (3:18-cv-06350-WHA )

AGO 000707

# E  HI  IT

**TO DECLARATION OF HO    ARD E  MOSELE    IN S  PPORT OF DEFENDANTS'
MOTION FOR S   MMAR      D   MENT**

**AGO 000708**

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 186 of 294

Office of Appeals

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**

**Inmate / Parolee Appeals Tracking System - Level III**

**Appellant Appeal History**

**CDCR Number: C58191**

07/07/2020

Sorted By: CDCR Number

| CDCR Number | Appellant Name | Location | Arrival Date | Alerts (Type, Start, End) | Special Needs |
|---|---|---|---|---|---|
| C58191 | ASHKER, TODD | KVSP | 08/22/2018 | | |

**Accepted Appeals**

| IAB Number | Issue | Issue Subcategory | Accepted Date | Inst. Log Number | Due Date | Closed Date | Disposition |
|---|---|---|---|---|---|---|---|
| 0001726 | FUNDS | Prior to subcategory | 08/21/2000 | PBSP-00-00759 | 11/15/2000 | 03/15/2001 | DENIED |
| 0002393 | MEDICAL | Prior to subcategory | 09/08/2000 | PBSP-00-01098 | 12/06/2000 | 04/11/2001 | DENIED |
| 0004148 | LEGAL | Prior to subcategory | 10/25/2000 | PBSP-00-01078 | 01/24/2001 | 06/12/2001 | DENIED |
| 0006309 | LEGAL | Prior to subcategory | 12/26/2000 | PBSP-00-02321 | 03/26/2001 | 09/21/2001 | DENIED |
| 0009417 | MEDICAL | Prior to subcategory | 04/02/2001 | PBSP-00-02688 | 06/26/2001 | 12/20/2001 | DENIED |
| 0100025 | MEDICAL | Prior to subcategory | 07/02/2001 | PBSP-01-01094 | 09/26/2001 | 11/21/2001 | DENIED |
| 0103908 | LEGAL | Prior to subcategory | 10/25/2001 | PBSP-01-01914 | 01/25/2002 | 02/25/2002 | DENIED |
| 0103972 | PROGRAM | Prior to subcategory | 10/26/2001 | PBSP-01-02051 | 01/28/2002 | 03/28/2002 | DENIED |
| 0104304 | CASE INFO/RECORDS | Prior to subcategory | 11/05/2001 | PBSP-01-02335 | 02/05/2002 | 02/21/2002 | GRANTED IN PART |
| 0111295 | MAIL | Prior to subcategory | 05/16/2002 | PBSP-02-00419 | 08/12/2002 | 06/26/2002 | DENIED |
| 0111982 | MEDICAL | Prior to subcategory | 06/03/2002 | PBSP-02-00506 | 08/27/2002 | 07/22/2002 | DENIED |
| 0200361 | CASE INFO/RECORDS | Prior to subcategory | 07/10/2002 | PBSP-02-00845 | 10/03/2002 | 08/30/2002 | DENIED |
| 0201330 | CASE INFO/RECORDS | Prior to subcategory | 08/05/2002 | PBSP-02-00933 | 10/30/2002 | 09/19/2002 | DENIED |
| 0209898 | MEDICAL | Prior to subcategory | 03/05/2003 | PBSP-03-03042 | 05/30/2003 | 05/09/2003 | DENIED |
| 0210640 | LIVING CONDITIONS | Prior to subcategory | 03/24/2003 | PBSP-03-03388 | 06/18/2003 | 05/02/2003 | DENIED |
| 0213518 | MEDICAL | Prior to subcategory | 06/02/2003 | PBSP-03-00332 | 08/26/2003 | 08/25/2003 | DENIED |
| 0304914 | MAIL | Prior to subcategory | 11/07/2003 | PBSP-03-02226 | 02/09/2004 | 12/17/2003 | DENIED |
| 0309082 | PROPERTY | Prior to subcategory | 02/27/2004 | PBSP-03-03318 | 05/24/2004 | 05/03/2004 | DENIED |

Page: 1

AGO 000709

Office of Appeals

07/07/2020

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**

**Inmate / Parolee Appeals Tracking System - Level III**

| CDCR Number | Appellant Name | Location | Arrival Date | Alerts (Type, Start, End) | | | Special Needs |
|---|---|---|---|---|---|---|---|
| 0309261 | MAIL | Prior to subcategory | 03/03/2004 | PBSP-03-03303 | 05/27/2004 | 05/17/2004 | DENIED |
| 0311709 | MAIL | Prior to subcategory | 05/03/2004 | PBSP-04-00527 | 07/28/2004 | 07/19/2004 | DENIED |
| 0311730 | PROGRAM | Prior to subcategory | 05/03/2004 | PBSP-04-00566 | 07/28/2004 | 07/22/2004 | DENIED |
| 0403332 | LIVING CONDITIONS | Prior to subcategory | 09/21/2004 | PBSP-04-01650 | 12/20/2004 | 12/14/2004 | DENIED |
| 0403684 | MAIL | Prior to subcategory | 09/29/2004 | PBSP-04-01762 | 12/28/2004 | 12/28/2004 | DENIED |
| 0406313 | ADA | Prior to subcategory | 12/20/2004 | PBSP-04-02664 | 01/18/2005 | 01/18/2005 | DENIED |
| 0501388 | MEDICAL | Prior to subcategory | 08/03/2005 | PBSP-05-01169 | 10/28/2005 | 10/11/2005 | DENIED |
| 0503059 | CUSTODY/CLASS | Prior to subcategory | 09/15/2005 | PBSP-05-01551 | 12/14/2005 | 12/13/2005 | DENIED |
| 0503795 | MAIL | Prior to subcategory | 10/05/2005 | PBSP-05-01293 | 01/04/2006 | 01/04/2006 | DENIED |
| 0503799 | MAIL | Prior to subcategory | 10/05/2005 | PBSP-05-01847 | 01/04/2006 | 01/04/2006 | DENIED |
| 0504236 | MAIL | Prior to subcategory | 10/17/2005 | PBSP-05-01170 | 01/13/2006 | 01/12/2006 | DENIED |
| 0512168 | MEDICAL | Prior to subcategory | 04/25/2006 | PBSP-05-02708 | 07/20/2006 | 06/21/2006 | DENIED |
| 0607419 | MEDICAL | Prior to subcategory | 12/26/2006 | PBSP-06-02281 | 03/26/2007 | 02/22/2007 | DENIED |
| 0615587 | MEDICAL | Prior to subcategory | 05/25/2007 | PBSP-06-00877 | 08/21/2007 | 08/13/2007 | DENIED |
| 0700746 | MEDICAL | Other | 07/05/2007 | PBSP-07-00575 | 09/28/2007 | 11/07/2007 | DENIED |
| 0712826 | MEDICAL | Other | 10/31/2007 | PBSP-07-11142 | 01/30/2008 | 02/01/2008 | DENIED |
| 0716532 | GRIEVANCE AGST | Staff Obstructed Access | 12/10/2007 | PBSP-07-01780 | 03/10/2008 | 03/10/2008 | DENIED |
| 0721859 (Group) | PROGRAM | Other | 02/04/2008 | PBSP-07-02677 | 05/01/2008 | 04/29/2008 | DENIED |
| 0723581 | MEDICAL | Disagree W/Treatment | 02/20/2008 | PBSP-07-11497 | 05/15/2008 | 05/19/2008 | DENIED |
| 0729782 | MEDICAL | Referral | 04/23/2008 | PBSP-08-11738 | 07/18/2008 | 07/21/2008 | DENIED |
| 0730285 | MAIL | Delay send/receive | 04/28/2008 | PBSP-08-00399 | 07/23/2008 | 08/29/2008 | DENIED |
| 0731418 | CASE INFO/RECORDS | Gang Affiliation | 06/09/2008 | PBSP-08-01173 | 09/03/2008 | 10/07/2008 | DENIED |
| 0731773 | MEDICAL | Disagree W/Treatment | 06/04/2008 | PBSP-08-12050 | 08/28/2008 | 09/05/2008 | CANCELLED |
| 0803321 | MAIL | Correspondence Btwn | 07/24/2008 | PBSP-08-01455 | 10/20/2008 | 11/12/2008 | DENIED |
| 0804039 | FUNDS | Accuracy of Trust Account | 07/30/2008 | PBSP-08-01265 | 10/24/2008 | 11/23/2008 | DENIED |
| 0805306 | LIVING CONDITIONS | SHU/ASU/PSU restrictions | 09/03/2008 | PBSP-08-01791 | 12/02/2008 | 12/05/2008 | DENIED |
| 0805725 | LIVING CONDITIONS | SHU/ASU/PSU restrictions | 09/08/2008 | PBSP-08-01848 | 12/05/2008 | 12/11/2008 | DENIED |

Page: 2

AGO 000710

Office of Appeals

07/07/2020

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
Inmate / Parolee Appeals Tracking System - Level III

| CDCR Number | Appellant Name | Location | Arrival Date | Alerts (Type, Start, End) | | Special Needs | |
|---|---|---|---|---|---|---|---|
| 0805800 | MAIL | Frontal nudity only | 09/08/2008 | PBSP-08-02061 | 12/05/2008 | 12/11/2008 | DENIED |
| 0807981 | MAIL | Policy & Procedures | 10/03/2008 | PBSP-08-01998 | 01/05/2009 | 12/18/2008 | DENIED |
| 0808827 | CASE INFO/RECORDS | Gang Affiliation | 10/15/2008 | PBSP-08-02216 | 01/14/2009 | 01/12/2009 | DENIED |
| 0811748 | CASE INFO/RECORDS | Policy & Procedures | 11/21/2008 | PBSP-08-02792 | 02/24/2009 | 02/05/2009 | DENIED |
| 0904283 | PROPERTY | Unallowable items | 08/31/2009 | PBSP-09-02021 | 11/30/2009 | 11/17/2009 | DENIED |
| 0913171 | LIVING CONDITIONS | Food Services | 12/31/2009 | PBSP-09-02861 | 03/30/2010 | 04/07/2010 | DENIED |
| 0917265 | MAIL | Delay send/receive | 03/01/2010 | PBSP-09-03200 | 05/25/2010 | 05/24/2010 | DENIED |
| 0918117 | MAIL | Contraband/Disallow | 03/15/2010 | PBSP-09-03446 | 06/09/2010 | 06/07/2010 | DENIED |
| 1011402 | LEGAL | Copies | 12/03/2010 | PBSP-10-02356 | 03/01/2011 | 03/28/2011 | DENIED |
| 1011427 | LEGAL | Copies | 12/03/2010 | PBSP-10-02668 | 03/01/2011 | 03/28/2011 | DENIED |
| 1013584 | LEGAL | Access to Court | 01/07/2011 | PBSP-10-03240 | 04/06/2011 | 04/27/2011 | DENIED |
| 1015121 | LIVING CONDITIONS | Food Services | 01/31/2011 | PBSP-10-03399 | 04/27/2011 | 05/18/2011 | DENIED |
| 1016141 | LEGAL | Processing of Appeals | 02/14/2011 | PBSP-10-03886 | 05/11/2011 | 05/26/2011 | DENIED |
| 1016156 | CASE INFO/RECORDS | Policy & Procedures | 02/14/2011 | PBSP-10-03543 | 05/11/2011 | 05/26/2011 | DENIED |
| 1016935 | ADA | Medical chronos | 03/22/2011 | PBSP-11-10014 | 04/20/2011 | 05/02/2011 | DENIED |
| 1016885 | LIVING CONDITIONS | Adequacy of Environment | 03/30/2011 | PBSP-11-00245 | 06/24/2011 | 06/22/2011 | DENIED |
| 1101681 | PROPERTY | Searches | 08/05/2011 | PBSP-11-01592 | 10/31/2011 | 10/14/2011 | DENIED |
| 1110551 | LIVING CONDITIONS | Policy & Procedures | 03/02/2012 | PBSP-11-02459 | 05/25/2012 | 04/24/2012 | DENIED |
| 1203820 | MAIL | Disallowed Mail | 10/22/2012 | PBSP-12-02489 | 01/22/2013 | 01/10/2013 | DENIED |
| 1207701 | LIVING CONDITIONS | Ceiling (single/double) | 01/09/2013 | PBSP-12-03147 | 04/08/2013 | 02/25/2013 | DENIED |
| 1208211 | ADA | Other | 03/22/2013 | PBSP-12-03773 | 04/22/2013 | 04/23/2013 | REJECTED |
| 1208562 | MAIL | Disallowed Mail | 01/28/2013 | PBSP-12-03254 | 04/22/2013 | 03/20/2013 | DENIED |
| 1210930 | MAIL | Disallowed Mail | 04/02/2013 | PBSP-13-00215 | 06/28/2013 | 05/31/2013 | DENIED |
| 1212142 | MAIL | Disallowed Mail | 04/26/2013 | PBSP-13-00392 | 07/23/2013 | 06/27/2013 | DENIED |
| 1212420 | MAIL | Disallowed Mail | 05/10/2013 | PBSP-13-00841 | 08/06/2013 | 07/30/2013 | DENIED |
| 1300493 | LEGAL | Processing of Appeals | 07/12/2013 | PBSP-13-01325 | 10/07/2013 | 09/03/2013 | DENIED |
| 1305262 | CUSTODY/CLASS | Administrative Segregation | 01/09/2014 | PBSP-13-02326 | 04/08/2014 | 03/19/2014 | DENIED |

AGO 000711

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 189 of 294

Office of Appeals

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**Inmate / Parolee Appeals Tracking System - Level III**

07/07/2020

| CDCR Number | Appellant Name | Location | Arrival Date | Alerts (Type, Start, End) | | | Special Needs |
|---|---|---|---|---|---|---|---|
| 1306359 (Group) | LIVING CONDITIONS | Food Services | 11/25/2013 | PBSP-13-01750 | 02/25/2014 | 01/30/2014 | DENIED |
| 1306963 (Group) | CUSTODY/CLASS | Administrative Segregation | 12/03/2013 | PBSP-13-02345 | 03/03/2014 | 02/06/2014 | DENIED |
| 1307790 | PROPERTY | Searches | 12/23/2013 | PBSP-13-03658 | 03/21/2014 | 02/21/2014 | DENIED |
| 1307901 | LEGAL | Processing of Appeals | 02/05/2014 | PBSP-13-03841 | 05/02/2014 | 04/22/2014 | DENIED |
| 1310533 | CASE INFO/RECORDS | Gang Affiliation | 02/21/2014 | PBSP-14-00174 | 05/19/2014 | 05/08/2014 | DENIED |
| 1311625 | DISCIPLINARY | Division D | 03/21/2014 | PBSP-14-00325 | 06/17/2014 | 06/04/2014 | DENIED |
| 1312721 | DISCIPLINARY | Division F | 04/14/2014 | PBSP-14-00615 | 07/09/2014 | 07/08/2014 | DENIED |
| 1503954 | PROGRAM | Program Chngs rlt f/ Mssn | 10/05/2015 | PBSP-15-02146 | 12/29/2015 | 11/30/2015 | DENIED |
| 1504107 | CASE INFO/RECORDS | Gang Affiliation | 04/25/2016 | PBSP-15-01994 | 07/20/2016 | 06/22/2016 | DENIED |
| 1511475 | GRIEVANCE AGST | Unprofssnl/Rude/Disrespec | 04/11/2016 | PBSP-15-03258 | 07/06/2016 | 06/07/2016 | DENIED |
| 1512978 | CASE INFO/RECORDS | Gang Affiliation | 05/09/2016 | PBSP-16-00032 | 08/03/2016 | 07/18/2016 | DENIED |
| | | | | KVSP-16-00836 | | | |
| 1708264 | WORK INCENTIVE | C Status restrictions | 07/24/2017 | KVSP-17-01088 | 10/17/2017 | 09/21/2017 | DENIED |
| 1806149 | LIVING CONDITIONS | Other | 05/07/2018 | KVSP-18-00429 | 08/01/2018 | 08/01/2018 | DENIED |
| 1909654 | VISITING | Visitor approval | 08/00/2019 | KVSP-19-02068 | 11/01/2019 | 10/31/2019 | DENIED |
| 1913729 (Group) | LIVING CONDITIONS | Other | 11/07/2019 | KVSP-19-03416 | 02/07/2020 | 03/30/2020 | OTHER |
| 9300527 | MAIL | Prior to subcategory | 07/21/1993 | -93-03577 | 08/20/1993 | 09/03/1993 | DENIED |
| 9403413 | CASE INFO/RECORDS | Prior to subcategory | 11/14/1994 | -94-07748 | 12/16/1994 | 02/17/1995 | DENIED |
| 9403416 | GRIEVANCE AGST | Prior to subcategory | 11/14/1994 | -94-07343 | 12/16/1994 | 02/17/1995 | DENIED |
| 9408376 | MAIL | Prior to subcategory | 06/01/1995 | -95-02175 | 06/30/1995 | 07/14/1995 | DENIED |
| 9504368 | GRIEVANCE AGST | Prior to subcategory | 12/11/1995 | -95-04986 | 01/12/1996 | 02/23/1996 | DENIED |
| 9504445 | MAIL | Prior to subcategory | 12/12/1995 | -95-05113 | 01/12/1996 | 02/15/1996 | DENIED |
| 9508982 | MEDICAL | Prior to subcategory | 05/14/1996 | -95-10980 | 06/14/1996 | 07/12/1996 | DENIED |
| 9509243 | LEGAL | Prior to subcategory | 05/20/1996 | -95-06628 | 06/21/1996 | 08/23/1996 | DENIED |
| 9509716 | CASE INFO/RECORDS | Prior to subcategory | 06/06/1996 | -96-01773 | 07/05/1996 | 08/16/1996 | DENIED |
| 9601225 | MAIL | Prior to subcategory | 08/05/1996 | -96-03541 | 09/06/1996 | 10/18/1996 | GRANTED |
| 9604957 | MEDICAL | Prior to subcategory | 11/22/1996 | -96-04752 | 12/27/1996 | 02/07/1997 | DENIED |

Page: 4

AGO 000712

Office of Appeals

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**Inmate / Parolee Appeals Tracking System - Level III**

07/07/2020

| CDCR Number / IAB Number | Appellant Name / Issue | Location / Issue Subcategory | Arrival Date / Received Date | Alerts (Type, Start, End) / Inst. Log Number | Special Needs / Screened Out | Response Due | Reason |
|---|---|---|---|---|---|---|---|
| 9606981 | MAIL | Prior to subcategory | 01/31/1997 | -96-00317 | 04/25/1997 | 03/21/1997 | DENIED |
| 9701502 | PROPERTY | Prior to subcategory | 08/25/1997 | PSBP-97-02590 | 11/20/1997 | 10/03/1997 | DENIED |
| 9702297 | MEDICAL | Prior to subcategory | 09/24/1997 | PSBP-97-03127 | 12/23/1997 | 11/07/1997 | DENIED |
| 9703945 | LEGAL | Prior to subcategory | 11/20/1997 | PSBP-97-03756 | 02/18/1998 | 01/30/1998 | DENIED |
| 9801992 | MAIL | Prior to subcategory | 08/28/1998 | PSBP-98-02155 | 11/25/1998 | 12/18/1998 | DENIED |
| 9806591 | MAIL | Prior to subcategory | 02/22/1999 | PSBP-99-00042 | 05/17/1999 | 04/15/1999 | DENIED |
| 9901101 | MEDICAL | Prior to subcategory | 08/05/1999 | PSBP-99-01126 | 10/28/1999 | 12/28/1999 | DENIED |
| 9902630 | CASE INFO/RECORDS | Prior to subcategory | 09/29/1999 | PSBP-99-01111 | 12/22/1999 | 01/11/2000 | DENIED |
| **Screen Outs** | | | | | | | |
| 0004148 | LEGAL | Prior to subcategory | 09/28/2000 | PSBP-00-01078 | 09/28/2000 | | ONLY ORIGINAL APPEAL ACCEPTED AT DLI REVIEW |
| 0104304 | CASE INFO/RECORDS | Prior to subcategory | 10/17/2001 | PSBP-01-02335 | 10/17/2001 | | MISSING DOCUMENTATION |
| 0104304 | CASE INFO/RECORDS | Prior to subcategory | 07/01/2004 | PSBP-01-02335 | 07/01/2004 | | IAB RETAINS APPEALS 2 YEARS; REQUEST FROM AC |
| 0914607 | LEGAL | Prior to subcategory | 01/25/2010 | PSBP-09-03136 | 03/09/2010 | | APPEAL GRANTED AT INSTITUTIONAL LEVEL |
| 1203820 | MAIL | Disallowed Mail | 09/26/2012 | PSBP-12-02489 | 10/08/2012 | | R13 APPEAL INCOMPLETE (SIGN, DATE, ETC.) |
| 1208211 | ADA | Other | 04/22/2013 | PSBP-12-03773 | 04/23/2013 | | |
| 1208211 | ADA | Other | 01/30/2013 | PSBP-12-03773 | 02/25/2013 | | |
| 1305262 | CUSTODY/CLASS | Administrative Segregation | 12/12/2013 | PSBP-13-02326 | 12/20/2013 | | R07 SUPPORTING DOCUMENTS NOT ATTACHED |
| 1305262 | CUSTODY/CLASS | Administrative Segregation | 10/24/2013 | PSBP-13-02326 | 11/18/2013 | | R07 SUPPORTING DOCUMENTS NOT ATTACHED |
| 1307901 | LEGAL | Processing of Appeals | 12/24/2013 | PBSP-13-03841 | 01/23/2014 | | R00 OTHER (REJECTED) |
| 1504107 | LEGAL | Gang Affiliation | 10/07/2015 | PBSP-15-01994 | 11/20/2015 | | R07 SUPPORTING DOCUMENTS NOT ATTACHED |
| 1504107 | CASE INFO/RECORDS | Gang Affiliation | 12/16/2015 | PBSP-15-01994 | 03/30/2016 | | R07 SUPPORTING DOCUMENTS NOT ATTACHED |

AGO 000713

Case: 22-16162, 09/19/2023, ID: 12795412, DktEntry: 32-5, Page 191 of 294

Office of Appeals

07/07/2020

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION

Inmate / Parolee Appeals Tracking System - Level III

| CDCR Number | Appellant Name | Location | Arrival Date | Alerts (Type, Start, End) | Special Needs |
|---|---|---|---|---|---|
| 1512978 | CASE INFO/RECORDS | Gang Affiliation | 09/19/2016 | PBSP-16-00032   01/09/2017 KVSP-16-00836 | A10 NOT AN APPEAL |
| 5008680 | MAIL | Prior to subcategory | 07/19/2005 | PBSP-C05-01293  07/19/2005 | MISSING DOCUMENTATION |
| 5009268 | OTHER | Prior to subcategory | 07/21/2005 | | MUST BE COMPLETED THROUGH 2ND LEVEL |
| 5010312 | MAIL | Prior to subcategory | 08/03/2005 | 05-01170   08/03/2005 | MISSING DOCUMENTATION |
| 5064406 | CUSTODY/CLASS | Prior to subcategory | 07/10/2002 | pbsp-02-00933  07/10/2002 | MISSING DOCUMENTATION |
| 5066819 | MAIL | Prior to subcategory | 09/18/2002 | PBSP-02-1624  09/18/2002 | MISSING DOCUMENTATION |
| 5086722 | PROGRAM | Prior to subcategory | 12/15/2003 | PBSP-03-2721  12/15/2003 | MUST BE COMPLETED THROUGH 2ND LEVEL |
| 5095628 | PROGRAM | Prior to subcategory | 06/18/2004 | PBSP-C-04-  06/18/2004 00566 | MUST SUBMIT APPEAL WITHIN 15 WORKING DAYS |
| 5102003 | CUSTODY/CLASS | Prior to subcategory | 12/30/2004 | PBSP-04-02600  12/30/2004 | MUST SUBMIT APPEAL WITHIN 15 WORKING DAYS |

Page: 6

AGO 000714

# E  HI  IT

**TO DECLARATION OF HO   ARD E  MOSELE    IN S   PPORT OF DEFENDANTS'
MOTION FOR S   MMAR       D   MENT**

**AGO 000715**

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
OFFICE OF APPEALS
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

### THIRD LEVEL APPEAL DECISION

Date:   JUL **18** 2016

In re:   Todd Ashker, C58191
Kern Valley State Prison
P.O. Box 6000
Delano, CA 93216

TLR Case No.: 1512978          Local Log Nos.:  KVSP-16-00836 and PBSP-16-00032

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner M. Hodges, Captain.  All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:**  It is the appellant's position that on December 22, 2015, he was issued 18 CDC Form 1030, Confidential Information Disclosure Form(s) which are examples of the CDCR staff's ongoing abuse of confidential information from unreliable sources as a pretext to justify his continued Security Housing Unit (SHU) confinement by the Institution Classification Committee (ICC) and Departmental Review Board (DRB).

The appellant requests he be compensated for every day responsible staff denied him due process or retaliated against him "as described herein."

**II   SECOND LEVEL'S DECISION:**  The reviewer found no basis to grant this appeal.  The appellant was issued 18 CDC Form 1030s on December 22, 2015, in preparation for his appearance before the DRB on January 14, 2016.  Prior to the review, the appellant was issued a CDC Form 128-B1, Notice of Classification Hearing Chrono on January 11, 2016, giving him the required 72-hour notice prior to the review to prepare.  The DRB did not review any confidential information that was not disclosed to the appellant.  The DRB determined the concerns for the appellant's safety documented by the Pelican Bay State Prison (PBSP) ICC of September 17, 2015, and October 8, 2015, would not preclude his housing in a general inmate population (GP) setting.

The DRB and ICC reviewed the appellant's case factors, program needs, medical and housing needs.  The appellant's request to be compensated for violation of due process was denied, as his due process was not violated.  The Department has the obligation to provide a safe and secure environment for staff and inmates. The confidential memorandums cannot and will not be removed as they document information provided by others, which may or may not perceive the appellant as a threat or are a threat to the safety of the appellant, although he may not perceive them as a threat to his safety.  The confidential memorandums address enemy concerns between the appellant and multiple confidential informants.

It is noted the appellant was seen by the DRB on January 14, 2016, at which time he was approved for transfer to Kern Valley State Prison (KVSP) Level IV/180-design GP placement.  As a result, the appellant was transferred to KVSP on February 12, 2016.  Subsequently, the KVSP ICC released the appellant to the GP and cleared him for double cell housing pursuant to the appellant's request.  The appeal was denied at the Second Level of Review.

**III   THIRD LEVEL DECISION:**  Appeal is denied.

  **A.  FINDINGS:**  California Code of Regulations, Title 15, Section (CCR) 3270 states, "The requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities of the institutions of the department."

  CCR 3376.1 states, "The Departmental Review Board (DRB) provides the Secretary's final review of classification issues which are referred by an institution head for a resolution or decision at the headquarters level.  The DRB decision serves as the Secretary's level decision which is not appealable and concludes the inmate/parolee's departmental administrative remedy of such issues."

**AGO 000716**

TODD ASHKER, C58191
CASE NO. 1512978
PAGE 2

The DRB decision regarding the appellant's housing and the use of confidential information by the DRB to make the decision is not appealable and will not be discussed in this response. Additionally, the appellant was appropriately informed via the CDC Form 695, Inmate/Parolee Appeals Screening Form dated January 7, 2016, that the ICC decision to retain him in the SHU was made on October 8, 2015, and is past time constraints for appealing pursuant to CCR 3084.8. Pursuant to the CCR 3084.2, the Third Level of Review (TLR) will only address the issuance of the 18 CDC Form 1030s on December 22, 2015. All other issues will not be addressed and administrative remedies are not considered exhausted for these issues.

The documentation and arguments are persuasive that the appellant has failed to provide evidence to support his appeal claim that the 18 CDC Form 1030s issued to him on December 22, 2015, are examples of the CDCR staff's ongoing abuse of confidential information from unreliable sources as a pretext to justify his continued SHU confinement by the ICC and DRB. The appellant has failed to present evidence that PBSP staff acted in violation of any laws, policies or procedures, that he was denied due process or retaliated against. No relief is warranted at the TLR.

The appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B).

**B.  BASIS FOR THE DECISION:**
CCR: 3001, 3084.1, 3270, 3321, 3375, 3376.1, 3378, 3380
CDCR Operations Manual, Section: 13030.10, 54100.4

**C.  ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, Government Claims Unit, P.O. Box 3035, Sacramento, CA  95812-3035, for further review.

M. HODGES, Appeals Examiner
Office of Appeals

M. VOONG, Chief
Office of Appeals

cc:     Warden, KVSP
        Appeals Coordinator, KVSP
        Appeals Coordinator, PBSP

**AGO 000717**

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-4

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

~~STAFF COMPLAINT~~
DEPARTMENT OF CORRECTIONS AND REHABILITATION

This is NOT a Staff Cmp.                                                Side 1

1512978                    IAB USE ONLY   Institution/Parole Region   Log Number   Category
C58191                     PBSP 16-00032                              7 61
                           KVSP-0-16-00836
                           FOR STAFF USE ONLY

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations (CCR), Title 15, Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

**Appeal is subject to rejection if one row of text per line is exceeded.**          **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First) | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| ASHKER, TODD | C#58191 | D4-207 | SHU/SS |

Pelican Bay State Prison

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):

Ongoing denial of Due Process/Retaliation

**A. Explain your issue** (If you need more space, use Section A of the CDCR 602-A): On 12/22/15, CCI - Fallis ISSUED ME (18) Confidential Disclosures [re: 'Your upcoming DRB Hrg.']; These Conf. Disclosures are the first time I've rec'd definite proof of the ongoing-due process violations[inclusive of retaliation] -

**B. Action requested** (If you need more space, use Section B of the CDCR 602-A): 1.) To be compensated for every day responsible staff have denied my due process, and/or been retaliating against me, as described herein. JAN 1 9 2016

JAN 1 9 2016
Appeals Office
Per CDR refer to
Aw - SHU for
Appeal Enquiry
Pelican Bay State Prison
FEB 0 9 2016
process as routine.
Appeals Office
MAR 0 9 2016
Pelican Bay State Prison
MAR 2 1 2016
Appeals Office

**Supporting Documents:** Refer to CCR 3084.3.
☐ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

☐ No, I have not attached any supporting documents. Reason: 

Inmate/Parolee Signature: _T. Ashker_                Date Submitted: 1/18/16

☐ By placing my initials in this box, I waive my right to receive an interview.

**C. First Level - Staff Use Only**                    Staff – Check One: Is CDCR 602-A Attached? ☐ Yes ☐ No
This appeal has been:
☐ Bypassed at the First Level of Review. Go to Section E. R7/8
☒ Rejected (See attached letter for instruction) Date: 1/7/16   Date:        Date:        Date:
☐ Cancelled (See attached letter) Date:
☒ Accepted at the First Level of Review.
  Assigned to: SHU         Title: AW   Date Assigned: 1/21/16   Date Due: 3/2/16

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.
Date of Interview: 2/5/2016          Interview Location: Unit D4
Your appeal issue is: ☐ Granted  ☐ Granted in Part  ☒ Denied  ☐ Other:
  See attached letter. If dissatisfied with First Level response, complete Section D.
Interviewer: I. Ryan (First Name)   Title: CCII   Signature: _____   Date completed: 2/5/16
Reviewer: D. Melton (Print Name)   Title: CA(A)   Signature: DMelton
Date received by AC: FEB 2 3 2016

| AC Use Only | |
|---|---|
| Date mailed/delivered to appellant | FEB 2 3 2016 |

RECEIVED

AGO 000718

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**Side 2**

**D. If you are dissatisfied with the First Level response,** explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

DISSATISFIED - FIRST LEVEL RESPONSE IGNORES MY SPECIFIED POINTS/COMPLAINT IN section 'A'. The 2014 DRB MEMBERS & Related Support staff, &(2) 2015 ICC COMMITTEE & Related Support Staff denied my due process - liberty interest right to be free of solitary confinement torture <SHU> by relying on False-fabricated-hearsay contradictory allegations from CDCR's collaborator informant <who don't meet "confidential" criteria> & related supposition(s) thereof by IGI-SSU-OCS-DRB

Inmate/Parolee Signature: T. Ashker Date Submitted: 3/6/16 MAR 21 2016

**E. Second Level - Staff Use Only** **Staff – Check One: Is CDCR 602-A Attached?** ☒ Yes ☐ No

This appeal has been:
☐ By-passed at Second Level of Review. Go to Section G.
☐ Rejected (See attached letter for instruction) Date: ______ Date: ______ Date: ______ Date: ______
☐ Cancelled (See attached letter)
☒ Accepted at the Second Level of Review

Assigned to: Appeals Title: ______ Date Assigned: 3/21/16 Date Due: 5/3/16

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: ______ Interview Location: ______

Your appeal issue is: ☐ Granted ☐ Granted in Part ☒ Denied ☐ Other: ______

See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: 1st level (Print Name) Title: ______ Signature: ______ Date completed: ______

Reviewer: D. BRADBURY (Print Name) Title: CDW Signature: [signature]

Date received by AC: APR 26 2016

**AC Use Only**
**Date mailed/delivered to appellant** APR 26 2016

**F. If you are dissatisfied with the Second Level response,** explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A. <REC'D on 5/3/16>

Dissatisfied! Second level respondent basically ignores/fails to address my clear points at issue - as stated in above sections A, B, and D. I maintain my position(s) stated above and request 3rd Level grant the relief requested -

Inmate/Parolee Signature: T. Ashker Date Submitted: 5/3/16

**G. Third Level - Staff Use Only**

This appeal has been:
☐ Rejected (See attached letter for instruction) Date: ______ Date: ______ Date: ______ Date: ______ Date: ______
☐ Cancelled (See attached letter) Date: ______
☒ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted ☐ Granted in Part ☒ Denied ☐ Other: ______
See attached Third Level response.

**Third Level Use Only**
**Date mailed/delivered to appellant** ___/___/___

**H. Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

Inmate/Parolee Signature: ______ Date: ______

Print Staff Name: ______ Title: ______ Signature: ______ Date: ______

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PELICAN BAY STATE PRISON | Side 1
SECURITY HOUSING UNIT

| | IAB USE ONLY | Institution/Parole Region | Log # | Category |
| --- | --- | --- | --- | --- |
| 1512978 | | PBSP 16-00032 | UNIT D-4 | |
| | | KVSP-O-16-CP8396 | | |
| | | FOR STAFF USE ONLY | | |

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.   **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First) | CDC Number: | Unit/Cell Number: | Assignment: |
| --- | --- | --- | --- |
| ASHKER, TODD | C#58191 | D4-207 | SHU/SS |

**A. Continuation of CDCR 602, Section A only (Explain your issue):** going back to my DRB CBC-Rev
iew[9/10/14],and (2) ICC 'Special Review' Committees[9/17/15,and 10/08
15 - held in re: Ashker,et.al. v. Governor,et.al.,Settlement Agreement]
These (18) Conf. Disc's, are examples of CDCr's rank and file,ongoing
abuse of Confidential Information, as a pretext to justify my cont'd
SHU confinement.[ the specific examples I'm refering to are CM Disclo-
sures dated 12/22/15;10/02-to-06/15; 8/26-to-25/15; 9/02/15; and 10/
21/13; re: CMs dated 5/21/12; 12/07/12; 2/26/13; 4/02/13; and 8/15/13]
These CMs are per informant/debriefer-CDCr-OSC-IGI colaborators Beasley
and Elrod's allegations used by DRB/ICCs,etc., to justify keeping me
in SHU [These are examples of the most recent abusive use of Conf.Info
going on for more than 3 decades!]; these 2 collaborating informants
do not meet criteria for being deemed [Confidential Informants], and
the DRB/ICCs, etc, know this because they know these Informants were
both paraded before the public in 2012/2013 as informants! The DRB/ICC
etc., intentionally withheld, and/or fabricated information on the
Confidential Disclosures ref'd above in order to deny me due process,
and keep me in SHU...I repeatedly pointed out that these 2 lying rats
stories did not constitute evidence of anything! DRB/ICC staff owe me!

Inmate/Parolee Signature: _T. Ashker_    Date Submitted: 1/13/16

**B. Continuation of CDCR 602, Section B only (Action requested):**  JAN 1 9 2016

Inmate/Parolee Signature: _____    Date Submitted: _____

STAFF COMPLAINT

JAN 19 2015
Appeals Office

MAR 0 9 2016
Pelican Bay State Prison

MAR 10 1 2016
Appeals Office

RECEIVED
MAIL APPEALS BRANCH
STAFF

AGO 000720

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 2

**D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response):** and Warden Ducart, etal, inclusive of CCII's & CCI's involved..... All of whom are complicit in failing to base their decisions to keep me in (SHU) on actual evidence justifying this, & related failure(s) to provide comprehensive-accurate-complete information in the numerous confidential disclosures at issue! In addition to being an on-going due process + liberty interest violation - I am claiming such acts/failures to act are retaliation in response to my use of the courts & role in peaceful activism efforts - resulting in global exposure of decades of state sanction torture policies & practices... thereby forcing major reforms!!

MAR 2 1 2016

**Inmate/Parolee Signature:** T. Ashker **Date Submitted:** 3/6/16

**F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):**

**Inmate/Parolee Signature:** **Date Submitted:**

AGO 000721

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-4

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|

PBSP D-16-00032   6|2|9

*FOR STAFF USE ONLY*

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available.  See California Code of Regulations (CCR), Title 15, Section 3084.1.  You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, *only* one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process.  No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): ASHKER, TODD | CDC Number: C#58191 | Unit/Cell Number: D4-207 | Assignment: SHU Pelican Bay State Prison |
|---|---|---|---|

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):

Ongoing denial of due process/retaliation

JAN 06 2015
CDA
Appeals Office
Per 602 does not
meet SC criteria

Pelican Bay State Prison

JAN 19 2015
rewritten
Appeals Office

A.  Explain your Issue (If you need more space, use Section A of the CDCR 602-A): On 12/22/15, CCI-
Fallis issued me (18) Confidential Disclosures re: 'Your upcoming DRB
Hrg.' This DRB Hrg. is in response to the Ashker, et.al. v. Governor,
et.al., 'Settlement Agreement' filed 8/31/15; specifically, the agree-

B.  Action requested (If you need more space, use Section B of the CDCR 602-A): 1. To be issued the
original-complete-handwritten debriefing documents, and any recordings
re:CDCr collaborators' Elrod, and Beasley. 2. To be immediately released
to PBSP G.P. 3. To be compensated for every day since 9/10/14.

**Supporting Documents: Refer to CCR 3084.3.**   JAN 06 2016
☐ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

_____     _____

_____     _____

☒ No, I have not attached any supporting documents. Reason : *I need my copies of related*
*documents for my DRB Hrg.*

_____

Inmate/Parolee Signature: *Todd Ashker*          Date Submitted: 1/5/16

☐  By placing my initials in this box, I waive my right to receive an interview.

**C.  First Level - Staff Use Only**          Staff – Check One:  Is CDCR 602-A Attached?  ☒ Yes   ☐ No
This appeal has been:          R-7/8
☐ Bypassed at the First Level of Review. Go to Section JAN 07 2016
☒ Rejected (See attached letter for instruction)  Date: _____  Date: _____  Date: _____
☐ Cancelled (See attached letter)  Date: _____
☐ Accepted at the First Level of Review.
    Assigned to: _____  Title: _____  Date Assigned: _____  Date Due: _____

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.
    Date of Interview: _____          Interview Location: _____
Your appeal issue is:  ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other: *rewritten*
    See attached letter. If dissatisfied with First Level response, complete Section D.
Interviewer: _____ (Print Name)   Title: _____   Signature: _____   Date completed: _____
Reviewer: _____ (Print Name)   Title: _____   Signature: _____
Date received by AC: _____

| | AC Use Only |
|---|---|
| | Date mailed/delivered to appellant ___/___/___ |

**AGO 000722**

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**Side 2**

**D. If you are dissatisfied with the First Level response,** explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

**Inmate/Parolee Signature:** ______ **Date Submitted :** ______

**E. Second Level - Staff Use Only** **Staff – Check One: Is CDCR 602-A Attached?** ☐ **Yes** ☐ **No**

This appeal has been:
☐ By-passed at Second Level of Review. Go to Section G.
☐ Rejected (See attached letter for instruction) Date: ______ Date: ______ Date: ______ Date: ______
☐ Cancelled (See attached letter)
☐ Accepted at the Second Level of Review

rewritten

Assigned to: ______ Title: ______ Date Assigned: ______ Date Due: ______

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: ______ Interview Location: ______

Your appeal issue is: ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other: ______

See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: ______ (Print Name) Title: ______ Signature: ______ Date completed : ______

Reviewer: ______ (Print Name) Title: ______ Signature: ______

Date received by AC: ______

**AC Use Only**
**Date mailed/delivered to appellant** ___/___/___

**F. If you are dissatisfied with the Second Level response,** explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.

**Inmate/Parolee Signature:** ______ **Date Submitted:** ______

**G. Third Level - Staff Use Only**

This appeal has been:
☐ Rejected (See attached letter for instruction) Date: ______ Date: ______ Date: ______ Date: ______ Date: ______
☐ Cancelled (See attached letter) Date: ______
☐ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other: ______

See attached Third Level response.

**Third Level Use Only**
**Date mailed/delivered to appellant** ___/___/___

**H. Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

Inmate/Parolee Signature: ______ Date: ______

Print Staff Name: ______ Title: ______ Signature: ______ Date: ______

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|

PBSP D-16-00032

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed.  Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.   WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First) | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| ASHKER, TODD | C#58191 | D4-207 | SHU |

**A.  Continuation of CDCR 602, Section A only (Explain your issue)** : ment required ICC Special
Comm. Review for purpose of release to G.P. Absent 'substantial safety
concerns' in which case ICC put the case up for DRB. I had 2 ICC's
per agreement. Prior to these, I was issued (3), then (8) Conf. Disc.
ICC used as a pretext to deny my release to G.P., and put me up for a
DRB Hrg.[alleging 'substantial safety concerns']; the 'Disclosures'I
was issued on 9/17/15; and 10/08/15, are the same as the ones at my
9/10/14 DRB CBC Review [resulting in my placement on Step-2]! On 12/22/
15, many of the Disclosures are re: same Conf. Memos' used at above
Hrgs., and they provide direct evidence supporting my position all
along! That there is NO EVIDENCE supporting the informants' Elrod and
Beasley's allegations in CMs dated 5/12/12; 12/7/12; 2/26/13; 4/2/13;
8/15/13. And the prior Disclosures contained false information, etc.,
[e.g., the prior Disclosures re: 4/2/13 allegations about 2 inmates
who had previously defected-confirmed and corroborated that it was
'common knowledge that Ashker wanted the Doctor, and Attys murdered'
In the Disclosure I was given on 12/22/15, re:4/2/13, it states that
one of these 'defectors' was shown the alleged 'evidence' and stated
he knew nothing about it![Elrod] this is 1 example!! Not enough room!

Inmate/Parolee Signature: T. Ashkr     Date Submitted: 1/5/16

**B.  Continuation of CDCR 602, Section B only (Action requested):**   JAN 0 6 2016

Inmate/Parolee Signature: _____     Date Submitted: _____

Inmate/Parolee Signature:                                      Date Submitted:

F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):

Inmate/Parolee Signature:                                      Date Submitted:

D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response):

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

Side 2

DEPARTMENT OF CORRECTIONS AND REHABILITATION

AGO 000725



**FIRST LEVEL APPEAL RESPONSE**

**RE**:   PELICAN BAY STATE PRISON (PBSP)
Appeal Log Number PBSP-D-16-00032
First Level Reviewer's Response

**INMATE**:  ASHKER, C58191

**APPEAL DECISION**:  **PARTIALLY GRANTED**

**APPEAL ISSUE**:  CUSTODY/CLASSIFICATION

**EFFECTIVE COMMUNICATION**:

The interview for this appeal was completed at the First Level of Review.  The attached Appeals Effective Communication form contains information relative to accommodations which may have been utilized to ensure effective communication following a review of the Disability and Effective Communication System.  You have a documented Test of Adult Basic Education score of 12.9.  You do not require additional Effective Communication devices.  You stated you understood and you needed no further assistance.

**ACTION REQUESTED**:

On January 18, 2016, you initiated an Inmate/Parolee Appeal Form, California Department of Corrections and Rehabilitation (CDCR) Form 602, requesting to be compensated for every day responsible staff have denied you due process, or have retaliated against you.

**FINDINGS**:

You are appealing the fact you were denied due process in an effort to retain you in the PBSP Security Housing Unit (SHU).  You contest that confidential information used to retain you were from sources that do not meet the criteria to be deemed confidential informants.

J. Ryan, Correctional Counselor II (CCII), interviewed you on February 5, 2016.  During the interview, you clarified your complaint was not against any one person and clarified your complaint was against the decisions made by the Departmental Review Board (DRB) of September 10, 2014, and the two Institutional Classification Committees (ICC) which occurred on September 17, 2015, and October 8, 2015.  You contended some of these documents were used to both validate you and document safety concerns.  You opined that a source document must either be used to validate you or document a safety concern but it cannot be both.  You stated your belief that all of this information was hearsay.  You stated you wish to be compensated for time spent in the PBSP SHU back to September 10, 2014, when you were reviewed by the DRB.

California Code of Regulations, Title 15, Section 3375(f) includes the following:

*The classification of inmates shall provide the following procedural safeguards:*
  - *Inmates shall be given written notice at least 72 hours in advance of a hearing which could result in an adverse effect.*

**AGO 000726**

First Level Reviewers Response
Appeal Log Number PBSP- D-16-00032
Inmate ASHKER, C58191
Page 2

- *Except as provided in subsection 3375(f)(3), the inmate shall be present...at any other classification committee hearing which could result in an adverse effect upon the inmate.*
- *If the inmate was not previously notified and during the classification committee hearing an unanticipated adverse effect emerges, the hearing shall be postponed for at least 72 hours.*
- *Each inmate appearing before a classification committee shall be:*
    - *Introduced to the committee members.*
    - *Informed of the purpose of the hearing.*
    - *Encouraged to participate in the hearing discussion.*
    - *Informed of the committee's decision.*
- *Classification committee decisions shall be based on evaluation of available information and mutual agreement of the committee members.*

On September 10, 2014, you were reviewed by the DRB. Prior to the review, you were notified of this review via CDCR 128-B1, Notice of Classification Hearing, on September 2, 2014, giving you more than the required 72 hours prior to the review to prepare. When you were notified, you were given 13 CDCR 1030, Confidential Information Disclosure, forms to review in preparation for this review. The DRB did not review any confidential information that was not disclosed to you. Based upon the information in your Central File, the DRB acted to retain you in PBSP SHU in Step 2 of the Step Down Program. You were advised at the end of the DRB that their decision served as the Secretary's level decision which is not appealable. All due process rights were afforded to you with regard to this review.

On September 17, 2015, your case was reviewed by the PBSP ICC for possible release based upon the Settlement Agreement of August 31, 2015. Prior to this review, you were issued a CDCR 128-B1 on August 25, 2015, giving you more than the required 72 hours prior to the review to prepare. During the ICC, three confidential documents were discussed relative to concerns for your safety. Two of these documents were addressed in the DRB of September 10, 2014, and this information was disclosed to you then. Additionally, the information in the third document was disclosed to you via CDCR 1030 on August 26, 2015. The ICC did not review any confidential information that was not disclosed to you. The ICC determined you may have safety concerns and referred your case to the DRB for review. ICC further granted you Work Group/Privilege Group D1/S5 effective the date of ICC allowing you to receive the maximum allowable privileges while housed in PBSP SHU. You were advised of your appeal rights at the end of ICC. All due process rights were afforded to you with regard to this review.

On October 8, 2015, your case was again reviewed by the ICC. Prior to this review, you were issued a CDCR 128-B1 on September 30, 2015, giving you more than the required 72 hours prior to the review to prepare. During the ICC, eight confidential documents were discussed relative to concerns for your safety. You were provided a CDCR 1030 for each of these documents on October 2, 2015. The ICC did not review any confidential information that was not disclosed to you. The ICC determined there was overwhelming evidence that your safety may be in jeopardy and referred your case to the DRB for review. You were advised of your appeal rights at the end of ICC. All due process rights were afforded to you with regard to this review.

AGO 000727

First Level Reviewers Response
Appeal Log Number PBSP- D-16-00032
Inmate ASHKER, C58191
Page 3

On January 14, 2016, your case was again reviewed by the DRB. You were issued 18 CDCR 1030's on December 22, 2015 in preparation for your appearance before the DRB on January 14, 2016. Prior to the review, you were issued a CDCR 128-B1 on January 11, 2016, giving you the required 72 hours prior to the review to prepare. The DRB did not review any confidential information that was not disclosed to you. The DRB determined the concerns for your safety documented by the PBSP ICC's of September 17, 2015, and October 8, 2015, would not preclude your housing in a General Population setting. The DRB acted to release you from PBSP SHU and transfer you to Kern Valley State Prison, "A" Facility. You were advised at the end of the DRB that their decision served as the Secretary's level decision which is not appealable. All due process rights were afforded to you with regard to this review.

Within these four classification reviews, all due process rights were afforded to you. It appears each DRB and ICC acted in good faith with regard to not only your housing and program requirements but also with regard to your personal safety based on the availability of information both confidential and non-confidential.

With regard to the seeming duality of information contained within some of this confidential information, generally speaking, it is possible for a document to be used to validate you and contain information that may cause concern for your safety. Unfortunately, due to the confidential nature of these documents, it is difficult to clarify seemingly conflicting information without disclosing information that would put individuals at risk of harm. The reliability of each document is scrutinized and, in turn, documented. Appropriate actions were taken with regard to your case based upon the reliability of the information disclosed to you.

Although you continued to be retained in PBSP SHU based on the ICC decisions of September 17, 2015, and October 8, 2015, compensation for this retention is inappropriate. It is noted you were granted maximum privileges in PBSP SHU effective September 17, 2015. However, your continued retention in SHU pending the DRB review was appropriate.

**DETERMINATION OF ISSUE**:

A thorough review of your complaint presented in this appeal has been completed. Your request to be compensated for your housing in SHU from September 10, 2014, is **DENIED**. Your being housed from that time period forth was appropriate for your case factors and you were afforded all of your due process rights with regard to these classification reviews.

Based on this review, the action requested to resolve this appeal is **DENIED** at the First Level of Review.

C. J. PARRY                    2/22/2016            Dmelton (4)      2/22/2016
C. J. PARRY              Date                   R. K. BELL              Date
Captain (Adult Institutions)                    Correctional Administrator
Facility D                                      Security Housing Unit

AGO 000728

*but is not limited to information which, if disclosed, would: - Endanger the health and/or safety of the subject or other, -persons (may include medical and/or psychiatric information which, if known to the subject of the information, would prove detrimental). -Endanger the security of any departmental facility. - Disclose personal or confidential information pertaining to a person other than the subject of the information when the information would not reasonably be a part of the subject's knowledge or experience. - Impede an investigation or preclude CDC from accomplishing its statutory purpose and function in criminal, civil or administrative matters. - Compromise the objectivity or fairness of the testing, appointment or promotion process. - Release information required by statute to be withheld from the individual to whom it pertains.*

The above mentioned DRB and ICCs reviewed the inmate's case factors, program needs, medical and housing needs. The DRB and both ICCs acted to retain him in PBSP-SHU. Therefore, the inmate's request to be compensated for violation of due process is **DENIED,** as the inmate's due process was not violated. The Chairperson of each committee acting on behalf of the Department has a right to protect the safety and security of the public, the institution as well as the safety and security of the inmate.

The Department has the obligation to provide a safe and secure environment for staff and inmates. The Confidential Memorandums cannot and will not be removed as they document information provided by others which may or may not perceive the inmate as a threat or are a threat to the safety of the inmate, although he may not perceive them as a threat to his safety. The Confidential Memorandums address enemy concerns between the inmate and multiple confidential informants.

It should be noted the inmate was seen by the DRB on January 14, 2016, at which time he was approved for transfer to Kern Valley State Prison (KVSP) for level IV/ 180 design GP placement. As a result, the inmate was transferred to KVSP on February 12, 2016. Subsequently, KVSP ICC has released the inmate to the GP and cleared him for double cell housing per the inmate's request.

Based on the above aforementioned, this appeal is **DENIED** at the Second Level Review.

MODIFICATION ORDER

No modification of this decision or action taken is required.

C.E. DUCART
Warden

AS      Date 4/19/16

AGO 000729



## PELICAN BAY STATE PRISON
### SECOND LEVEL REVIEW

DATE: APR 2 6 2016

Inmate ASHKER, C58191
Kern Valley State Prison
General Population
Facility A, Building 1, Cell 223

RE: WARDEN'S LEVEL DECISION          APPEAL: DENIED
    APPEAL LOG NO. PBSP-D-16-00032    ISSUE: CUSTODY/CLASS

This matter was reviewed by C. E. Ducart, Warden, at Pelican Bay State Prison (PBSP). On February 5, 2016, J. Ryan, Correctional Counselor II, conducted the interview at the First Level Review. All submitted documentation and supporting arguments have been considered.

### ISSUES

The inmate contends on December 22, 2015, J. Fallis, Correctional Counselor I (CCI) issued him eighteen California Department of Corrections and Rehabilitation (CDCR) Confidential Disclosure forms. The inmate believes the Confidential Disclosure forms are proof of on-going due process violations and are an abuse of confidential information. The inmate further contends two confidential informants collaborated against him to retain him in the PBSP Security Housing Unit (SHU) and do not meet the criteria for being deemed reliable.

The inmate is requesting compensation for everyday he is denied his due process and is retaliated against.

### EFFECTIVE COMMUNICATION

The First Level Reviewer interviewed the inmate relative to his appeal issue. The inmate has not been identified with a disability or effective communication need. The inmate has a Test of Adult Basic Education score of 12.9. The inmate is not a participant in the Mental Health Services Delivery System. Therefore, during the interview, no assistance was required to achieve effective communication. During the interview the inmate stated his appeal stands as written and he had no new information to add.

### FINDINGS

I

The First Level Review denied the inmate's request for compensation for due process issues, as all due process rights regarding classification reviews from September 10, 2014 were afforded to you. On March 21, 2016, the inmate was dissatisfied with the First Level Review and claims the First Level Review ignored his specified points where as the Departmental Review Board (DRB) and two Institutional Classification Committees (ICC) denied his due process right of liberty, free of solitary confinement in the PBSP SHU by relying on fabricated collaborating informants.

**AGO 000730**

## II

The inmate was housed in the SHU, based upon his validation as a member of the Aryan Brotherhood (AB) Security Threat Group (STG). The DRB of September 9, 2014 and the two ICCs in 2015 reviewed the inmate's case factors, program needs, medical needs, and appropriate housing needs. The DRB and both ICCs acted to retain him in PBSP-SHU. The inmate was advised the DRB decision served as the Secretary's level decision and is not appealable.

## III

All of the attached documents were reviewed at the Second Level Review as well as both Institutional Classification Committee Chronos from 2015, the DRB Classification Chrono of September 9, 2014, the Confidential Section of Electronic Records Management System (ERMS). It is noted the DRB as well as the PBSP ICCs reviewed the confidential memorandums disclosed to the inmate on the CDCR Confidential Disclosure forms.

## DETERMINATION OF ISSUE

The California Code of Regulations (CCR), Title 15, Section 3270, General Policy, states in part, *the primary objectives of the correctional institutions are to protect the public by safely keeping persons committed to the custody of the Secretary of Corrections, and to afford such persons with every reasonable opportunity and encouragement to participate in rehabilitative activities.*

The CCR, Title 15, Section 3321, Confidential Material, states in part, *(a) the following types of information shall be classified as confidential: (1) Information which, if known to the inmate, would endanger the safety of any person. (2) Information which would jeopardize the security of the institution. (1) No decision shall be based upon information from a confidential source, unless other documentation corroborates information from the source, or unless the circumstances surrounding the event and the documented reliability of the source satisfies the decision maker(s) that the information is true. (d) Filing confidential material. (1) Only case information meeting the criteria for confidentiality shall be filed in the confidential section of an inmate's/parolee's central file.*

The CCR, Title 15, Section 3375, Classification Process, states in part, *(a) the classification process shall be uniformly applied, commencing upon reception of a person committed to the custody of the Secretary and shall continue throughout the time the individual remains under the Secretary's jurisdiction. Each inmate shall be individually classified in accordance with this article.*

The CCR, Title 15, Section 3376.1. Departmental Review Board, states in part, *The Departmental Review Board (DRB) provides the Secretary's final review of classification issues which are referred by an institution head for a resolution or decision at the headquarters level. The DRB decision serves as the Secretary's level decision which is not appealable and concludes the inmate/parolee's departmental administrative remedy of such issues.*

The Department Operations Manual (DOM), Section 81020.36, Enemy or Gang Information Policy, states, *Enemy or gang information is highly sensitive and shall be transmitted as rapidly as possible to those who have a need-to-know. The CDC Form 812, Notice of Critical Case Information Form shall be used to document gang membership, associations, enemies, assault on others or victim of assaults. This information is confidential and will be handled in accordance with procedures for handling confidential information.*

The DOM, Section 86050.2, Definitions, states, *the following definitions will apply in this Article to personnel and parolee records:* Confidential Information - *Information which is classified as confidential by the CDC under the authority of statute and case law, and depending on the contents, may be withheld from the data subject and any other unauthorized person, agency and entity. Confidential information includes*

**AGO 000731**

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION                                    PELICAN BAY STATE PRISON

## APPEALS EFFECTIVE COMMUNICATION CONFIRMATION

| INMATE NAME | CDCR NUMBER | HOUSING | APPEAL LOG# | TABE Score |
|---|---|---|---|---|
| ASHKER | C58191 | D4-207L | PBSP-D-16-00032 | 12.9 |

### A.   DOES THE INMATE HAVE DISABILITIES OR COMMUNICATION ISSUES?

1. ☒ Reads and comprehends without assistance (asked inmate or confirmed by past records).
2. ☒ No disabilities or effective communication needs found after review of DECS & TABE/Learning Disability lists.

*STOP!*   *IF ITEMS #1 AND #2 ARE BOTH CHECKED, GO TO SECTION B.  SIGN AND DATE.*

3. ☐ Identified with a disability or effective communication need **(check all that apply):**

| ☐ TABE 4.0 or lower, or no score | ☐ Hearing | ☐ Learning disability |
|---|---|---|
| ☐ Requires reading/comprehension assistance | ☐ Vision | ☐ Developmental disability |
| ☐ Foreign language speaking | ☐ Speech | ☐ EOP          ☐ CCCMS |

### B.   APPEAL INTERVIEW

**1. How was assistance provided?  Check all that apply.**

| ☒ Simple English spoken slowly & clearly | ☐ Inmate stated no need for EC assistance | ☐ Large print material used |
|---|---|---|
| ☐ Read documents to inmate | ☐ Used text magnifier | ☐ Lip reading |
| ☐ Inmate was wearing hearing aid(s) | ☐ Sign language interpreter used; Name: | |
| ☐ Written notes used (notes attached) | ☐ Language interpreter used; Name: | |
| ☐ Other: | | |

**2. How was effective communication achieved?  Check all that apply.**

☒ Inmate reiterated in his own words, what was explained.
☒ Inmate provided appropriate, substantive responses to questions asked.
☒ Inmate asked appropriate questions regarding the information provided.
☐ Inmate did not appear to understand the communication, even though the primary method of communication was used.
☐ Other:

| J. RYAN, CCII | | 2/05/2016 |
|---|---|---|
| Printed Name & Title | Signature | Date |

## *STOP!  DO NOT FILL OUT SECTION C OR D UNLESS PROVIDING ASSISTANCE WITH COMPLETED RESPONSE AS DIRECTED BY THE APPEALS OFFICE*

### C.   APPEAL RESPONSE - FIRST LEVEL

**1. How was assistance provided?**
☐ Effective communication assistance was provided as identified in Section B, #1 of this form.
**2. How was effective communication achieved?**
☐ Effective communication assistance was provided as identified in Section B, #2 of this form.
Additional Comments:

| | | |
|---|---|---|
| Printed Name & Title | Signature | Date |

### D.   APPEAL RESPONSE - SECOND LEVEL

**1. How was assistance provided?**
☐ Effective communication assistance was provided as identified in Section B, #1 of this form.
**2. How was effective communication achieved?**
☐ Effective communication assistance was provided as identified in Section B, #2 of this form.
Additional Comments:

| | | |
|---|---|---|
| Printed Name & Title | Signature | Date |

Rev. 03/23/2011

**AGO 000732**

State of California
**CDC FORM 695**
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*Friday, March 11, 2016*

*ASHKER, C58191*
*A 001 1126001LP*

CASE INFO./RECORDS, , 03/09/2016
Log Number: KVSP-O-16-00836
**(Note: Log numbers are assigned to all appeals for tracking purposes. Your appeal is subject to cancellation for failure to correct noted deficiencies.)**

The enclosed documents are being returned to you for the following reasons:

*Be advised that your appeal has been forwarded to another CDCR unit for processing.*

*appeal (PBSP-D-16-00032) forwarded to PBSP for review*


☐   S. Tallerico
☑   D. Tarnoff
Appeals Coordinator
KVSP


Pelican Bay State Prison

MAR 2 1 2016

Appeals Office


**NOTE:** If you are required to respond/explain to this CDCR Form 695, use only the lines provided below.

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.
**NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

**AGO 000733**

State of California
**CDC FORM 695**
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-4

RE: Screening at the FIRST Level

*Thursday, January 07, 2016*

*ASHKER, C58191*
*D  004 2207001L*

CASE INFO./RECORDS, , 01/06/2016
Log Number: PBSP-D-16-00032
(Note: <u>Log numbers are assigned to all appeals for tracking purposes. Your appeal is
subject to cancellation for failure to correct noted deficiencies.</u>)

The enclosed documents are being returned to you for the following reasons:

*Your appeal has been rejected pursuant to the California Code of Regulations, Title 15,
Section (CCR) 3084.6(b)(8).  Your appeal involves multiple issues that do not derive from a
single event, or are not directly related and cannot be reasonably addressed in a single
response due to this fact.  You may resubmit the unrelated issues separately using separate
appeals.  Be advised that you are still subject to the submission of one non-emergency appeal
every 14 calendar days.*

*Request #1, regarding 18 confidential disclosures, is a separate issue from request #2, to be
released to GP. The ICC decision to retain you in SHU was made on 10/08/15 and is past time
constraints for appealing.*

*This appeal was reviewed by the Chief Deputy Administrator who determined this appeal
would be processed as a routine appeal, not a Staff Complaint. In processing as a routine
appeal you need to revise the appeal to only one issue and attach supporting documents per
CCR, Title 15, Section 3084.6 (b)(7).*

R. Mills, Appeals Coordinator
A. Sheldon, Appeals Coordinator
N. Bramucci, AGPA
PBSP Appeals Office

**NOTE:** If you are required to respond/explain to this CDCR Form 695, use <u>only</u> the lines provided below. 1/18/16

*I disagree with your above position - the operative date re= ICC's
violating the due process at issue is - date of discovery - this date
was when I was when I was issued the (18) disclosures in
12/24/15!  I'm re-submitting - on new appeal - 1/18/16 - (TA Attached)*

JAN 1 9 2016

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and
resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).  Pursuant to
CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a
separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if
the appeal on the cancellation is granted.
**NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

AGO 000734

06/01/2016    Case 3:18-cv-06350-WHA   Document 61-2   Filed 11/10/21   Page 28 of 90    Location: PBSP

Department of Corrections and Rehabilitation            CDCR Appeal Number: 1512978
INMATE APPEALS PROCESSING FORM

Name: ASHKER, TODD                    Number: C58191              Now At: KVSP

    Institution Log No:  PBSP-16-00032, KVSP-16-00836

    Date Accepted: 05/09/2016    Due Date: 08/03/2016    Date Closed:

    NATURE OF COMPLAINT: CASE INFO/RECORDS

====================================================================

NOTES:

*copy of 18 1030's issued behind Blue badges* (handwritten)

====================================================================

[ ] ACCESS TO MEDICAL FILES:  I hereby authorize access to my medical files
      by the assigned Appeals Examiner as necessary to investigate the issues
      which I am appealing in this case.

    Signed: _____        Date: _____
    Witness: _____       Date: _____

[ ] REQUEST TO WITHDRAW APPEAL:  I request that this appeal be withdrawn
      from consideration at the Director level of review because:

_____

_____

_____

    Signed: _____        Date: _____
    Witness: _____       Date: _____

====================================================================
REFERRAL: Appeals Examiner:

    Inmate Interviewed:    YES _____    NO _____

    Date Interviewed:_____

====================================================================
OUTCOME: 1. Granted          3. Denied        5. Withdrawn

         2. Granted In Part  4. Cancelled

AGO 000735

Inmate Appeals Branch

# EXAMINER WORKSHEET

(Chronological Summary)

| Date / Time | Comments / Notes | EXAMINER Initials |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

IAB Examiner Worksheet.doc

M T Logged-In | M T Foldered | Corrections | OBIS/Closed | Other______ | Other______

# RESEARCH INFORMATION ONLY!!!!!



# DO **NOT** SEND WITH CORRESPONDENCE

AGO 000737

ILB:c851bfc9-baed-46a7-9320-0f60b55c050e

*#6 ) 3rd Party Mail with Minikur of Eva Brun, also writing to the AB, and CDC*

STATE OF CALIFORNIA
CDCR FORM 10305TG (10/12)

DEPARTMENT OF CORRECTIONS
AND REHABILITATION

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: **C58191** INMATE NAME: **ASHKER, TODD** INSTITUTION: **PBSP**

---

1) **Use of Confidential Information.**

Information received from a confidential source(s) has been considered in the: **DRB CASE-BY-CASE REVIEW 2014**

    a) CDC Form 115, Rules Violation Report (log number _____),
    Dated _____ submitted by _____.

    b) CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated _____.

    c) Validation Package as a Member/Associate of the _____ Security Threat Group.

2) **Reliability of Source.**

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution. This information is reliable because:

☐ This source has previously provided confidential information, which has proven to be true.
☐ This source participated in and successfully completed a Polygraph examination.
☐ More than one source independently provided the same information.
☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.
☐ Part of the information provided by the source(s) has already proven to be true.
☒ Other (Explain): This information is deemed reliable per CCR, Title 15, Section 3321(c)(4), the material was confiscated during an investigation and not intended for staff.

3) **The information received indicated the following:**

CM dated 12/5/2013, describes that on 10/14/2013, OCS initiated an Active/Inactive review of INMATE ASHKER and his continued involvement with STG-I AB prison gang related activities. During a search of INMATE ASHKER's personal paperwork, a letter addressed to INMATE ASHKER was discovered secreted amongst his legal paperwork. The letter was postmarked 7/30/2013 and had the name Eva Braun written on the return address. The letter itself was fairly innocuous, however the author states: "Tyler Bingham, a dear former boyfriend of mine now at ADMAX, tells me you can use a pen pal, so can I." Tyler Bingham is a validated AB member currently housed in Federal custody at the ADX Maximum Facility in Florence, Colorado. OCS staff determined the name "Eva Braun" was the name of Adolf Hitler's longtime girlfriend and was being used as a moniker to conceal the true identity of the author. OCS staff positively identified the address as belonging to an identified male, disbarred attorney with an arrest record. OCS staff believed the letter might contain a coded message concealed within the correspondence and forwarded it to the FBI Cryptanalysis Unit (CRRU) for analysis. The letter was examined and nothing of cryptographic value was observed. However, the CRRU stated it appeared to be from the same writer as other letters submitted to them for analysis with the same return address, a number of the same words, and similar style of writing. The CRRU also noted the return address and similar letters have been written to a number of inmates during the past seven years, including identified high ranking AB members. It should be noted INMATE ASHKER wrote on the front of the envelope that he responded to this address four separate times, 8/11/2013, 8/15/2013, 8/25/2013, and 9/8/2013. Also discovered inside INMATE ASHKER's address book was the name "Eva Braun" and the corresponding return address. As this address has been identified as an avenue for correspondence with identified AB members, and the author of the letter writes that he has contact with AB member Bingham, it is reasonable to believe that INMATE ASHKER is utilizing this as an avenue to communicate with AB membership in Federal custody.

*Reissued Date 12-22-16*

4) **Type and current location of documentation:** *Inmate Signature x T. Ash_*
Confidential Memorandum dated ~~4/2/2013,~~ located in the confidential section of the Central File.

*(Corrected) CM 12/5/2013*

STAFF SIGNATURE/TITLE: C. VARGAS, CCII _____ DATE DISCLOSED: *9/2/2014*
DISTRIBUTION: WHITE—Central File; GREEN—Inmate; YELLOW—Institutional Use

*Vargas 12-22-16*

ILB:c851bfc9-baed-46a7-9320-0f60b55o4d20



CALIFORNIA DEPARTMENT of
**Corrections and Rehabilitation**



ILB:c851bfc9-baed-46a7-9320-0f60b55c050f

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191    **INMATE NAME:** ASHKER, TODD L.    **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) ☐  CDC Form 115, Rules Violation Report (log number ___) dated ___ submitted by

   _____          _____
   **STAFF NAME**                    **TITLE**

   b) ☐  CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ___.

   c) ☐  Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐  This source has previously provided confidential information which proved to be true.

   b) ☑  Other confidential source has independently provided the same information.

   c) ☐  This source participated in and successfully completed a Polygraph examination.

   d) ☑  The information provided by the confidential source is self-incriminating.

   e) ☑  Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

   f) ☐  The confidential source is the victim.

   g) ☐  Other (Explain)

   _____

3) Disclosure of information received. *(CONFIDENTIAL MEMORANDUM  12/3/2008 )*

   The information received indicated the following:

   This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement.

   In July 2008, a validated affiliate of the Aryan Brotherhood (AB) STG-I provided information known to him by his own association and involvement with the AB STG-I, including ASHKER CDC Number C58191. The confidential source stated ASHKER was caught up in bad AB STG-I politics, and explained himself to the AB STG-I commission when he was transferred to Pelican Bay State Prison (PBSP) in 1991. Between 1991 and 1995, ASHKER was cleared to function under the authority of the AB STG-I as a member. ASHKER was described to conduct AB STG-I related behavior throughout his incarceration at PBSP, and was described as of February 2008 to be an active AB STG-I member.

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of

AGO 000739

the central file).

---

Confidential Memorandum dated 12/3/2008 (Debrief), located in ASHKER CDCR Number C58191 Electronic
Records Management System (ERMS).

---

A. Perez

*(signature)*

J. FALLIS

④    ISSUED BY: *(signature)*

**STAFF SIGNATURE**

CC III          12/17/2015

**TITLE** CCI **DATE DISCLOSED** 12-22-15

12-22-15
DATE ISSUED

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

λ    T. Ashk

INMATE SIGNATURE

AGO 000740

 CALIFORNIA DEPARTMENT *of*
**Corrections and Rehabilitation**



ILB:c851bfc9-baed-46a7-9320-0f60b55c050c

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191   **INMATE NAME:** ASHKER, TODD L.   **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) ☐   CDC Form 115, Rules Violation Report (log number ____) dated ___ submitted by

   **STAFF NAME**                                    **TITLE**

   b) ☐   CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ____.

   c) ☐   Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐   This source has previously provided confidential information which proved to be true.

   b) ☑   Other confidential source has independently provided the same information.

   c) ☐   This source participated in and successfully completed a Polygraph examination.

   d) ☐   The information provided by the confidential source is self-incriminating.

   e) ☑   Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

   f) ☐   The confidential source is the victim.

   g) ☐   Other (Explain)

3) Disclosure of information received. *(CONFIDENTIAL MEMORANDUM 9/5/2003)*

   The information received indicated the following:

   This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement.

   On 5/4/2003, PBSP intercepted a note between two validated members of the Northern Structure (NS) STG-I, which stated that the Aryan Brotherhood was planning on declaring war against the Mexican Mafia (EME) STG-I. On 8/21/2003, it was discovered that the San Quinten State Prison STG Investigations Unit had intercepted a letter that validated the legitimacy of the AB STG-I order to assault Southern Hispanic inmates. The letter was authored by a White inmate who had arrived from Pelican Bay State Prison (PBSP). A validated affiliate of the AB STG-I was interviewed prior to completing a debrief process, and he provided information pertaining to the issues between the AB and EME STG-I. The information provided indicated Inmate PRICE CDCR Number D34425 was stabbed by Southern Hispanic inmates. Additionally, the confidential informant was part of a conversation and heard an influential AB STG-I indicate that if the EME

CDCR SOMS ICCT170 - CDC NUMBER: C58191 NAME: ASHKER, TODD L.                    Page 1 of 2

**AGO 000741**

STG-I doesn't handle business, then the AB STG-I will have to retaliate. The informant provided an example of how the EME STG-I was disrespecting the AB STG-I, stating a validated EME STG-I affiliate brandished a knife to Inmate ASHKER CDCR Number C58191, and another AB STG-I member, and made threats. The informant stated the only thing keeping things from deteriorating into an all out war was the relationship between two AB STG-I members, and a validated EME STG-I member.

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

~~Confidential Memorandum dated 9/5/2003, located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS)~~

A. Perez

STAFF SIGNATURE   ISSUED BY: _J. FALLIS_          TITLE _CCI_ DATE DISCLOSED/ _2-22-15_

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

DATE ISSUED: _12-22-15_

INMATE SIGNATURE _T. Ashker_

CC III          12/17/2015



CALIFORNIA DEPARTMENT of
**Corrections and Rehabilitation**



ILB:c851bfc9-baed-46a7-9320-0f60b55c0505

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

CDC NUMBER: C58191   INMATE NAME: ASHKER, TODD L.   INSTITUTION: Pelican Bay State Prison

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) ☐ CDC Form 115, Rules Violation Report (log number ____) dated ___ submitted by

_____   _____.
**STAFF NAME**           **TITLE**

b) ☐ CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ___.

c) ☐ Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a) ☐ This source has previously provided confidential information which proved to be true.

b) ☑ Other confidential source has independently provided the same information.

c) ☐ This source participated in and successfully completed a Polygraph examination.

d) ☑ The information provided by the confidential source is self-incriminating.

e) ☑ Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

f) ☐ The confidential source is the victim.

g) ☐ Other (Explain)

3) Disclosure of information received. (CONFIDENTIAL MEMORANDUM 4/20/2002)

The information received indicated the following:

This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement.

A validated affiliate of the Mexican Mafia (EME) STG-I provided information he obtained by his own association, and involvement during EME STG-I related communications in 1999 between influential EME STG-I affiliates. The Confidential Information stated he was assigned by an EME STG-I member to obtain information from one of the EME STG-I members who was involved in an argument with Inmate ASHKER CDCR Number C58191, which allegedly resulted in the Aryan Brotherhood (AB) targeting the two EME STG-I affiliates involved in the argument.

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

AGO 000743

Confidential Memorandum dated 4/20/2002, located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS).

A. Perez

CC III          12/17/2015

J- FAUK

STAFF SIGNATURE  ISSUED BY          TITLE  CC-I  DATE DISCLOSED  12-22-15

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

DATE ISSUED  12-22-15

INMATE SIGNATURE  T. Ashk

AGO 000744

 CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

 ILB:c851bfc9-baed-46a7-9320-0f60b55c0504

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

CDC NUMBER: C58191    INMATE NAME: ASHKER, TODD L.    INSTITUTION: Pelican Bay State Prison

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

    a) ☐   CDC Form 115, Rules Violation Report (log number ____) dated ___ submitted by

    **STAFF NAME**             **TITLE**

    b) ☐   CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ____.

    c) ☐   Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

    a) ☐   This source has previously provided confidential information which proved to be true.

    b) ☐   Other confidential source has independently provided the same information.

    c) ☐   This source participated in and successfully completed a Polygraph examination.

    d) ☐   The information provided by the confidential source is self-incriminating.

    e) ☑   Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

    f) ☐   The confidential source is the victim.

    g) ☐   Other (Explain)

3) Disclosure of information received. (CONFIDENTIAL MEMORANDUM 11/23/2015)

The information received indicated the following:

This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement. The inmate was provided a Confidential Information Disclosure Form relevant to Confidential Memorandum (CM) dated 4/20/2002 and 9/5/2003, associated with the STG investigation documented in CM dated 11/23/2015.

In November 2015, during an investigation by the Pelican Bay State Prison (PBSP) STG Investigation Unit relevant to the Mexican Mafia (EME) STG-I, the following CMs were noted to mention ASHKER CDCR Number C58191: CM dated 4/20/2002 (Debrief), ASHKER was described as having had an argument with two influential affiliates of the EME STG-I. As a result, the AB STG-I targeted three EME STG-I affiliates, which is believed to have occurred in 1999. CM dated 9/5/2003 (Staff Information/Written Material/Informant). In May 2004, PBSP staff intercepted a note between two validated Northern Structure (NS) STG-I affiliates, which stated the AB STG-I was planning on declare war against the EME STG-I. In August 2003, staff at SQ

AGO 000745

intercepted a letter authored by a non-validated White inmate, containing information relevant to the AB's order to assault Southern Hispanic Inmates. AB STG-I was planning on attacking EME STG-I members in retaliation of stabbing AB STG-I member PRICE D34425 in December 2001 at SQ. Additionally, the EME STG-I was described to continuously disrespect the AB STG-I. The EME STG-I members were described in 1997 or 1998 as making threats and brandishing a weapon to ASHKER and another AB STG-I member. The Investigator concluded the AB and EME STG-I conflict from the 1990's and early 2000's has been resolved, and noted affiliates from both groups have programmed on other facilities without conflict for a number of years.

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

Confidential Memorandum dated 11/23/2015, located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS).

A. Perez

ISSUED BY:
J. FIALLO

STAFF SIGNATURE

CC III          12/16/2015

TITLE CCF  DATE DISCLOSED 12-22-15

DATE ISSUED: 12-22-15
INMATE SIGNATURE: T. Ashker

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

AGO 000746



**CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation**



ILB:c851bfc9-baed-46a7-9320-0f60b55c0503

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191   **INMATE NAME:** ASHKER, TODD L.   **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

    a) ☐ CDC Form 115, Rules Violation Report (log number ____) dated ___ submitted by

    **STAFF NAME**             **TITLE**

    b) ☐ CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ___.

    c) ☐ Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

    a) ☐ This source has previously provided confidential information which proved to be true.

    b) ☐ Other confidential source has independently provided the same information.

    c) ☐ This source participated in and successfully completed a Polygraph examination.

    d) ☐ The information provided by the confidential source is self-incriminating.

    e) ☑ Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

    f) ☐ The confidential source is the victim.

    g) ☐ Other (Explain)

3) Disclosure of information received. *(CONFIDENTIAL MEMORANDUM 12/4/2015)*

The information received indicated the following:

This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement. The inmate was issued Confidential Information Disclosure forms relevant to Confidential Memorandums (CM) dated 10/14/2015, 2/26/2013; and 10/10/2012.

In December 2015, the Pelican Bay State Prison (PBSP) STG Investigations Unit conducted additional safety investigation as requested by the Classification Services Unit (CSU), relevant to CM dated 10/14/2014, and 2/26/2013. The CM dated 2/26/2013, described that the Aryan Brotherhood (AB) STG-I commission voted on an AB STG-I member, and ASHKER's CDCR Number C58191 status. The STG Investigator identified a CM dated 10/10/2012 located in the ERMS file relevant to information about the AB STG-I member who told ASHKER he was unanimously voted on for assault (The CM dated 10/10/2012 was not scanned in ASHKER's file due to no mention of ASHKER in this CM). CM dated 10/10/2012, contains a copy of intercepted coded

---

CDCR SOMS ICCT170 - CDC NUMBER: C58191 NAME: ASHKER, TODD L.         Page 1 of 2

AGO 000747

communications. The Federal Bureau of Investigations (FBI) deciphered the following message from the coded communications, "We understand how you feel about (inmate name) to but we are going to still save him. Lets see that plays out before we take that extra step on him." The kite was signed by a member of the AB STG-I Commission. The PBSP STG Investigations unit concluded the CM dated 10/10/2012 supports the probability that ASHKER was targeted by the AB STG-I commission, because it provides evidence that the AB STG-I commission voted on the other AB STG-I member, as reported in the CM dated 2/26/2013. Per CM dated 10/14/2014 (Debrief), a validated AB STG-I affiliate relayed that in 1996, ASHKER and another validated AB STG-I member asked for permission to murder an individual in the community, and this information angered another AB STG-I member. The information was relayed to another validated AB STG-I, which angered him as well and both targeted ASHKER for murder. During this investigation, a confidential source was interviewed for additional information concerning the CMs dated 2/26/2013, and 10/14/2014; the confidential source stated there was no physical evidence or interviews with AB STG-I Commission members that could corroborate ASHKER was targeted for murder, and ASHKER was provided with all information noted above, and was not worried about his safety. The confidential source stated there was no corroborating evidence relevant to CM dated 10/14/2013 that this incident was going to happen or that an attempt was made to carry it out, and that ASHKER has no worries about safety concerns. The STG Investigator contacted ISU staff at California Correctional Institution, Tehachapi (CCI) and SAC during the investigation for any additional information concerning ASHKER's status with the AB STG-I. Both CCI and California State Prison, Sacramento (SAC) ISU reported there was no new intelligence concerning ASHKER. The investigator noted there are several documents within ASHKER's file showing safety concerns, and concluded that there is no new evidence that shows that ASHKER is no longer being targeted by the members of the AB STG-I, or that there is a plot to assault ASHKER. The investigation recommends extreme caution when considering future housing for ASHKER.

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

Confidential Memorandum dated 12/4/2015 (Staff Information), located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS).

A. Perez

CC III          12/15/2015

STAFF SIGNATURE ISSUED By: _J. FALLS_          TITLE CCI DATE DISCLOSED 12-22-15

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

DATE ISSUED: 12-22-15
Inmate Signature: T. Ashkr



CALIFORNIA DEPARTMENT of
**Corrections and Rehabilitation**



ILB:c851bfc9-baed-46a7-9320-0f60b55c0502

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191   **INMATE NAME:** ASHKER, TODD L.   **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

    a) ☐ CDC Form 115, Rules Violation Report (log number ____) dated ___ submitted by

    ___                                                                                                    ___.
    **STAFF NAME**                                                                    **TITLE**

    b) ☐ CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ___.

    c) ☐ Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

    a) ☐ This source has previously provided confidential information which proved to be true.

    b) ☐ Other confidential source has independently provided the same information.

    c) ☐ This source participated in and successfully completed a Polygraph examination.

    d) ☐ The information provided by the confidential source is self-incriminating.

    e) ☐ Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

    f) ☐ The confidential source is the victim.

    g) ☑ Other (Explain)

    This item contains information that was not provided by an informant, and consists of coded communications which were discovered and deciphered by staff, and submitted to the Federal Bureau of Investigations for an independent decryption.

3) Disclosure of information received. *(CONFIDENTIAL MEMORANDUM 10/10/2012)*

The information received indicated the following:

This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement. The inmate was issued a Confidential Information Disclosure form for Confidential Memorandum (CM) dated 12/4/2015. This Confidential Information Disclosure form is being issued for a CM dated 10/10/2012, located in another inmate's file, which was identified as a supporting document by the author of CM dated 12/4/2015, and will be reviewed by the upcoming DRB.

On 8/20/2012, staff at Pelican Bay State Prison working in the Security Housing Unit (SHU) discovered several inmate generated coded notes. The notes were submitted to the Federal Bureau of Investigation (FBI) Cryptanalysis Unit, and the formal decryption from the FBI was received on 9/17/2012. The message

CDCR SOMS ICCT170 - CDC NUMBER: C58191 NAME: ASHKER, TODD L.                    Page 1 of 2

AGO 000749

was addressed to the abbreviated first name of an inmate identified by the STG Investigations Unit as a member of the AB STG-I commission, and signed by the moniker identified to be another member of the AB STG-I Commission. Part of the communication contained a message relevant to the composition of the AB STG-I Commission. Part of the communications stated, " "We understand how you feel about (inmate name) to but we are going to still save him. Lets see that plays out before we take that extra step on him." STG Investigations Unit believe this message indicates there was conflict with a validated AB STG-I member and one of the AB STG-I commission members, and the other two commission members are waiting to see how events play out before they decide to take the "extra step" (kill) the inmate

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

Confidential Memorandum dated 10/10/2012 (Written Material/Staff Information/Coded Communications), located in Inmate TROXELL's CDCR Number B76578 Electronic Records Management System (ERMS).

A. Perez

CC III          12/15/2015

STAFF SIGNATURE *ISSUED BY:*   J. FALLS          TITLE *CCT* DATE DISCLOSED /2-22-16

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

DATE ISSUED : 12-22-15

INMATE SIGNATURE: T. Asluh

AGO 000750

  


CALIFORNIA DEPARTMENT of
**Corrections and Rehabilitation**



ILB:c851bfc9-baed-46a7-9320-0f60b55c0501

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191   **INMATE NAME:** ASHKER, TODD L   **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

    a) ☐   CDC Form 115, Rules Violation Report (log number ___) dated ___ submitted by

        **STAFF NAME**             **TITLE**

    b) ☐   CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ___.

    c) ☐   Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

    a) ☐  This source has previously provided confidential information which proved to be true.

    b) ☐  Other confidential source has independently provided the same information.

    c) ☐  This source participated in and successfully completed a Polygraph examination.

    d) ☐  The information provided by the confidential source is self-incriminating.

    e) ☑  Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

    f) ☐  The confidential source is the victim.

    g) ☐  Other (Explain)

3) Disclosure of information received. *(CONFIDENTIAL MEMORANDUM 11/5/2015)*

The information received indicated the following:

This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement.

On 11/5/2015, the Pelican Bay State Prison (PBSP) STG Investigation Services Unit (ISU) conducted a safety concern investigation upon the request of the PBSP Instiutional Classification Committee (ICC) of 9/30/2015. The investigation outlined the last two years of possible safety concerns, and cited Confidential Memorandum's (CM) reviewed by the ICC of 9/30/2015 (CM dated 7/1/2015; 10/14/2014; 8/15/2013; 4/2/2013). During an interview with a confidential source, it was stated that ASHKER CDC Number C58191 did not have any safety concerns, and can program on a General Population. Furthermore, the confidential source explained a lot of the information was old, and that ASHKER and the inmates who debriefed had animosity towards each other prior to debriefing, and that is why they divulged information that ASHKER has safety concerns. The STG Investigator concluded numerous documents were discovered evidencing ASHKER

AGO 000751

may have safety and enemy concerns with the AB STG-I. The investigator also concluded there is no evidence that ASHKER has any safety concerns with other STGs. The investigator found no new intelligence within the file showing ASHKER is no longer being targeted, or that he continues to be targeted by the AB STG-I, and recommended extreme caution be used when considering future housing placement for ASHKER.

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

Confidential Memorandum (Staff Information) dated 11/5/2015, located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS).

A. Perez ☺

CC III          12/15/2015

STAFF SIGNATURE   ISSUED BY: J. SMK        TITLE CCI DATE DISCLOSED 12-22-15

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

DATE ISSUED: 12-22-15

INMATE SIGNATURE: T. Ashk

AGO 000752



CALIFORNIA DEPARTMENT *of*
**Corrections and Rehabilitation**



ILB:c851bfc9-baed-46a7-9320-0f60b55c0500

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191   **INMATE NAME:** ASHKER, TODD L.   **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) ☐  CDC Form 115, Rules Violation Report (log number ___) dated ___ submitted by

   ____                                          ____.

   **STAFF NAME**                          **TITLE**

   b) ☐  CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ___.

   c) ☐  Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐  This source has previously provided confidential information which proved to be true.

   b) ☑  Other confidential source has independently provided the same information.

   c) ☐  This source participated in and successfully completed a Polygraph examination.

   d) ☑  The information provided by the confidential source is self-incriminating.

   e) ☑  Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

   f) ☐  The confidential source is the victim.

   g) ☐  Other (Explain)

   [                                                                    ]

3) Disclosure of information received. (CONFIDENTIAL MEMORANDUM 2/26/2004)

   The information received indicated the following:

   This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement. The Inmate was provided a Confidential Information Disclosure Form relevant to a Confidential Memorandum (CM) dated 10/14/2014, which identified a validated affiliate of the Aryan Brotherhood (AB) STG-I by name, as being on parole in the community. This Confidential Information Disclosure form is being issued to provide additional information relevant to the status of the inmate whom ASHKER CDCR Number C58191 was seeking permission to have murdered in 1996.

   A validated affiliate of the AB STG-I identified inmates by names who were validated affiliates of the AB STG-I, as well as their status with the AB STG-I, including the individual mentioned in the CM dated 10/14/2014 whom ASHKER was seeking permission to have murdered in 1996. The validated AB STG-I member was described in October 2002, to be actively participating in AB STG-I activities and in contact with another AB

CDCR SOMS ICCT170 - CDC NUMBER: C58191 NAME: ASHKER, TODD L.                    Page 1 of 2

STG-I who was on parole and distributing narcotics, and conducting murders on the streets under the AB STG-I members direction.

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

Confidential Memorandum (CM) dated 2/26/2004 (Debrief), located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS).

A. Perez

CC III                    12/15/2015

STAFF SIGNATURE   *ISSUED By*   *5-15qilis*   TITLE *CCF* DATE DISCLOSED *12-22-15*

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

*DATE  ISSUED : 12-22-15*

*INMATE SIGNATURE: T. Ashh*

AGO 000754

 CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

 ILB:c851bfc9-baed-46a7-9320-0f60b55c04ff

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191   **INMATE NAME:** ASHKER, TODD L.   **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

   a) ☐  CDC Form 115, Rules Violation Report (log number ___) dated ___ submitted by

   _____                                    _____.
   **STAFF NAME**                          **TITLE**

   b) ☐  CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ___.

   c) ☐  Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

   a) ☑  This source has previously provided confidential information which proved to be true.

   b) ☑  Other confidential source has independently provided the same information.

   c) ☐  This source participated in and successfully completed a Polygraph examination.

   d) ☑  The information provided by the confidential source is self-incriminating.

   e) ☑  Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

   f) ☐  The confidential source is the victim.

   g) ☐  Other (Explain)

3) Disclosure of information received. (*CONFIDENTIAL MEMORANDUM 4/2/2005*)

The information received indicated the following:

This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement. The inmate was provided a Confidential Information Disclosure Form relevant to a Confidential Memorandum (CM) dated 10/14/2014, which identified a validated affiliate of the Aryan Brotherhood (AB) STG-I by name, as being on parole in the community. This Confidential Information Disclosure form is being issued to provide additional information relevant to the status of the inmate whom ASHKER CDCR Number C58191 was seeking permission to have murdered in 1996.

A validated affiliate of the AB STG-I was interviewed, who identified several AB STG-I affiliates who were in a position to carry out the "street" version of AB STG-I activities in November 1997, including the individual mentioned in the CM dated 10/14/2014 whom ASHKER was seeking permission to have murdered in 1996. The individual was also described to be an active AB STG-I member who was writing to a few "brothers" who

CDCR SOMS ICCT170 - CDC NUMBER: C58191 NAME: ASHKER, TODD L.                    Page 1 of 2

AGO 000755

were incarcerated.

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

Confidential Memorandum dated 4/2/2005, located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS).

A. Perez

CC III          12/15/2015

**STAFF SIGNATURE**   ISSUED BY: J. FAUE     **TITLE** CCI **DATE DISCLOSED** 12-22-15

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

DATE ISSUED: 12-22-15

INMATE SIGNATURE: T. Ashk

**AGO 000756**



CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation



ILB:c851bfc9-baed-46a7-9320-0f60b55c04fe

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191   **INMATE NAME:** ASHKER, TODD L.   **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

     a) ☐   CDC Form 115, Rules Violation Report (log number ___) dated ___ submitted by

     ____                                                          ____.

     **STAFF NAME**                                    **TITLE**

     b) ☐   CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ___.

     c) ☐   Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

     a) ☐   This source has previously provided confidential information which proved to be true.

     b) ☑   Other confidential source has independently provided the same information.

     c) ☐   This source participated in and successfully completed a Polygraph examination.

     d) ☑   The information provided by the confidential source is self-incriminating.

     e) ☑   Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

     f) ☐   The confidential source is the victim.

     g) ☐   Other (Explain):

3) Disclosure of Information received. *(CONFIDENTIAL MEMORANDUM   10/14/2014)*.

The information received indicated the following:

This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement. On 10/2/2015, the inmate was provided a Confidential Information Disclosure Form relevant to Confidential Memorandum (CM) dated 10/14/2014. This Confidential Information Disclosure form is being issued to provide additional information.

In August 2014, a validated affiliate of the Aryan Brotherhood (AB) STG-I provided information relevant to AB STG-I activities that was known to him based on his close association with a validated member of the AB STG-I involved in a recent discovery concerning ASHKERs CDCR Number C58191 behavior in 1996, which resulted in ASHKER being a priority target. ASHKER and another AB STG-I member asked another member of the AB STG-I for permission to murder a validated member of the AB STG-I, who was in the community and not maintaining communication with the AB STG-I member being asked to sanction the assault. The

CDCR SOMS ICCT170 - CDC NUMBER: C58191 NAME: ASHKER, TODD L.                    Page 1 of 2

AGO 000757

confidential source stated it would have been an unsanctioned hit, possibly causing "Brothers" who were housed in Federal Prison to start "hitting" state "Brothers" who showed up in Federal Prison. It was reported that this information angered an AB STG-I member, and he was described to send notification to another AB STG-I member about the situation through another inmate; Both AB STG-I members along with their sympathizers (unidentified) were described to wish ASHKER murdered. A prior history of issues between ASHKER and one of the inmate described as wishing ASHKER killed was also described. The confidential source stated ASHKER was given a pass for his interview with 60 minutes, but it was his opinion that ASHKER has overstepped his boundaries too many times. During the interview, the confidential source stated there was a current separation of power within the AB STG-I. The exact division was unknown by the confidential source. He knew ASHKER was a part of several different groups that wanted to overthrow the "old guard;" however, this information was not described to cause safety concerns for ASHKER. It was also reported that the AB STG-I Commission is composed of members who are the only individuals who can order the murder of another AB STG-I member, and the vote must be unanimous.

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

Confidential Memorandum dated 10/14/2014 (Debrief), located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS).

A. Perez

                                                              CC III            12/15/2015

                                      J-FALL
STAFF SIGNATURE   ISSUED BY:                      TITLE CCI DATE DISCLOSED  12-22-15

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

                          DATE ISSUED : 12-22-15

                          INMATE SIGNATURE : T. Ashk

AGO 000758



**CALIFORNIA DEPARTMENT of**
**Corrections and Rehabilitation**



ILB:c851bfc9-baed-46a7-9320-0f60b55c04fd

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191   **INMATE NAME:** ASHKER, TODD L.   **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

    a) ☐   CDC Form 115, Rules Violation Report (log number ____) dated ___ submitted by

            **STAFF NAME**                  **TITLE**

    b) ☐   CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ____.

    c) ☐   Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

    a) ☐   This source has previously provided confidential information which proved to be true.

    b) ☐   Other confidential source has independently provided the same information.

    c) ☐   This source participated in and successfully completed a Polygraph examination.

    d) ☑   The information provided by the confidential source is self-incriminating.

    e) ☑   Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

    f) ☐   The confidential source is the victim.

    g) ☐   Other (Explain)

3) Disclosure of information received. *(CONFIDENTIAL THREAT ASSESSMENT REPORT 4/2/2013)*

The information received indicated the following:

This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement. On 9/2/2014, the inmate was provided a Confidential Information Disclosure Form relevant to Confidential Threat Assessment Report dated 4/2/2013. This Confidential Information Disclosure form is being issued to provide additional information.

The Special Service Unit conducted an investigation into potential threat against a Doctor employed at Pelican Bay State Prison (PBSP), due to discovery of an inmate manufactured communication referencing killing a Doctor at PBSP, and two citizens. Seven inmates, three staff members, and two citizens were interviewed. A validated affiliate of the Aryan Brotherhood (AB) Security Threat Group I (STG-I) (same inmate in Confidential Memorandum dated 2/26/2013 and 8/15/2013) was interviewed in April 2013 during the investigation. The confidential source was shown a copy of an intercepted (confiscated) communication

AGO 000759

found in the cell of a validated AB STG affiliate in March 2013, containing specific plans to murder or harm a doctor (employed at PBSP). The confidential source reported he was not aware of the plan to assault staff at PBSP, and it was his opinion that the AB STG-I Commission would not approve the hit on the staff members. He believed the order came from ASHKER C58191 and another AB STG-I member. At this time, the confidential source repeated information previously provided, that ASHKER was considered to be in bad standing by the AB STG-I Commission, and was placed on the hit list approximately one year ago (April 2012), and that ASHKER was acting on his own accord and not with the approval of the AB STG-I as a whole. A second AB STG-I affiliate was also interviewed during the investigation by OCS; It was reported that ASHKER was involved in the plan to murder the staff member during a timeframe in 2007 and 2008, and that he had firsthand information of a plan to murder the doctor at PBSP by the AB STG-I during an appointment with the staff member in 2008; however, the plan was foiled due to several staff members in the area at that time. This information does not indicate ASHKER was targeted for assault by the AB STG-I based on his involvement in the plan to murder staff at PBSP.

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

Confidential Threat Assessment Report dated 4/2/2013, located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS).

A. Perez

CC III          12/15/2015

J. FALLO

ISSUED By:

**STAFF SIGNATURE**          ~~TITLE~~ CCI DATE DISCLOSED 12-22-15

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

DATE ISSUED : 12-22-15

INMATE SIGNATURE : T. Ashk~


CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation


ILB:c851bfc9-baed-46a7-9320-0f60b55c04fc

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191   **INMATE NAME:** ASHKER, TODD L   **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

    a) ☐   CDC Form 115, Rules Violation Report (log number ___) dated ___ submitted by

    **STAFF NAME**              **TITLE**

    b) ☐   CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ____.

    c) ☐   Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

    a) ☐   This source has previously provided confidential information which proved to be true.

    b) ☐   Other confidential source has independently provided the same information.

    c) ☐   This source participated in and successfully completed a Polygraph examination.

    d) ☑   The information provided by the confidential source is self-incriminating.

    e) ☐   Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

    f) ☐   The confidential source is the victim.

    g) ☐   Other (Explain):

3) Disclosure of information received. *(CONFIDENTIAL MEMORANDUM 8/15/2013)*

The information received indicated the following:

This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement. On 9/2/2014, the inmate was provided a Confidential Information Disclosure Form relevant to Confidential Memorandum (CM) dated 8/15/2013. This Confidential Information Disclosure form is being issued to provide additional information.

A validated affiliate of the Aryan Brotherhood (AB) Security Threat Group I (STG-I) provided the same information as he did during his pre-debrief interview, documented in the CM dated 2/26/2013, and additional information. ASHKER CDCR Number C58191 was described as eating in 2011 during the hunger strike, which was not well received by affiliates of the AB STG-I; however, this information was not described to cause safety concerns for ASHKER. The confidential source stated he was informed of the information relevant to ASHKER being voted on by another AB STG-I affiliate sometime between October 2011, through

AGO 000761

December 2012, by a validated AB STG-I affiliate who claimed he received a handwritten message from two of the AB STG-I commission members, which detailed the events leading to ASHKER's bad standing; the AB STG-I affiliate also told him he was ordered to forward a message to another AB STG-I commission member to direct the inmate close to ASHKER to separate himself from ASHKER. Relevant to ASHKER and the "Blue Crew," one of the members of the "Blue Crew" was able to fall into favorable standing, and ASHKER reportedly was able to explain his belief that he was acting for the betterment of the AB STG-I to the AB STG-I Commission, and avoided further criticism; however, one of the AB STG-I commission members still holds a grudge against ASHKER. The confidential source did not state he viewed the handwritten message detailing the events leading to ASHKER's bad standing, and further stated the inmate who provided him with information relevant to ASHKER, has a reputation for being untruthful, and he questioned nearly everything he expressed.

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

Confidential Memorandum (CM) dated 8/15/2013 (Debrief), located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS).

A. Perez

CC III        12/15/2015

**STAFF SIGNATURE**   ISSUED BY: J. FALLIS        TITLE CCI   DATE DISCLOSED 12-22-15

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

DATE ISSUED: 12-22-15

INMATE SIGNATURE: T. Ashker

AGO 000762

STATE OF CALIFORNIA
CDCR FORM 1030STG (10/12)

DEPARTMENT OF CORRECTIONS·
AND REHABILITATION

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: __C58191__   INMATE NAME: ___ASHKER, TODD___   INSTITUTION: ___PBSP___

1) **Use of Confidential Information.**
   Information received from a confidential source(s) has been considered in the: __DRB CASE-BY-CASE REVIEW 2014__

   a) CDC Form 115, Rules Violation Report (log number _____ ),
   Dated _____ submitted by _____.

   b) CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated _____.

   c) Validation Package as a Member/Associate of the _____ Security Threat Group.

2) **Reliability of Source.**

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of
the institution. This information is reliable because:

☐ This source has previously provided confidential information, which has proven to be true.

☐ This source participated in and successfully completed a Polygraph examination.

☐ More than one source independently provided the same information.

☒ This source incriminated himself/herself in a criminal activity at the time of providing the
information.

☐ Part of the information provided by the source(s) has already proven to be true.

☐ Other (Explain) _____

3) **The information received indicated the following:**

CM dated 12/7/2012, describes that on 10/10/2012 and 10/11/2012, OCS staff conducted an interview with a validated member of the STG-I AB prison
gang. Subject stated in November 2010 the inmate program within PBSP SHU had been decreased as a result of a budget crisis which angered the
leaders of various prison gangs. Subject stated this resulted in a hunger strike being contemplated by INMATE ASHKER and another identified
validated member of the STG-I AB prison gang. INMATE ASHKER had researched the hunger strike initiated by "Bobby Sands" of the Irish Republican
Army (IRA) and believed a hunger strike with public support would breath life back into the AB prison gang. Subject stated INMATE ASHKER began
looking to the other AB members to support the idea of a hunger strike and not all thought it was a good idea. INMATE ASHKER told Subject to cease
communications with AB members who were not supportive of the hunger strike. Subject stated both he and INMATE ASHKER realized the importance
media exposure would play in gaining sympathy from the public and that INMATE ASHKER enlisted the help of friends, family and liberal organizations
in placing SHU placement in the media spotlight. Subject admitted once he was ostracized by certain AB members for refusing to cease communication
with the other respected AB members who did not support the hunger strike Subject organized a list of individuals he planned to kill himself if given the
opportunity. The list started with INMATE ASHKER. Subject stated INMATE ASHKER is currently considered in good standing but recent actions by
ASHKER may eventually lead to him being targeted for assault by the rest of the AB prison gang.

4) . **Type and current location of documentation:**

Confidential Memorandum dated 12/7/2012, located in the confidential section of the Central File.

STAFF SIGNATURE/TITLE:   C. VARGAS, CCII   _Vargas_   DATE DISCLOSED:   9/2/2014

DISTRIBUTION: WHITE—Central File; GREEN--Inmate; YELLOW—Institutional Use



ILB:c851bfc9-baed-46a7-9320-0f60b55c4d1a

**AGO 000763**



CALIFORNIA DEPARTMENT of
**Corrections and Rehabilitation**



ILB:c851bfc9-baed-46a7-9320-0f60b55c04fa

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191   **INMATE NAME:** ASHKER, TODD L   **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

    a) ☐ CDC Form 115, Rules Violation Report (log number ____) dated ___ submitted by

        **STAFF NAME**                   **TITLE**

    b) ☐ CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ____.

    c) ☐ Validation Package as a ____ of the ___ Security Threat Group.

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

    a) ☐ This source has previously provided confidential information which proved to be true.

    b) ☐ Other confidential source has independently provided the same information.

    c) ☐ This source participated in and successfully completed a Polygraph examination.

    d) ☑ The information provided by the confidential source is self-incriminating.

    e) ☑ Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

    f) ☐ The confidential source is the victim.

    g) ☐ Other (Explain)

3) Disclosure of information received.  *(CONFIDENTIAL MEMORANDUM  12/7/2012)*

The information received indicated the following:

This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement. A Confidential Information Disclosure form for the Confidential Memorandum dated 12/7/2012 was previously provided to the inmate on 9/2/2014, and this Confidential Information Disclosure form is being issued to provide additional information.

A validated affiliate of the Aryan Brotherhood (AB) STG-I provided historical information known to him by his own involvement and interactions with validated AB STG-I affiliates, including ASHKER CDCR Number C58191. The AB STG-I commission was described as composed of influential AB STG-I members, and are the only members who can order the murder of another "brother;" The decision to murder a "brother" must be unanimously voted on by the commission members. The confidential source stated he organized his own personal list of AB STG-I affiliates he planned to murder if ever given an opportunity, which was composed of

CDCR SOMS ICCT170 - CDC NUMBER: C58191 NAME: ASHKER, TODD L.          Page 1 of 2

**AGO 000764**

individuals he felt betrayed him while being ostracized by the AB STG-I; ASHKER was at the top of his list. ASHKER was also identified by the confidential source as an AB STG-I member in good standing, and a member of the AB STG-I Counsel in 2012. ASHKER was described as organizing the hunger strikes at Pelican Bay State Prison (PBSP). Other validated members of the AB STG-I were described to be against ASHKER and his plan for hunger strikes. It was the confidential source' opinion that the recent actions of ASHKER may eventually lead to ASHKER being targeted for assault. The confidential source provided information relevant to a feud between the AB and the Mexican Mafia (EME) STG-I due to a stabbing of an AB STG-I member, Inmate PRICE CDCR Number D34425 at San Quinten State prison (SQ). PRICE was disrupting program and inmates housed on Death Row by interrupting electrical services to cells near his, threatening individuals, and making noises past 7:00 p.m. The AB STG-I was asked by the EME STG-I to rectify the problem which the AB STG-I failed to address, which resulted in the EME STG-I assaulting PRICE. In 2006, the confidential source witnessed information obtained from an EME STG-I affiliate housed at San Quinten State Prison (SQ), was provided to ASHKER and another AB STG-I relevant to the circumstances leading to the stabbing of PRICE. The conversation assisted in ending the ongoing feud between the AB and EME STG-I. The confidetial source also stated, the AB, EME, Nuestra Familia, Black Guerilla Family STG-I membership who perpetrated the hunger strikes has entered into a temporary peace agreement to enhance their reputation with the public.

4)  Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

Confidential Memorandum dated 12/7/2012 (Debrief), located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS).

A. Pérez

CC III                12/15/2015

STAFF SIGNATURE   ISSUED By: J. Frary          TITLE CC I   DATE DISCLOSED 12-22-15

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

DATE ISSUED 12-22-15

INMATE SIGNATURE: T. Ashlk

AGO 000765



**CALIFORNIA DEPARTMENT of**
**Corrections and Rehabilitation**



ILB:c851bfc9-baed-46a7-9320-0f60b55c04f9

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191    **INMATE NAME:** ASHKER, TODD L    **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) ☐  CDC Form 115, Rules Violation Report (log number ___) dated ___ submitted by

   _____                                                        _____.

   **STAFF NAME**                                          **TITLE**

   b) ☐  CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ___.

   c) ☐  Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐  This source has previously provided confidential information which proved to be true.

   b) ☐  Other confidential source has independently provided the same information.

   c) ☐  This source participated in and successfully completed a Polygraph examination.

   d) ☐  The information provided by the confidential source is self-incriminating.

   e) ☑  Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

   f) ☐  The confidential source is the victim.

   g) ☐  Other (Explain)

   [                                                                    ]

3) Disclosure of information received.  *( CONFIDENTIAL MEMORANDUM  11/4/2011 )*

   The information received indicated the following:

   This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement.

   A validated Aryan Brotherhood (AB) STG-I affiliate was interviewed in August 2011, and provided the names of inmates as known by him, who he identified to be the leaders of the AB STG-I, active members of the AB STG-I, and inmates who are on the "hit list." The confidential source stated he was informed by a validated AB STG-I member, that in order for any White to be placed on the hit list, it must go through the AB STG-I members, and approved by the Committee. The confidential source did not know which inmates composed the AB STG-I Commission, but assumed it is the leadership. He listed "AB member TODD from CO CO County," as being on the "hit list" for ordering a bad hit, and for trying to take over the AB STG-I; he stated he obtained this information through "word of mouth." STG Investigators identified "TODD from CO CO County" to be Todd Ashker CDC Number C58191 from Conta Costa County.

AGO 000766

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

Confidential Memorandum dated 11/4/2011 (Debrief), located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS).

A. Perez

                                                    CC III          12/15/2015

                                        J. Fallis

**STAFF SIGNATURE**   ISSUED By                    **TITLE** CC I **DATE DISCLOSED** 12-22-15

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

                          DATE ISSUED: 12-22-15

                    INMATE SIGNATURE: T. Ashker



**CALIFORNIA DEPARTMENT of**
**Corrections and Rehabilitation**



ILB:c851bfc9-baed-46a7-9320-0f60b55c04f8

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191   **INMATE NAME:** ASHKER, TODD L   **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

   a) ☐  CDC Form 115, Rules Violation Report (log number ___) dated ___ submitted by

   **STAFF NAME**                                    **TITLE**

   b) ☐  CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ___.

   c) ☐  Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

   a) ☑  This source has previously provided confidential information which proved to be true.

   b) ☐  Other confidential source has independently provided the same information.

   c) ☐  This source participated in and successfully completed a Polygraph examination.

   d) ☐  The information provided by the confidential source is self-incriminating.

   e) ☐  Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

   f) ☐  The confidential source is the victim.

   g) ☐  Other (Explain)

3) Disclosure of information received.  ( CONFIDENTIAL MEMORANDOM 6/21/1996)

The information received indicated the following:

This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement.

In December of 1994, a confidential informant who was requesting to debrief was told by two highly influential AB STG-I members, that they did not like ASHKER. The informant stated that the AB STG-I members referred to ASHKER as an idiot, and a retard over the tier which was not usually done by the AB STG-I in front of regular White Inmates. Additionally, the AB STG-I members did not like the 60 minutes interview ASHKER did, claiming ASHKER did not represent himself or the AB STG-I properly. The informant stated ASHKER was not liked by a number of AB STG-I affiliates.

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

CDCR SOMS ICCT170 - CDC NUMBER: C58191 NAME: ASHKER, TODD L.                    Page 1 of 2

AGO 000768

Confidential Memorandum dated 6/21/1996 (Debrief), located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS).

A. Perez

J. FALLIS
CC III

STAFF SIGNATURE  ISSUED BY  ___  TITLE LCF  DATE DISCLOSED 12-22-15

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

DATE ISSUED: 12-22-15

INMATE SIGNATURE: T. ASWL



CALIFORNIA DEPARTMENT *of*
Corrections and Rehabilitation



ILB:c851bfc9-baed-46a7-9320-0f60b55c04f7

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

**CDC NUMBER:** C58191   **INMATE NAME:** ASHKER, TODD L.   **INSTITUTION:** Pelican Bay State Prison

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) ☐  CDC Form 115, Rules Violation Report (log number ___) dated ___ submitted by

   _____                                                      ___.
   **STAFF NAME**                                              **TITLE**

   b) ☐  CDC Form 114-D, Order and Hearing for Placement in Segregated Housing dated ___.

   c) ☐  Validation Package as a ___ of the ___ Security Threat Group.

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐  This source has previously provided confidential information which proved to be true.

   b) ☐  Other confidential source has independently provided the same information.

   c) ☐  This source participated in and successfully completed a Polygraph examination.

   d) ☐  The information provided by the confidential source is self-incriminating.

   e) ☐  Part of the information provided is corroborated through investigation or by information provided by non-confidential sources.

   f) ☐  The confidential source is the victim.

   g) ☑  Other (Explain)

      Confidential Investigation on 6/4/2004 by the Office of Correctional Safety (Special Service Unit), relevant to Inmate ASHKER CDCR Number C58191 and the Aryan Brotherhood (AB) Security Threat Group-I (STG-I) for determination of double cell compatibility.

3) Disclosure of information received.  *(CONFIDENTIAL CDCR R&B  6/4/2004)*

   The information received indicated the following:

   This information is being disclosed to assist the inmate in the preparation of the upcoming Departmental Review Board (DRB) hearing for consideration for release from segregation, pursuant to the Court's preliminary approval of Inmate Plaintiffs v. Governor of State of California STG Settlement Agreement.

   The Special Services Unit (SSU) conducted a review of all intelligence information regarding the AB STG-I activity of ASHKER, subsequent to the 5/29/2004 in-cell homicide of another AB STG-I member at Pelican Bay State Prison (PBSP). ASHKER was noted to be double celled with AB STG-I member TROXELL CDCR Number B76578 during the time of the murder. The Special Agent identified two documents indicated ASHKER may not be suitable for double celling in 2004: CM dated 7/14/1995 (Debrief/Informant) generated at PBSP. A validated influential member of the AB STG-I informed the confidential informant, that ASHKER and two other identified AB STG-I members were "no good." (CM dated 7/14/1995 was not found in the

AGO 000770

ERMS file of any of the inmates identified by the Special Agent). CM dated 6/21/1996 (Informant). In December of 1994, a confidential informant who was requesting to debrief was told by two highly influential AB STG-I members, that they did not like ASHKER. The Informant stated that the AB STG-I members referred to ASHKER as an idiot, and a retard over the tier which was not usually done by the AB STG-I in front of regular White inmates. Additionally, the AB STG-I members did not like the 60 minutes interview ASHKER did, claiming ASHKER did not represent himself or the AB STG-I properly. The Informant stated ASHKER was not liked by a number of AB STG-I affiliates. The Special Agent concluded ASHKER may have safety concerns with some members of the AB STG-I, and recommended a thorough review of all documents within the file as well as a personal interview to determine ASHKER's status, and suitability for double celling.

4) Type and current location of documentation, (i.e., CDC Form 128B of 5/15/2010 in the confidential section of the central file).

Confidential CDCR 128-B Chrono dated 6/4/2004, located in ASHKER CDCR Number C58191 Electronic Records Management System (ERMS).

A. Perez

CC III          12/15/2015

J. FALLIS

STAFF SIGNATURE  ISSUED BY: _____  TITLE  CCI  DATE DISCLOSED  12-22-15

CDCR SOMS ICCT170 - Confidential Information Disclosure Form

DATE ISSUED: 12-22-15

INMATE SIGNATURE: T. Ashke

AGO 000771

AGO 000772

# E  HI  IT

**TO DECLARATION OF HO   ARD E  MOSELE    IN S   PPORT OF DEFENDANTS'
MOTION FOR S   MMAR       D   MENT**

**AGO 000773**

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                                          EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF APPEALS**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001

January 9, 2017

ASHKER, TODD, C58191
Kern Valley State Prison
P.O. Box 6000
Delano, CA  93216

RE: TLR# 1512978     PBSP-16-00032, KVSP-16-00836    CASE INFO/RECORDS

The Office of Appeals, California Department of Corrections and Rehabilitation (CDCR) acts as the third level of review as established in California Code of Regulations (CCR) Title 15, Article 8.  The Office of Appeals examines and responds to inmate and parolee appeals, after the institution or parole region has responded at the Second Level of Appeal.

Be advised that these documents are being returned to you as they are not an appeal.

TLR 1512978 has been fully adjudicated and a decision has been rendered by this office on the appeal issues.

M. VOONG, Chief
Office of Appeals

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).  Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.

**\*\*\*\*PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE\*\*\*\***

**AGO 000774**

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side I

RE: TLR1512978

IAB USE ONLY

| Institution/Parole Region: | Log #: | Category: |
|---|---|---|

FOR STAFF USE ONLY

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations, Title 15, (CCR) Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.          **WRITE, PRINT, or TYPE CLEARLY** in black or blue ink.

| Name (Last, First): ASHKER, TODD | CDC Number: C#58191 | Unit/Cell Number: A-1-223 | Assignment: |
|---|---|---|---|

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):

THIRD LEVEL DECISION OF APPEAL LOG# 1512978

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A): Appellant is appealing the TLR of appeal log #1512978 signed by M. Hodges and M. Voong, specifically their refusal to address and exhaust the part of the appeal relating to the ICC actions

B. Action requested (If you need more space, use Section B of the CDCR 602-A): 1) To have the appeal log #1512978 FULLY accepted at the third level of review and a third level decision on the appeal as it relates to the ICC actions of 9/17/15 and 10/08/15 issued.

Supporting Documents: Refer to CCR 3084.3.
[X] Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

Appeal log# 1512978

[ ] No, I have not attached any supporting documents. Reason :

Inmate/Parolee Signature: _Todd Ashker_          Date Submitted: _Aug 24, 2016_

[ ] By placing my initials in this box, I waive my right to receive an interview.

**C. First Level - Staff Use Only**          Staff – Check One: Is CDCR 602-A Attached? [ ] Yes  [ ] No
This appeal has been:
[ ] Bypassed at the First Level of Review. Go to Section E.
[ ] Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
[ ] Cancelled (See attached letter) Date: _____
[ ] Accepted at the First Level of Review.
    Assigned to: _____ Title: _____ Date Assigned: _____ Date Due: _____

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.
    Date of Interview: _____ Interview Location: _____
Your appeal issue is: [ ] Granted  [ ] Granted in Part  [ ] Denied  [ ] Other: _____
    See attached letter. If dissatisfied with First Level response, complete Section D.
Interviewer: _____ Title: _____ Signature: _____ Date completed: _____
              (Print Name)
Reviewer: _____ Title: _____ Signature: _____
          (Print Name)
Date received by AC: _____

| | AC Use Only Date mailed/delivered to appellant ____ / ____ / ____ |
|---|---|

AGO 000775

D. **If you are dissatisfied with the First Level response**, explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

Inmate/Parolee Signature: _____   Date Submitted : _____

**E. Second Level - Staff Use Only**   Staff – Check One: Is CDCR 602-A Attached?  ☐ Yes   ☐ No

This appeal has been:
☐ By-passed at Second Level of Review. Go to Section G.
☐ Rejected (See attached letter for instruction) Date:_____ Date:_____ Date:_____
☐ Cancelled (See attached letter)
☐ Accepted at the Second Level of Review

Assigned to: _____   Title: _____   Date Assigned: _____   Date Due: _____

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: _____   Interview Location: _____

Your appeal issue is: ☐ Granted  ☐ Granted in Part  ☐ Denied  ☐ Other: _____

See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: _____ (Print Name)   Title: _____   Signature: _____   Date completed : _____

Reviewer: _____ (Print Name)   Title: _____   Signature: _____

Date received by AC: _____

AC Use Only
Date mailed/delivered to appellant  ___/___/___

F. **If you are dissatisfied with the Second Level response**, explain reason below, attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.

Inmate/Parolee Signature: _____   Date Submitted: _____

**G. Third Level - Staff Use Only**

This appeal has been:
☐ Rejected (See attached letter for instruction) Date: _____   JAN - 9 2017
☐ Cancelled (See attached letter)   Date: _____   Date: _____   Date: _____
☐ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted  ☐ Granted in Part  ☐ Denied  ☐ Other:
See attached Third Level response.

Third Level Use Only
Date mailed/delivered to appellant  ___/___/___

H. **Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because: State reason. (If withdrawal is conditional, list conditions.)

Inmate/Parolee Signature: _____   Date: _____

Print Staff Name: _____   Title: _____   Signature: _____   Date: _____

STATE OF CALIFORNIA   DEPARTMENT OF CORRECTIONS AND REHABILITATION

**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 08/09)   Side 2

AGO 000776

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | FOR STAFF USE ONLY | | |

Attach this form to the CDCR 602, only if more space is needed.  Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): ASHKER, TODD | CDC Number: C#58191 | Unit/Cell Number: A-1-223 | Assignment: |
|---|---|---|---|

**A.  Continuation of CDCR 602, Section A only (Explain your issue) :** of 9/17/15 and 10/08/15.
While these issues were originally screened out on 1/7/16,
they were later accepted as appellant pointed out he did not
become aware of the violations as they relate to the ICC
actions of 9/17/15 and 10/08/15 until the cdcr form 1030
disclosures of 12/22/15. CCR title 15§3084.8(b)(2) which
states "An inmate must submit the appeal within 30 calendar
days of Upon first having knowledge of the action or decisi-
on being appealed." Once appellant became aware of the viol-
ations/issues being appealed on 12/22/15, he submitted the
appeal within thirty days of that date, therefore, the appe-
al including the issues that relate to the ICC actions of
9/17/15 and 10/08/15 were timely and appellant is entitled
to a third level review of them as the first and second lev-
el reviewed them. Further, these issues were ongoing abuses
and repeatedly used by prison officials. Therefore, per CCR
Title 15 §3084.6(c)(4), as the issue was ongoing appellant
is entitled to appeal it at anytime during the event and up
to thirty days after it ends. The appeal issues are timely.

Inmate/Parolee Signature: *Todd Ashker*          Date Submitted: *8/24/16*

INMATE APPEALS BRANCH    RECEIVED   SEP 19 2016   ST USE ONLY

**B.  Continuation of CDCR 602, Section B only (Action requested):** 2) To have CDCR deem appeal log #1512978
FULLY exhausted and all issues contained in it, specifically as it relates
to the ICC actions of 9/17/15 and 10/08/15 administrative remedies FULLY
exhausted. 3) To admit that appellant has no other AVAILABLE administrative
remedies for appeal log #1512978 and ANY issue contained therein.

Inmate/Parolee Signature: *TJ Ashker*          Date Submitted: *8/24/16*

AGO 000777

Inmate/Parolee Signature: _____   Date Submitted: _____

F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):

Inmate/Parolee Signature: _____   Date Submitted: _____

D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response):

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 2

**AGO 000778**

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
OFFICE OF APPEALS
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## THIRD LEVEL APPEAL DECISION

Date:   JUL 18 2016

In re:   Todd Ashker, C58191
Kern Valley State Prison
P.O. Box 6000
Delano, CA 93216

TLR Case No.: 1512978          Local Log Nos.: KVSP-16-00836 and PBSP-16-00032

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner M. Hodges, Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that on December 22, 2015, he was issued 18 CDC Form 1030, Confidential Information Disclosure Form(s) which are examples of the CDCR staff's ongoing abuse of confidential information from unreliable sources as a pretext to justify his continued Security Housing Unit (SHU) confinement by the Institution Classification Committee (ICC) and Departmental Review Board (DRB).

The appellant requests he be compensated for every day responsible staff denied him due process or retaliated against him "as described herein."

**II   SECOND LEVEL'S DECISION:** The reviewer found no basis to grant this appeal. The appellant was issued 18 CDC Form 1030s on December 22, 2015, in preparation for his appearance before the DRB on January 14, 2016. Prior to the review, the appellant was issued a CDC Form 128-B1, Notice of Classification Hearing Chrono on January 11, 2016, giving him the required 72-hour notice prior to the review to prepare. The DRB did not review any confidential information that was not disclosed to the appellant. The DRB determined the concerns for the appellant's safety documented by the Pelican Bay State Prison (PBSP) ICC of September 17, 2015, and October 8, 2015, would not preclude his housing in a general inmate population (GP) setting.

The DRB and ICC reviewed the appellant's case factors, program needs, medical and housing needs. The appellant's request to be compensated for violation of due process was denied, as his due process was not violated. The Department has the obligation to provide a safe and secure environment for staff and inmates. The confidential memorandums cannot and will not be removed as they document information provided by others, which may or may not perceive the appellant as a threat or are a threat to the safety of the appellant, although he may not perceive them as a threat to his safety. The confidential memorandums address enemy concerns between the appellant and multiple confidential informants.

It is noted the appellant was seen by the DRB on January 14, 2016, at which time he was approved for transfer to Kern Valley State Prison (KVSP) Level IV/180-design GP placement. As a result, the appellant was transferred to KVSP on February 12, 2016. Subsequently, the KVSP ICC released the appellant to the GP and cleared him for double cell housing pursuant to the appellant's request. The appeal was denied at the Second Level of Review.

**III   THIRD LEVEL DECISION:** Appeal is denied.

**A. FINDINGS:** California Code of Regulations, Title 15, Section (CCR) 3270 states, "The requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities of the institutions of the department."

CCR 3376.1 states, "The Departmental Review Board (DRB) provides the Secretary's final review of classification issues which are referred by an institution head for a resolution or decision at the headquarters level. The DRB decision serves as the Secretary's level decision which is not appealable and concludes the inmate/parolee's departmental administrative remedy of such issues."

AGO 000779

TODD ASHKER, C58191
CASE NO. 1512978
PAGE 2

The DRB decision regarding the appellant's housing and the use of confidential information by the DRB to make the decision is not appealable and will not be discussed in this response. Additionally, the appellant was appropriately informed via the CDC Form 695, Inmate/Parolee Appeals Screening Form dated January 7, 2016, that the ICC decision to retain him in the SHU was made on October 8, 2015, and is past time constraints for appealing pursuant to CCR 3084.8. Pursuant to the CCR 3084.2, the Third Level of Review (TLR) will only address the issuance of the 18 CDC Form 1030s on December 22, 2015. All other issues will not be addressed and administrative remedies are not considered exhausted for these issues.

The documentation and arguments are persuasive that the appellant has failed to provide evidence to support his appeal claim that the 18 CDC Form 1030s issued to him on December 22, 2015, are examples of the CDCR staff's ongoing abuse of confidential information from unreliable sources as a pretext to justify his continued SHU confinement by the ICC and DRB. The appellant has failed to present evidence that PBSP staff acted in violation of any laws, policies or procedures, that he was denied due process or retaliated against. No relief is warranted at the TLR.

The appellant has added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B).

**B. BASIS FOR THE DECISION:**
CCR: 3001, 3084.1, 3270, 3321, 3375, 3376.1, 3378, 3380
CDCR Operations Manual, Section: 13030.10, 54100.4

**C. ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.


M. HODGES, Appeals Examiner
Office of Appeals

M. VOONG, Chief
Office of Appeals

cc:    Warden, KVSP
       Appeals Coordinator, KVSP
       Appeals Coordinator, PBSP

AGO 000780

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL
CDCR 602 (REV. 03/12)

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
DEPARTMENT OF CORRECTIONS AND REHABILITATION
UNIT D-4                    Side 1

1512978

C58191

PBSP 16-00032    Category: X 6/

KVSP-0-16-00 8360

You have the right to appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available.   See California Code of Regulations (CCR), Title 15, Section 3084.1.  You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal.  If additional space is needed, only one CDCR Form 602-A will be accepted.  Refer to CCR 3084 for further guidance with the appeal process.  No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.         WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): ASHKER, TODD | CDC Number: C#58191 | Unit/Cell Number: D4-207 | Assignment: SHU/S5 |
|---|---|---|---|

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):

Ongoing denial of Due Process/Retaliation

A.  Explain your issue (If you need more space, use Section A of the CDCR 602-A): On 12/22/15, CCI - Fallis ISSUED ME (18) Confidential Disclosures [re:'Your upcoming DRB Hrg.']; These Conf. Disclosures are the first time I've rec'd definite proof of the ongoing-due process violations[inclusive of retaliation] -

B.  Action requested (If you need more space, use Section B of the CDCR 602-A):  1.) To be compensated for every day responsible staff have denied my due process, and/or been reataliating against me, as described herein.   JAN 1 9 2016

Supporting Documents: Refer to CCR 3084.3.

☐ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

_____

_____

☐ No, I have not attached any supporting documents. Reason : _____

Inmate/Parolee Signature: T. Ashker            Date Submitted: 1/18/16

☐ By placing my initials in this box, I waive my right to receive an interview.

C.  First Level - Staff Use Only          Staff – Check One:  Is CDCR 602-A Attached?  ☐ Yes ☐ No
This appeal has been:
☐ Bypassed at the First Level of Review.  Go to Section E.
☐ Rejected (See attached letter for instruction)  Date: 1/7/16    Date: ___  Date: ___  Date: ___
☐ Cancelled (See attached letter)  Date: ___
☐ Accepted at the First Level of Review.
Assigned to: SHU          Title: AW       Date Assigned: 1/21/16   Date Due: 3/2/16
First Level Responder: Complete a First Level response.  Include Interviewer's name, title, interview date, location, and complete the section below.
Date of Interview: 2/5/2016          Interview Location: Unit D4
Your appeal is is:  ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other: ___
See attached letter.  If dissatisfied with First Level response, complete Section D.
Interviewer: I. Ryan          Title: CCII     Signature: ___
Reviewer: D. Melton          Title: CAA     Signature: D Melton      Date completed: ___ /16
                     FEB 2 3 2016
Date received by AC: ___

AC Use Only
Date mailed/delivered to appellant    FEB 2 3 2016

AGO 000781

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 2

**D. If you are dissatisfied with the First Level response,** explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

DISSATISFIED - FIRST LEVEL RESPONSE IGNORES MY SPECIFIED POINTS/COMPLAINT IN section 'A'. The 2014 DRB MEMBERS & Related Support staff, &(2) 2015 ICC COMMITTEE & Related Support Staff denied my due process - liberty interest right to be free of solitary confinement torture <SHU> by relying on False - fabricated - hearsay contradictory allegations from CDCR's collaborator informant <who don't meet "confidential" criteria> & related supposition(s) thereof by IGI-SSU-OCS-DRB

Inmate/Parolee Signature: T. Ashker  Date Submitted: 3/6/16  MAR 21 2016

**E. Second Level - Staff Use Only**  **Staff – Check One: Is CDCR 602-A Attached?** ☒ Yes ☐ No

This appeal has been:
- ☐ By-passed at Second Level of Review. Go to Section G.
- ☐ Rejected (See attached letter for instruction) Date: ______ Date: ______ Date: ______ Date: ______
- ☐ Cancelled (See attached letter)
- ☒ Accepted at the Second Level of Review

Assigned to: Appeals  Title: ______  Date Assigned: 3/21/16  Date Due: 5/3/16

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: ______  Interview Location: ______

Your appeal issue is: ☐ Granted ☐ Granted in Part ☒ Denied ☐ Other: ______

See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: 1st Level (Print Name)  Title: ______  Signature: ______  Date completed: ______

Reviewer: D. BRADBURY (Print Name)  Title: CDW  Signature: [signature]

Date received by AC: APR 26 2016

**AC Use Only**
**Date mailed/delivered to appellant** APR 26 2016

**F. If you are dissatisfied with the Second Level response,** explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A. <REC'd on 5/3/16>

Dissatisfied! Second level respondent basically ignores / fails to address my clear points at issue - as stated in above sections A, B, and D. I maintain my position(s) stated above and request 3rd Level grant the relief requested -

Inmate/Parolee Signature: T. Ashker  Date Submitted: 5/3/16

**G. Third Level - Staff Use Only**

This appeal has been:
- ☐ Rejected (See attached letter for instruction) Date: ______ Date: ______ Date: ______ Date: ______
- ☐ Cancelled (See attached letter) Date: ______
- ☒ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted ☐ Granted in Part ☒ Denied ☐ Other: ______

See attached Third Level response.

**Third Level Use Only**
**Date mailed/delivered to appellant** JUL 21 2016

**H. Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

Inmate/Parolee Signature: ______ Date: ______

Print Staff Name: ______ Title: ______ Signature: ______ Date: ______

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**Side 1**

| | IAB USE ONLY | Institution/Parole Region | Log # | Category |
|---|---|---|---|---|
| 1512978 | | PBSP 16-00032 | | UNIT D-4 |
| | | KVSP-0-16-00836 | | |
| | | FOR STAFF USE ONLY | | |

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

Appeal is subject to rejection if one row of text per line is exceeded.   **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): ASHKER, TODD | CDC Number: C#58191 | Unit/Cell Number: D4-207 | Assignment: SHU/SS |
|---|---|---|---|

**A. Continuation of CDCR 602, Section A only (Explain your issue):** going back to my DRB CBC-Rev
iew[9/10/14], and (2) ICC 'Special Review' Committees[9/17/15, and 10/08
15 - held in re: Ashker, et.al. v. Governor, et.al., Settlement Agreement]
These (18) Conf. Disc's, are examples of CDCr's rank and file, ongoing
abuse of Confidential Information, as a pretext to justify my cont'd
SHU confinement. [ the specific examples I'm refering to are CM Disclo-
sures dated 12/22/15;/10/02-to-06/15; 8/26-to-25/15; 9/02/15; and 10/
21/13; re: CMs dated 5/21/12; 12/07/12; 2/26/13; 4/02/13; and 8/15/13]
These CMs are per informant/debriefer-CDCr-OSC-IGI colaborators Beasley
and Elrod's allegations used by DRB/ICCs, etc., to justify keeping me
in SHU [These are examples of the most recent abusive use of Conf.Info
going on for more than 3 decades!]; these ½ collaborating informants
do not meet criteria for being deemed [Confidential Informants], and
the DRB/ICCs, etc, know this because they know these Informants were
both paraded before the public in 2012/2013 as informants! The DRB/ICC
etc., intentionally withheld, and/or fabricated information on the
Confidential Disclosures ref'd above in order to deny me due process,
and keep me in SHU...I repeatedly pointed out that these 2 lying rats
stories did not constitute evidence of anything! DRB/ICC staff owe me!

Inmate/Parolee Signature: *T. Ashker*     Date Submitted: 1/18/16

**B. Continuation of CDCR 602, Section B only (Action requested):**     JAN 1 9 2016

Inmate/Parolee Signature: _____     Date Submitted: _____

AGO 000783

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 2

**D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response):** and Warden Ducart, etal, inclusive of CCII's & CCI's involved.... All of whom are complicit in failing to base their decisions to keep me in (SHU) on actual evidence justifying this, & related failure(s) to provide comprehensive-accurate-complete information in the numerous confidential disclosures at issue! In addition to being an on-going due process + liberty interest violation - I am claiming such acts/failures to act are retaliation in response to my use of the courts & role in peaceful activism efforts - resulting in global exposure of decades of state sanction torture policies & practices... thereby forcing major reforms!!

MAR 21 2016

**Inmate/Parolee Signature:** T. Ashker **Date Submitted:** 3/6/16

**F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):**

**Inmate/Parolee Signature:** **Date Submitted:**

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

PELICAN BAY STATE PRISON
DEPARTMENT OF CORRECTIONS AND REHABILITATION
SECURITY HOUSING UNIT
UNIT D-4

Side 1

| | IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|---|
| | | PBSP | D-16-00032 | 6/2/9 |

FOR STAFF USE ONLY

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available.  See California Code of Regulations (CCR), Title 15, Section 3084.1.  You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal.  If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process.  No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| ASHKER, TODD | C#58191 | D4-207 | SHU |

Pelican Bay State Prison

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):

_Ongoing denial of due process/retaliation_

JAN 06 2015
CDCR
Appeals Office

A.  Explain your issue (If you need more space, use Section A of the CDCR 602-A): _On 12/22/15, CCI -_
_Fallis issued me (18) Confidential Disclosures re: 'Your upcoming DRB_
_Hrg.' This DRB Hrg. is in response to the Ashker, et.al. v. Governor,_
_et.al., 'Settlement Agreement' filed 8/31/15; specifically, the agree-_

Per OOT does not
meet SC criteria

Pelican Bay State Prison

B.  Action requested (If you need more space, use Section B of the CDCR 602-A): _1. To be issued the_
_original-complete-handwritten debriefing documents, and any recordings_
_re:CDCr collaborators' Elrod, and Beasley. 2. To be immediately released_
_to PBSP G.P. 3. To be compensated for every day since 9/10/14._

JAN 19 2015
rewritten
Appeals Office

Supporting Documents: Refer to CCR 3084.3.     JAN 0 6 2016
☐ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

_____

_____

☒ No, I have not attached any supporting documents. Reason : _I need my copies of related_
_documents for my DRB Hrg-_

_____

| Inmate/Parolee Signature: _Todd Ashker_ | Date Submitted: _1/5/16_ |
|---|---|

☐ By placing my initials in this box, I waive my right to receive an interview.

**C.  First Level - Staff Use Only**                    Staff – Check One: Is CDCR 602-A Attached?  ☒ Yes  ☐ No
This appeal has been:                                            R-7/8
☐ Bypassed at the First Level of Review. Go to Section   JAN 0 7 2016
☒ Rejected (See attached letter for instruction)  Date: _____  Date: _____  Date: _____  Date: _____
☐ Cancelled (See attached letter)  Date: _____
☐ Accepted at the First Level of Review.

    Assigned to: _____  Title: _____  Date Assigned: _____  Date Due: _____

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

    Date of Interview: _____  Interview Location: _____

Your appeal issue is:  ☐ Granted  ☐ Granted in Part  ☐ Denied  ☐ Other: _rewritten_
    See attached letter. If dissatisfied with First Level response, complete Section D.

| Interviewer: _____ (Print Name) | Title: _____ | Signature: _____ | Date completed: _____ |
| Reviewer: _____ (Print Name) | Title: _____ | Signature: _____ | |

Date received by AC: _____

AC Use Only
Date mailed/delivered to appellant ____ / ____ / ____

AGO 000785

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**Side 2**

**D. If you are dissatisfied with the First Level response,** explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

**Inmate/Parolee Signature:** ____ **Date Submitted :** ____

**E. Second Level - Staff Use Only** **Staff – Check One: Is CDCR 602-A Attached?** ☐ Yes ☐ No

This appeal has been:
☐ By-passed at Second Level of Review. Go to Section G.
☐ Rejected (See attached letter for instruction) Date: ____ Date: ____ Date: ____ Date: ____
☐ Cancelled (See attached letter)
☐ Accepted at the Second Level of Review

rewritten

Assigned to: ____ Title: ____ Date Assigned: ____ Date Due: ____

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: ____ Interview Location: ____
Your appeal issue is: ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other: ____
See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: ____ (Print Name) Title: ____ Signature: ____ Date completed : ____
Reviewer: ____ (Print Name) Title: ____ Signature: ____
Date received by AC: ____

**AC Use Only**
**Date mailed/delivered to appellant** ___/___/___

**F. If you are dissatisfied with the Second Level response,** explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.

**Inmate/Parolee Signature:** ____ **Date Submitted:** ____

**G. Third Level - Staff Use Only**
This appeal has been:
☐ Rejected (See attached letter for instruction) Date: ____ Date: ____ Date: ____ Date: ____ Date: ____
☐ Cancelled (See attached letter) Date: ____
☐ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other: ____
See attached Third Level response.

**Third Level Use Only**
**Date mailed/delivered to appellant** ___/___/___

**H. Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

Inmate/Parolee Signature: ____ Date: ____
Print Staff Name: ____ Title: ____ Signature: ____ Date: ____

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|

PBSP D-16-00032

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed.  Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.    **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| ASHKER, TODD | C#58191 | D4-207 | SHU |

**A.  Continuation of CDCR 602, Section A only (Explain your issue):** ment required ICC Special

Comm. Review for purpose of release to G.P. Absent 'substantial safety
concerns' in which case ICC put the case up for DRB. I had 2 ICC's
per agreement. Prior to these, I was issued (3), then (8) Conf. Disc.
ICC used as a pretext to deny my release to G.P., and put me up for a
DRB Hrg.[alleging 'substantial safety concerns']; the 'Disclosures''I
was issued on 9/17/15; and 10/08/15, are the same as the ones at my
9/10/14 DRB CBC Review [resulting in my placement on Step-2]! On 12/22
15, many of the Disclosures are re: same Conf. Memos' used at above
Hrgs., and they provide direct evidence supporting my position all
along! That there is **NO EVIDENCE** supporting the informants' Elrod and
Beasley's allegations in CMs dated 5/12/12; 12/7/12; 2/26/13; 4/2/13;
8/15/13. And the prior Disclosures contained false information, etc.,
[e.g., the prior Disclosures re: 4/2/13 allegations about 2 inmates
who had previously defected-confirmed and corroborated that it was
'common knowledge that Ashker wanted the Doctor, and Attys murdered'
In the Disclosure I was given on 12/22/15, re:4/2/13, it states that
one of these 'defectors' was shown the alleged 'evidence' and stated
he knew nothing about it![Elrod] this is 1 example!! Not enough room!

Inmate/Parolee Signature: T. Ashker     Date Submitted: 1/5/16

**B.  Continuation of CDCR 602, Section B only (Action requested):** JAN 0 6 2016

Inmate/Parolee Signature: _____     Date Submitted: _____

Pelican Bay State Prison

JAN 0 6 2015

Appeals Office

Pelican Bay State Prison

JAN 19 2015

Appeals Office

STAFF USE ONLY

RECEIVED

INMATE APPEALS BRANCH

RECEIVED
SEP 19 2016
INMATE APPEALS BRANCH

AGO 000787

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 2

**D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response):**

rewritten

**Inmate/Parolee Signature:** ______ **Date Submitted:** ______

**F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):**

**Inmate/Parolee Signature:** ______ **Date Submitted:** ______

**FIRST LEVEL APPEAL RESPONSE**

**RE**:   PELICAN BAY STATE PRISON (PBSP)
Appeal Log Number PBSP-D-16-00032
First Level Reviewer's Response

**INMATE**:  ASHKER, C58191

**APPEAL DECISION**:  **PARTIALLY GRANTED**

**APPEAL ISSUE**:  CUSTODY/CLASSIFICATION

**EFFECTIVE COMMUNICATION**:

The interview for this appeal was completed at the First Level of Review. The attached Appeals Effective Communication form contains information relative to accommodations which may have been utilized to ensure effective communication following a review of the Disability and Effective Communication System. You have a documented Test of Adult Basic Education score of 12.9. You do not require additional Effective Communication devices. You stated you understood and you needed no further assistance.

**ACTION REQUESTED**:

On January 18, 2016, you initiated an Inmate/Parolee Appeal Form, California Department of Corrections and Rehabilitation (CDCR) Form 602, requesting to be compensated for every day responsible staff have denied you due process, or have retaliated against you.

**FINDINGS**:

You are appealing the fact you were denied due process in an effort to retain you in the PBSP Security Housing Unit (SHU). You contest that confidential information used to retain you were from sources that do not meet the criteria to be deemed confidential informants.

J. Ryan, Correctional Counselor II (CCII), interviewed you on February 5, 2016. During the interview, you clarified your complaint was not against any one person and clarified your complaint was against the decisions made by the Departmental Review Board (DRB) of September 10, 2014, and the two Institutional Classification Committees (ICC) which occurred on September 17, 2015, and October 8, 2015. You contended some of these documents were used to both validate you and document safety concerns. You opined that a source document must either be used to validate you or document a safety concern but it cannot be both. You stated your belief that all of this information was hearsay. You stated you wish to be compensated for time spent in the PBSP SHU back to September 10, 2014, when you were reviewed by the DRB.

California Code of Regulations, Title 15, Section 3375(f) includes the following:

*The classification of inmates shall provide the following procedural safeguards:*
  - *Inmates shall be given written notice at least 72 hours in advance of a hearing which could result in an adverse effect.*

First Level Reviewers Response
Appeal Log Number PBSP- D-16-00032
Inmate ASHKER, C58191
Page 2

- *Except as provided in subsection 3375(f)(3), the inmate shall be present...at any other classification committee hearing which could result in an adverse effect upon the inmate.*
- *If the inmate was not previously notified and during the classification committee hearing an unanticipated adverse effect emerges, the hearing shall be postponed for at least 72 hours.*
- *Each inmate appearing before a classification committee shall be:*
  - *Introduced to the committee members.*
  - *Informed of the purpose of the hearing.*
  - *Encouraged to participate in the hearing discussion.*
  - *Informed of the committee's decision.*
- *Classification committee decisions shall be based on evaluation of available information and mutual agreement of the committee members.*

On September 10, 2014, you were reviewed by the DRB. Prior to the review, you were notified of this review via CDCR 128-B1, Notice of Classification Hearing, on September 2, 2014, giving you more than the required 72 hours prior to the review to prepare. When you were notified, you were given 13 CDCR 1030, Confidential Information Disclosure, forms to review in preparation for this review. The DRB did not review any confidential information that was not disclosed to you. Based upon the information in your Central File, the DRB acted to retain you in PBSP SHU in Step 2 of the Step Down Program. You were advised at the end of the DRB that their decision served as the Secretary's level decision which is not appealable. All due process rights were afforded to you with regard to this review.

On September 17, 2015, your case was reviewed by the PBSP ICC for possible release based upon the Settlement Agreement of August 31, 2015. Prior to this review, you were issued a CDCR 128-B1 on August 25, 2015, giving you more than the required 72 hours prior to the review to prepare. During the ICC, three confidential documents were discussed relative to concerns for your safety. Two of these documents were addressed in the DRB of September 10, 2014, and this information was disclosed to you then. Additionally, the information in the third document was disclosed to you via CDCR 1030 on August 26, 2015. The ICC did not review any confidential information that was not disclosed to you. The ICC determined you may have safety concerns and referred your case to the DRB for review. ICC further granted you Work Group/Privilege Group D1/S5 effective the date of ICC allowing you to receive the maximum allowable privileges while housed in PBSP SHU. You were advised of your appeal rights at the end of ICC. All due process rights were afforded to you with regard to this review.

On October 8, 2015, your case was again reviewed by the ICC. Prior to this review, you were issued a CDCR 128-B1 on September 30, 2015, giving you more than the required 72 hours prior to the review to prepare. During the ICC, eight confidential documents were discussed relative to concerns for your safety. You were provided a CDCR 1030 for each of these documents on October 2, 2015. The ICC did not review any confidential information that was not disclosed to you. The ICC determined there was overwhelming evidence that your safety may be in jeopardy and referred your case to the DRB for review. You were advised of your appeal rights at the end of ICC. All due process rights were afforded to you with regard to this review.

First Level Reviewers Response
Appeal Log Number PBSP- D-16-00032
Inmate ASHKER, C58191
Page 3

On January 14, 2016, your case was again reviewed by the DRB. You were issued 18 CDCR 1030's on December 22, 2015 in preparation for your appearance before the DRB on January 14, 2016. Prior to the review, you were issued a CDCR 128-B1 on January 11, 2016, giving you the required 72 hours prior to the review to prepare. The DRB did not review any confidential information that was not disclosed to you. The DRB determined the concerns for your safety documented by the PBSP ICC's of September 17, 2015, and October 8, 2015, would not preclude your housing in a General Population setting. The DRB acted to release you from PBSP SHU and transfer you to Kern Valley State Prison, "A" Facility. You were advised at the end of the DRB that their decision served as the Secretary's level decision which is not appealable. All due process rights were afforded to you with regard to this review.

Within these four classification reviews, all due process rights were afforded to you. It appears each DRB and ICC acted in good faith with regard to not only your housing and program requirements but also with regard to your personal safety based on the availability of information both confidential and non-confidential.

With regard to the seeming duality of information contained within some of this confidential information, generally speaking, it is possible for a document to be used to validate you and contain information that may cause concern for your safety. Unfortunately, due to the confidential nature of these documents, it is difficult to clarify seemingly conflicting information without disclosing information that would put individuals at risk of harm. The reliability of each document is scrutinized and, in turn, documented. Appropriate actions were taken with regard to your case based upon the reliability of the information disclosed to you.

Although you continued to be retained in PBSP SHU based on the ICC decisions of September 17, 2015, and October 8, 2015, compensation for this retention is inappropriate. It is noted you were granted maximum privileges in PBSP SHU effective September 17, 2015. However, your continued retention in SHU pending the DRB review was appropriate.

## DETERMINATION OF ISSUE:

A thorough review of your complaint presented in this appeal has been completed. Your request to be compensated for your housing in SHU from September 10, 2014, is **DENIED**. Your being housed from that time period forth was appropriate for your case factors and you were afforded all of your due process rights with regard to these classification reviews.

Based on this review, the action requested to resolve this appeal is **DENIED** at the First Level of Review.

C. J. PARRY          Date                    R. K. BELL            Date
Captain (Adult Institutions)                  Correctional Administrator
Facility D                                    Security Housing Unit

**AGO 000791**

*but is not limited to information which, if disclosed, would: - Endanger the health and/or safety of the subject or other, -persons (may include medical and/or psychiatric information which, if known to the subject of the information, would prove detrimental). -Endanger the security of any departmental facility. - Disclose personal or confidential information pertaining to a person other than the subject of the information when the information would not reasonably be a part of the subject's knowledge or experience. - Impede an investigation or preclude CDC from accomplishing its statutory purpose and function in criminal, civil or administrative matters. - Compromise the objectivity or fairness of the testing, appointment or promotion process. - Release information required by statute to be withheld from the individual to whom it pertains.*

The above mentioned DRB and ICCs reviewed the inmate's case factors, program needs, medical and housing needs. The DRB and both ICCs acted to retain him in PBSP-SHU. Therefore, the inmate's request to be compensated for violation of due process is **DENIED,** as the inmate's due process was not violated. The Chairperson of each committee acting on behalf of the Department has a right to protect the safety and security of the public, the institution as well as the safety and security of the inmate.

The Department has the obligation to provide a safe and secure environment for staff and inmates. The Confidential Memorandums cannot and will not be removed as they document information provided by others which may or may not perceive the inmate as a threat or are a threat to the safety of the inmate, although he may not perceive them as a threat to his safety. The Confidential Memorandums address enemy concerns between the inmate and multiple confidential informants.

It should be noted the inmate was seen by the DRB on January 14, 2016, at which time he was approved for transfer to Kern Valley State Prison (KVSP) for level IV/ 180 design GP placement. As a result, the inmate was transferred to KVSP on February 12, 2016. Subsequently, KVSP ICC has released the inmate to the GP and cleared him for double cell housing per the inmate's request.

Based on the above aforementioned, this appeal is **DENIED** at the Second Level Review.

## MODIFICATION ORDER

No modification of this decision or action taken is required.

C. E. DUCART
Warden

AS      Date 4/19/16

AGO 000792



## PELICAN BAY STATE PRISON
### SECOND LEVEL REVIEW

DATE: APR 2 6 2016

Inmate ASHKER, C58191
Kern Valley State Prison
General Population
Facility A, Building 1, Cell 223

RE: WARDEN'S LEVEL DECISION        APPEAL: DENIED
     APPEAL LOG NO. PBSP-D-16-00032      ISSUE: CUSTODY/CLASS

This matter was reviewed by C. E. Ducart, Warden, at Pelican Bay State Prison (PBSP). On February 5, 2016, J. Ryan, Correctional Counselor II, conducted the interview at the First Level Review. All submitted documentation and supporting arguments have been considered.

### ISSUES

The inmate contends on December 22, 2015, J. Fallis, Correctional Counselor I (CCI) issued him eighteen California Department of Corrections and Rehabilitation (CDCR) Confidential Disclosure forms. The inmate believes the Confidential Disclosure forms are proof of on-going due process violations and are an abuse of confidential information. The inmate further contends two confidential informants collaborated against him to retain him in the PBSP Security Housing Unit (SHU) and do not meet the criteria for being deemed reliable.

The inmate is requesting compensation for everyday he is denied his due process and is retaliated against.

### EFFECTIVE COMMUNICATION

The First Level Reviewer interviewed the inmate relative to his appeal issue. The inmate has not been identified with a disability or effective communication need. The inmate has a Test of Adult Basic Education score of 12.9. The inmate is not a participant in the Mental Health Services Delivery System. Therefore, during the interview, no assistance was required to achieve effective communication. During the interview the inmate stated his appeal stands as written and he had no new information to add.

### FINDINGS

I

The First Level Review denied the inmate's request for compensation for due process issues, as all due process rights regarding classification reviews from September 10, 2014 were afforded to you. On March 21, 2016, the inmate was dissatisfied with the First Level Review and claims the First Level Review ignored his specified points where as the Departmental Review Board (DRB) and two Institutional Classification Committees (ICC) denied his due process right of liberty, free of solitary confinement in the PBSP SHU by relying on fabricated collaborating informants.

**AGO 000793**

II

The inmate was housed in the SHU, based upon his validation as a member of the Aryan Brotherhood (AB) Security Threat Group (STG). The DRB of September 9, 2014 and the two ICCs in 2015 reviewed the inmate's case factors, program needs, medical needs, and appropriate housing needs. The DRB and both ICCs acted to retain him in PBSP-SHU. The inmate was advised the DRB decision served as the Secretary's level decision and is not appealable.

III

All of the attached documents were reviewed at the Second Level Review as well as both Institutional Classification Committee Chronos from 2015, the DRB Classification Chrono of September 9, 2014, the Confidential Section of Electronic Records Management System (ERMS). It is noted the DRB as well as the PBSP ICCs reviewed the confidential memorandums disclosed to the inmate on the CDCR Confidential Disclosure forms.

DETERMINATION OF ISSUE

The California Code of Regulations (CCR), Title 15, Section 3270, General Policy, states in part, *the primary objectives of the correctional institutions are to protect the public by safely keeping persons committed to the custody of the Secretary of Corrections, and to afford such persons with every reasonable opportunity and encouragement to participate in rehabilitative activities.*

The CCR, Title 15, Section 3321, Confidential Material, states in part, *(a) the following types of information shall be classified as confidential: (1) Information which, if known to the inmate, would endanger the safety of any person. (2) Information which would jeopardize the security of the institution. (1) No decision shall be based upon information from a confidential source, unless other documentation corroborates information from the source, or unless the circumstances surrounding the event and the documented reliability of the source satisfies the decision maker(s) that the information is true. (d) Filing confidential material. (1) Only case information meeting the criteria for confidentiality shall be filed in the confidential section of an inmate's/parolee's central file.*

The CCR, Title 15, Section 3375, Classification Process, states in part, *(a) the classification process shall be uniformly applied, commencing upon reception of a person committed to the custody of the Secretary and shall continue throughout the time the individual remains under the Secretary's jurisdiction. Each inmate shall be individually classified in accordance with this article.*

The CCR, Title 15, Section 3376.1, Departmental Review Board, states in part, *The Departmental Review Board (DRB) provides the Secretary's final review of classification issues which are referred by an institution head for a resolution or decision at the headquarters level. The DRB decision serves as the Secretary's level decision which is not appealable and concludes the inmate/parolee's departmental administrative remedy of such issues.*

The Department Operations Manual (DOM), Section 81020.36, Enemy or Gang Information Policy, states, *Enemy or gang information is highly sensitive and shall be transmitted as rapidly as possible to those who have a need-to-know. The CDC Form 812, Notice of Critical Case Information Form shall be used to document gang membership, associations, enemies, assault on others or victim of assaults. This information is confidential and will be handled in accordance with procedures for handling confidential information.*

The DOM, Section 86050.2, Definitions, states, *the following definitions will apply in this Article to personnel and parolee records:* Confidential Information - *Information which is classified as confidential by the CDC under the authority of statute and case law, and depending on the contents, may be withheld from the data subject and any other unauthorized person, agency and entity. Confidential information includes*

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION                                    PELICAN BAY STATE PRISON

## APPEALS EFFECTIVE COMMUNICATION CONFIRMATION

| INMATE NAME | CDCR NUMBER | HOUSING | APPEAL LOG# | TABE Score |
|---|---|---|---|---|
| ASHKER | C58191 | D4-207L | PBSP-D-16-00032 | 12.9 |

### A.   DOES THE INMATE HAVE DISABILITIES OR COMMUNICATION ISSUES?

1. ☒ Reads and comprehends without assistance (asked inmate or confirmed by past records).
2. ☒ No disabilities or effective communication needs found after review of DECS & TABE/Learning Disability lists.

*STOP!   IF ITEMS #1 AND #2 ARE BOTH CHECKED, GO TO SECTION B.  SIGN AND DATE.*

3. ☐ Identified with a disability or effective communication need (check all that apply):

| | | |
|---|---|---|
| ☐ TABE 4.0 or lower, or no score | ☐ Hearing | ☐ Learning disability |
| ☐ Requires reading/comprehension assistance | ☐ Vision | ☐ Developmental disability |
| ☐ Foreign language speaking | ☐ Speech | ☐ EOP          ☐ CCCMS |

### B.   APPEAL INTERVIEW

**1. How was assistance provided?  Check all that apply.**

| | | |
|---|---|---|
| ☒ Simple English spoken slowly & clearly | ☐ Inmate stated no need for EC assistance | ☐ Large print material used |
| ☐ Read documents to inmate | ☐ Used text magnifier | ☐ Lip reading |
| ☐ Inmate was wearing hearing aid(s) | ☐ Sign language interpreter used; Name: | |
| ☐ Written notes used (notes attached) | ☐ Language interpreter used; Name: | |
| ☐ Other: | | |

**2. How was effective communication achieved?  Check all that apply.**

☒ Inmate reiterated in his own words, what was explained.
☒ Inmate provided appropriate, substantive responses to questions asked.
☒ Inmate asked appropriate questions regarding the information provided.
☐ Inmate did not appear to understand the communication, even though the primary method of communication was used.
☐ Other:

| J. RYAN, CCII | | 2/05/2016 |
|---|---|---|
| Printed Name & Title | Signature | Date |

*STOP!  DO NOT FILL OUT SECTION C OR D UNLESS PROVIDING ASSISTANCE
WITH COMPLETED RESPONSE AS DIRECTED BY THE APPEALS OFFICE*

### C.   APPEAL RESPONSE - FIRST LEVEL

**1. How was assistance provided?**
  ☐ Effective communication assistance was provided as identified in Section B, #1 of this form.
**2. How was effective communication achieved?**
  ☐ Effective communication assistance was provided as identified in Section B, #2 of this form.
Additional Comments:

| Printed Name & Title | Signature | Date |
|---|---|---|

### D.   APPEAL RESPONSE - SECOND LEVEL

**1. How was assistance provided?**
  ☐ Effective communication assistance was provided as identified in Section B, #1 of this form.
**2. How was effective communication achieved?**
  ☐ Effective communication assistance was provided as identified in Section B, #2 of this form.
Additional Comments:

| Printed Name & Title | Signature | Date |
|---|---|---|

Rev. 03/23/2011

State of California
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*Friday, March 11, 2016*

*ASHKER, C58191*
*A  001 1126001LP*

CASE INFO./RECORDS, , 03/09/2016
Log Number: KVSP-O-16-00836
**(Note: <u>Log numbers are assigned to all appeals for tracking purposes. Your appeal is
subject to cancellation for failure to correct noted deficiencies.</u>)**

The enclosed documents are being returned to you for the following reasons:

***Be advised that your appeal has been forwarded to another CDCR unit for processing.***

***appeal (PBSP-D-16-00032) forwarded to PBSP for review***

☐   S. Tallerico
☑   D. Tarnoff
Appeals Coordinator
KVSP

Pelican Bay State Prison

MAR 2 1 2016

Appeals Office

**NOTE:** If you are required to respond/explain to this CDCR Form 695, use <u>only</u> the lines provided below.

_____

_____

_____

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and
resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to
CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a
separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if
the appeal on the cancellation is granted.
**NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

State of California
**CDC FORM 695**
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-4

RE: Screening at the FIRST Level

*Thursday, January 07, 2016*

*ASHKER, C58191*
*D 004 2207001L*

CASE INFO./RECORDS, , 01/06/2016
Log Number: PBSP-D-16-00032
**(Note: <u>Log numbers are assigned to all appeals for tracking purposes. Your appeal is subject to cancellation for failure to correct noted deficiencies.</u>)**

The enclosed documents are being returned to you for the following reasons:

*Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(8). Your appeal involves multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single response due to this fact. You may resubmit the unrelated issues separately using separate appeals. Be advised that you are still subject to the submission of one non-emergency appeal every 14 calendar days.*

*Request #1, regarding 18 confidential disclosures, is a separate issue from request #2, to be released to GP. The ICC decision to retain you in SHU was made on 10/08/15 and is past time constraints for appealing.*

*This appeal was reviewed by the Chief Deputy Administrator who determined this appeal would be processed as a routine appeal, not a Staff Complaint. In processing as a routine appeal you need to revise the appeal to only one issue and attach supporting documents per CCR, Title 15, Section 3084.6 (b)(7).*

R. Mills, Appeals Coordinator
A. Sheldon, Appeals Coordinator
N. Bramucci, AGPA
PBSP Appeals Office

**NOTE:** If you are required to respond/explain to this CDCR Form 695, use only the lines provided below. 1/18/16
I disagree with your above position - the operative date re = ICC's
violating the due process at issue is - date of discovery - this date
was when I was when I was issued the (18) disclosures on
12/24/15 ! I'm re-submitting - on new appeal - 1/18/16 - (TA)
Attached
Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and
resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to   JAN 1 9 2016
CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a
separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if
the appeal on the cancellation is granted.
**NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

1   ROB BONTA
    Attorney General of California
2   MARISA KIRSCHENBAUER
    Supervising Deputy Attorney General
3   CASSANDRA J. SHRYOCK
    Deputy Attorney General
4   State Bar No. 300360
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3622
6    Fax:  (415) 703-5843
     E-mail: Cassandra.Shryock@doj.ca.gov
7   *Attorneys for Defendants*

8

                   IN THE UNITED STATES DISTRICT COURT
9
               FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
                       SAN FRANCISCO DIVISION
11

12

13  **TODD ASHKER,**                    3:18-cv-06350-WHA

14                         Plaintiff,   **DECLARATION OF S. HUBBARD IN**
                                        **SUPPORT OF DEFENDANTS' MOTION**
15          **v.**                      **FOR SUMMARY JUDGMENT**

16  **S. KERNAN, et al.,**              Judge:       The Honorable William Alsup
                                        Action Filed:  October 17, 2018
17                        Defendants.

18

19          I, S. Hubbard, declare:

20          1.     I am personally familiar with the facts contained in this declaration, and if called to

21   testify, would and could competently testify about these matters.

22          2.     I am a defendant in this action.  I was employed by the California Department of

23   Corrections and Rehabilitation (CDCR) for approximately 30 years, from 1979 to 2009.  I held

24   numerous positions during my tenue with CDCR, including correctional officer, Warden, Deputy

25   Director of Adult Institutions, and Director of Adult Institutions.  I retired in 2009, but returned to

26   work for CDCR as a retired annuitant in February 2010.  As a retired annuitant, I served as the

27   Acting Chief Deputy Warden at Folsom State Prison and Central California Women's Facility

28   through September of 2010.  I began another assignment in February 2011 as the Acting Warden

                                        1

Hubbard Decl. ISO Defs.' Mot. Summ. J. (3:18-cv-06350-WHA)

**AGO 000798**

1   and Chief Deputy Warden at California State Prison, Corcoran from February 2011 to September

2   2011.  Beginning in September 2011, I began working as part of a Special Project Team to

3   evaluate best practices and develop new regulations related to gang management.  I continued to

4   work as part of that team until March 2018.

5          3.      Through my various positions with CDCR, I was familiar with CDCR's gang

6   management policies, including the policy that inmates who were validated as a gang member or

7   associate would receive an indeterminate Security Housing Unit (SHU) term.  For many years, an

8   inmate did not have to be involved in gang activity to be validated as a member or associate, and

9   in turn receive an indeterminate SHU term.  They could, for example, be validated based upon

10  artwork or books in their possession, tattoos, or based on corresponding with particular

11  individuals.

12         4.      Beginning in 2011, CDCR began evaluating national best practices in Security Threat

13  Group—another term for prison gangs—identification and management.  I was a part of creating

14  and implementing a Pilot Program, which revised CDCR's gang management policies.  Relevant

15  to this action, under the old policy a review was conducted every six years for a validated inmate

16  to determine whether they were still active within a prison gang, but under the new policy, that

17  review was conducted every four years.  Also, under the old policy possession of certain items

18  could be sufficient to find that an inmate was still active in a prison gang, but under the Pilot

19  Program the inmate had to have engaged in some *conduct* within the preceding four years to be

20  found active in a prison gang.  And, where previously validated inmates could only be released

21  from a SHU if they debriefed—dropped out of the prison gang—or was found "inactive" during a

22  six-year review, a new "Step Down" Program was created that allowed inmates to gradually earn

23  more privileges and eventually return to a general population yard if they completed certain

24  requirements and did not receive any gang-related discipline.

25         5.      Under the Step Down Program, if an inmate had documented gang behavior within 12

26  months of the case-by-case review, they would be placed in Step 1, in which they stayed in the

27  Pelican Bay SHU.  If an inmate's documented gang behavior occurred between 13 and 24 months

28  before the case-by-case review, the inmate was placed in Step 2, in which they remained housed

2

Hubbard Decl. ISO Defs.' Mot. Summ. J. (3:18-cv-06350-WHA)

**AGO 000799**

1  in the Pelican Bay SHU but gained increased privileges.  If an inmate's documented gang

2  behavior occurred between 25 and 36 months before their case-by-case review, the inmate was

3  placed in Step 3, in which they would be transferred to the SHU at California State Prison,

4  Corcoran (COR) or California Correctional Institution (CCI) and gained additional privileges.  If

5  an inmate's documented gang behavior occurred between 37 and 48 months before their case-by-

6  case review, the inmate was placed in Step 4, in which they would be transferred to the SHU at

7  California State Prison, Corcoran (COR) or California Correctional Institution (CCI) and gained

8  even more privileges than those afforded to Step 3 inmates.  If an inmate had no documented

9  gang behavior within the past four years, they would be released from the Pelican Bay SHU to a

10  general population facility.

11        6.    G. Giurbino, another Defendant in this case, and I were charged with conducting and

12  completing "case-by-case" reviews under the Pilot Program for inmates housed in SHU units

13  throughout CDCR.  Over the course of about two-and-a-half years, we conducted over 1,000

14  case-by-case reviews to determine where in the Step Down Program an inmate should be placed.

15        7.     For case-by-case reviews, either myself or Mr. Giurbino would chair the

16  Departmental Review Board (DRB) for the hearing, but we both typically attended and prepared

17  for every hearing.  There was also a representative from the Office of Correctional Safety at the

18  hearing, as well as the Acting Chief of the Classification Services Unit.

19        8.     In preparation for a case-by-case review, a Correctional Counselor II would review

20  the inmate's confidential file and write a draft chrono—form outlining the hearing and the DRB's

21  decision—for the upcoming hearing.  As with any classification review, the correctional

22  counselor prepared an initial draft of the chrono, which made it possible for us to conduct the

23  more than 1,000 reviews that we did.  The correctional counselor would review the confidential

24  information and make a preliminary reliability determination about the information.  The

25  correctional counselor would also prepare Confidential Information Disclosure forms, also known

26  as CDCR Form 1030s.  Because inmates could not view the confidential documents themselves

27  for safety and security reasons pursuant to Title 15 3321, the 1030s would explain the information

28  contained in the confidential document, but it would not disclose the source of the information.

3

Hubbard Decl. ISO Defs.' Mot. Summ. J. (3:18-cv-06350-WHA)

**AGO 000800**

9.      Once the 1030 forms had been prepared, Mr. Giurbino or myself would review them, as well as the underlying confidential documents, to ensure that the 1030 forms disclosed sufficient information to the inmate about what was in the confidential documents the DRB would be considering for the case-by-case review.  We would also review them to determine whether the source of the information was reliable pursuant to Title 15 Section 3321, and whether the information was corroborated by anything else.  Even if a correctional counselor found a source or piece of information to be reliable, Mr. Giurbino or I did not have to accept their determination.  We would make our own determination after reviewing all of the evidence.  Once the 1030 forms were approved, the correctional counselor would serve the inmate with the 1030s before the case-by-case review.

10.     Although the Correctional Counselor II would generally attend the case-by-case review and would generally read sections of the drafted chrono at the hearing, they did not have any decision-making authority about what step of the Step Down Program the inmate would be placed in.  The inmate's placement decision was made by all members of the committee, who are listed on the DRB chrono.

11.     With respect to Plaintiff Todd Ashker's 2014 case-by-case review, I recall that a lot of preparation for the hearing was necessary, because there was a significant amount of confidential information in Mr. Ashker's file.  To the best of my recollection, Mr. Ashker initially did not want to participate in his case-by-case review, so the hearing was postponed.  I believe Mr. Giurbino wrote Mr. Ashker about the importance of attending the hearing, and Mr. Ashker appeared on the rescheduled date.

12.     Attached as **Exhibit 4** is a copy of the chrono from Mr. Ashker's September 10, 2014 DRB case-by-case review, which I participated in.  It accurately reflects the hearing that took place that day and the information that the DRB relied upon in making its decision.

13.     I have reviewed Exhibit 6 to T. Davies' declaration.  I am informed and believe those documents to be copies of the CDCR Form 1030s that Mr. Ashker received before his September 10, 2014 hearing.  In preparation for Mr. Ashker's hearing, I reviewed those CDCR Form 1030s, as well as the underlying confidential memoranda, and confirmed that the information in the

4

Hubbard Decl. ISO Defs.' Mot. Summ. J. (3:18-cv-06350-WHA)

AGO 000801

1   1030s accurately reflected the information in the confidential memoranda.  I also evaluated the

2   reliability of the confidential sources pursuant to title 15 section 3321.

3       14.    At the time of Mr. Ashker's hearing, only one piece of reliable evidence of gang

4   behavior within the past four years was required to place an inmate in the Step Down Program.

5   However, in Mr. Ashker's case there were many pieces of confidential information that evidenced

6   he had recent gang behavior.

7       15.    In Mr. Ashker's case, there was reliable evidence that he had a leadership role in the

8   Aryan Brotherhood prison gang, and within the past four years had attempted to orchestrate the

9   murder of a Pelican Bay State Prison doctor and two attorneys who represented the State of

10  California in litigation brought by Mr. Ashker.

11      a.    On May 21, 2012, staff interviewed a validated member of the Aryan

12  Brotherhood gang who stated Mr. Ashker was an active member of the gang, and Mr. Ashker

13  personally targeted an identified Pelican Bay State Prison doctor to be murdered, as well as two

14  attorneys who had represented the State of California in lawsuit brought by Ashker.  The inmate

15  explained that Mr. Ashker provided a business address for where the doctor may be located and

16  gave that inmate a document with the law firm's address on it.  The inmate also identified two

17  Aryan Brotherhood associates who were wanted to be made full members of the Aryan

18  Brotherhood by any means necessary.  (Exhibit 4 at 3.)

19      b.    On August 20, 2012, staff discovered several inmate-generated coded notes

20  secreted within mop heads in a SHU housing unit.  The notes were between two validated Aryan

21  Brotherhood gang members.  The notes were sent to the FBI for decryption, who determined the

22  note identified two Aryan Brotherhood associates who had "to parole and perform" before they

23  could become full members of the Aryan Brotherhood, and instructed the associates to get in

24  contact with another Aryan Brotherhood associate "to make sure he does what he's supposed to

25  do."  (Exhibit 4 at 5.)

26      c.    On March 29, 2013, staff attempted to search the cell of an Aryan Brotherhood

27  associate.  When staff approached his cell, the associate attempted to destroy written material by

28  "tearing it into several pieces and throwing it in the cell toilet," and attempting to flush the toilet.

Hubbard Decl. ISO Defs.' Mot. Summ. J. (3:18-cv-06350-WHA)

**AGO 000802**

1   He was not able to flush the toilet because staff had turned off the water to the cell before the

2   search.  Staff recovered three, virtually-identical coded notes from the associate's toilet.  The

3   notes stated: "You have two things to do. The lawyer and wife first. See if they have a wall safe.

4   Under torture they'll give you everything. Even when they are missing, there will be no

5   immediate heat. With [PBSP doctor], when he is found dead or missing, the heat is on. . . ."

6   During the search of the cell, staff also found the address and phone numbers of the wives of two

7   of the Aryan Brotherhood associates who previously were mentioned as likely connected to the

8   murders because of their impending parole dates.  (Exhibit 4 at 5.)

9        16.    The information in paragraph 15 was deemed reliable because the notes found in

10   August 2012 and March 2013 corroborated an inmate's May 21, 2012 statement that Mr. Ashker

11   had targeted these lawyers and doctor for murder.  *See* CCR, Title 15, § 3321.

12        17.    The information described in paragraph 15 evidenced that Mr. Ashker was involved

13   in gang-related behavior within 24 months of his September 10, 2014 case-by-case review.

14   Therefore, he was placed in Step 2 of the Step Down Program.  Although he still would be

15   housed in the Pelican Bay SHU, he would have additional privileges not previously granted to

16   him.  And if he successfully completed Step 2, he could move to Step 3 in 12 months, which

17   would have involved his transfer to California Correctional Institution or California State Prison,

18   Corcoran.

19        18.    In conducting case-by-case reviews, it was very important to take time with each of

20   the cases and really evaluate the materials to determine the correct step for the inmate.  Mr.

21   Giurbino and I did that for each of the over 1,000 case-by-case reviews.  And in Mr. Ashker's

22   case, it was clear from the evidence presented to us that Step 2 was the appropriate placement for

23   him.

24        19.    I also was involved in the case-by-case reviews for other inmates who were named

25   Plaintiffs in the *Ashker v. Newsom* class action, or who I understood were involved in the prison

26   hunger strikes in 2011 and 2013.

27        20.    No one told me how I should decide Mr. Ashker's case or evaluate the confidential

28   information in his file, or pressured me to come to a particular conclusion.  I only acted based on

6

Hubbard Decl. ISO Defs.' Mot. Summ. J. (3:18-cv-06350-WHA)

**AGO 000803**

1   my personal review of the evidence in his file and my finding that the information was reliable,

2   and based on my over 30 years of experience working at CDCR in various roles.  I did not take

3   any action against Mr. Ashker because he was involved in the *Ashker v. Newsom* litigation or the

4   hunger strikes in 2011 and 2013.

5

6        I declare under penalty of perjury that the foregoing is true and correct and that this

7   declaration was executed on November 10, 2021, in Sacramento, California.

8                                          */s/ S. Hubbard*[1]
                                           S. Hubbard
9   SF2020400523
10  42953838.docx

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

[1] As required by Northern District Local Rule 5-1(h)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Defendant S. Hubbard.

**AGO 000804**

# E  HI  IT

**TO DECLARATION OF S  H      ARD IN S   PPORT OF DEFENDANTS' MOTION FOR S  MMAR      D  MENT**

AGO 000805

| DEPARTMENTAL REVIEW BOARD-SECURITY THREAT GROUP CASE-BY-CASE REVIEW | | |
|---|---|---|
| NO.: C58191 | NAME: ASHKER, TODD | CDCR 128-G (REV. 2/96) |
| MHSDS: CLEAR | Rel Date/BPH: SUB #3 NLT 8/14/2015 | Housing: D4-121L |
| CUSTODY: MAX-S | WG/EFF DT: D2/D  EFF 1/25/2010 | PS/Level:  332 IV |

| Holds/Wants/Detainers:  None | |
|---|---|
| STG: Aryan Brotherhood (AB) Member | TABE/DT: 12.9 (2/1/1983) |

**REASON FOR REFERRAL:** This case was referred to the Departmental Review Board (DRB) for a case-by-case review, and placement consideration, of the inmate's validated prison gang status/Security Threat Group (STG) related behavior pursuant to the implementation of the STG Identification, Prevention, and Management Pilot Program.

INMATE ASHKER appeared before the DRB this date for a STG review.  Prior to Committee, INMATE ASHKER was issued a CDCR 128-B1, dated 9/2/2014, which explains the pending DRB review of current prison gang/STG related behavior noted in the most recent CDCR 128-B2, dated 10/24/2013 and any additional behavior occurring during the preceding four years relative to Confidential Memorandums (CM) dated 6/27/2011, 11/4/2011, 7/24/2012, 10/10/2012, 3/29/2013, 4/2/2013, 12/5/2013, and 1/9/2014 and possible release to the general population (GP) as an inactive monitored inmate or possible Security Housing Unit (SHU) retention, to include placement into the Step Down Program (SDP).

INMATE ASHKER's current eligibility date for an active/inactive review is 4/9/2018.  On 9/2/2014, INMATE ASHKER signed his Notice of Conditions of Inactive Monitored Status and was given a copy.  INMATE ASHKER was given a copy of the CDCR handbook titled, "Security Threat Group Prevention, Identification System, and SDP" and the STG Update and Information Sharing Memorandum dated 8/9/2013 on 9/2/2014.

On 9/4/2014, INMATE ASHKER submitted a CDCR 22 Form (Inmate Request for Interview) notifying the DRB that he was requesting a postponement of his case-by-case review scheduled for 9/5/2014 based on concerns he had over pending litigation and confidential information issues used relevant to pending litigation.  He stated he was directed by counsel to consult with them prior to answering any questions.

On 9/5/2014, PBSP initiated an official log number (PBSP-D-14-02552) for this CDCR 22 Form.  The CDCR 22 Form was addressed to Director (A) G. Giurbino in a written CDCR Memorandum dated 9/5/2014.  In the response Director Giurbino acknowledged INMATE ASHKER's concerns and informed INMATE ASHKER the DRB could not compel him to participate in his scheduled hearing, but DRB encouraged his presence and active participation in his case-by-case review.  On 9/10/2014, INMATE ASHKER voluntarily attended his DRB case-by-case review and cooperated fully with the committee proceedings.

**CASE FACTORS:** INMATE ASHKER is a White, 51-year-old, Multi-Termer, received into CDCR on 1/11/1985 as a PVWNT from Contra Costa County, for two (2) counts of PC 459 Burglary 1st and one (1) count PC 245(a) Assault with a Deadly Weapon.  He was sentenced to a term of 6 years.  INMATE ASHKER received two (2) additional sentences while incarcerated.  In 1987 he received 3 additional years for PC 4502 Possession of a Deadly Weapon in Prison and in 1990 he received 21 years to Life for PC 187 2nd Degree Murder of Inmate Murphy at California State Prison, Sacramento.

| Date:  9/10/2014 | Classification: DRB ACTION | Institution: PBSP-SHU |
|---|---|---|

| DEPARTMENTAL REVIEW BOARD-SECURITY THREAT GROUP CASE-BY-CASE REVIEW | | |
|---|---|---|
| NO.: C58191 | NAME: ASHKER, TODD | CDCR 128-G (REV. 2/96) |

Mental Health Assessment:

EFFECTIVE COMMUNICATION:

**CASE HISTORY:**

- According to the Office of Correctional Safety (OCS) INMATE ASHKER was originally validated as a member of the Aryan Brotherhood (AB) prison gang on 6/20/1988. There were four (4) CMs all referencing active participation in AB membership during that same time period.

- INMATE ASHKER was originally placed in segregated housing on 8/20/1986 for Attempted Assault of Officer Perez at Folsom State Prison and has remained in various SHU facilities thru present time due to numerous serious disciplinary infractions and active prison gang validations (totaling 28 years).

- Continued validation as a member of the AB prison gang is noted per CDCR 128-B's dated 10/25/1988, 6/2/1993, and 5/25/1994 as well as 128-B2s dated 7/13/1995, 2/19/2002, 7/8/2003, and 1/16/2008.

- INMATE ASHKER was most recently validated as a member of the AB STG-I per CDCR 128-B2 dated 10/24/2013. Five (5) source items related to "Association" support the current validation and fall within this four year review period:

1. CM (Association), dated 8/16/2011, describes that on 5/4/2011 and 5/5/2011, OCS staff conducted interviews with a validated associate of the Nazi Low Rider (NLR) prison gang and who was also a validated associate of the STG-II Public Enemy Number One (PENI) disruptive group. During the lengthy interview Subject discussed a broad history of interactions with the AB prison gang and its affiliates. Subject identified INMATE ASHKER as being a member in "Good Standing" with the AB prison gang as of 4/4/2011. This information was deemed reliable based on CCR, Title 15, 3321(c)(3), Subject incriminated himself and admitted his own STG behavior. However, there was no specific STG behavior attributed to INMATE ASHKER therefore no nexus to STG-I behavior by INMATE ASHKER could be identified pursuant to the STG Pilot Program. A CDCR 1030, Confidential Information Disclosure Form was provided to INMATE ASHKER on 9/2/2014.

2. CM (Association), dated 8/16/2011, describes that on 5/5/2011, OCS staff conducted an interview with a validated associate of the AB prison gang. During the interview Subject discussed a broad history of interactions with the AB prison gang and its affiliates. Subject identified INMATE ASHKER as being an active and fully functioning member in "Good Standing" with the AB prison gang. This information was deemed reliable based on CCR, Title 15, 3321(c)(3), Subject incriminated himself and admitted his own STG behavior. However, there was no specific STG behavior attributed to INMATE ASHKER therefore no nexus to STG-I behavior by INMATE ASHKER could be identified pursuant to the STG Pilot Program. A CDCR 1030, Confidential Information Disclosure Form was provided to INMATE ASHKER on 9/2/2014.

| Date:  9/10/2014 | Classification:  DRB ACTION | Institution: PBSP-SHU |
|---|---|---|

AGO 000807

| DEPARTMENTAL REVIEW BOARD-SECURITY THREAT GROUP CASE-BY-CASE REVIEW | | |
|---|---|---|
| NO.: C58191 | NAME: ASHKER, TODD | CDCR 128-G (REV. 2/96) |

3. CM (Acting in a STG Leadership Role / Conspiracy to Commit Murder), dated 5/21/2012, describes that on 4/9/2012, PBSP IGI staff conducted an interview with a validated member of the AB prison gang.  During the interview Subject discussed a broad history of interactions with the AB prison gang and its affiliates.  Subject identified INMATE ASHKER as being an active member of the AB prison gang.  Subject identified INMATE ASHKER as having personally targeted an identified PBSP doctor and nurse to be murdered over the perception that the doctor and nurse had provided poor medical treatment to inmates housed at PBSP SHU.  Subject stated INMATE ASHKER had advocated for inmates who were being released from custody to travel back to Del Norte County in an effort to murder the doctor and nurse.  Subject admitted that at one time he also supported INMATE ASHKER's plan to have the doctor and nurse murdered but that subject was never around inmates who were paroling to advocate it himself.  Subject stated INMATE ASHKER had taken note and shared with Subject information printed in the Crescent City newspaper, The Daily Triplicate, which identified a business in town where the doctor might be located to accomplish the murder.  Subject stated that INMATE ASHKER had also targeted attorneys from an identified law firm to be killed for representing the State of California in a lawsuit initiated by INMATE ASHKER.  Subject provided a document to PBSP IGI staff authored by the targeted law firm and claimed INMATE ASHKER had provided the letter to Subject to identify the address of how to locate the targeted attorneys.  An attorney from the law firm confirmed with PBSP IGI that the form letter Subject turned over had been sent from their office to multiple inmates housed in PBSP SHU.  Subject was able to identify who he believed INMATE ASHKER would use to carry out the murders because of their pending parole dates.  Parole was a rare thing for AB prison gang members because the majority of them were serving lengthy sentences.  Subject identified two (2) validated AB prison gang associates who had expressed loyalty and desire to be made into full members of the AB prison gang by any means necessary.  Subject stated he was able to communicate regularly with INMATE ASHKER through the yard drain system and by shouting over the concrete yard wall while subject was housed in D2 and INMATE ASHKER was housed in D1.  A SOMS check revealed both subject and INMATE ASHKER lived in these identified housing units from 2006-2011.  Subject identified INMATE ASHKER as currently "pretty much trying to take over The Brand right now."  "The Brand" is an alternate name used for the AB prison gang.  Subject stated INMATE ASHKER also wanted four (4) identified validated AB members "hit" [killed] for not supporting the mass hunger strike initiated by INMATE ASHKER in 2011.  Subject stated it was this order by INMATE ASHKER to kill these other AB members that motivated Subject to participate in the debrief process.  Subject stated he supported the members in spite of them being a target of ASHKER's and Subject was then ostracized from the gang as a result of it.  This information was deemed reliable based on CCR, Title 15, 3321(c)(3), Subject incriminated himself and admitted his own STG behavior.  A nexus to STG-I behavior by INMATE ASHKER was identified pursuant to the STG Pilot Program relevant to acting in a STG leadership role.  A CDCR 1030, Confidential Information Disclosure Form was provided to INMATE ASHKER on 9/2/2014.

4. CM (Association), dated 12/7/2012, describes that on 10/10/2012 and 10/11/2012, OCS staff conducted an interview with a validated member of the AB STG-I.  Subject stated in November 2010 the inmate program within PBSP SHU had been decreased as a result of a budget crisis which angered the leaders of various prison gangs.  Subject stated this resulted in a hunger strike being contemplated by INMATE ASHKER and another identified validated member of the AB STG-I.  INMATE ASHKER had researched the hunger strike initiated by "Bobby Sands" of the Irish Republican Army (IRA) and believed a hunger strike with public support would breath life back into the AB prison gang.  Subject stated INMATE ASHKER began looking to the other

| Date:  9/10/2014 | Classification:  DRB ACTION | Institution: PBSP-SHU |
|---|---|---|

| DEPARTMENTAL REVIEW BOARD-SECURITY THREAT GROUP CASE-BY-CASE REVIEW | | |
|---|---|---|
| NO.: C58191 | NAME: ASHKER, TODD | CDCR 128-G (REV. 2/96) |

AB members to support the idea of a hunger strike and not all thought it was a good idea. INMATE ASHKER told Subject to cease communications with AB members who were not supportive of the hunger strike. Subject stated both he and INMATE ASHKER realized the importance media exposure would play in gaining sympathy from the public and that INMATE ASHKER enlisted the help of friends, family and liberal organizations in placing SHU placement in the media spotlight. Subject admitted once he was ostracized by certain AB members for refusing to cease communication with the other respected AB members who did not support the hunger strike Subject organized a list of individuals he planned to kill if given the opportunity. The list started with INMATE ASHKER. Subject stated INMATE ASHKER is currently considered in good standing but recent actions by ASHKER may eventually lead to him being targeted for assault by the rest of the AB prison gang. This information was deemed reliable based on CCR, Title 15, 3321(c)(3), Subject incriminated himself and admitted his own STG behavior. A nexus to STG-I behavior by INMATE ASHKER was identified pursuant to the STG Pilot Program relevant to Association. A CDCR 1030, Confidential Information Disclosure Form was provided to INMATE ASHKER on 9/2/2014.

5. CM (Association / Acting in a Leadership Role), dated 8/15/2013, describes that on 5/20/2012 and 5/21/2012, OCS staff interviewed a validated member of the AB STG-I. During the interview, subject identified INMATE ASHKER as an influential member within the AB. Subject discussed the 2011 Hunger Strike and admitted he opposed participation in it. Subject stated several AB STG-I members snacked on food items daily during the initial hunger strike. Specifically INMATE ASHKER was identified by Subject as secretly eating while refusing his state meal. For this reason, Subject found it difficult to pour his labor into it. Subject stated in late September 2011 many of those AB members participating in the Hunger Strike were moved to ASU and that exposed all of the "cheaters." INMATE ASHKER began soliciting support from his AB peers to consume food items. INMATE ASHKER adamantly pleaded to them that he was in need to have a clear mind for negotiations with staff and administration. Subject stated the cry for help by INMATE ASHKER was not well received by several of the AB members and INMATE ASHKER'S activity actually insulted them. Subject stated another identified AB member authored a message to INMATE ASHKER professing their opposition to his eating and complaining but INMATE ASHKER did not respond and ignored their message and continued to plead to consume food items. Subject acknowledged a split occurring in the AB prison gang membership and that INMATE ASHKER was alleged to have nine (9) AB supporters of the split. Subject acknowledged three (3) influential AB STG-I members all voted to place INMATE ASHKER "in the hat" but that Subject disagreed with the idea. This information was deemed reliable based on CCR, Title 15, 3321(c)(3), Subject incriminated himself and admitted his own STG behavior. A nexus to STG-I behavior by INMATE ASHKER was identified pursuant to the STG Pilot Program relevant to acting in a STG leadership role. A CDCR 1030, Confidential Information Disclosure Form was provided to INMATE ASHKER on 9/2/2014.

**BEHAVIORAL REVIEW OF PAST FOUR YEARS:** A review of the Central file specific to STG related behavior occurring within the past four years and not previously affirmed on a CDCR 128-B2 revealed:

1. CM (Association), dated 6/27/2011, describes that on 5/3/2011, OCS staff conducted an interview with a validated AB prison gang associate. Subject described he was aware of several AB prison gang affiliates in good standing with the AB and identified INMATE ASHKER as a "member in good standing." This information was deemed reliable based on CCR, Title 15, 3321(c)(3), subject incriminated himself and admitted his own STG behavior. However, a

| Date: 9/10/2014 | Classification: DRB ACTION | Institution: PBSP-SHU |
|---|---|---|

| DEPARTMENTAL REVIEW BOARD-SECURITY THREAT GROUP CASE-BY-CASE REVIEW | | |
|---|---|---|
| NO.: C58191 | NAME: ASHKER, TODD | CDCR 128-G (REV. 2/96) |

nexus to STG-I behavior by INMATE ASHKER was not identified pursuant to the STG Pilot Program because it did not provide any specific STG behavior by INMATE ASHKER.  A CDCR 1030, Confidential Information Disclosure Form was provided to INMATE ASHKER on 9/2/2014.

2. CM (Coded Communications), dated 10/10/2012, describes that on 8/20/2012, PBSP staff discovered several inmate generated coded notes secreted within mop heads in SHU Housing Unit D4.  The notes were turned over to IGI where on 8/31/2012 the coded communications were submitted to the Federal Bureau of Investigation (FBI) Cryptanalysis Unit for independent decryption.  On 9/17/2012, PBSP received the formal decryption from the FBI and the investigation was concluded on 10/10/2012.  One of the coded notes was addressed to an identified validated AB prison gang member in leadership and the author was identified as another validated AB prison gang member in leadership.  A portion of the note translation serves as corroborating evidence for CMs 5/21/2012 and 3/29/2013.  The translation was as follows: *"…there are only two people up right now (identified AB associate #1) and (identified AB associate #2).  (Identified AB associate #2) has to parole and perform before he can get made.  He has to get in contact with (Identified AB associate #3) who will make sure he does what he's supposed to do."*  Identified AB associates # 2 and # 3 were both inmates housed at PBSP SHU pending release to Parole within months of one another.  This information is deemed reliable per CCR, Title 15, Section 3321(c)(4), the material was confiscated during an investigation and not intended for staff.  A nexus to STG-I behavior by ASHKER was identified pursuant to the STG Pilot Program relevant to acting in a STG leadership role.  A CDCR 1030, Confidential Information Disclosure Form was provided to INMATE ASHKER on 9/2/2014.

3. CM (Acting in a STG Leadership Role / Conspiracy to Commit Murder), dated 3/29/2013, describes that on 3/25/2013, PBSP IGI staff attempted to conduct a cell search of a validated AB STG-I associate.  IGI approached the cell and the Subject attempted to destroy written material inside his cell by tearing it into several pieces and throwing it in the cell toilet.  Subject then attempted to flush the toilet but was prevented because staff had turned off the water to the cell prior to the attempted search.  IGI recovered the written material from the toilet and upon drying was able to piece it back together.  The written material consisted of three (3) inmate generated notes and two (2) code cypher keys.  Two of the written notes were in the process of being converted into code utilizing the cypher key.  All three (3) notes were virtually identical in what had been written.  It was determined that Subject was the author of the notes.  The notes stated: *"You have two things to do. The lawyer and wife first.  See if they have a wall safe.  Under torture they'll give you everything.  Even when they are missing, there will be no immediate heat.  With (name identified as PBSP doctor  ), when he is found dead or missing, the heat is on, make ready for it-only get at me if necessary, you're in our trust now with no doubt your persistence and loyalty was well noted-solid as our rock."*  IGI recognized these notes as corroborating evidence to CM dated 5/21/2012 in which INMATE ASHKER is identified as personally ordering for the murder of an identified PBSP doctor and identified attorneys from a law office which had represented CDCR against lawsuits filed by INMATE ASHKER.  During the same search conducted on 3/25/2012 of Subject's cell, IGI staff also recovered personal address and phone contact information for two validated AB associates housed at PBSP.  The home addresses and phone numbers were identified as belonging to the wives of the identified AB associates.  These identified AB associates were previously mentioned in CM dated 5/21/2012 as likely AB associates connected to the planned murders of the PBSP doctor and lawyers because of their impending parole dates.  These same identified AB associates were also mentioned in CM dated 10/10/2012, in which an inmate generated note was discovered and corroborated that the identified AB associates would likely be paroling soon and had work

| Date:  9/10/2014 | Classification:  DRB ACTION | Institution: PBSP-SHU |
|---|---|---|

| DEPARTMENTAL REVIEW BOARD-SECURITY THREAT GROUP CASE-BY-CASE REVIEW | | |
|---|---|---|
| NO.: C58191 | NAME: ASHKER, TODD | CDCR 128-G (REV. 2/96) |

assigned to them by the AB prison gang. Specifically, one of the identified AB associates would be doing work on the streets to achieve membership within the AB prison gang. A SOMS check revealed that the Subject inmate of this current CM, the identified AB prison gang associate who was to do work on the streets upon parole, to earn his AB membership, and INMATE ASHKER all lived in PBSP D Facility Unit 1, in close proximity to one another in October 2011. This date also corroborates with the time frame mentioned in CM dated 5/21/2012 as to when INMATE ASHKER was calling for the murder of the PBSP doctor and the lawyers. This information is deemed reliable per CCR, Title 15, Section 3321(c)(4), the material was confiscated during an investigation during which Subject attempted to destroy the evidence that was not intended for staff. A nexus to STG-I behavior by INMATE ASHKER was identified pursuant to the STG Pilot Program relevant to acting in a STG Leadership Role / Conspiracy to Commit Murder through the corroboration of additional CMs. A CDCR 1030, Confidential Information Disclosure Form was provided to INMATE ASHKER on 9/2/2014.

4. Threat Assessment Report (Conspiracy to Commit Murder), dated 4/2/2013, describes that from 3/29/2013 to 4/2/2013, OCS staff conducted an investigation of alleged threats against PBSP staff targeted for murder by INMATE ASHKER and other AB prison gang affiliates. In total, seven (7) validated AB members and associates were interviewed for the investigation. Three (3) PBSP staff members and two (2) contracted attorneys were also interviewed. Two of the inmates were validated and self-admitted AB STG-I members, who have since defected from the gang. They corroborated and confirmed that it was common knowledge among AB members that the identified PBSP doctor was targeted for death by INMATE ASHKER. They also confirmed the identified attorneys from a law firm who had represented CDCR against lawsuits brought on by INMATE ASHKER were also targeted. One of the interviewed inmates stated he believed the order for the murders came from INMATE ASHKER and that the AB Commission would never approve of a hit on a PBSP doctor because it would bring unwanted "heat" to the organization during a time when the gang is attempting to have their indeterminate SHU status reviewed because of the newly implemented Security Threat Group program. He went on to state INMATE ASHKER was considered in bad standing by the AB Commission and that INMATE ASHKER had been placed on the AB hit list approximately a year ago. He included that INMATE ASHKER was likely acting on his own accord and not with the approval of the AB as a whole. OCS found the inmate manufactured communications that had been recovered from common areas in SHU and more recently from the cell of a validated AB member, indicated the threat was still active and current to the extent that a specific inmate has been identified to be the assassin. The last note recovered was deciphered as follows: "*Alright Stud- Forget about those NLR rats, in fact, best to keep clear of old ties. Just like the mainline, many will set you up if they can. You have two things to do. The lawyer and his wife first. See if they have a wall safe. Under torture, they will give you everything. Even when they are missing, there will be no immediate heat. With (identified PBSP doctor), when he is found dead or missing, the heat is on- make ready for it- only get at me if necessary you're in our trust now with no doubt your persistence and loyalty was well noted- solid as our rock. May all go well with you out there. Let it be known it was good to see the lively face again the [illegible words] day. Expect you are getting good direction from that spot? We send ours. 'P' "* The recovered inmate manufactured note leads credence to the fact that the AB prison gang had specific plans on the killings to include: who the killer was going to be; who was to be killed and in what order; what should happen to the individual victims and what the ramifications would be after the murders. On 5/23/2013, OCS staff interviewed the validated AB prison gang associate believed to be the assassin. Subject admitted he had pending litigation against one of the targets (the doctor) but that he had no intentions of harming or killing the doctor or the attorneys. Subject

| Date: 9/10/2014 | Classification: DRB ACTION | Institution: PBSP-SHU |
|---|---|---|

| DEPARTMENTAL REVIEW BOARD-SECURITY THREAT GROUP CASE-BY-CASE REVIEW | | |
|---|---|---|
| NO.: C58191 | NAME: ASHKER, TODD | CDCR 128-G (REV. 2/96) |

stated he had absolutely no intentions of contacting or meeting with any AB members or associates now that he was on the streets. Subject stated he was willing to take a polygraph exam however once OCS provided Subject with the opportunity to do so subject became distraught and claimed he could not. As new investigative leads are developed they will be scrutinized and acted upon accordingly. SSU will continue to maintain open interest in the case. A nexus to STG-I behavior by INMATE ASHKER was identified pursuant to the STG Pilot Program relevant to acting in a STG Leadership Role / Conspiracy to Commit Murder through the corroboration of previously mentioned CMs dated 5/21/2012, 10/10/2012, and 3/29/2013. A CDCR 1030, Confidential Information Disclosure Form was provided to INMATE ASHKER on 9/2/2014.

5. CDCR 115, Rules Violation Report (RVR) (Promotion of Gang Activity) dated 7/24/2013, describes that on 7/24/2013, PBSP IGI staff completed an investigation into INMATE ASHKER's continued participation into STG-I related activity relative to the AB. During the course of the investigation INMATE ASHKER's cell and property were searched. During the search a photograph was recovered. The photograph recovered was of validated AB STG-I member INMATE ▓▓▓▓▓▓▓ On 9/2/2013, a disciplinary hearing was conducted and INMATE ASHKER was found guilty of a Division F offense for Promotion of Gang Activity. A nexus to gang behavior pursuant to the STG Pilot Program was identified. A copy of the RVR was provided to INMATE ASHKER.on 9/2/2014.

6. RVR and CM (Promotion of Gang Activity) dated 12/5/2013, describes that on 10/14/2013, OCS initiated an Active/Inactive review of INMATE ASHKER and his continued involvement with AB STG-I related activities. During a search of INMATE ASHKER's personal paperwork, a letter addressed to INMATE ASHKER was discovered secreted amongst his legal paperwork. The letter was postmarked 7/30/2013 and had the name Eva Braun written on the return address. The letter itself was fairly innocuous, however the author states: "Tyler Bingham, a dear former boyfriend of mine now at ADMAX, tells me you can use a pen pal, so can I." Tyler Bingham is a validated AB member currently housed in Federal custody at the ADX Maximum Facility in Florence, Colorado. OCS staff determined the name "Eva Braun" was the name of Adolf Hitler's longtime girlfriend and was being used as a moniker to conceal the true identity of the author. OCS staff positively identified the address as belonging to an identified male, disbarred attorney with an arrest record. OCS staff believed the letter might contain a coded message concealed within the correspondence and forwarded it to the FBI Cryptanalysis Unit (CRRU) for analysis. The letter was examined and nothing of cryptographic value was observed. However, the CRRU stated it appeared to be from the same writer as other letters submitted to them for analysis with the same return address, a number of the same words, and similar style of writing. The CRRU also noted the return address and similar letters have been written to a number of inmates during the past seven years, including identified high ranking AB members. It should be noted INMATE ASHKER wrote on the front of the envelope that he responded to this address four separate times, 8/11/2013, 8/15/2013, 8/25/2013, and 9/8/2013. Also discovered inside INMATE ASHKER's address book was the name "Eva Braun" and the corresponding return address. As this address has been identified as an avenue for correspondence with identified AB members, and the author of the letter writes that he has contact with AB member Bingham, it is reasonable to believe that INMATE ASHKER is utilizing this as an avenue to communicate with AB membership in Federal custody. On 1/14/2014, a disciplinary hearing was conducted and INMATE ASHKER was found guilty of a Division F offense for Promotion of Gang Activity. A nexus to gang behavior pursuant to the STG Pilot Program was identified. A copy of the RVR was provided to INMATE ASHKER on 9/2/2014.

| Date:  9/10/2014 | Classification: DRB ACTION | Institution: PBSP-SHU |
|---|---|---|

| DEPARTMENTAL REVIEW BOARD-SECURITY THREAT GROUP CASE-BY-CASE REVIEW | | |
|---|---|---|
| NO.: C58191 | NAME: ASHKER, TODD | CDCR 128-G (REV. 2/96) |

7. Confidential 128-B dated 1/9/2014, describes on 1/9/2014, PBSP D4 Control Booth Officer observed via the E and F Pod yard monitors, that INMATE ASHKER was in the F Pod yard lying face down talking into the yard drain. The D4 Control Booth Officer was able to contact the D1 Control Booth Officer and determine utilizing the yard Pod intercoms that INMATE ASHKER was talking to an identified validated AB prison gang member observed in D1, A Pod Yard, who was also talking into the drain. INMATE ASHKER was heard telling the other AB member about his lawyer named "Joyce" and that she had passed encrypted notes for him to four other inmates. INMATE ASHKER stated, *"You know my court date on the 31st? Yeah, it's on the 31st. She is going to put special equipment in the cars. You know scanners for the 31st."* INMATE ASHKER's statements indicate his lawyer has passed gang information to other AB gang members and may be helping to plot some sort of escape attempt for INMATE ASHKER when he goes to court on the 31st. A nexus to STG-I behavior by INMATE ASHKER was identified pursuant to the STG Pilot Program relevant to Association as he was talking with another identified AB prison gang member about AB prison gang business involving his attorney. A CDCR 1030, Confidential Information Disclosure Form was provided to INMATE ASHKER on 9/2/2014.

**SAFETY/ENEMY CONCERNS:** Extensive list of enemies is noted per review of the CDCR 812 Notice of Critical Information-Confidential and Non-Confidential Enemies. The DRB had a lengthy discussion with INMATE ASHKER regarding his possible safety concerns described in previously mentioned CMs dated 12/7/2012, 4/2/2013, and 8/15/2013. Over 24 hours prior to Committee, INMATE ASHKER was also issued CDCR 1030s-Disclosure of Confidential Information for the following information:

- CM (Association) dated 11/4/2011, describes that on 8/23/2011, OCS staff conducted an interview with a validated AB prison gang associate. Subject described knowledge of several AB prison gang affiliates in good and bad standing with the AB and identified INMATE ASHKER as "a member, TODD from Co-Co County." Subject also described INMATE ASHKER as being on a hit list for ordering a bad hit and for trying to take over the AB. Subject admitted he heard this information by word of mouth. This information was deemed reliable based on CCR, Title 15, 3321(c)(3), subject incriminated himself and admitted his own STG behavior. A CDCR 1030, Confidential Information Disclosure Form was provided to INMATE ASHKER on 9/2/2014.
- Confidential 128-B dated 7/24/2012, describes on 7/19/2012, PBSP IGI staff reviewed an incoming letter written to a validated EME prison gang member housed in PBSP, Facility D. In the letter a female, self-proclaimed activist for the inmates held in SHU and ASU describes that she is feeling harassed and threatened by INMATE ASHKER. At one point the writer refers to INMATE ASHKER stating, *"...if he does this shit anymore I will be on a mission to ruin his ass...please get his people off my man, get his people off me and off my girl. My man and my girl are my whole life, if anything happens to them I will k-ll bud...this bud's ass needs to be checked, like now!"* IGI staff had in fact been monitoring communication back and forth from INMATE ASHKER to this writer and IGI determined the writer was actually in a romantic relationship with another identified validated EME prison gang associate. This material was confiscated during a review of incoming mail and was not intended for staff detection so reliability is not an issue. A CDCR 1030, Confidential Information Disclosure Form was provided to INMATE ASHKER on 9/2/2014.

| Date: 9/10/2014 | Classification: DRB ACTION | Institution: PBSP-SHU |
|---|---|---|

| DEPARTMENTAL REVIEW BOARD-SECURITY THREAT GROUP CASE-BY-CASE REVIEW | | |
|---|---|---|
| NO.: C58191 | NAME: ASHKER, TODD | CDCR 128-G (REV. 2/96) |

INMATE ASHKER stated:

*I don't believe I have any safety concerns. I'm not worried about information CDCR gets from any so-called confidential informants. He doesn't know what he's talking about. And as far as the female, I know who she is. Check it out, I tried to help her out but figured out pretty quickly that she had mental problems. I'm not worried about anything she said. Perez and I are good friends. That lady is a trip. I know if I had been doing anything to harass anyone IGI would have been all over that. I think she might have even married Perez by now."*

**DRB ACTION:** INMATE ASHKER made a personal appearance before the DRB on this date. INMATE ASHKER was advised of the DRB proceedings and the DRB members were introduced. INMATE ASHKER appeared to be in good health and understood the DRB process. The DRB members discussed INMATE ASHKER's CDCR history and case factors, and explained the new STG policy. The DRB explained that this STG four year case-by-case review replaces the 6 year active/inactive review of INMATE ASHKER's prison gang validation. DRB elected to place INMATE ASHKER in Step 2 of the SDP based on CMs dated 5/21/2012, 10/10/2012, 12/7/2012, 3/29/2013 and 4/2/2013, all of which contained corroborating information identifying INMATE ASHKER as asserting leadership within the AB STG-I structure and conspiring with other validated AB affiliates to commit the murders of a PBSP doctor and two CDCR contract attorneys. These CMs involved various interviewed sources and written material found in a cell and common area within PBSP SHU. There was also evidence that INMATE ASHKER and the conspirators all lived in close proximity to one another for a period of time corroborating the ability to communicate a plan. DRB determined based on the totality of circumstances a reasonable person could conclude the plot against PBSP staff was credible and was STG behavior as recent as 2013. INMATE ASHKER was admonished regarding future STG behavior, and was advised of the potential consequences of STG behavior under the STG Pilot Program and STG Disciplinary Matrix. Based upon the above case factors, along with a meaningful and thorough review of the past four years of INMATE ASHKER's behavior and central file, the DRB elected to take the following actions:

1. Place in Step 2 of the SDP and approve retention at PBSP-SHU.
2. Continue WG/PG D2/D effective 1/25/2010 and MAX-S Custody.

INMATE COMMENTS/PARTICIPATION: INMATE ASHKER participated in a lengthy discussion of his past gang behavior and the new STG Pilot Program. INMATE ASHKER stated:

"I understand why you are deciding this way. I did not conspire to hurt staff but I understand there are items you reviewed that required you to address it as a liability. Listen, hey, I plan on participating and doing the workbooks. I appreciate the work you are doing, the effort, you know what I mean? I may disagree with the Step Down Program and with you on policy but I do believe your efforts are genuine and that you think you will make a difference here and I can appreciate that. I know a lot of work goes into these cases. I know Counselor Vargas worked hard on my case and it took her over 2 weeks to do. I'm glad you have more counselors at other institutions coming on board to get these done and get folks seen by DRB quicker. Thank you."

The inmate was advised that the DRB decision serves as the Secretary's level decision which is not appealable and concludes the inmate/parolee's departmental administrative remedy of such issues pursuant to CCR 3376.1.

RETAIN DRB TRANSFER CONTROL:  YES ☐  NO ☒

| Date:  9/10/2014 | Classification:  DRB ACTION | Institution: PBSP-SHU |
|---|---|---|

AGO 000814

| DEPARTMENTAL REVIEW BOARD-SECURITY THREAT GROUP CASE-BY-CASE REVIEW | | |
|---|---|---|
| NO.:  C58191 | NAME: ASHKER, TODD | CDCR 128-G (REV. 2/96) |

**MEMBERS:**      **G. GIURBINO**, Director (A)
Division of Adult Institutions

**S. HUBBARD**, Deputy Director (A)
Division of Adult Institutions

**D. ROTHCHILD**, Chief (A)
Classification Services Unit

**J. MCLAUGHLIN**, Special Agent
Office of Correctional Safety

**R. JOHNSON**, Psy.D
Pelican Bay State Prison

**RECORDER:**      **C. VARGAS**, Correctional Counselor II
Pelican Bay State Prison

_____
C. VARGAS, Correctional Counselor II
Pelican Bay State Prison

_____
G. GIURBINO, Director (A)
Division of Adult Institutions

| Date:  9/10/2014 | Classification:  DRB ACTION | | Institution: PBSP-SHU |
|---|---|---|---|

AGO 000815

1  ROB BONTA
   Attorney General of California
2  MARISA KIRSCHENBAUER
   Supervising Deputy Attorney General
3  CASSANDRA J. SHRYOCK
   Deputy Attorney General
4  State Bar No. 300360
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3622
6    Fax:  (415) 703-5843
     E-mail:  Cassandra.Shryock@doj.ca.gov
7  *Attorneys for Defendants*

8

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13  **TODD ASHKER,**                      3:18-cv-06350-WHA

14                          Plaintiff,    **DECLARATION OF T. DAVIES IN
                                          SUPPORT OF DEFENDANTS' MOTION
15          v.                            FOR SUMMARY JUDGMENT**

16  **S. KERNAN, et al.,**                Judge:        The Honorable William Alsup
                                          Trial Date:   None Set
17                          Defendants.   Action Filed: October 17, 2018

18

19       I, T. Davies, declare:

20       1.    I am personally familiar with the facts contained in this declaration, and if called to

21  testify, would and could competently testify about these matters.

22       2.    I am not a party to this action.  I am currently employed by the California Department

23  of Corrections and Rehabilitation (CDCR) as an Acting Captain at CDCR Headquarters' Division

24  of Adult Institutions, High Security Mission.  I have held this position since September 24, 2021.

25  I have been employed by CDCR since July 2, 2002, and have held various positions during my

26  employment.

27

28

                                          1

AGO 000816

3.      Based on my 19 years with CDCR, I am personally familiar with policies and procedures regarding record keeping, as well as the Strategic Offender Management System (SOMS) and Electronic Record Management System (ERMS) used for maintaining all inmate records.

4.      When staff create a confidential disclosure form, formerly known as a CDCR Form 1030, a copy of the form is retained in the inmate's electronic file.  And after any classification committee decision, a copy of the chrono outlining the decision is also retained in the inmate's electronic file.  These records are kept in the course of regularly conducted activity of CDCR, and making these records is a regular practice before and after classification or other administrative hearings.

5.      In my current position, I have access to Plaintiff's SOMS and ERMS files.

6.      Attached as **Exhibit 5** is a true and correct copy of the Departmental Review Board chrono dated February 5, 2016, from Plaintiff's SOMS file.  Plaintiff's medical and mental health information has been redacted from this document, as well as the names of other inmates for Plaintiff's and their privacy.  On information and belief, Plaintiff has received an unredacted copy of this chrono, and I am informed that the Attorney General's Office will also be serving him with an unredacted copy of the chrono.

7.      Attached as **Exhibit 6** is a true and correct copy of the confidential disclosure forms, (CDCR Form 1030s) that were generated in advance of Plaintiff's September 10, 2014 Departmental Review Board hearing, from Plaintiff's ERMS file.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on November 10, 2021, in Sacramento, California.

T. Davies

SF2020400523
42956642.docx

2

Davies Decl. ISO Defs.' Mot. Summ. J. (3:18-cv-06350-WHA)

**AGO 000817**